# EXHIBIT 5

1               SUPERIOR COURT OF CALIFORNIA

2               COUNTY OF SAN FRANCISCO

3      HONORABLE NANCY L. DAVIS, JUDGE PRESIDING

4               DEPARTMENT NO. 306

5                  ---oOo---

6

7  ROBERT LYMAN, ET AL.,

                       )

8          Plaintiffs,    )   CGC-06-459162

                       )   Jury Trial

9    vs.                 )

                       )   Pages 139 - 190

10  ASBESTOS DEFENDANTS, ET AL.   )

                       )   Volume IV

11         Defendants.     )

12  _____)

13

14                           **COPY**

15

16

17       REPORTER'S TRANSCRIPT OF PROCEEDINGS

18           Monday, August 13, 2007

19

20

21

22

23

24

25

26

27

28  Reported by:   Laura Martinez, CSR No. 11332, RPR

1    APPEARANCES OF COUNSEL:

2    For Plaintiffs:

3        Brayton Purcell
         222 Rush Landing Road
4        Novato, California  94945-669
         BY:  GARY L. BRAYTON, Attorney at Law
5
     For Defendant UNION CARBIDE:
6
         Baker Botts LLP
7        One Shell Plaza
         910 Louisiana
8        Houston, Texas 77002
         By:  KEVIN M. JORDAN, Attorney at Law
9
         Orrick, Herrington & Sutcliffe LLP
10       The Orrick Building
         405 Howard Street
11       San Francisco, California  94105
         By:  CATHERINE MORRIS KROW, Attorney at Law
12
     For Defendant FREIGHTLINER LLC:
13
         Wright Robinson Osthimer & Tatum
14       44 Montgomery Street, 18th Floor
         San Francisco, California  94104-4705
15       By:  CHARLES E. OSTHIMER, Attorney at Law

16   For Defendant MONTELLO, INC.:

17       Dillingham & Murphy
         225 Bush Street, Sixth Floor
18       San Francisco, California  94104-4207
         By:  MOLLY MROWKA, Attorney at Law
19
         ANDREW S. HARTMAN, Attorney at Law
20       6520 S. Lewis
         Tulsa, Oklahoma  74170
21

22

23

24

25

26

27

28

1 | Monday, August 13, 2007                          10:40 A.M.

2 |                    **P R O C E E D I N G S**

3 |     **THE CLERK:**  All rise, please.  Department 306 is now in

4 | session, the Honorable Nancy L. Davis, Judge presiding.  Please

5 | be seated and come to order.

6 |     **THE COURT:**  Good morning, everybody.

7 |     **ALL COUNSEL:**  Good morning.

8 |     **THE COURT:**  If you would please make sure that your mikes

9 | are on, that helps all of us.  Thanks very much.

10 |     Mr. Chuck, will you call our case.

11 |     **THE CLERK:**  Yes.  Thank you, your Honor.  The case is Robert

12 | F. Lyman and Samantha Lyman versus Asbestos Defendants, Case

13 | CGC-06-459162.  Counsel, please state your appearance beginning

14 | with the Plaintiff.

15 |     **MR. BRAYTON:**  Good morning.  Gary Brayton on behalf of

16 | Plaintiffs.

17 |     **MR. JORDAN:**  Good morning, Your Honor.  Kevin Jordan on

18 | behalf of Defendant Union Carbide Corporation.

19 |     **MS. KROW:**  Good morning, Your Honor.  Catherine Krow also on

20 | behalf of Union Carbide Corporation.

21 |     **MS. MROWKA:**  Good morning, Your Honor.  Molly Mrowka on

22 | behalf of Montello, Inc.

23 |     **MR. HARTMAN:**  Your Honor, my name is Andy Hartman on behalf

24 | of Montello, Inc., and I'm from Tulsa, Oklahoma.

25 |     **THE COURT:**  And you've taken care of all your business, I

26 | understand, to make sure that you're properly before this court;

27 | is that right?

28 |     **MR. HARTMAN:**  Yes, your Honor, as best I can.  It's a very

1  small operation.  Hartman World Headquarters is not much.

2      **THE COURT:**  Good morning, sir.

3      **MR. OSTHIMER:**  Good morning, Your Honor.  Charles Osthimer

4  on behalf of Freightliner, Inc.

5      **THE COURT:**  Welcome back.  We have various things to

6  accomplish this morning.  I'd like to confirm just who remains

7  in this case.  I have the statement of the case that someone

8  produced.

9      I believe, Mr. Brayton, perhaps you had taken the

10  handwritten version of this from Friday, and I understand it's

11  been approved by everybody, but is it correct that Freightliner,

12  Honeywell, Montello and Union Carbide are those still standing;

13  is that correct?

14      **MR. BRAYTON:**  That's my understanding as of the last I

15  checked about five minutes ago, Your Honor.

16      **THE COURT:**  All right.

17      **MR. OSTHIMER:**  But Honeywell hasn't approved it.

18      **THE COURT:**  And Honeywell is not present this morning,

19  however.

20      **MR. BRAYTON:**  Correct.

21      **THE COURT:**  They seem to be regularly missing in action, if

22  you will.  Well, I suppose if they really care about it they'll

23  show up at some point, but meanwhile, we'll go ahead without

24  them.

25      Let me go through my list, and you all may have your lists

26  as well.  I've been given some things by Mr. Chuck this morning

27  that you have provided.  I appreciate them all.  The first one

28  I've already noted was the statement of the case, so we can

1 check that off our to-do list. And, as you know, that will be

2 what I will use during the course of jury selection.

3    I also have the juror questionnaire which was done by Union

4 Carbide. Ms. Krow, I believe you took the lead on that; is that

5 right?

6    **MS. KROW:** That's correct, Your Honor.

7    **THE COURT:** You get the first gold star of the day. I've

8 been through it, and it appears to comport with what we

9 discussed on Friday. Let me ask if anyone has a question or

10 concern about it at this time.

11    **MR. BRAYTON:** Just one minor anomaly. There appear to be

12 two signature lines on the document, one at the end of the

13 questionnaire proper at page 7 and then another at the end of

14 the Appendix A. I would think that the second signature is

15 inclined to be dispensed with.

16    **THE COURT:** Is that a friendly amendment, or would you like

17 to speak to that, Ms. Krow?

18    **MS. KROW:** That's a friendly amendment. We have no

19 objection to that. There are also on Appendix A some additional

20 names that we need to make, and we will take care of that

21 forthwith so that you will have the final questionnaire with the

22 complete list of names this afternoon.

23    There was also one question we had regarding Your Honor's

24 change to I believe it is question number 4 regarding prior jobs

25 and employers. The Court had asked that we include the

26 statement "within the last ten years," which of course we did.

27    However, upon reflection we were wondering if that doesn't

28 impede us with respect to individuals who have retired, and

1  we're wondering if the Court would be amenable to removing that

2  restriction.

3     **THE COURT:**  My only concern is, one, people's memories and

4  how far back, if we have -- that's, and maybe you can put in

5  parens "to the best of your ability," something of that sort so

6  that people are not sitting there racking their brains.

7     Again, these are citizens.  They take the process very

8  seriously.  It's under penalty of perjury, and you can just see

9  some of them will bite their fingernails down to the quick, and

10  I'm trying to avoid that.  Yes, Mr. Brayton.

11     **MR. BRAYTON:**  Perhaps it would be solved by adding a

12  sentence, "If you are retired, please list your previous

13  employment" or "your last employment."

14     **MS. KROW:**  But that begs the question as the last

15  employment, they had it for two years.  But we would be happy to

16  add the Court's request that it's "to the best of your ability,"

17  or "to the best of your memory."

18     **THE COURT:**  All right.  Why don't you add that.

19     **MS. KROW:**  Thank you, Your Honor.

20     **THE COURT:**  Any other proposed changes or concerns you'd

21  like to express?  Yes, sir.

22     **MR. HARTMAN:**  Your Honor, just with respect to Ken

23  Campbell's name, there's a "Montello" that should be deleted.

24  It's just Kenneth Campbell.

25     **MS. KROW:**  We'll take care of that.

26     **THE COURT:**  So I'm assuming the additional changes to the

27  witness list that were being added as Appendix A reflect what I

28  received by way of witness designations this morning from some

1  of you; is that a correct understanding?

2      **MS. KROW:**  That is correct, Your Honor.  The missing names

3  were Freightliner witnesses and we will add those forthwith.

4      **THE COURT:**  All right.  Very well.  So we now have pared

5  down lists from everybody; is that correct?  Not hearing a no,

6  I'll assume it's a yes.

7      **ALL COUNSEL:**  Yes.

8      **THE COURT:**  So let me have it clear who is producing the

9  questionnaire.  I gather that you'll make the changes, Ms. Krow,

10  and then the copies, about 100 hundred or so?

11      **MS. KROW:**  We will take care of that, yes.

12      **THE COURT:**  And those will be available first thing tomorrow

13  morning so that they can go down with us to 007 for the hardship

14  process.

15      **MS. KROW:**  Our plan is to deliver them this afternoon, Your

16  Honor.

17      **THE COURT:**  Great.  Thank you.

18      **MR. HARTMAN:**  Your Honor, as a matter of practice, do you

19  ever list the names of law firms in the appendix, or is that not

20  normally done?  In other words, if someone has had some

21  experience being represented by Orrick or Dillingham & Murphy or

22  Brayton Purcell, that would then be exposed in the

23  questionnaire.

24      **THE COURT:**  I believe people have added that to that list on

25  occasion or had a question saying, "Are you familiar with any of

26  the attorneys," and then you of course need to have a list of

27  them.  So that could be dealt with in either way, but I think

28  that's a fine addition.  I don't think anybody would have a

1 problem with that. Then it avoids your having to ask the

2 question. If they say no, then you can move on to something

3 else.

4    **MS. KROW:** We'll add that.

