# EXHIBIT 10

1          SUPERIOR COURT OF CALIFORNIA

2             COUNTY OF SAN FRANCISCO

3      HONORABLE NANCY L. DAVIS, JUDGE PRESIDING

4               DEPARTMENT NO. 306

5                  ---oOo---

6

7   ROBERT LYMAN, ET AL.,              )
                                        )
8                  Plaintiffs,          )   CGC-06-459162
                                        )   Jury Trial
9       vs.                             )
                                        )   Pages 202 - 232
10   ASBESTOS DEFENDANTS, ET AL.        )
                                        )   Volume VI
11                 Defendants.          )
    _____)

12

13

14

15                                    **COPY**

16

17          REPORTER'S TRANSCRIPT OF PROCEEDINGS

18              Wednesday, August 15, 2007

19

20

21

22

23

24

25

26

27

28   Reported by:   Laura Martinez, CSR No. 11332, RPR

```
 1  APPEARANCES OF COUNSEL:

 2  For Plaintiffs:

 3      Brayton Purcell
        222 Rush Landing Road
 4      Novato, California  94945-669
        BY:  GILBERT L. PURCELL, Attorney at Law
 5           ANDREW CHEW, Attorney at Law
             KIMBERLY WILLIAMS, Attorney at Law
 6
    For Defendant UNION CARBIDE CORP.:
 7
        Baker Botts LLP
 8      One Shell Plaza
        910 Louisiana
 9      Houston, Texas 77002
        By:  KEVIN M. JORDAN, Attorney at Law
10
        Orrick, Herrington & Sutcliffe LLP
11      The Orrick Building
        405 Howard Street
12      San Francisco, California  94105
        By:  CATHERINE MORRIS KROW, Attorney at Law
13
    For Defendant FREIGHTLINER LLC:
14
        Wright Robinson Osthimer & Tatum
15      44 Montgomery Street, 18th Floor
        San Francisco, California  94104-4705
16      By:  CHARLES E. OSTHIMER, Attorney at Law

17  For Defendant MONTELLO, INC.:

18      Dillingham & Murphy
        225 Bush Street, Sixth Floor
19      San Francisco, California  94104-4207
        By:  MOLLY MROWKA, Attorney at Law
20
        ANDREW S. HARTMAN, Attorney at Law
21      6520 S. Lewis
        Tulsa, Oklahoma  74170
22
    For Defendant HONEYWELL INTERNATIONAL INC.:
23
        Perkins Coie
24      Four Embarcadero Center, Suite 1400
        San Francisco, California  94111
25      BY:  M. CHRISTOPHER JHANG, Attorney at Law
             DAVID ONGARO, Attorney at Law
26

27

28
```

1  Wednesday, August 15, 2007                          2:15 P.M.

2                    P R O C E E D I N G S

3      THE CLERK:  Please rise.  Department 306 is now in session,

4  the Honorable Nancy L. Davis, Judge presiding.  Please be seated

5  and come to order.

6      THE COURT:  Good afternoon, everyone.

7      ALL COUNSEL:  Good afternoon.

8      THE COURT:  Will you call our case, Mr. Chuck.  Thank you.

9      THE CLERK:  Yes, Your Honor.  This case is Robert F. Lyman

10  and Samantha Lyman versus Asbestos Defendants.  Case

11  CGC-06-459162.  And, counsel, please state your appearance

12  beginning with the Plaintiff.

13      MR. PURCELL:  Good afternoon, Your Honor.  Gil Purcell here

14  for the Plaintiffs along with Andrew Chew and Kimberly Williams.

15  Good afternoon.

16      MR. ONGARO:  Good afternoon, Your Honor.  David Ongaro and

17  Chris Jhang from Perkins Coie on behalf of Honeywell.

18      MS. KROW:  Good morning, your Honor.  Catherine Krow and

19  Kevin Jordan for Union Carbide.

20      MS. MROWKA:  Good afternoon, Your Honor.  Molly Mrowka on

21  behalf of Montello, Inc.

22      MR. HARTMAN:  Your Honor, Andy Hartman on behalf of

23  Montello.

24      THE COURT:  All right.  The party keeps getting bigger, so

25  welcome to those of you who haven't been here before on this

26  matter, and welcome back to those who have.  This afternoon I

27  have two primary to-do's to accomplish, and just to make sure

28  we're all on the same time line, if we are going to need an

LAURA MARTINEZ, CSR NO. 11332

1  additional group of jurors to hardship, we need to advise our

2  comrades down in 007 no later than 3:30, so that needs to be

3  done immediately.  So whether we need any, and then how many is

4  the next question.

5      And then I had received some papers I believe from Brayton

6  Purcell addressing witness issues and some deposition

7  designations, so I thank you for those.

8      And just to talk a little bit about logistics, when IT

9  people can come in to get set up, my expectations about how

10  things are done here in the courtroom, so you'll know what my

11  ground rules are.  And if you have specific questions that you'd

12  like to ask, you're welcome to do so.

13      We were going to also talk about any exhibits that folks

14  plan to use or demonstrative aids, if you will, during openings

15  and have shared those.

16      And then I wanted to know if there was any update on the

17  issue of removal, and you may not be prepared to answer that

18  question, but I and certainly the powers that be here who are in

19  charge of my schedule are curious about that.

20      So that's what's on my list more or less.  Anything else

21  that's on your list that you want to advise me of at this time?

22      MR. PURCELL:  For Plaintiff, Your Honor, there are a couple

23  of matters, but I believe they can fall into the framework that

24  you set forth, mainly as to logistics and such, but we can

25  address those whenever the Court please.