5    **THE COURT:** Sounds good. Just make sure we've got the right

6 names, the right firms, the right parties.

7    **MS. KROW:** I don't have a firm for Honeywell, but I will

8 ask.

9    **THE COURT:** Anything else about the questionnaire?

10    **MR. JORDAN:** No, Your Honor.

11    **THE COURT:** We will also have available tomorrow, as I may

12 have mentioned to you, a hardship form, and it's fairly

13 standard. And it will be hopefully on another color paper so

14 we'll be able to keep track of them more readily. It's only one

15 page, and that's what we will ask folks to fill out who are

16 requesting a hardship.

17    And it's just a classic hardship form. I suspect that all

18 of you perhaps except for Mr. Jordan or Mr. Hartman are familiar

19 with it, but there aren't any surprises there.

20    And I would like to know on the record who is going to be

21 doing the mini openings tomorrow. Mr. Brayton?

22    **MR. BRAYTON:** That will be Andrew Chew from our office, Your

23 Honor.

24    **THE COURT:** Mr. Jordan?

25    **MR. JORDAN:** I will be perform -- be doing the mini opening

26 for Union Carbide.

27    **THE COURT:** Performing. Okay. Got that one.

28    **MR. HARTMAN:** Unfortunately, I'm going to be doing the

1    Montello.

2        **THE COURT:**  Okay.  Now I know you haven't been with us prior

3    to this morning, so do you have any questions or anything you'd

4    like to ask about the mini opening?

5        **MR. HARTMAN:**  No.  I believe other counsel have filled me

6    in, and I understand the basic nature.  It's a short,

7    three-minute presentation, and I will keep it within those

8    guidelines.

9        **THE COURT:**  Good.  And, again, it is this is what the case

10   is about, this is what we think the evidence will show.  It's an

11   opening.  It's not argument, so please keep that in mind.

12       **MR. HARTMAN:**  I understand, Your Honor.

13       **THE COURT:**  Yes, Ms. Crow.

14       **MS. KROW:**  Just one question.  Is it three minutes for each

15   defendant?

16       **THE COURT:**  Yes, ma'am.  You'll all get your fair shot at

17   it.  Yes, sir.

18       **MR. OSTHIMER:**  I will be doing it on behalf of Freightliner,

19   Your Honor.

20       **THE COURT:**  Okay.  Thank you.

21       **MR. BRAYTON:**  Do we get a mini rebuttal, Your Honor?

22       **MR. JORDAN:**  Ten seconds.  Like right out of My Cousin

23   Vinnie, "Everything he said is."

24       **THE COURT:**  Yes, Ms. Krow.

25       **MS. KROW:**  I think before we go further, just in the

26   interest of efficiency, that we had discussed the issue of

27   removal on Friday, and we would like to update the Court as to

28   that issue.

1    **THE COURT:**  The Court would welcome being updated on that

2    issue.

3    **MS. CROW:**  We have done as much diligence as we can and have

4    point blank asked the Brayton Purcell firm who their venue forum

5    defendants are and have not received a response.  As far as we

6    can tell, the last forum defendant was the Notice of Dismissal

7    was filed on August 7th, and the last nondiverse defendant was

8    dismissed July 12th.

9         So from our perspective, we believe this is removable and

10   that our client would like to, but we do not want to waste

11   anybody's time.  There are names in the complaint that may or

12   may not be California companies.  They don't seem to have

13   appeared.

14        We think that they would be severed, but we may be missing

15   something, and we certainly don't want to remove just to find

16   ourselves kicked back in three days.  So we are asking now from

17   Plaintiff's counsel who their forum and nondiverse defendants

18   are.

19   **THE COURT:**  Yes, sir.

20   **MR. HARTMAN:**  And Montello would join in that, Your Honor.

21   **THE COURT:**  Do you want to join that, too?

22   **MR. OSTHIMER:**  Yes, Your Honor.

23   **THE COURT:**  Mr. Brayton, why don't you respond to that.

24   **MR. BRAYTON:**  Yes, Your Honor.  I got a late night e-mail

25   over the weekend from counsel with the inquiry.  I have our

26   folks looking at that situation now.  As you might imagine, or

27   you may have some experience, although we have parties present

28   here in the courtroom, there are frequently other parties that

1  were named and served in the action that for various reasons are
2  not necessarily resolved, but also we're not proceeding to trial
3  against them.  I think the Court's indication of International
4  Truck and Engine is a defendant of that sort.

5     And, as counsel indicated, there are dozens and dozens of
6  originally named defendants.  We're looking at that now to try
7  to answer the question, but I don't have a definitive answer at
8  this point.

9     **THE COURT:**  All right.  Well, I want a definitive answer to
10  that, and I want it early this afternoon, because if it's
11  happening and the papers are going to be filed, I'm not going to
12  pull in 180 jurors for nothing.  My head will roll and so will
13  yours.

14     So I'm ordering you to have that in writing to me and to
15  counsel by no later than 2:00 o'clock this afternoon.  That will
16  enable us to call off the current proposed panel, if that seems
17  to be appropriate.  Yes, Mr. Jordan.

18     **MR. JORDAN:**  I wanted to make one comment concerning what
19  Plaintiff's counsel said so that it doesn't appear that we are
20  waiving something on the record.  I believe the law is under
21  federal jurisdiction that if you're both proceeding against
22  someone but not going to trial against them, that acts as an
23  effective dismissal.

24     So to this point, as the Court stated and asked counsel who
25  the remaining defendants are, they are Freightliner, Honeywell,
26  Montello and Union Carbide Corporation.  I'm glad to hear
27  whoever he believes the venue defendant is, but the fact that
28  they are not here for trial call and the fact that they were not

1  listed by in response to the query from the Court as to who is a

2  defendant in this case I don't believe necessarily impacts our

3  ability to remove this case.

4      But we're willing to listen to everything they say, and as

5  Ms. Krow said, the last thing in the world we want, your Honor,

6  is to remove something and come back in two or three days and

7  waste your time and waste our time.  We have no desire to do

8  that.  So we appreciate the Court's request for the information

9  and look forward to responding accordingly.

10     **THE COURT:**  Anything further you'd like to add, Mr. Brayton?

11     **MR. BRAYTON:**  No, Your Honor.

12     **THE COURT:**  Now I understand the IT folks who were going to

13  be given access this morning.  Counsel have requested access for

14  this afternoon; is that a correct statement?

15     **MS. KROW:**  That's my understanding, Your Honor.

16     **THE COURT:**  And I also am appreciative that you all are

17  juggling here and dealing with timing issues, especially in

18  light of the question of removal and not wanting needlessly to

19  have people come and spending their time, energy, et cetera on

20  activities that may be moot in effect.  So your folks are

21  welcome this afternoon, if that seems appropriate.

22      And I think, going back to the removal question, if there's

23  anything that you all want to file with the court just to cover

24  all your bases, you're welcome to do that this afternoon so that

25  your arguments are well briefed and you've got as full a record

26  as you want.  So that invitation is certainly open to you.

27     **MS. KROW:**  Thank you, Your Honor.

28     **THE COURT:**  Going back then to the IT folks, just to be

1  mindful that if you're going to use any demonstrative exhibits

2  if you will during the course of your openings that we had

3  agreed that, according to my notes, that by Wednesday of this

4  week you would check out, review those with each other so that

5  you would have an opportunity to voice any objections and we

6  could deal with those in a timely fashion.  Okay.

7     **MR. JORDAN:**  No problem there, your Honor.  I wanted to make

8  sure.  By Wednesday, my understanding was we were going to do it

9  Wednesday morning and then have the opportunity then to deal

10 with the Court on any objections.

11    **THE COURT:**  Yes.  Yes, Mr. Hartman.

12    **MR. HARTMAN:**  Your Honor, I use flip charts a lot.

13    **THE COURT:**  How old fashioned of you.

14    **MR. HARTMAN:**  Well, we can't afford the luxuries, but we

15 don't really have much.  I have got a picture of a drilling rig,

16 and I use a flip chart a lot.  Is that...

17    **THE COURT:**  Flip charts are often used, so just check in

18 with everybody else, and I would hope there won't be any

19 objections.

20    **MR. HARTMAN:**  Great.

21    **THE COURT:**  You've been there, done that, so my request that

22 you do so is not in anticipation or expectation of any

23 objections.  It's just to make sure that everybody knows what to

24 expect and to keep things moving.

25    **MR. HARTMAN:**  Great.

26    **THE COURT:**  Yes, Mr. Jordan.

27    **MR. JORDAN:**  So that we are clear, Mr. Hartman raises a good

28 issue.  I would expect that included within the demonstrative

1  category would be pre-prepared flip charts so that if the
2  Plaintiff's counsel or I were to come in with all these things
3  written out, that that is demonstrative.  The fact that it's not
4  a computer screen does not excuse us from the obligation of
5  exchanging it Wednesday.
6      **THE COURT:**  That is correct.
7      **MR. JORDAN:**  Thank you.
8      **THE COURT:**  All right.  My expectation, as I think I shared
9  with you on Friday, is that actual voir dire will begin on the
10  17th.  I had hoped it might be Thursday, but since we just don't
11  know what our hardship situation is and how many bodies we're
12  going to have, how many questionnaires, I don't see any other
13  way to accomplish this in terms of the time line, so just for
14  your information.
15      So when we deal with hardships tomorrow, the jurors will be
16  advised that they will next be ordered back on Friday the 17th
17  for that purpose so that they can begin to make plans for
18  themselves and have a sense of the time line.
19      **THE CLERK:**  Excuse me, Your Honor.
20      **THE COURT:**  Yes, sir.
21      **THE CLERK:**  What time would that be, because we like to make
22  up the reminder slip for the jurors to come back on Friday?
23      **THE COURT:**  Why don't we make it 9:30.
24      **THE CLERK:**  Thank you, Your Honor.
25      **THE COURT:**  And that will allow them time to get through
26  security and we can really get under way at 9:30.  Counsel will
27  be here before then, I know, but that's what we'll ask our
28  jurors to do.