26      THE COURT:  Yes, Mr. Hartman.

27      MR. HARTMAN:  Your Honor, on behalf of Montello I have a

28  brief record I'd like to make regarding severance and removal,

1  but I understand we've got a deadline of 3:30, so however the

2  Court will deal with that.  It will take me approximately two

3  minutes.

4      THE COURT:  You can have two minutes right now, and then we

5  will have dealt with it.  Go ahead, Mr. Hartman.

6      MR. HARTMAN:  May I use the podium, Your Honor?

7      THE COURT:  You may.

8      MR. HARTMAN:  Your Honor, again, Andrew Hartman on behalf of

9  Montello.

10     Approximately a week ago Montello learned that Thorpe was

11 dismissed or nonsuited, and this led Montello to believe that

12 complete diversity then existed with respect to the Plaintiff

13 and the Defendant.

14     Then earlier this week an inquiry was made of counsel for

15 Plaintiff, and counsel for Plaintiff confirmed that no remaining

16 California or Nevada defendants exist and as such that confirmed

17 the possibility that there was complete diversity among the

18 Plaintiff and the Defendants.

19     The Defendants have conferred among the remaining

20 Defendants, and Montello agrees to remove.  Union Carbide agrees

21 to remove.  It's been represented to me that counsel for Union

22 Carbide has spoken with International Truck that agrees to

23 remove, and the only remaining Defendant is Honeywell who has

24 said that they will not agree to the removal.

25     Your Honor, Montello contends that Honeywell is a nominal

26 Defendant in this case as that term appears in the statutes.

27 And that is substantiated by the fact that there was to my

28 understanding no return of service filed by the Plaintiff

1   confirming service of the original petition, that Honeywell

2   never answered the complaint, that Honeywell has not complied in

3   virtually any respect with respect to the scheduling order in

4   this case.

5       Specifically on May 11th, 2007 was the time period for

6   Plaintiff's court-ordered disclosure regarding identification of

7   witnesses and documents regarding production, product

8   identification as to each defendant, and there's no reference to

9   Honeywell.

10      June 27 of 2007 was the mandatory settlement conference, and

11  Plaintiff's counsel indicated that the remaining Defendants

12  were:  Union Carbide; Foster Wheeler; and Drilling Specialties;

13  International Truck; Freightliner LLC; Garlock; GM; Henry Vogt

14  Machine Company; John Crane; MAC Trucks; Shell Oil Company;

15  Thorpe Insulation; Tyco U.S.; A.W. Chesterton; Carlysle Corp;

16  Ford; and Montello.  But there was no representation by

17  Plaintiff's counsel that Honeywell was in the case.

18      Then on July 16th of 2007 the pared down list of exposure --

19  expert disclosure was due, and there was no pared down list from

20  Honeywell.  Then on Wednesday July 18th, there was a mandatory

21  settlement conference, and at that mandatory settlement

22  conference Mr. Purcell indicated that ten Defendants remained in

23  the case:  Freightliner; Garlock; Henry Vogt; International

24  Truck; John Crane; Ford; Foster Wheeler; Drilling Specialties;

25  Union Carbide; and Montello.  And there was no indication from

26  Plaintiff's counsel that Honeywell was in the case.

27      Then on Monday August 6th there was a report for trial in

28  Division 306, and there was no appearance by Honeywell on

1   August 6th.  And on August 7th all parties were required to

2   e-file and serve motions in limine, statement of the case,

3   witness list and jury questionnaire, and there was no compliance

4   by Honeywell.

5       On Wednesday, August 8th of 2007, all parties were to file

6   and serve by 2:00 p.m. Defendants' reply to the Plaintiff's

7   motion regarding re-deposing the Plaintiffs and having Plaintiff

8   testify by satellite and opposition to Plaintiff's Motion in

9   Limine, and there were no court papers filed by Honeywell.

10      On Thursday, August 9th at 10:00 o'clock there was a hearing

11  on Plaintiff's motions and jury instructions and special verdict

12  forms, and there was no appearance by Honeywell.  On Friday,

13  August 10, 2007 parties were ordered to appear at 9:30 a.m. for

14  a hearing on motions in limine and other issues.  There was no

15  appearance by Honeywell.

16      On Saturday/Sunday of August 11th and 12th the parties were

17  ordered to exchange all page/line deposition designations.

18  There was no exchange by Honeywell.  And on Monday August 13th,

19  the parties were order to appear at 10:00 a.m. for additional

20  pretrial matters, and again no appearance by Honeywell.

21      I believe it was on Tuesday that Honeywell appeared in court

22  for the first time in this case, and my recollection may be

23  wrong, but I believe it was Tuesday.  And at that time -- and,

24  Your Honor, I'm going to have to admit that I need to let the

25  record speak for itself because I quite honestly was confused at

26  the time about the announcement that was made by Honeywell

27  counsel.

28      But it appeared to me, or I am under the impression that a

LAURA MARTINEZ, CSR NO. 11332

1  general statement was made that there was some agreement of some

2  kind and that while Honeywell was here now, it was possible or

3  probable that they would not be here later.

4      Montello was concerned that the terms of whatever

5  discussions Honeywell has had or whatever agreement Honeywell

6  has got with the Plaintiffs could be a critical fact and could

7  be additional information that would be helpful in determining

8  whether and to what extent Honeywell is a nominal defendant.

9      And the possibility that Honeywell has settled in some

10 respects creates some difficult issues in the context of

11 Defendants, issues such as jury selection, whether there will

12 be -- how strikes will be apportioned among the various

13 Defendants, whether and to what extent Honeywell may strike

14 jurors that quite honestly are acceptable to the other

15 Defendants, and the opportunity for difficulties and prejudice

16 are huge in the context of this situation.