LAURA MARTINEZ, CSR NO. 11332

1    And Wednesday, assuming we are all still here together, we
2  will be spending some time, and I suspect it will be in the
3  morning, I have I believe one settlement conference.  Is that
4  correct still, Mr. Chuck, the 8:30 one?

5    **THE CLERK:**  Your Honor, Plaintiff's counsel just called me.
6  Wednesday is his wedding anniversary, so he's going to fax a
7  letter into the Court asking that the settlement conference be
8  reset.

9    **THE COURT:**  That's going to Commissioner Borick or to us?

10   **THE CLERK:**  He's going to send a fax request to you asking
11  that the matter be reset because he's going out of town.

12   **THE COURT:**  Well, to be decided.  We'll see what he sends to
13  me.  In any event, we will plan to meet Wednesday morning at
14  some point, and that will be so that we can begin to look at the
15  questionnaires that we have received.

16    So who is going to be making the copies of the
17  questionnaires that will be filled out tomorrow?

18   **MR. BRAYTON:**  We'll take responsibility for that, Your
19  Honor.  And we'll coordinate with Mr. Chuck as to when we might
20  pick them up and get the randomized list as well as find out
21  exactly how he would like to get things organized.

22   **THE COURT:**  Okay.  So that will go according to our plan on
23  Friday and that you all will have them overnight to talk about
24  and see what your concerns are.  And we'll see how many we have,
25  and that will give us some sense of how difficult or easy this
26  is going to be.  It's always a challenge, as you all know.

27    Anything else about the questionnaires or that process?
28  Yes, Ms. Krow.

1    **MS. KROW:** I just want to check in with the logistics of

2    that process to make sure that we get questionnaires as soon as

3    we possibly can. Typically they're sent to Copy Mail and we can

4    just wait for the copies. Is that correct?

5    **THE COURT:** Is that your intention, Mr. Brayton?

6    **MR. BRAYTON:** That's what we will do. I assume that the

7    specification as to organization and putting them in order is

8    for a copy for the Court. We'll leave counsel to organize the

9    questionnaires in the fashion that they choose.

10    **THE COURT:** Is that what you needed to know?

11    **MS. KROW:** Yes, it is.

12    **THE COURT:** All right. What's on your to-do list,

13    Mr. Brayton?

14    **MR. BRAYTON:** I've covered everything that I showed us as

15    having on for today.

16    **THE COURT:** Go ahead, Mr. Jordan.

17    **MR. JORDAN:** Your Honor, I think it might be of assistance

18    to the Court in going through the witness lists that have been

19    filed by various counsel to get a more realistic estimate of the

20    time period that we are looking at.

21    We also have some comments concerning the witnesses that

22    have been identified by Plaintiffs. Some include experts that

23    were never offered. Some include product ID witnesses that were

24    never designated. So going through the witnesses effectively

25    one by one or in some fashion that with the estimates as we were

26    supposed to do, I believe we did the...

27    **THE COURT:** Do I have anything from Plaintiffs to...

28    **MR. JORDAN:** With time limits.

1    **THE COURT:**  I believe there had been a request for a brief

2  description to what the witness was going to testify as well as

3  best estimates about time.

4    **MR. JORDAN:**  We provided that.  We're hoping to receive a

5  gold star at the end of the day.

6    **THE COURT:**  Okay.  And Montello is riding on your trail --

7  your coattails; is that right?

8    **MR. HARTMAN:**  Judge, I'm sorry to say you're going to see a

9  lot of that.

10    **THE COURT:**  All right.  That won't be the first time.

11    Ms. Krow?

12    **MS. KROW:**  We have a copy of the revised witness list that

13  Plaintiffs sent us, was it Saturday I believe.  I think

14  Mr. Chuck may have given that to you, but I do have an extra

15  copy if you'd like to look at it.

16    **THE COURT:**  I do have a list that looks like this.  Is that

17  the one you're referring to?

18    **MS. KROW:**  Yes, it's the one.  And we have Union Carbide's

19  revised list pared down with the descriptions and the time

20  estimates that we provided on Saturday, and I have an extra copy

21  for the Court if you need it.

22    **THE COURT:**  I think that I do have that.  In fact, I have

23  two copies.

24    **MS. KROW:**  And, Your Honor, we simply reserve the right to

25  add people.  We have some objections to a number of these

26  witnesses, and we haven't seen some of the testimony that

27  they're going to give, so we reserve our rights in that regard.

28    **THE COURT:**  I guess what I would like to do at this point is

LAURA MARTINEZ, CSR NO. 11332

1  give you an opportunity to note what your objections are orally,

2  and then it well may be that we need to do some briefing on

3  this.

4      As these cases tend to go, people always err on the side of

5  inclusion, but, Mr. Brayton I want to hear from you a response

6  to the concerns that are raised by defense counsel this morning,

7  and then we'll see where it goes.

8      But if people have not been previously identified, there

9  haven't been depositions, as you know, there's a whole host of

10 issues that may be present here.  And we do have certain rules

11 that the Court expects the parties to follow, and if there's not

12 good cause for a failure to follow those rules, then there's a

13 consequence for that.

14     So why don't we let Ms. Krow or Mr. Jordan proceed with

15 that, and then you'll know, Mr. Brayton, what their concerns are

16 and we can try to get ahead of this particular eight ball.  Go

17 ahead, Ms. Krow.

18 **MS. KROW:**  Yes.  Starting with the Plaintiff's experts,

19 there is one expert on their list who was at one point offered

20 for deposition by Plaintiffs, but Plaintiff took them off

21 calendar and never reoffered them so that that deposition has

22 not gone forward in accordance with the general orders, and that

23 is the Dr. Donald Breyer.  So we will be requesting that he be

24 excluded on that basis.

25     We have motions to exclude a couple of these other.  We have

26 in limines already, so I won't revisit that.  Before they're

27 called we would ask that those be decided.  In particular, James

28 Millette and Charles Ay.

1    **THE COURT:**  Let me guess.  Charles Ay you beg to differ with

2    his designation as an expert on drilling muds.

3    **MS. KROW:**  Indeed, we do.

4    **MR. JORDAN:**  That would be correct since he's never been

5    around one.

6    **MR. HARTMAN:**  And, Your Honor, if I might, Montello would

7    join in with Union Carbide.

8    **MR. JORDAN:**  And for simple purposes about Dr. Millette,

9    Dr. Millette was deposed in this case and was asked what

10   specific opinions he had, and he gave certain products, none of

11   which included Union Carbide products as ones he intended to

12   testify about.

13   He said he would testify about wire cable.  He would testify

14   about household exposure.  He would testify about gaskets and

15   packing, none of which are Union Carbide products.  So that's

16   the reason for excluding Dr. Millette.

17   **MS. KROW:**  And if you'd like, I can just run through some of

18   the other issues.

19   **THE COURT:**  Let me see if your comrade here wishes to say

20   something.

21   **MR. OSTHIMER:**  Your Honor, as to Mr. Ay, we would join in

22   that.  My client is a friction defendant, and the allegation is

23   that the Plaintiff worked as a mechanic for a brief period of

24   time and was allegedly exposed to brake dust from brakes on

25   trucks manufactured by my client.

26   Mr. Millette had no knowledge about friction exposure, and

27   so I would join in the motion to exclude his testimony as to

28   Freightliner as well.

1    THE COURT:  All right.  Thank you.  Go ahead, Ms. Krow.

2    MS. KROW:  Yes.  Moving on to the Plaintiff's family, we

3    understand from the e-mails that were sent that several of the

4    family members may be called on issues of damages if Mrs. Lyman

5    is not called.  We can cross that bridge if we come to it, but

6    we would be objecting to that.

7        We don't believe that they would have any relevant testimony

8    on damages.  They are not plaintiffs in this case.  They do not

9    have their own loss of consortium claims, and the person who

10   could speak to pain and suffering would be the Plaintiff

11   himself.

12       We could cross that bridge when we come to it.  I'm not sure

13   if that's going to happen.  It depends on what Mrs. Lyman's

14   availability is as I understand, but I did want to make that

15   issue.

16       THE COURT:  Everybody wants to join in that?

17       MR. HARTMAN:  Yes, Your Honor.

18       THE COURT:  Should I just assume that we have an ongoing

19   desire to join in --

20       MR. HARTMAN:  Endorsement.

21       THE COURT:  -- on whatever Union Carbide is putting on the

22   record; is that a fair statement?

23       MR. HARTMAN:  Yes, Your Honor.  As to Montello, we would

24   endorse.

25       THE COURT:  All right.

26       MR. OSTHIMER:  Same as to Freightliner, and if there's

27   something specific that relates to my client, because we do have

28   a different product, I'll chime in.

 1    **THE COURT:**  Thank you.  Go ahead, Ms. Krow.

 2    **MS. KROW:**  Yes.  There were three co-workers identified in

 3    this witness list.  The preference order in this case required

 4    that all product identification witnesses be identified by

 5    May 11.  Mr. Brayton was kind enough to provide me with a

 6    courtesy copy of their disclosure.

 7        These witnesses were not disclosed on there, and we would

 8    move to exclude because they were not timely disclosed to Union

 9    Carbide.

10    **THE COURT:**  All right.

11    **MS. KROW:**  I will leave to Mr. Jordan the percipient

12    witnesses.  Moving on to the depositions, if I may.

13    **THE COURT:**  You may.

14    **MS. KROW:**  Thank you.  We have received some deposition

15    designations this weekend, and I thank Mr. Brayton for that.

16    However, there are ten depositions listed on their witness list.

17    We have not received designations, either page/line designations

18    or the transcript for ten of these witnesses, and we would move

19    to exclude those witnesses for failure to comply with the

20    Court's order that page/line designations be disclosed this

21    weekend.