17     So, consequently, Your Honor, Montello would respectfully

18 request in light of the extreme prejudice of continuing as we

19 stand here today, that the Court either sever Honeywell's

20 defense from the Montello/Union Carbide defense, or in the

21 alternative give Montello and Union Carbide the opportunity to

22 conduct some discovery of Honeywell, the Plaintiffs and their

23 respective representatives and attorneys regarding the scope and

24 extent of the settlement discussions, whether an agreement does

25 in fact exist or whether there is some agreement to agree.

26     Thank you, Your Honor.

27     **THE COURT:**  Thank you, Mr. Hartman.

28     **MR. JORDAN:**  Your Honor, Union Carbide would join in that

1   motion.

2       **THE COURT:**  Thank you.  Would either Plaintiff or Honeywell

3   like to respond to any of that?

4       **MR. PURCELL:**  Briefly, and I'll try and be closer to a

5   two-minute estimate.  Nothing that Counsel described, even if

6   it's accurate, which much of it is not, makes out any kind of

7   bases for the relief that they request.  Honeywell is a

8   Defendant in the case.  They have been throughout the

9   proceedings.  There's not been an agreement with them to resolve

10  the matter.

11      Whether or not Honeywell is in the case is not going to have

12  the effects that Counsel has described or predicted.  What's

13  basically going on here, Your Honor, and we all know it, is that

14  Montello is trying to create an opportunity to misuse removal.

15      If you go back to the history and the policy behind removal,

16  that has no application to anything that's going on here right

17  now, and there's no bases to sever out any claims as to

18  Honeywell in specific, so we would obviously oppose the request

19  today.

20      I didn't hear him articulate anything about appearances or

21  nonappearances that prove-up a sham defendant as they are

22  basically arguing, or nominal defendant.  A particular party's

23  decisions on its pretrial strategy or pretrial participation in

24  discovery does not a nominal defendant make, and we would

25  oppose.

26      **THE COURT:**  Honeywell?

27      **MR. ONGARO:**  Thank you, Your Honor.  And I will be brief as

28  well.  I'm a little bit at a loss.  I've just been brought in to

1  try the case, so I'm not sure of everything that went on before.

2  Certainly Honeywell was present at the depositions of the

3  Plaintiffs, and there was some product ID'd by the Plaintiffs.

4  We did participate in discovery of 2034 exchanges.

5       I don't know everything that's gone on in the case because

6  I'm just here to try it, but certainly we don't want to be here

7  and it would be our preference not to be here, but we are

8  because the Plaintiffs have brought us here.

9       THE COURT:  Mr. Hartman?

10      MR. HARTMAN:  Your Honor, there in my mind would be no

11  prejudice to Honeywell by severing the Honeywell case, and there

12  is extreme prejudice to Montello by their continued involvement

13  in this case.

14      MR. ONGARO:  If I may address that briefly, the prejudice

15  that they seem to be bringing up is they may not like the jurors

16  that we bounce.  Well, that's present in every case, Your Honor,

17  and that doesn't make extreme prejudice.  That's the way the

18  legal system works.  So I haven't seen any articulation of what

19  the extreme prejudice would be that goes beyond what normally

20  happens in the courtroom.

21      THE COURT:  Mr. Jordan, did you want to weigh in any

22  further, sir?

23      MR. JORDAN:  Your Honor, I would only point out that I would

24  disagree with Mr. Purcell in that if there is any misuse of the

25  removal system, it is what is going on between Plaintiffs and

26  Honeywell.  It is pretty clear to the Court I believe what has

27  gone on and that there is extreme prejudice, I believe.

28       I'm going to be asked -- we know, Your Honor, from previous

1  representations that there is some deal going on between the

2  Plaintiff and the Defendant Honeywell, and I am now going to be

3  asked to sit at counsel table with someone who is having

4  discussions with the Plaintiffs that could include trial

5  strategy for all I know.

6      For all I know, the Plaintiff's lawyers and Honeywell have

7  now agreed that they are going to exercise strikes that are

8  favorable only to the Plaintiff and not the Defendant.  I think

9  there's extreme prejudice to the Defendant in this particular

10  case.

11      If there has been a misuse of the removal system, I find it

12  interesting that a defendant is arguing against a severance of

13  the claims on the eve of trial.  They'd rather go to trial than

14  have their case severed.  Very interesting observation, one that

15  in all my years of practice I've never seen.

16      But be that as it may, Your Honor, I think it's readily

17  apparent from the record before you what is going on here, and

18  there is extreme prejudice to the Defendants.  We would request

19  the severance.

20      **THE COURT:**  Anything further, Mr. Purcell, you'd like to

21  add?

22      **MR. PURCELL:**  Yes, and I apologize for this having to be a

23  topic that we have to take up, but when I say that there's a

24  misuse of a procedure here, I mean what I say.  Mr. Lyman is a

25  dying man.  The Defendants want to improvidently remove this

26  case to federal court for reasons that appear to be an effort to

27  get the case shuffled off to Pennsylvania and become part of the

28  MDL 875 proceedings in federal court which would have the effect

1   that Mr. Lyman would die before he had his day in court.  It has

2   nothing to do with the historical reasons for removal,

3   procedurally or otherwise.

4       In terms of his concerns about any lack of arms length

5   circumstances with Honeywell, he is speculating, and I'm here to

6   represent to him and the Court that there is no agreement

7   between Plaintiff's counsel and Honeywell that would affect

8   joint use of peremptories or cause challenges or would affect

9   our proceedings in any way, shape or form.  And there's

10  certainly no evidence to that effect.