22        Those witnesses are Howard Bowman, Carl Dernehl, William

23    Hamilton, Charles Lehnert, Carlo Martino, Howard Stephens,

24    William Thurber, Joseph Wagoner, Arthur Valdez, and Leonel

25    Trevino.  We have not had an opportunity to review the

26    designations.  We got the blank transcripts and we're putting

27    them together this morning.

28        I do believe we will have objections to several of these

LAURA MARTINEZ, CSR NO. 11332

1  witnesses on relevance grounds and on prejudice, and there may

2  be other objections to their admissibility as well.

3      **THE COURT:**  All right.  Mr. Jordan, do you want to speak to

4  the percipient witnesses, sir?

5      **MR. JORDAN:**  Yes, Your Honor.  Well, Union Carbide has

6  designated for deposition in this case Jack Walsh who is a

7  person most knowledgeable regarding drilling mud additives, and

8  he has been deposed in this case.  We have no problem with

9  Mr. Walsh.  He would be I assume testifying live at trial here.

10  Alan Johnson is the same for Montello.  He is the person most

11  knowledgeable.

12      Ken Campbell who is a percipient, present and percipient

13  witness of Montello is a resident of Oklahoma and not subject to

14  the subpoena power of California that I know of, so we would be

15  objecting to that, because we don't know how he gets here.

16      Dave Smith, Fred Smith, Gordon Dixon and Phil, and I'm going

17  to have to spell this because with my East Texas accent I will

18  butcher this.  G-i-o-r-g-i-m-i-n-o.  There's a lot of vowels in

19  there.

20      **THE COURT:**  Giorgimino.  Is that a fair... yes?  Okay.  Go

21  ahead.

22      **MR. JORDAN:**  Sounds good.  And Tom Norris also.  These are

23  Union Carbide former employees.  Candidly, I've tried six or

24  seven of these drilling mud cases, and I've never heard of them

25  as witnesses in these particular cases.  I don't even know if

26  they're residents of California, are they subject to subpoena

27  power or what.

28      I recognize their names or some of their names, candidly.  I

1  know that some were involved in some dust counts, but other than

2  that, I'm not really sure why they're on here as percipient

3  witnesses.  I'm just a little confused as to them and would ask

4  is Dave Smith and Fred Smith someone that are actually going to

5  be subpoenaed to trial in this case as well as Gordon Dixon,

6  Phil Giorgimino and Tom Norris?  I'm just a little confused

7  about them and trying to get some understanding of why they're

8  on this list.

9     **THE COURT:**  All right.  Anything else about the witness list

10  submitted by Plaintiffs from Defendants' point of view; anything

11  else you'd like to put on the record?

12     **MR. HARTMAN:**  I think the Carbine counsel has spoken to the

13  merits, but as I understand it, the terms of complying with the

14  rules, I'm not sure that that has taken place and I just want to

15  make sure the record is clear in that regard as well.

16     **THE COURT:**  Very well.  Mr. Brayton, would you like to

17  respond to any or all of that?

18     **MR. BRAYTON:**  Sure, Your Honor.  Thank you.  In the same

19  order that they were addressed.

20     **THE COURT:**  Very well.

21     **MR. BRAYTON:**  With respect to the experts, we will respond

22  and provide the Court the necessary information to rule on the

23  indicated motion regarding Dr. Breyer, whether he was properly

24  offered for deposition.

25     As indicated, Dr. Millette and Mr. Ay are the subject of

26  motions in limine that you probably had some look at, and the

27  agreement that we reached was at the point that they are called

28  that those could be explored.

1    In particular, I'm not going to respond chapter and verse as

2    to what the representations are regarding the nature of the

3    deposition testimony.  That can be fully fleshed out at the time

4    that they would otherwise be being called.

5    With regard to the Plaintiff's family, counsel correctly

6    represented that most of it is his children that are listed in

7    addition to Mr. Lyman and his wife.  They are back-up in the

8    event that Mrs. Lyman is unable to give testimony.  And without

9    prearguing the issue, it is a bridge to cross.

10    Clear that they're in a position to offer information

11    regarding the circumstances or relationship between their mother

12    and their father and the circumstances of their father to the

13    extent that it's necessary to flesh out the nature of pain and

14    suffering and loss of consortium.  They're competent witnesses

15    to that if it comes to that.  It's not likely going to come to

16    it, so enough said.

17    The issue with respect to the co-workers that are listed

18    suggests that it is untimely in that they were not disclosed in

19    the May 11 letter responsive to the identification required in

20    the motion for preference.  Our brief response to that is that

21    there was an express reservation to later identify additional

22    witnesses.

23    The difficulty in this case has been that we had commenced

24    discovery efforts vis-a-vis Union Carbide and Montello back in

25    March.  We were trying to get depositions in April of

26    individuals from both of those companies.  Those depositions did

27    not occur until July in the case of Union Carbide, and there are

28    depositions still ongoing with respect to Montello.

1    Our ability to fully work up our case and identify where we

2  needed to go was dependent in part upon our effort to conduct

3  that discovery which the defendants dragged their feet somewhat

4  with respect to those.  That can be more fully explored when

5  those witnesses are in fact being produced.

6    With respect to the page/line designations, there has been

7  an ongoing effort since the Court made its order on Friday

8  afternoon that page/line designations be provided.  We have

9  provided, as indicated, a number of page/line designations over

10 the weekend.

11   I was looking at it, and it looks as though there is still

12 an effort under way to provide additional materials.  I am not

13 in a position to run through the list of the ten that counsel

14 has identified that they had not received as of last night I

15 guess to tell you which of those may still be in process, which

16 if any of those we have determined not to proceed with.

17   I think that that can be -- I don't think there's any basis

18 at this moment to exclude those because we have not been able to

19 complete the page/line designation process.  And we'll continue

20 to work that out, give a full accounting of the depositions that

21 we intend to offer as soon as we can.

22   I'm not quite sure what the query was with respect to the

23 live witnesses that were identified, the Smiths, Mr. Dixon,

24 Mr. Giorgimino and Mr. Norris.  Those are -- it's my

25 understanding consistent with counsel that those are Union

26 Carbide affiliated employees.

27   **THE COURT:**  They want to know if they're showing up since

28 they believe that they live outside any subpoena power of the

LAURA MARTINEZ, CSR NO. 11332

1  court, so what can you tell us about that?  Are they showing up?

2  Have you been able to get their consent to appear?  I'd like to

3  know what your intentions are, and I'm sure counsel would as

4  well.

5      **MR. BRAYTON:**  Our intention is to produce these witnesses if

6  we can.  I cannot tell you at this moment to what extent we have

7  secured agreements from these witnesses to appear or whether

8  they have been served.

9      **THE COURT:**  And are some of them subject to the court's

10  subpoena power; is that what I'm inferring?

11      **MR. BRAYTON:**  I believe some of them are, Your Honor.  I

12  believe that they were employees by and large affiliated with

13  the Monterey County Facility of Union Carbide, and I suspect

14  that some of them may maintain California residence, but I can't

15  make any absolute affirmative representations as to any of them.

16      **THE COURT:**  Anything else?

17      **MR. BRAYTON:**  No, thank you, Your Honor.

18      **THE COURT:**  Ms. Krow, would you or Mr. Jordan care to

19  respond to any of that?

20      **MR. JORDAN:**  I will, Your Honor, respond to some of the

21  factual issues concerning the witnesses, and Ms. Krow will

22  respond to the legal requirements under the preference order.

23  For example, your Honor, on the Plaintiffs co-workers, the

24  statement was made that effectively, "We didn't do it because

25  you drug your feet."

26      The reality is that all three of these individuals were

27  listed or designated or stated by the Plaintiff in his

28  deposition as people he remembers.  For example, Mr. Ives.  If

1  Mr. Ives is still with us, I would be kind of shocked. He was

2  65 years old 40 years ago according to Mr. Lyman.

3      Bob Pringle, David Weatherford, also two individuals who

4  were just stated by the Plaintiff as being co-workers. We've

5  never gotten any indication. That was in the Plaintiff's

6  deposition. At no point have we gotten any indication that

7  these individuals are actually able to provide product

8  identification testimony.

9      And I think the general orders require them to tell us that.

10  We can cross those bridges when they come, but it does I think

11  impact the Court's estimate as to the amount of time as to the

12  percipient witnesses, some of whom I know, some of whom I don't

13  know.

14      For example, I know that Tom Norris is I believe at last, my

15  last recollection is Mr. Norris was a resident of the state of

16  Colorado and was senile. And I think I heard he died recently,

17  but I can't remember. I just don't know.

18      Fred Smith was an employee of Union Carbide who worked out

19  of the Niagara Falls, New York facility. If he's moved to

20  California, it's unknown to me. The same I think with Dave

21  Smith. Gordon Dixon I believe also worked out of Niagara Falls,

22  but I'm actually having people check this as we speak to see if

23  I can figure out where some of these people are since they are

24  not people that show up.

25      As the Court well knows, this is kind of a current

26  litigation, and I sense these were names on some documents

27  somewhere and they are just thrown in, candidly.