11      So, again, we would urge the Court to leave the case as it's

12  presently configured and we proceed to trial.  Thank you.

13      THE COURT:  All right.  Last call.

14      I am not going to grant your request, Mr. Hartman.  You have

15  made a very good record, and I think the ball is in the court of

16  Montello and Union Carbide to make a decision about whether you

17  want to make an argument across the street about how nominal

18  this situation may or may not be.

19      But you've made your record.  Everybody has I think been

20  fully heard, and you all can decide how you wish to proceed, but

21  right now we're going to continue on.  And my first query to all

22  of you is whether -- well, I assume you've had a chance to

23  review the questionnaires.

24      I know that the random list has only been available for a

25  couple of hours, but I'm not sure that that really matters one

26  way or the other here.  It's my understanding that out of the

27  approximately 180 folks we had in yesterday for hardship that we

28  have about 57 or 58 questionnaires.  I have been through some

1   but not all.

2       You all have a lot of experience in reviewing questionnaires

3   and selecting juries in these matters, so I would like to hear

4   from you your best judgment about what kind of numbers we have

5   and what you think makes sense, and then we'll see where we go

6   from there.

7       So would Plaintiffs like to begin?  Mr. Purcell, Mr. Chew?

8       MR. PURCELL:  Yes, Your Honor.  And to catch me up, if I

9   understand correctly, you're inclined to seek three alternates;

10  is that correct?

11      THE COURT:  We have not said one way or the other how many

12  alternates.  We said that we needed to talk about it, but I have

13  not made a decision about that.  I said I would invite people's

14  views about it.

15      MR. PURCELL:  A case of this length, it may make more sense

16  to target four, and it has an effect on the potential numbers

17  that we might be comfortable starting with for voir dire.  We've

18  reviewed the questionnaires preliminarily, and have identified

19  five potential jurors that based on the responses to their

20  written questionnaire we would solicit a stipulation by defense

21  counsel that perhaps we could approach the Court jointly in a

22  proposal that these jurors be excused for cause without further

23  inquiry.

24      They represented certain extreme positions that if we were

25  to devote time to them, we expect that wouldn't be efficient.

26  And we've tried to be balanced in the five.  For example, two of

27  them reference Bhopal which is a very sensitive matter at Union

28  Carbide, and experience has been that someone who remembers that

LAURA MARTINEZ, CSR NO. 11332

1  from 1984 is probably going to ultimately say to one side or the
2  other that they would have difficulty being a fair and impartial
3  juror in a Union Carbide case.

4      But if we assume that there were five excused by stipulation
5  as we would propose, I think that would leave us with 53, and if
6  we were planning on seating four alternates, then I think we're
7  just about right at the minimum you'd need to be safe to get a
8  jury out of that group.

9      We would be happy to go ahead and make the attempt, and in
10 the event that it looked as if we were going to run out of
11 jurors, hardship and get other additional jurors later in the
12 process and add them at the end of our existing random list to
13 fill whatever other demands we might have for jurors.  I think
14 with 53 we're comfortable proceeding and making an effort to try
15 and get a jury from the jurors we presently have.

16     **THE COURT:**  May I hear from various defense counsel.

17     **MR. JORDAN:**  Yes, Your Honor.  Union Carbide agreed with
18 some of what Mr. Purcell said.

19     **THE COURT:**  Good.

20     **MR. JORDAN:**  Although I'm not really sure.  At the end he
21 kind of changed it on us.  We will be more than glad to consider
22 the five that they have identified.  We have a significantly
23 higher number of ones that we think they should consider.  And
24 what generally happens in these circumstances, at least in my
25 experience, is that the Court tells us to go off and let the
26 horse trading begin.

27     I don't believe -- I think, as Mr. Purcell would
28 acknowledge, that it would be somewhat of a gamble as to whether

1  or not with the existing numbers, 58, we will have enough to

2  seat a jury.  So my request would be for the Court to

3  effectively do what the Court thought she might have to do and

4  bring in another panel tomorrow for an additional I would say --

5  The rule of thumb I would say, Your Honor, is we'd probably need

6  about 70 jurors to seat in this case.

7      I think we would agree that four is probably right, 70 who

8  made it through the hardship panel.  So you could probably, if

9  you look at the numbers as they have come out in this case and

10 in others, figure you're going to get about a third of whatever

11 you bring in your total group will make it through the hardship.

12     And so if the third make it through, you're going to need,

13 probably in order to get the 70, probably need another 25.  So I

14 would say that you'd probably need to bring in 75 or so which

15 would give you another 25, and that will get you around the 75,

16 80 number that would probably be necessary in order to get a

17 jury seated in one swipe by Friday in this case.

18     THE COURT:  Thank you.  Mr. Hartman, would you like to be

19 heard?

20     MR. HARTMAN:  Your Honor, I think four alternates is great.

21 That's more than I've ever had, so I guess that's great.  As far

22 as how many more we ought to have, I really don't have any sense

23 about that, so I'll let that pass.

24     THE COURT:  Okay.  Would you like to be heard, sir?

25     MR. ONGARO:  Yes, just briefly.  We would agree with Union

26 Carbide.  I think we are going to have to bring in some more

27 folks.  We have a significantly higher number of folks we think

28 would be bounced for cause.

1     THE COURT:  Why don't you tell me what that significant

2  number is.

3     MR. ONGARO:  We'll say at least ten.

4     THE COURT:  Do you concur, Mr. Jordan?

5     MR. JORDAN:  Double.

6     THE COURT:  Double?  Oh, isn't that interesting.  Well, I

7  think we're going to bring some more folks in, so we will be

8  having a repeat of yesterday's performance tomorrow.