28      As to John Myers, he's been designated by deposition

LAURA MARTINEZ, CSR NO. 11332

1  testimony, so I'm not sure why we're doing Mr. Myers by
2  deposition, and -- at least I thought he was.
3      **MS. KROW:**  We received page/line designations for Mr. Myers
4  and transcripts over the weekend.  He's under live witnesses.
5      **THE COURT:**  Yes.  That's where I see him.  I don't see him
6  under depositions.
7      **MS. KROW:**  He is not; however, Plaintiff's did give us
8  depositions page/line designations and transcripts for him.
9      **THE COURT:**  Perhaps that's something that in a moment
10  Mr. Brayton can clear up.  Go ahead, Mr. Jordan.
11      **MR. JORDAN:**  Those are literally the comments that I have.
12  I understand that counsel is saying that these percipient
13  witnesses may be here.  I would be candidly shocked that any of
14  them would be subject to the subpoena power of the court and
15  have been contacted by the court.
16      I know with Mr. Norris I can't see any way that that would
17  ever occur, and the others are the same way, Your Honor.  So I'm
18  trying to cut to the chase here, figure out who the real
19  witnesses are.  Get away from let's just designate everybody.
20      **THE COURT:**  Yes.  Ms. Krow.
21      **MS. KROW:**  Yes, and on the legal issue as to the Plaintiff's
22  co-workers.  I do have a copy of the preference order here if
23  your Honor would like to see it.  It indicates that:
24          "If additional witnesses are discovered during
25          the course of discovery which has now closed,
26          the Plaintiff will engage in the same manner of
27          disclosure along with the declaration made under
28          penalty of perjury as to why the disclosure was

1        not made on or before the date of disclosure

2        identified previously."

3   And if Your Honor would like a copy of this order, I can

4 provide one.

5   **THE COURT:**  I believe I have a copy of it.  Thank you.  Yes,

6 ma'am.

7   **MS. MROWKA:**  Your Honor, and on that issue Plaintiff's

8 deposition was completed in April and the disclosure was not

9 filed until May.

10   **THE COURT:**  All right.  Thank you.  Anything else from

11 defense counsel with respect to Plaintiff's witness list?

12 Mr. Brayton, would you like to respond to any of that?

13   **MR. BRAYTON:**  No, thank you, Your Honor.

14   **THE COURT:**  All right.  So there are some, it seems to me,

15 at least colorable issues here that have been raised by defense

16 counsel, and they certainly do affect the representations that

17 the Court would make to any jurors about how long this case

18 might go.

19   And, Mr. Brayton, you know, I guess one of our always great

20 challenges in these cases, one of the challenges, is the sort of

21 kitchen sink approach to litigation.  And we have general orders

22 for a reason and rules of engagement, if you will.  I do believe

23 that, as with so many rules, there can be exceptions if they

24 have good cause.

25   Right now it's not clear to me what the good cause is on a

26 great deal of this, and I want to know, this does not appear to

27 me to be a, quote, "pared down" witness list is I guess the long

28 and the short of it.  And I want you to return to your

1  colleagues and pare it down.

2      Right now we will keep our Appendix A as it stands so we can

3  go forward with that, get the questionnaires copied and so

4  forth.  We'll err on the side of inclusion, but I really want a

5  pared down list from Plaintiffs.  And this, from what I'm

6  hearing, doesn't appear to be one.

7      And if you think I'm wrong you can always respond, and you

8  may need to check in with some of your colleagues who may have

9  more information available to them than you currently do.  I

10  understand that you are carrying this particular pail of water,

11  but...

12      **MR. BRAYTON:**  With a smile on my face.

13      **THE COURT:**  Okay.  So at some point unless we can resolve

14  this in a more collaborative fashion, if you will, we're clearly

15  going to have to do briefing on it.  And that will be too bad if

16  that just means a lot of time and effort on everybody's part.

17      I think I'm understanding or inferring what Ms. Krow and

18  Mr. Jordan are attempting to do here is to see if we can avoid

19  that, but if we can't, we can't.  But it certainly would be my

20  hope that you could return to your colleagues and really come

21  back with what your intentions are.

22      And be mindful of what the general orders require, and I'll

23  let you know.  So when you return at 2:00 o'clock to talk about

24  where things stand with the issue of removal, I want to know

25  more about your pared down witness list, and I want you to be

26  real.

27      It's just not fair.  It's not fair to other parties.  It's

28  not fair to the good citizens of the City and County of San

1  Francisco.  It's not fair to the Court.  It's not fair to

2  taxpayers.  And just be my messenger, as I know you will be.

3      Ms. Krow.

4      **MS. KROW:**  I'm not sure if I stated this on the record

5  previously.  To be clear, all of the deposition designations

6  that we received we will be objecting to a number of them;

7  however, because we received them over the weekend, we're

8  putting them together and I'm not in a position to articulate

9  those objections right now.

10     **THE COURT:**  All right.

11     **MS. KROW:**  Thank you.

12     **THE COURT:**  Any objections and designations would need to be

13  dealt with prior to their being used at trial obviously.  So

14  2:00 o'clock to deal with the removal issue and a pared down

15  witness list from Plaintiffs.  Anything else on anybody else's

16  to-do list?

17     **MR. HARTMAN:**  Nothing from Montello, Your Honor.

18     **MR. JORDAN:**  Nothing from Union Carbide, Your Honor.

19     **MR. OSTHIMER:**  Nothing, Your Honor.

20     **THE COURT:**  Mr. Brayton, anything from you?

21     **MR. BRAYTON:**  No, thank you, Your Honor.

22     **THE COURT:**  Everybody is clear about what we need to

23  accomplish this afternoon?  All right.  Thank you.  I'll see you

24  then.  Good luck.  We're in recess.

25     (Proceedings adjourned at 11:50 a.m.)

26              ---o0o ---

27  AFTERNOON SESSION                         2:10 P.M.

28     **THE COURT:**  Welcome back, everybody.  Please be seated.  So

LAURA MARTINEZ, CSR NO. 11332

1   I think our primary task this afternoon is to figure out our

2   trial time estimate, and to that end we talked about a couple of

3   things this morning including the question of who the remaining

4   defendants are and whether removal might be something that

5   current counsel before the court would be looking into as well

6   as just going through our witness list and seeing what the real

7   likelihood was if all of those folks who have been identified on

8   Plaintiff's list as their being present was so that we can give

9   a realistic amount of time to our jurors.

10      So, Mr. Brayton, do you have anything that you can fill us

11  in about?

12      **MR. BRAYTON:**  Yes, Your Honor.  I can report that the

13  investigation, the status of the defendants is apparently

14  complete and there are presently no California defendants in the

15  case.

16      **THE COURT:**  Thank you for the information.

17      **MR. BRAYTON:**  Depending on what the intention is as far as

18  how Defendants intend to proceed with that information, that may

19  moot our other discussions, but I'll leave that to the Court.

20      **THE COURT:**  I thank you.  Is there anything that counsel

21  would like to say at this time on behalf of the remaining

22  Defendants?

23      **MR. JORDAN:**  Yes, Your Honor.  On behalf of Union Carbide,

24  I'd like to maybe pose some questions, one, and secondly ask

25  about trial procedures that might come into effect assuming I

26  don't get the answers that I'm looking for in question number

27  one.

28      Obviously, Your Honor, what we're seeking to do here is to

1  make sure that this is handled in an expeditious manner such

2  that there is no waste of judicial resources or candidly the

3  resources of the party.  I understand that there are no

4  California defendants, and we have provided to the Court a brief

5  associated with that.

6      And Ms. Krow just typed up an order that I just printed out

7  associated with that that will formally put in the court's

8  record the fact that all other defendants that are not presently

9  involved are either severed or dismissed I think is the

10  appropriate terminology.

11      Obviously, I'm not sure that Counsel has any obligation to

12  tell us this, but I don't want to waste a bunch of time going to

13  a federal court if there is going to be some sort of remand, and

14  it's candidly something that I need to discuss with my client.

15      So I'm kind of asking as an officer of the court whether

16  we're facing a remand issue if we do remove this case, which I

17  think by Counsel's statements that since there are no California

18  defendants, it appears to be completely removable.  That's

19  Question 1.

20      And Question 2 is assuming that we don't get an answer to

21  Question 1, I'm trying to figure out what the procedure would

22  be.  The Court has already invested a significant amount of time

23  in looking at this case, and I'm assuming, maybe incorrectly,

24  but assuming that if there is a short order turnaround on the

25  remand issue, that we would come back to Your Honor to finish

26  this trial since there have been rulings already made that would

27  be, quote, "law" of the case in most jurisdictions that I've

28  worked with.  That's kind of, I have those questions.

1   Once we get that answered, I would beg the Court for some
2   indulgence of 15 minutes or so to go call my client and discuss
3   with them where we are at so they can make the final decision.
4   If we do decide to remove the case, removal papers would be
5   filed expeditiously, and I would represent to the Court as an
6   officer of the court that they would be filed so the court does
7   not have to waste jurors' time in coming in tomorrow.
8       **THE COURT:**  Thank you.  Mr. Hartman?
9       **MR. HARTMAN:**  Your Honor, I apologize for -- I just want to
10  be clear that with respect to the papers filed by Union Carbide
11  today regarding dismissal or severance, that Montello would
12  endorse those as well as the record that Mr. Jordan has made
13  today.
14      **THE COURT:**  Mr. Osthimer?
15      **MR. OSTHIMER:**  Freightliner would join as well, Your Honor.
16      **THE COURT:**  Agreed.  Ms. Krow, did you wish to say
17  something?
18      **MS. KROW:**  Just one additional thing.  Diversity is also
19  governed by whether there are Nevada defendants in this case, so
20  we need to know whether there are any Nevada as well as
21  California defendants left in the case.
22      **THE COURT:**  Mr. Brayton?
23      **MR. BRAYTON:**  And I'm not aware of any Nevada defendants
24  that remain in the case either, Your Honor.
25      **THE COURT:**  All right.  Thank you.  Mr. Brayton, anything
26  else?
27      **MR. BRAYTON:**  Well, in response to the inquiry posted
28  through the Court as to our intentions upon Defendants seeking

1  removal, we are not waiving any rights we may have with respect

2  to remand.  I'm not in a position now to articulate what we

3  might be able to assert, but we're not, for example, if there

4  are time constraints on the Defendants as far as when they are

5  bound to bring a removal action, we're not waiving any right to

6  contest those sorts of things or any other basis that we may

7  have for seeking a remand.

8      **THE COURT:**  All right.  Anything else?