9     MR. HARTMAN:  Your Honor, do we have to say the same thing

10  we did last time?

11     (Laughter.)

12     THE COURT:  I will leave that to you.  If you think you were

13  effective, I would use it; if not, feel free to revise.  Now

14  there's some counsel who were not present yesterday when the

15  mini openings were done.  Is there anybody who has a question

16  about that?

17     MR. PURCELL:  If I understand correctly, Your Honor, it was

18  a three-minute limit per party, not side?

19     THE COURT:  That's right.

20     MR. PURCELL:  Your Honor, the Plaintiffs would object to

21  that, but I don't know if we have it on the record previously,

22  but we would object to that.

23     THE COURT:  All right.  Objection is noted.

24     MR. PURCELL:  And if you were inclined to bring other jurors

25  in, I think it's necessary for the Defendants to stipulate that

26  they be added at the end of our existing randomized list.

27  Otherwise, I think you have to re-randomize from the pile that

28  you have to be complete.

1    So we're happy to stipulate that the additional jurors that
2    you would obtain could be added in their own randomized list at
3    the end of the current set of jurors.  But I think that requires
4    a stipulation.  Otherwise, it's an irregularity.
5    **THE COURT:**  All right.  Well, let me first check in with
6    Mr. Chuck about that to see if he has a view -- and he was on
7    the phone while you all were speaking, Mr. Purcell -- because I
8    think this raises potentially certain challenges for the folks
9    downstairs in the jury selection room and how they take care of
10   business.  And I do not want to do anything that crosses wires
11   with them.
12   But, Mr. Jordan, did you want to put something on the record
13   first, sir?
14   **MR. JORDAN:**  I don't know what the other Defendants are
15   going to say, but I won't stipulate to that, Your Honor.
16   **THE COURT:**  All right.  That takes care of that.
17   Yes, Mr. Hartman.
18   **MR. HARTMAN:**  I join Mr. Jordan in that, Your Honor.
19   **THE COURT:**  Mr. Chuck, we were just talking about having in
20   the additional panel, and do you have a sense of our folks
21   downstairs and how they eventually craft a random list when we
22   have two panels?  Are they mixed together for a final randomized
23   list; is that how they do it, do you know?
24   **THE CLERK:**  Are you referring to yesterday's panel?
25   **THE COURT:**  Yesterday's and then assuming, as is going to be
26   the case, we're going to bring in folks for tomorrow.  If we
27   then have additional folks in the mix, would they then create
28   one randomized list?

1     **THE CLERK:**  I would have to ask them if they can do it or

2  not, Your Honor.

3     **THE COURT:**  Well, my feeling about it is really I will defer

4  to the people downstairs.  They've been doing this for years,

5  and we'll see what they require.

6     And, Mr. Purcell, you may have some experience that you can

7  draw upon about how easy or difficult that is or what their

8  usual M.O. is.  Do you have an observation about that?

9     **MR. PURCELL:**  Yes.  They're happy to do it either way, but

10  the agreement to put a chunk of jurors at an end of an existing

11  randomized list requires a stipulation of the parties.  Absent

12  that, then we need to in effect reshuffle the entire deck, and

13  they generate then a new randomized list that would be more like

14  75 or 80 total, folding both piles together.

15     **THE COURT:**  Thank you.  Yes, Mr. Jordan.

16     **MR. JORDAN:**  As I said, we will not stipulate.  And I'm glad

17  to hear that my gut instinct is in compliance with California

18  procedures.

19     **THE CLERK:**  I heard what Mr. Purcell said.  I could ask them

20  if they can do it.

21     **THE COURT:**  Well, if we don't have a stipulation, then it's

22  a moot point.

23     **THE CLERK:**  Okay.

24     **THE COURT:**  I think it's fair to say.  So we will bring in

25  another panel tomorrow, and I think we will ask for -- How many

26  bodies can we do comfortably in here, Mr. Chuck?

27     **THE CLERK:**  Around 60, 65, something like that.

28     **THE COURT:**  Why don't we order as many as in your judgment

1    we can comfortably seat.

2        **THE CLERK:**  We may have people sitting in the foyer.

3        **THE COURT:**  All right.  We can do that, but just I'd like to

4    err on the side -- of course, we're going to engage in this

5    process.  Let's get as many options in our bag of tricks as we

6    can.  So it sounds like that can be anywhere between 65 and 70;

7    is that a fair assumption?

8        **THE CLERK:**  I think 65 would be the limit in here, Your

9    Honor.

10        **THE COURT:**  Okay.  So that's what we'll order.  So we'll

11    have 65 we'll request of our colleagues downstairs to provide

12    that for us.  And our jurors, is the usual report time 9:00

13    o'clock for them?

14        **THE CLERK:**  Yes, 9:00 o'clock.  And then they get an

15    orientation on the jury system.  They should be ready at 9:30 to

16    come up.

17        **THE COURT:**  Okay.  So we should assume that they'll be up

18    here at 9:30.  You all are ordered back at 9:00 just so we can

19    do our usual checking in, make sure everybody is on board.  And

20    if there are any last-minute questions, we can try to answer

21    them.  Yes, Mr. Hartman.

22        **MR. HARTMAN:**  Your Honor, just thinking ahead a little bit

23    about I guess that means we do the mini opening tomorrow morning

24    which is Thursday morning, and then distribute the jury

25    questionnaires to the new jurors.