9      **MR. JORDAN:**  Just since I did not get the answer, that's

10 okay.  I'm not trying to -- I just don't want to waste time.

11     **THE COURT:**  I think that that's true of everybody,

12 Mr. Jordan.  And I appreciate your efforts to minimize the

13 wasting of time.  My view about this at this point is that if

14 you all, if your client decides that it wishes to seek removal,

15 you're entitled to do so.

16     And you've heard what you've heard from Mr. Brayton, and you

17 may go forth and seek it, if that's what you want to do and that

18 that is your call.

19     **MR. JORDAN:**  I understand, Your Honor.

20     **THE COURT:**  With respect to whether this matter would come

21 back here specifically to me, I do not know the answer to that

22 question.  And I don't know whether Mr. Brayton has had any past

23 experience about how those things, whether as a legal matter let

24 alone, I'm just thinking more about the logistics of it here

25 within this courthouse, and I don't know how that's been handled

26 in the past, quite frankly.

27     Mr. Brayton, do you have any experience or anybody else that

28 you could shed some light on?

1  **MR. BRAYTON:**  No, I don't, Your Honor.  I've never had a

2  case being removed this far along in the proceedings.

3  **THE COURT:**  So that's your nonanswer I guess to that

4  question.

5  **MR. JORDAN:**  You never know what you can get if you don't

6  ask for it.

7  **THE COURT:**  And your client may say, "Let's go forward.

8  We're this far along, let's take care of the matter and get it

9  resolved."

10  **MR. JORDAN:**  Okay.

11  **THE COURT:**  So I think what we need to do is give you the

12  opportunity to be in touch with your folks and see how they wish

13  to proceed, which we can, I will give you the opportunity to do,

14  and then we can see what our next steps are.

15       I was looking at the calendar to go over trial estimate

16  time, and I don't know if this is at all pertinent to your

17  discussions, and if you'd like to have this discussion before

18  you go talk to your folks, I'm happy to do that.

19  **MR. JORDAN:**  Any information that I can glean will be

20  helpful for my client in making his decision.

21  **THE COURT:**  I think what we'll do is we'll go off the

22  record.  I don't think Ms. Martinez needs to take down chapter

23  and verse on this, but we'll haul out our calendars and look at

24  them and then we'll see where we are.  So let's go off the

25  record, please.  Thank you, Ms. Martinez.

26       (Discussion off the record. )

27  **THE COURT:**  We've been talking off the record about trial

28  estimate as well as how things might move along from here if any

LAURA MARTINEZ, CSR NO. 11332

1  of the parties were to seek removal to federal court and what

2  the timing might be if the matter were to be remanded back here.

3      And what we're going to do in a moment is take a break so

4  that counsel can speak with their clients about how they wish to

5  proceed here.  The Court has been given, offered the opportunity

6  to sign an order that -- it's an order for dismissal, severance.

7  Is that a fair understanding?

8      **MR. JORDAN:**  Yes, Your Honor.

9      **THE COURT:**  And I'm declining to accept that invitation,

10  advising counsel that they can proceed as they think best.  And

11  we have I think a very clear statement on the record from

12  Mr. Brayton about who remains in the case from Plaintiff's point

13  of view, and they're not planning to pull anybody out of their

14  hat to add to the fray in an effort to defeat any removal

15  effort.

16      Yes, Mr. Jordan.

17      **MR. JORDAN:**  A couple things, Your Honor.  Number one, on

18  the removal issue, we just thought of this.  All of the

19  Defendants have to agree to the removal which is standard

20  federal jurisdiction.  We have three defendants sitting here

21  before you at the trial call, ourselves, Montello and

22  Freightliner.  The mysterious Honeywell is not here.  I mean

23  International Truck.

24      **MS. KROW:**  There are two other Defendants that were named by

25  Mr. Brayton as potentially being in the case, and that was

26  Honeywell, and I believe he wasn't positive whether

27  International Truck settled or not.  Correct me if I'm wrong.

28      **MR. BRAYTON:**  You are not wrong.

1    **MR. JORDAN:**  So before we start making a decision about

2    this, I guess we're going to have to figure out whether these

3    Defendants will acquiesce to a removal, although I don't even

4    know how to get in touch with them because they don't show up

5    for trial.

6    **THE COURT:**  I understand the concern, and some of my

7    colleagues, their favorite expression is, "That's not the

8    Court's problem; that's your problem."  And if we need to give

9    you a little bit of time to accomplish that, we'll give you the

10    opportunity first to talk to those who are present just to see

11    whether that's a go.  And then if you need more time in order to

12    assess what the situation is with respect to the other folks,

13    then we can talk about that.

14    And I quite frankly don't know how that would affect the

15    federal court's decision here, what their experience is if

16    somebody hasn't shown, but I know if you decide you want to go

17    forward with that, you will make your case the best you know

18    how.

19    **MR. JORDAN:**  Yes, Your Honor.  The only other thing I wanted

20    to go on the record prior to us when we were discussing

21    witnesses, I misspoke and said that Mr. Norris was deceased.

22    It's actually Mr. Dixon who is deceased, so Mr. Norris fits into

23    the old saying from Mark Twain that, "News of his demise were

24    greatly exaggerated."

25    **THE COURT:**  That's exactly what crossed my mind this morning

26    when this issue came up with respect to the other gentleman.

27    Great minds.  And we have also just been talking about what the

28    Court's availability is and how many days of trial time both

1  sides think that this matter would take so that we can

2  appropriately advise any potential jurors tomorrow.

3      But that's a matter that we'll address a little more

4  specifically after counsel have chatted with clients about how

5  the clients wish to proceed.

6      So in a moment we'll go off the record, and tell me how much

7  time you would like now.  You had mentioned 15 minutes.  Would

8  you like to come back at 3:15; is that adequate to explore some

9  of this and see if we can't nail it down?

10     **MR. JORDAN:**  Yes, Your Honor.

11     **THE COURT:**  And also that will give me a little bit of time

12  to see if I can find out anything from the powers that be.

13     **MR. JORDAN:**  Also, Your Honor, and I apologize in advance to

14  not addressing the issue of the Defendants who didn't show up

15  for trial, and I'm cognizant that the Court wants to make a

16  decision today as to whether or not to bring a jury panel in.

17     I am somewhat concerned that I may not be able to get in

18  touch with a Honeywell and/or International Truck and Engine

19  counsel, and I will go do my very best at this moment, and we'll

20  report back my efforts at 3:15.

21     **THE COURT:**  Well, the drop dead time for cancelling a panel

22  is 3:30.  Am I correct, Mr. Chuck?

23     **THE CLERK:**  That's correct, Your Honor.

24     **THE COURT:**  So we really need to be back at 3:15 to try to

25  figure that out and whether or not we're going to postpone, if

26  that seems to be appropriate, and hopefully your clients will

27  give us some insight into that.

28     **MR. JORDAN:**  The only thing I think might be appropriate,

1    Your Honor, is we will be dark on Wednesday if we because I

2    can't get ahold of a Honeywell and/or International counsel

3    maybe call for a panel, is it possible to call for a panel on

4    Thursday?

5        **THE COURT:**  That would be the likely next choice, so let's

6    see how it pans out.

7        **MS. KROW:**  Your Honor, I did misspeak.  International Truck

8    and Engine Corp was mentioned at our last appearance, but this

9    morning was not mentioned as someone who is in the case.

10       **MR. BRAYTON:**  So far as I know, they're still in that limbo

11   status of not really -- not here, obviously, but not completely

12   buttoned up but apparently more buttoned up than Honeywell.

13       **THE COURT:**  Mr. Hartman, did you need to say anything again,

14   sir?

15       **MR. HARTMAN:**  Again, at the risk of wearing out my welcome,

16   the severance issue would solve some of these problems, and if

17   the Court would address the severance issue, it would make the

18   logistics of all this work, but I'm done.

19       **THE COURT:**  All right.  Mr. Brayton?

20       **MR. BRAYTON:**  In the time between now and when we reconvene

21   I will seek further clarification as to the status of Honeywell

22   and International Truck and also provide counsel with

23   information about how they might reach counsel for those

24   defendants.

25       **THE COURT:**  That would be greatly appreciated.  We're in

26   recess until 3:15.  Thank you.

27       (Recess taken.)

28       **THE COURT:**  Welcome back, everybody.  Still working on our

1  status report here?

2      **MS. KROW:**  Yes, Your Honor.  As you were coming back in fact

3  Mr. Jordan received a phone call from one of the requests.

4      **MR. JORDAN:**  During the break, Your Honor, we undertook with

5  Mr. Brayton's assistance to identify counsel for International

6  Truck as well as Honeywell.  I placed a call to International

7  Truck's lawyer, Dan LeCount, at the Height Brown and Bonesteel

8  firm.  Mr. LeCount just reported back to me via telephone that

9  as of Wednesday they have been settled.  So I don't know what

10  else to say.

11      **THE COURT:**  All right.  Good.

12      **MR. JORDAN:**  And so assuming that to be the case, and I'm

13  sure Mr. Brayton will clear that up one way or the other, at

14  some point that will not be an impediment.

15      Ms. Krow spoke with counsel at Perkins Coie who represents

16  Honeywell, and they are unable to give an answer to the query as

17  to whether or not they would agree to a removal at this

18  juncture, and they will call us back.

19      **THE COURT:**  Well, here is what I know.  What I know is that

20  we're going forward tomorrow.  Nothing stops here until we get a

21  Stay Order from a federal court if the federal court chooses to

22  issue one.  So I think that answers our question from a variety

23  of perspectives for the immediate future.

24      So we've got our panels requested.  We have got 007

25  reserved, and we will carry on.  And that will give you

26  opportunity, Mr. Jordan, you and your colleagues, to check in

27  with Honeywell, track them down, and see whether or not that is

28  something that you all wish to do.  And if it happens, it

1   happens.