26        And they then return those at the end of the day which means

27    that we might have all the jury questionnaires that would be in

28    the pool or panel Thursday night to then look at cause

1  challenges on Friday?  I'm trying to figure out.

2   **THE COURT:**  I understand what you're trying to figure out.

3   **MR. HARTMAN:**  I'm trying to figure out when we're actually

4  going to start voir dire.  I'm going to go French now.  Voir

5  dire.  I guess does that mean we'll start that Monday morning?

6   **THE COURT:**  I would hope that we can do something on Friday.

7   **MR. HARTMAN:**  Really?  Okay.

8   **THE COURT:**  But I understand your concern about whether or

9  not we will be in a position to get started first thing on

10  Friday morning when the first panel or the first set of

11  questionnaire jurors, if you will, has been ordered back.

12   They were ordered back for 9:30 on Friday, I think you'll

13  recall, so that's their current status.  But I also would like

14  to allow you all some time to do whatever horse trading you can

15  and to meet and confer and see how we can expedite the process,

16  so that's something we need to figure in here.

17   Yes, Mr. Hartman.

18   **MR. HARTMAN:**  Yes, and I think that's really my point is

19  that it's been my experience that time is saved by, if we had

20  time, I think we could make more progress and not delay the

21  court and the panel needlessly sitting out in the hallway if we

22  had Friday to get that done.

23   **THE COURT:**  I understand what you're saying.

24   Yes, Mr. Jordan.

25   **MR. JORDAN:**  I would certainly -- I've not horse traded yet

26  with Mr. Purcell in a case, but my suspicion is that it's going

27  to be very difficult for us to do horse trading until such point

28  that we know what the horses are.  And we probably won't know

1    that until late Thursday night, and it would be very difficult

2    for us to --

3        I'm really not sure how we could sit here and agree on the

4    cause issues without the full panel, because as the Court knows,

5    it has something to do with order.  It has a lot of

6    variabilities that go into.  I certainly would be interested to

7    hear Mr. Purcell's view on it.  We may find something else we

8    agree with.

9        MR. PURCELL:  They've made a wonderful case for why they

10    should stipulate that the new jurors we get tomorrow go at the

11    bottom of the deck, because you don't have to call jurors.  You

12    don't have to interrupt the 58 that are presently scheduled to

13    return Friday.  We can proceed normally.

14        We all have the benefit then of more time to review the last

15    25 or so, and it need not delay or interrupt the proceedings as

16    they're presently set for Friday.  I have not heard a reason why

17    that is steadfastly objectionable to the Defendants.  I have my

18    suspicions, but I will spare the Court and counsel my sharing

19    them with you.

20        But the fact of the matter is what makes most efficient

21    sense and that it operates as no benefit or no advantage to

22    either side since we are doing this entirely randomly and we're

23    doing it entirely blindly, is that if the Court is inclined to

24    summon another 60 or 65 jurors tomorrow, at the end of that

25    process we take their questionnaires, we get them copied at the

26    end of the day tomorrow.

27        Some of us would read them Thursday evening and probably be

28    prepared to speak to the Court about them Friday, but the

1  urgency for doing that would be tempered a great deal if they
2  were just randomly put at the end of the randomized 58 that we
3  presently have ready to go.  And that's what the Plaintiffs
4  would urge the Court to consider doing and the Defendants to
5  rethink about an agreement to proceed in such a fashion.

6      Absent that, I think you're going to have 58 very unhappy
7  people that could come back Friday, or you're going to have a
8  very unhappy Mr. Chuck who needs to make 58 phone calls.  It's
9  very, very inefficient for them to come back Friday and say come
10 back Monday.  I'd like to avoid that if there's any way we can
11 do that.

12     **THE COURT:**  Do you wish to add anything, Mr. Jordan?

13     **MR. JORDAN:**  Yes, ma'am, I would.  As the Court is well -- I
14 hope aware by this point, this is the third or fourth day I've
15 been with you, I'm very concerned about jurors.  And I
16 appreciate Mr. Purcell's statements, but the reality is I have a
17 right to exercise on behalf of my client not to stipulate to
18 that, and I'm exercising that right as is apparent under
19 California procedure, and I don't stipulate.

20     **THE COURT:**  All right.  Here is what we're going to do.
21 We're going to take a little break, and that will give Mr. Chuck
22 the opportunity to check in with our colleagues downstairs and
23 put our order in.

24     And then you all are going to sit here for a while and talk
25 to one another about this situation and see whether your views
26 remain as they are.  If they do, they do.  But perhaps you can
27 exchange some information with one another about what your
28 concerns are as reflected in the questionnaires you've had an

1   opportunity to review, and we'll see where we are.

2       And I will come back in a while and inquire, and then we'll

3   take it from there.  So you are welcome to stay at these tables,

4   or if you want to use the conference room, that might be used as

5   a mini alternative site for more private conversations if some

6   of you need to talk privately with co-counsel or other counsel

7   on your side of this particular equation.

8       May I ask before I leave you about your IT folks, that I

9   know they had sought some entre perhaps today, and we asked that

10  it be delayed.  What is the story?

11      MR. PURCELL:  Thank you, Your Honor.  We have a collection

12  of easels, projectors, DOAR's equipment presently in Judge

13  Mellon's department.  And all that we would ask to be able to do

14  at this point is to locate it in the ante room outside the

15  courtroom, so it shouldn't interfere with voir dire and a room

16  full of jurors, and leave it there as a staging area until such

17  time, as we need about 45 minutes between having our jury

18  selected and starting openings to set it up in the courtroom and

19  then get whatever guidance you can give us about your preference

20  about how to set this up.