2        But for the moment we will assume that we will be going

3   forward.  We'll represent to our jurors that we will need them

4   to be with us through October 19th.  We'll let them know the

5   days we anticipate being dark with the exception of the days

6   that my juvenile matter is set for that I shared with you,

7   because I don't want them to be planning other activities on

8   those days should that matter go away so that we can go forward.

9   Okay?

10       And here is what I know about what would happen to the

11  matter if we get a stay and while you're waiting to see what the

12  federal court is going to do, ultimately the case would come

13  back to this department is what I am advised.  Exactly what the

14  logistics of all that might be, we'll find out when and if we

15  get there.

16       If I'm in another trial, it's my understanding you'll trail

17  it until it's over, and then you will be on my doorstep.  That

18  could be anything from another asbestos case to a three-day DUI.

19  Who knows?  But the standard operating procedure, if you will,

20  is that the matter under these circumstances does come back to

21  the department from whence it came.

22       So, Mr. Hartman?

23       **MR. HARTMAN:**  Your Honor, by "department" means that we're

24  yours?

25       **THE COURT:**  Oh, yes.

26       **MR. HARTMAN:**  I wasn't sure how big the department was.

27       **THE COURT:**  That's a fair question.  I'm so sorry we can't

28  have tone of voice on our transcripts.  Maybe that's a good

1   thing.

2       Anyway, so we will be meeting here tomorrow at 9:00 so that

3   if there are any last minute things to take care of we can, and

4   you can go home and practice in front of the mirror.

5       **MR. JORDAN:**  Yes, Your Honor.  Making sure it's three

6   minutes or less.

7       **THE COURT:**  Absolutely.  Otherwise Mr. Chuck will have a

8   very long handled hook.

9       **THE CLERK:**  And you'll push a button, Your Honor.

10      **THE COURT:**  And he'll pull you off.  And with respect to all

11  the other matters involving witnesses and whether they were

12  fairly discovered in accordance with rules and whether there are

13  any circumstances that might give rise to good cause from

14  Plaintiff's point of view for where they are we'll, as we've

15  said on more than one occasion here, we'll cross that bridge,

16  and you all will need to put into writing the essence of what

17  you put on the record today.

18      But at least you've given each other some information, which

19  I hope will prove helpful to you as you are preparing your

20  respective cases and anticipating what you need to do on behalf

21  of your clients.

22      And there will be a requirement, if we didn't already cover

23  this, that notice will be given at least 48, and some instances

24  depending on whether there's a weekend in between more notice in

25  advance of who is going to be on deck so that each side knows

26  for whom they need to prepare.

27      And it's certainly my expectation and hope that as a matter

28  of professional courtesy if you have scheduling issues, that you

LAURA MARTINEZ, CSR NO. 11332

182

```
 1   will work that out with one another and assist one another
 2   knowing that these experts are hard to nail down and they're all
 3   over the place and that sometimes people are taken out of order
 4   because of that.  And I know you all have been there and done
 5   that many more times than I.
 6       The other thing I want to advise you of is that around your
 7   depo designations that I expect you to meet and confer about
 8   them to see if you can't have agreement.  And if are matters
 9   about which you disagree and you need me to rule on any
10   objections, of course I will do that.  Again, I need the
11   requisite -- I need time in order to do that before you may
12   begin to put them on the record, and we need to do that well in
13   advance of the reading.
14       But it will be my hope and especially since some of these,
15   they have been around for a while, that you can reach some sort
16   of an agreement, and if you can't, then to put together a chart
17   which I suspect you've done before that says who the witness is,
18   what the sections are that you disagree with and what the basis
19   of any objection is.  And then that will just assist us all in
20   going through them more expeditiously and certainly for me to go
21   through them and make sure that I have got the transcript so
22   that I can rule.
23       My last trial occasionally a transcript wasn't before me and
24   I was unable then to take care of my homework in an expeditious
25   fashion because I didn't have the deposition transcript with
26   which to work.
27       So anything else that we need to talk about today in
28   anticipation of tomorrow?  Mr. Hartman.
```

1    **MR. HARTMAN:**  Your Honor, did we get the pared down -- have

2    we got all that resolved in terms of the Plaintiff and who

3    actually will be called, whether they have got people actually

4    coming as opposed to thinking about having them coming?

5    **THE COURT:**  Can you help us out, Mr. Brayton, to the best of

6    your ability, sir?

7    **MR. BRAYTON:**  I can, Your Honor.  With respect to the

8    witnesses who were otherwise questioned from the live witness

9    list, I am able to report that we are presently unable to

10    produce any of those questioned witnesses.  That was the two

11    Mr. Smiths, Mr. Dixon and Mr. Giorgimino as well as Mr. Norris

12    who hopefully is still with us, although may not be joining us

13    here in the courtroom.

14    **MR. JORDAN:**  And Mr. Campbell.

15    **MR. BRAYTON:**  And Mr. Campbell.  I can also withdraw

16    Mr. Martino and Mr. Wagoner from the list of deposition

17    witnesses.  It's likely but not -- I won't commit to it.  We'll

18    let you know about Mr. Lehnert.

19    We will have the page/line designations on the balance of

20    those witnesses as soon as we can, certainly well before

21    evidence commences, well enough in advance for objections to be

22    lodged, meet and confer and all the rest.

23    **THE COURT:**  Mr. Hartman.

24    **MR. HARTMAN:**  Have we addressed the co-workers, the three

25    co-workers?  Are they coming?  Has that been established?

26    **MR. BRAYTON:**  I haven't been able to get a firm answer on

27    that, Your Honor.

28    **THE COURT:**  That's your answer, so we're assuming they're in

1  until we find otherwise.

2      And I'd like to confirm that we are going to be offering

3  refreshments per our earlier conversation, is that correct, and

4  everybody will share in that responsibility?

5      **MS. KROW:**  Yes, Your Honor.

6      **THE COURT:**  Okay.  And at the appropriate time you all can

7  make your arrangements with our crew downstairs.

8      **MS. KROW:**  Would that begin on Friday or Monday, Your Honor?

9      **THE COURT:**  It would not begin until we have a jury

10 selected.

11     **MS. KROW:**  Okay.

12     **THE COURT:**  And what you should assume is with jury

13 selection on Friday that we'll go all day.  We won't be calling

14 them in at 8:30, but we'll go until mid to late afternoon on

15 Friday.  And we have a previously arranged noon obligation, so

16 we may have a little longer lunch hour on Friday, just to give

17 you the heads up.

18     **MR. JORDAN:**  So that openings would commence on Monday?

19     **THE COURT:**  That's my hope.  We will, as I think I've

20 mentioned to you all, after you've had a chance to look at the

21 questionnaires we can spend some time Wednesday and see how

22 we'll best use Thursday.  Even though we may not have jurors

23 coming in -- we don't know yet whether we'll have jurors coming

24 in, so hold that day for an additional panel if we need it.

25     But if we don't, then there may be other things that we can

26 accomplish on that day which could also include actually

27 proceeding with selection, looking at any basis for cause as

28 reflected in the questionnaire.  Sometimes we can do that, not

1   always, but sometimes we can, and maybe even begin looking at

2   any peremptories.  Do we have a pool that -- or enough of our

3   questions answered that we could go ahead and begin that

4   process.

5       Now we also need to nail down -- we don't have to do this

6   tomorrow, but we need to think about how many alternates.  I

7   think the rule of thumb that people tend to go by is one

8   alternate per week of trial.  That may be a little excessive

9   here.  But would anyone like to be heard on that issue given

10  your vast experience in these matters?

11      Perhaps it will be more readily ascertainable after you've

12  seen the questionnaires and the kinds of things that people are

13  concerned about and what's going on their real lives.  Also who

14  gets paid for what.  That will come out somewhat in the hardship

15  process.

16      But my general rule is if people aren't going to get paid,

17  we probably will not have them sit, because it just raises too

18  many issues on down the line as pocketbooks get tighter.  They

19  may feel expansive at the beginning, but toward the end that

20  expansiveness may disappear, and that is not to the benefit of

21  either side, it seems to me.

22      **MS. KROW:**  Your Honor, for hardships you indicated that you

23  did not want counsel present, so we don't need to send an

24  associate who will take care of that without us?

25      **THE COURT:**  Associates do that, not trial counsel?

26      **MS. KROW:**  We'd be happy to appear.

27      **THE COURT:**  You're gone.  After you make your little minis

28  you will be excused, and I will explain to our panel that you

1  have trial preparation, and that's how you're going to be using

2  your time.  So That's how we will deal with that.

3    **MR. HARTMAN:**  So the mini opening is right out of the box

4  first thing.

5    **THE COURT:**  Pretty close to it, yes, and then you'll be

6  excused.  And there will be a tabletop podium, Mr. Hartman,

7  downstairs.  Have you had a chance to go down to 007?

8    **MR. HARTMAN:**  I haven't.

9    **THE COURT:**  Perhaps your colleague can take you down so you

10  can see the lay of the land.

11    **MR. HARTMAN:**  I'd like to do that.

12    **THE COURT:**  What's nice about that room is it's large enough

13  to hold all these folks fairly comfortably instead of stacking

14  them up like widgets here.  And we can always get through the

15  first round.

16    And when we ask people to do, if they don't seek a hardship,

17  then their task is to fill out the questionnaire.  Once that's

18  completed, then they may leave.  Though I must say that

19  sometimes people because they want to get out of there sooner

20  rather than later, even if they have a hardship they'll go ahead

21  and they'll fill out the questionnaire, and you hear about the

22  hardship later.  But people are people, and there's only so much

23  one can do about that.

24    Mr. Brayton, did you have something you wanted to add, sir?

25    **MR. BRAYTON:**  I was only going to suggest to the Court, I'm

26  not sure exactly how the hardship will proceed, but if you could

27  stress the issue of payment to people.  My experience has been a

28  lot of people operate under the assumption that they're going to

1  be taken care of so they don't apply for the hardship, and then

2  they only figure it out even after voir dire has commenced.