21      Some of it is going to be affected by the practical

22  realities of Mr. Lyman's testimony and him testifying live, and

23  that's one of the topics that I'm interested in taking up with

24  the Court today so that we not make that any more cumbersome and

25  awkward than it's going to otherwise be.

26      So that's all we're proposing at this point is permission to

27  put it in the ante room that belongs to the Plaintiffs, and then

28  we'll move it in the courtroom at the appropriate time.

1  **THE COURT:** Mr. Chuck, any concerns about that? I think

2  we're planning to use that space eventually for food service,

3  but that would not begin until you've got a jury seated in any

4  event.

5  **THE CLERK:** Your Honor, Matt Hewlett from Orrick has called

6  me several times. He's the tech person from there, and he was

7  inquiring when is a good time for people to set up their

8  equipment. Maybe Ms. Crow has something to say about that.

9  **THE COURT:** Yes, ma'am.

10  **MS. KROW:** Yes. I'm not sure exactly what Mr. Hewlett is

11  planning to set up. We have talked briefly about it. I do

12  think that it's a little more high tech than what Mr. Purcell

13  has described with easels, and we are happy to share as we have

14  in the past whatever equipment we have. We will have an Elmo.

15  We will have a projector, and we will be happy to let

16  Mr. Purcell use it.

17  I do think that we will need to come in to set it up. We

18  won't be able to do it in a very compressed period of time, but

19  we have talked about making sure it doesn't take up too much

20  room so that there is room for voir dire.

21  So I'm not sure if that answers the question if we're going

22  to have voir dire in here on Thursday. If the jurors come in at

23  9:30, maybe at 8:30. Whatever Mr. Chuck prefers.

24  **THE COURT:** Well, that somewhat depends on what happens

25  Friday actually. It goes back to Mr. Hartman's inquiry. So I

26  will be contemplating that while you all are having a

27  conversation.

28  **MS. KROW:** And I will contact Mr. Hewlett while we are in

1  recess and ask him exactly how much time he needs.

2      THE COURT:  Thank you, Ms. Krow.  Mr. Jordan.

3      MR. JORDAN:  Might I inquire, Your Honor.  I suppose, and I

4  want to make sure this is correct.  There will be no need for

5  the installation of the equipment, easels, et cetera, that we

6  have just discussed by the Plaintiff and Defendant prior to the

7  opening statements.

8      THE COURT:  Doesn't sound like it to me.

9      MR. JORDAN:  So we just need to build in time before we

10  begin openings.

11      THE COURT:  Right.  That's my assumption, so it really

12  depends on when it gets under way in earnest.  Mr. Hartman.

13      MR. HARTMAN:  Your Honor, I have a housekeeping matter

14  that's unrelated to easels and Elmos.

15      THE COURT:  Okay.

16      MR. HARTMAN:  In my brief record, which I'll admit lasted

17  more than two minutes, I asked for alternative remedies, one of

18  which was the severance.  The other was the opportunity to

19  inquire of the parties, Honeywell and the Lymans and their

20  representatives, regarding what those negotiations are, whether

21  an agreement exists.

22      I just want to be sure that I understand correctly that you

23  denied that remedy as well, just for the record.

24      THE COURT:  For the record I did.  Your opportunity, your

25  specific request to inquire, I've denied.  But I also believe

26  that Mr. Purcell did respond to that on the record so that you

27  have that available to you should you find it useful for any

28  reason.

1    MR. HARTMAN:  I understand, but there was no mention of

2    Honeywell, and I just want to make sure the record is clear.

3        THE COURT:  I think it is at the present time.  So let's

4    come back at 3:30.  You can meet and confer, talk about what you

5    have before you.  If you get to the point where conversation is

6    no longer productive, you can buzz me and I will come out before

7    3:30.  That's not to suggest that it won't be.

8        And maybe it will be just consummately productive and you'll

9    call me in a few minutes, but in any event, Mr. Chuck can then

10   take care of what he needs to take care of, and I'm going to

11   give some further thought to the time line.  And I think it's

12   fair to say, I think at least four alternates and maybe even

13   five.  I don't know.

14       The last time folks were here we did have five, and it was

15   in part because of some of the breaks that had been in the mix

16   because of my schedule, and we do have one or two of those

17   figured in here.  And that may go more to the issue of how many

18   people we'll bring in for purposes of hardshipping really than

19   getting questionnaires.

20       So that's part of my thinking just for your information.

21   But I think four is the minimum that we should assume for the

22   moment.  Okay.  Thank you.  Good luck.

23       (Recess taken.)

24       THE COURT:  We're back in session.  Counsel are present for

25   all parties.  This is in the Lyman versus Asbestos Defendants,

26   et al. matter.  And I spoke briefly off the record with counsel

27   before coming out on the bench just to talk a little bit about

28   the lay of the land for tomorrow, and my thinking about what our

1  time line is currently.

2      So I'd like the record to reflect that we have another panel

3  of jurors coming in tomorrow morning.  Counsel have been ordered

4  to be present in this Department 306 at 9:00.  Our jurors will

5  come to us at approximately 9:30, maybe a little past that, and

6  we will eventually all convene for further hardshipping of our

7  second jury panel up in Room 509 in this courthouse.

8      And counsel have been advised that each party is to present

9  a mini opening as they did yesterday.  Three minutes.  And

10  counsel will then be excused, and their homework is to review

11  the questionnaires when they are ready, and we are hopeful that

12  we can do that more quickly tomorrow since we don't have as

13  large a group as we had yesterday.

14      And I've advised counsel that we will be calling all the

15  jurors who remain with us after the hardship process yesterday

16  to not come to the courthouse on Friday as they have been

17  previously ordered.  They have been ordered to appear at 9:30 is

18  my recollection.  And we're going to have them come on Monday.