3      So that if you could make the point to the People at the

4  hardship, if they have any questions about being paid tried to

5  ascertain that between that date and before coming back for voir

6  dire.

7      **THE COURT:**  Good point.  Yes, Mr. Hartman.

8      **MR. HARTMAN:**  Your Honor, you inquired regarding input in

9  terms of number of alternates, and I don't have any.

10     **THE COURT:**  There's an honest man.

11     **MR. HARTMAN:**  I'm trying to put co-counsel on the spot, Your

12  Honor.

13     **THE COURT:**  Ms. Krow, what would you like to say?

14     **MS. KROW:**  I was not going to speak to that issue.  I think

15  we need to confer.  There are rules of thumb, but I think we

16  need to confer.

17     What I was going to ask is would it be possible to get the

18  questionnaires on Monday if they're going to be filled out on

19  Monday we can have someone here at close of business.

20     **THE COURT:**  They are going to be filled out tomorrow, so

21  you'll get them tomorrow.

22     **MS. KROW:**  So I'll sit down.

23     **THE COURT:**  Okay.  So Mr. Brayton is going to get them to

24  the copy place, and I assume you all have accounts there or

25  you'll set them up so that you can go get your own set.  And

26  we'll talk about them on Wednesday in all likelihood; okay?

27     **MR. JORDAN:**  Your Honor, Kevin Jordan again on behalf of

28  Union Carbide.  On the issue, back to unfortunately the removal

LAURA MARTINEZ, CSR NO. 11332

1  issue, I believe we're going to need some affirmative one way or

2  the other whether International Truck is in the case.

3      What we have now is Plaintiff's counsel saying that he

4  believes International Truck is.  I know he's checking.  I need

5  to nail this down for the record because that affects things.

6      **THE COURT:**  Now your understanding, Mr. Brayton, was that

7  there had been settlement with those folks last Wednesday?

8      **MR. BRAYTON:**  That is what Mr. Jordan represented

9  International Truck's counsel represented to them.

10     **THE COURT:**  All right.  Well, I think that --

11     **MR. BRAYTON:**  I haven't gotten that confirmation, and it may

12  be semantical difficulties only.  We'll try to get to the bottom

13  of it.

14     **THE COURT:**  Let's see if we can just take a moment when my

15  colleague is available and see if we can get a sense on the

16  e-files, unless you all have access.  Do you have access to

17  that?

18     **MR. BRAYTON:**  Access to...

19     **THE COURT:**  The e-filings of what's been filed in the

20  matter?

21     **MR. BRAYTON:**  I can access the court's --

22     **THE CLERK:**  Register of Actions, your Honor.

23     **THE COURT:**  Register of Action, because we can go on line

24  right now and see if there's anything that would confirm that,

25  and great.  If not, that's your problem.

26      Why don't we go off the record for a moment, unless there's

27  something else someone wants to put on the record, and we'll

28  check the Register of Actions and see if something had been

1   filed.  Let's go off the record and we'll see if we could figure

2   that out.

3       (Off the record. )

4   **THE COURT:**  Let's go back on the record.  Mr. Chuck's

5   perusal of e-filings does not reveal that International Trucking

6   has been dismissed yet, which is not to say that settlement has

7   not been accomplished but that any filing about it has not yet

8   been received by the Court.  So that's something that needs to

9   be addressed as you all make your choices about how you want to

10  move forward here.

11      And, Mr. Brayton, I'm sure the parties' defense counsel

12  would appreciate anything you can do to assist them in nailing

13  that down.

14  **MR. BRAYTON:**  Hopefully it's not disrespectful that I'm

15  working on that right now.

16  **THE COURT:**  Quite all right.  So anything else?  Otherwise

17  we can adjourn, and you all can go practice, and I will see you

18  here at 9:00 a.m. tomorrow morning.  We'll start here.  We will

19  all meet.  It's like meeting before they walk down the aisle,

20  and then we'll go down to 007 and take it from there.

21      Okay.  So good luck and let's hope we have some really

22  excited, interested jurors tomorrow.  I'm expecting great

23  things.  Thank you.  We're in recess.

24      (Proceedings adjourned at 3:45 p.m.)

25

26

27

28

1  State of California        )
                              )
2  County of San Francisco  )

3

4

5      I, Laura Martinez, Reporter Pro Tempore for the Superior

6  Court of California, County of San Francisco, do hereby certify:

7      That I was present at the time of the above proceedings;

8      That I took down in machine shorthand notes all proceedings

9  had and testimony given;

10      That I thereafter transcribed said shorthand notes with the

11  aid of a computer;

12      That the above and foregoing is a full, true, and correct

13  transcription of said shorthand notes, and a full, true and

14  correct transcript of all proceedings had and testimony taken;

15      That I am not a party to the action or related to a party or

16  counsel;

17      That I have no financial or other interest in the outcome of

18  the action.

19

20

21  Dated:  August 15, 2007.

22

23

24  _Laura Martinez_

25  LAURA MARTINEZ, CSR NO. 11332

26

27

28

# EXHIBIT 6

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):
Alan R. Brayton, Esq., S.B. #73685
Brayton <> Purcell
222 Rush Landing Road
Novato, California 94948
TELEPHONE NO.: (415) 898-1555
ATTORNEY FOR (Name): Plaintiff(s)

Insert name of court and name of judicial district and branch court, if any:
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

PLAINTIFF/PETITIONER: ROBERT LYMAN, et al.

DEFENDANT/RESPONDENT: ASBESTOS DEFENDANTS (BHC)

| FOR COURT USE ONLY |
| --- |
| ELECTRONICALLY **FILED** |
| *Superior Court of California,* *County of San Francisco* |
| **AUG 07 2007** |
| GORDON PARK-LI, Clerk |
| BY: CHRISTLE ARRIOLA |
| Deputy Clerk |

**REQUEST FOR DISMISSAL**
- [X] Personal Injury, Property Damage, or Wrongful Death
  - [ ] Motor Vehicle        [ ] Other
- [ ] Family Law
- [ ] Eminent Domain
- [X] Other (specify): Asbestos

CASE NUMBER: 459162

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. **TO THE CLERK: Please dismiss this action as follows:**
   a. (1) [ ] With prejudice    (2) [X] Without prejudice
   b. (1) [X] Complaint    (2) [ ] Petition
      (3) [ ] Cross-complaint filed by (name):                    on (date):
      (4) [ ] Cross-complaint filed by (name):                    on (date):
      (5) [ ] Entire action of all parties and all causes of action
      (6) [X] Other (specify):* As to defendant THORPE INSULATION COMPANY only,
            with a mutual waiver of costs.

Date: 07/05/2007

Nancy T. Williams, Esq., S.B. #201095
(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)
* If dismissal requested is of specified parties only, of specified causes of
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action, or cross-complaints to be dismissed.

(SIGNATURE)
Attorney or party without attorney for:
[X] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

2. **TO THE CLERK: Consent to the above dismissal is hereby given.**
Date:

(TYPE OR PRINT NAME OF [ ] ATTORNEY [ ] PARTY WITHOUT ATTORNEY)
** If a cross-complaint - or Response (Family Law) seeking affirmative
relief—is on file, the attorney for cross-complainant (respondent) must
sign this consent if required by Code of Civil Procedure section 581(i)
or (j)

(SIGNATURE)
Attorney or party without attorney for:
[ ] Plaintiff/Petitioner    [ ] Defendant/Respondent
[ ] Cross-complainant

*(To be completed by clerk)*
3. [ ] Dismissal entered as requested on (date):
4. [ ] Dismissal entered on (date):                    as to only (name):
5. [ ] Dismissal not entered as requested for the following reasons (specify):

6. [ ] a. Attorney or party without attorney notified on (date):
       b. Attorney or party without attorney not notified. Filing party failed to provide
          [ ] a copy to conform    [ ] means to return conformed copy

Date:                              Clerk, by _____, Deputy

Form Adopted by the
Judicial Council of California
982(a)(5) [Rev January 1, 1997]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.
Cal. Rules of Court, rules 383, 1233
*Judicial Council Forms for HotDocs* ™

# EXHIBIT 7

1

2　MOLLY J. MROWKA (SBN 190133)
　RODRIGO E. SALAS (SBN 194462)
　ALICE K. LOH (SBN 197315)

3　DILLINGHAM & MURPHY
　225 Bush Street, Sixth Floor

4　San Francisco, CA 94104-4207
　Telephone:　(415) 397-2700

5　Fax:　　　　(415) 397-3330

6　Attorneys for Defendant
　MONTELLO, INC.

7

8　　　　　　　　　　UNITED STATES DISTRICT COURT

9　　　　　　　　　NORTHERN DISTRICT OF CALIFORNIA

10　　　　　　　　　　SAN FRANCISCO DIVISION

11

12　ROBERT F. LYMAN and SAMANTHA
　LYMAN,

13　　　　　　　　Plaintiffs,

14　　　　　v.

15　ASBESTOS DEFENDANTS (B*P), *et al.*,

16　　　　　　　　Defendants.

CASE NO.

**JOINDER IN NOTICE OF
REMOVAL**

17

18

19

20

21

22

23

24

25

26

27

28

OHS West:260287594.1

JOINDER IN NOTICE OF REMOVAL

1        **TO THE CLERK OF COURT AND TO THE PARTIES AND THEIR**

2 **ATTORNEYS OF RECORD**:

3        **PLEASE TAKE NOTICE** that Montello, Inc. hereby joins the Notice of Removal filed

4 by Union Carbide Corporation in this action.

5 Dated: August 16, 2007               MOLLY J. MROWKA
                                 MONTELLO, INC

6

7

8                                   Molly J. Mrowka

9                            Attorneys for Defendant
                           MONTELLO, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28