19      And this will enable us on Friday to spend time, and counsel

20  have been ordered present with the expectation of being here,

21  whatever it takes on Friday, but we'll start at 9:30 to start

22  going over the questionnaires, see what we can do to accomplish

23  jury selection, move it along as expeditiously as we can.

24      And we need to nail down how many alternates.  We have been

25  talking about four or five.  Counsel will also be prepared to

26  provide one another with anything they plan to use by way of

27  demonstrative exhibits during openings.  And that's to be

28  provided on Friday.

1    We will also give the opportunity to any IT people or firm

2  representatives to put in place equipment that may be needed for

3  openings or throughout the trail and to do that on Friday so

4  that we are ready to roll on Monday.

5    It is my hope that we will have a jury sworn on Monday, and

6  that's what I've advised counsel of as well as possibly get

7  started with openings.  So that is our current plan.

8    I was told that counsel have been successful in meeting and

9  conferring and talking about some of the current jurors and wish

10  to advise me of their proposed stipulations about those folks.

11  And if there's anything else you'd like to put on the record,

12  we'll give you an opportunity.

13    So who is going to lift the oar on this?

14    MR. CHEW:  I can.

15    THE COURT:  Thank you, Mr. Chew.

16    MR. CHEW:  I think the most efficient way of doing this is

17  maybe going off the random list, Your Honor.

18    THE COURT:  All right.

19    MR. CHEW:  We've agreed to a total of 15, Your Honor.  And

20  the first one would be number 1, Yancy Rada.  The second one

21  would be number 2, Mathios.  The third one would be number 7,

22  Schatzman.  The next one would be number 12, Dylan Morimoto.

23  The next one would be number 18, Hillel.  Next would be number

24  20, Sims.  After that, 21, Shirley Tsai.

25    Next is number 26, Hong.  Number 27 is Kevin Tom.  And 31,

26  Robin Plourde.  Number 34, Scott; 35 Harvey Ingham.  Number 38,

27  Mukherjee, and I'll spell that for the record.

28  M-U-K-H-E-R-J-E-E.  Number 42 is Nikkhah, and last is 48,

1    Oconnor.

2    THE COURT:  Yes.  Does everyone else agree with that list at

3    this point?

4    MR. HARTMAN:  Yes for Montello.

5    MR. ONGARO:  Yes for Honeywell, Your Honor.

6    MS. KROW:  Yes for Union Carbide.

7    THE COURT:  Thank you.  So I will review those and let you

8    know what I think.  Was there anything else about your meet and

9    confer with respect to these panel members that you would like

10   to tell me or put on the record?

11   MR. JORDAN:  None for Union Carbide.

12   MR. PURCELL:  None for Plaintiffs.

13   THE COURT:  I'm seeing no hands, so we'll assume there is

14   nothing.  Thank you.  Let me go off the record just a moment.

15   (Discussion off the record.)

16   THE COURT:  So we've been talking about our need for some

17   additional questionnaires, and Union Carbide is going to provide

18   those.  So thank you, Ms. Krow.

19   Is there anything else anybody wants to put on the record at

20   this point?

21   MR. PURCELL:  I think whatever scheduling or type

22   discussions that we would want to take up with the Court we can

23   do that at another time, logistics and things of that sort.  I

24   think we can probably take those up on Friday.

25   MS. KROW:  We agree.  There are some additional logistics,

26   but we can wait until Friday for Union Carbide.

27   THE COURT:  Anything else from you, Mr. Hartman?

28   MR. HARTMAN:  Nothing, Your Honor.

LAURA MARTINEZ, CSR NO. 11332

231

1    MR. ONGARO:  Nothing from Honeywell.

2    THE COURT:  All right.  Go do your homework.  See you in the

3  morning.  Thank you.

4    (Proceedings adjourned at 4:38 p.m.)

1   State of California      )
                             )
2   County of San Francisco  )

3

4

5       I, Laura Martinez, Reporter Pro Tempore for the Superior

6   Court of California, County of San Francisco, do hereby certify:

7       That I was present at the time of the above proceedings;

8       That I took down in machine shorthand notes all proceedings

9   had and testimony given;

10      That I thereafter transcribed said shorthand notes with the

11  aid of a computer;

12      That the above and foregoing is a full, true, and correct

13  transcription of said shorthand notes, and a full, true and

14  correct transcript of all proceedings had and testimony taken;

15      That I am not a party to the action or related to a party or

16  counsel;

17      That I have no financial or other interest in the outcome of

18  the action.

19

20

21  Dated:  August 16, 2007.

22

23

24  _____

25  LAURA MARTINEZ, CSR NO. 11332

26

27

28

# EXHIBIT 11

THIS DOCUMENT HAS BEEN PREPARED FOR THE CONVENIENCE OF THE COURT AND PARTIES AND MAY CONTAIN INACCURACIES

**BRAYTON✦PURCELL**

Trial Para: SAC

Client #107053

Trial Call Date: 7/30/07

Defendants

17 Defendants remain.

| Matter No. | Name | Case No. | CHESTR | CARLAS | DRISPR | JORD | OTHER |
|---|---|---|---|---|---|---|---|
| 107053 | Lyman, Robert SPSC Case No. 459162 SOL: 5 yr. 12/11 | 459162 | x | x | x | x | FOSLLC, FRECOR, GARLCK, GM, HENVOG, INTTRK, CRANE, MACKTRK, MONTLL, SHLOIL, TIRPIN, TYCOUS, UNIONC |