# EXHIBIT 13

1          SUPERIOR COURT OF CALIFORNIA

2             COUNTY OF SAN FRANCISCO

3      HONORABLE NANCY L. DAVIS, JUDGE PRESIDING

4              DEPARTMENT NO. 306

5                 ---oOo---

6

7  ROBERT LYMAN, ET AL.,              )
                                      )
8                 Plaintiffs,         )    CGC-06-459162
                                      )    Jury Trial
9       vs.                           )
                                      )    Pages 91 - 138
10  ASBESTOS DEFENDANTS, ET AL.       )
                                      )    Volume III
11                Defendants.         )
   _____)

12

13

14                              **COPY**

15

16

17       REPORTER'S TRANSCRIPT OF PROCEEDINGS

18           Friday, August 10, 2007

19

20

21

22

23

24

25

26

27

28  Reported by:   Laura Martinez, CSR No. 11332, RPR

1  APPEARANCES OF COUNSEL:

2  For Plaintiffs:

3      Brayton Purcell
       222 Rush Landing Road
4      Novato, California  94945-669
       BY:  GARY L. BRAYTON, Attorney at Law
5
   For Defendant UNION CARBIDE:
6
       Baker Botts LLP
7      One Shell Plaza
       910 Louisiana
8      Houston, Texas 77002
       By:  KEVIN M. JORDAN, Attorney at Law
9
       Orrick, Herrington & Sutcliffe LLP
10     The Orrick Building
       405 Howard Street
11     San Francisco, California  94105
       By:  CATHERINE MORRIS KROW, Attorney at Law
12
   For Defendant FREIGHTLINER LLC:
13
       Wright Robinson Osthimer & Tatum
14     44 Montgomery Street, 18th Floor
       San Francisco, California  94104-4705
15     By:  CHARLES E. OSTHIMER, Attorney at Law

16  For Defendant MONTELLO, INC.:

17     Dillingham & Murphy
       225 Bush Street, Sixth Floor
18     San Francisco, California  94104-4207
       By:  MOLLY MROWKA, Attorney at Law
19

20

21

22

23

24

25

26

27

28

```
1  August 10, 2007                              10:00 A.M.
2                    P R O C E E D I N G S
3       THE CLERK:  All rise.  Department 306 is now in session, the
4  Honorable Nancy L. Davis, Judge presiding.  Please be seated and
5  come to order.
6       THE COURT:  Good morning.
7       ALL COUNSEL:  Good morning, your Honor.
8       THE COURT:  Will you call our case, Mr. Chuck.
9       THE CLERK:  Yes, thank you, Your Honor.  This case is Robert
10 Lyman and Samantha Lyman versus Asbestos Defendants.  Case
11 number CGC-06-459162.  And, counsel, please state your
12 appearance beginning with the Plaintiff.
13      MR. BRAYTON:  Gary Brayton on behalf of Plaintiffs.
14      MR. JORDAN:  Your Honor, Kevin Jordan with Baker Botts on
15 behalf of Defendant Union Carbide Corporation.  Pleased to meet
16 you.
17      THE COURT:  Pleased to meet you.
18      MS. KROW:  Good morning.  Catherine Krow, Orrick Herrington,
19 also on behalf of Union Carbide.  Pleased to meet you as well.
20      MS. MROWKA:  Good morning, Your Honor.  Molly Mrowka on
21 behalf of Montello, Inc.
22      MR. OSTHIMER:  Good morning, Your Honor.  Charles Osthimer
23 on behalf of Freightliner.
24      THE COURT:  Welcome to those for whom this is a first-time
25 appearance.  I know that there had been discussion I believe
26 with Mr. Chuck to assure, Mr. Jordan, that you had taken care of
27 your business to be permitted to appear on behalf of your client
28 in this matter.  Is all taken care of?
```

1    **MR. JORDAN:**  I understand that it has, Your Honor.

2    **THE COURT:**  All right.  I think we wanted to know most of

3    all if we had your money.

4    **MR. JORDAN:**  I'm glad to give it.

5    **THE CLERK:**  Ms. Krow sent me a fax of the order signed by

6    Judge Mahoney permitting Mr. Jordan to appear pro hac

7    appearance, so I thank Ms. Krow for that.

8    **THE COURT:**  Thank you.  I'm glad that business is

9    accomplished.  So this morning we have several things on the

10   agenda, one of which is rulings on motions that had been argued

11   prior to today.  Another is to have argument on one of Union

12   Carbide's motions.  I believe it is their, dare I say, standard

13   motion number 24.

14       And it's my understanding, and please correct me if I'm

15   misunderstanding, that in response to my request that everybody

16   meet and confer and talk about what really needed to be dealt

17   with at point that the remaining motion was indeed that motion.

18   Is that a correct statement?

19   **MR. JORDAN:**  Yes, Your Honor.

20   **MS. KROW:**  Yes, Your Honor.

21   **MR. BRAYTON:**  Yes, Your Honor.

22   **MR. JORDAN:**  We have met and conferred, and if the Court

23   would like, I have an index of the motions in limine that Union

24   Carbide filed that Mr. Brayton and I sat down, looked over,

25   checked marked together which one had been granted, which ones

26   have been deferred, which ones still remain open.

27       The only remaining open ones, as the Court is aware, is MIL

28   10 which is what's argued yesterday which is to exclude mention

1    of mesothelioma or risk or fear of developing mesothelioma.  And

2    then number 24 is the only ones that we are here today.

3        And if I could approach the court reporter, I would like to

4    mark this as an exhibit so we're all clear on what we've agreed

5    to.

6        THE COURT:  Very well.  Come on up.

7        THE CLERK:  Counsel, why don't you give it to me.  I'll put

8    a sticker on there.

9        MR. JORDAN:  We have also handwritten on there, your Honor,

10    what reserved means, because there is granted, denied and

11    reserved.  Reserved means that it will not be discussed during

12    the openings or -- and I have to say this right, voir dire.  In

13    Texas we say voir dire (pronunciation).

14        You probably won't know what I'm talking about when I say

15    that, but it will not be discussed in the voir dire process, and

16    it will be dealt with at such time as they come up during the

17    trial.

18        THE COURT:  All right.  And you, Mr. Brayton, have had an

19    opportunity the review that document?

20        MR. BRAYTON:  Yes, Your Honor.

21        THE COURT:  Okay.

22        MR. BRAYTON:  And concur with the representations about what

23    matters have to be deferred.

24        THE COURT:  And, Mr. Osthimer?

25        MR. OSTHIMER:  Yes.  I've reviewed it, and I also concur.

26        THE COURT:  Very well.  So also on the to-do list is to talk

27    a little bit more about trial estimate.  I also want to talk

28    about statement of the case.  Dates for filing, instructions,

1  proposed instructions, special verdict forms.

2      I was pleased to hear that the questionnaire seems to have

3  been worked out and that I need to peruse it but that you all

4  have spent some good time reaching a meeting of the minds if you

5  will, so that is something that I commend you on and is always

6  greatly appreciated when counsel do that.  It makes life a lot

7  easier for everybody.

8      So let me ask, who is going to argue the motion that's

9  pending, number 24?  Is that Mr. Jordan or Ms. Krow?

10     **MR. JORDAN:**  Ms. Krow will be arguing that on behalf of

11 Union Carbide, Your Honor.

12     **THE COURT:**  Why don't we get that done, and then it can be

13 percolating in my mind, and I will let you know whether or not

14 I'm going to rule on it from the bench or whether I will advise

15 you somewhat later, but let's get that done.  So are you ready

16 to roll, Ms. Krow?

17     **MS. KROW:**  Just one moment, Your Honor.

18     **THE COURT:**  Okay.

19     **MR. JORDAN:**  I thought I told her that before, but maybe

20 not.

21     **THE COURT:**  Let's go off the record until you find what you

22 need to find.

23     **MS. KROW:**  I think I'm fine, Your Honor.  I just wanted to

24 make sure my understanding is correct on this.  And, simply,

25 Your Honor, this motion is a matter of streamlining the case in

26 basic fairness.  Our understanding at this point is that this

27 case involves drilling mud, and discovery and experts have been

28 put forward as to that product.

LAURA MARTINEZ, CSR NO. 11332

1    What we would like to do, and we think is appropriate here,

2    is to make sure that that understanding is correct, particularly

3    because there's no testimony that supports additional products

4    being put in play.  I believe that's really the crux of the

5    issue here.

6        There's no basis for other products to be put forward.

7    There are no experts proffered on other products.  For example,

8    Bakelite was referenced in discovery, but no evidence was put

9    forward on Bakelite which is another product that is sometimes

10   at issue but should not be in this case.

11       And it will streamline our case, certainly our time

12   estimates, if we could get a ruling on the Court that that is

13   the product at issue, and that is simply the crux of this

14   motion.

15       **THE COURT:**  All right.  Mr. Brayton, would you like to

16   respond?

17       **MR. BRAYTON:**  Not much more than what we have indicated in

18   our response, Your Honor.  We appreciate Counsel's desire to get

19   a preview of what the Plaintiff may have to say or some other

20   witness may have to say, but the way to go about that is by the

21   discovery process.

22       They have of course conducted extensive discovery.  If they

23   have asked the right questions, they should be in a position to

24   have an understanding of what the evidence is.  If they haven't,

25   it's at their peril.  But there's no legal basis to require the

26   plaintiffs to provide a preview of what the testimony is beyond

27   what's been available to them through the discovery process.

28       **THE COURT:**  All right.  Thank you.  Mr. Osthimer, do you

LAURA MARTINEZ, CSR NO. 11332

1  wish to weigh in here, sir?

2      MR. OSTHIMER: No. This goes to drilling mud, and my

3  product isn't drilling mud, so I'm not a player in this one,

4  Your Honor. Thank you.

5      THE COURT: Do you want to speak?

6      MS. MROWKA: On behalf of Montello, Inc., I'll join in Union

7  Carbide's argument.

8      THE COURT: Thank you. Anything further? Would you like to

9  say anything, Ms. Krow?

10      MS. KROW: Just one brief thing. We did conduct all

11  appropriate discovery, and it is our understanding based on

12  asking all the right questions that this is a drilling mud case.

13  There's no basis to open it up to other products and we think at

14  this stage sitting here at trial it's appropriate for us all to

15  agree that this is a drilling mud case only.

16      THE COURT: Anything else? Submitted?

17      MS. KROW: Submitted.

18      MR. JORDAN: Your Honor, Kevin Jordan on behalf of Union

19  Carbide. One other point regarding the discovery. I'm sure the

20  Court is somewhat aware -- is aware of how these cases are dealt

21  with in the discovery. For example, the Bakelite issue.

22      Plaintiffs have a whole stable of experts that they provide

23  to testify about Bakelite issues, and there were none provided

24  or offered for deposition in this particular case. We have a

25  stable of experts that rebut what the Plaintiff's experts say.

26      So we're simply just trying to figure out whether or not

27  this is, like the Bakelite, that should not be a part of this

28  case because they have not produced any experts.

1    Mr. Lyman did testify in his deposition about some Bakelite

2  in the oil field, but no one has ever said that that contained

3  asbestos or that it was even one of our products as part of

4  that.  If Bakelite does become an issue in this case, we're

5  about to have to do a bunch more depositions of people that were

6  not conducted because it has never been an issue in this case.

7    Same is true with joint tape compound.  Mr. Lyman himself

8  had never identified any joint tape compound that he has ever

9  worked with that was supplied by Union Carbide Corporation

10  anywhere, so if this is a joint tape case, I'd kind of like to

11  know that before I start.

12    The only focus that the plaintiffs have ever done in the

13  depositions in this case and then the experts in this case is on

14  drilling mud as it relates to my client's products.  There are a

15  lot of other products out there that are unrelated to Union

16  Carbide, packing, insulation, et cetera, et cetera.  I'm just

17  trying to get a feel for what animal I'm about to try.  Thank

18  you, Judge.

19    **THE COURT:**  Thank you, Mr. Jordan.  Yes, Mr. Brayton.

20    **MR. BRAYTON:**  Just briefly in response.  Counsel has

21  articulated reasons why they may make reasonable inferences as

22  to what the state of the evidence, as may the Court.  But as a

23  legal matter, we're simply not obliged to do anything more than

24  we have, respond appropriately to the discovery and let the

25  chips fall where they may.

26    **MR. JORDAN:**  Then, Your Honor, I might, candidly, if that is

27  the case, and I will admit that I am certainly no scholar on

28  California procedure and law, although I'm learning very

1  quickly, I would move to exclude any -- from their failure to

2  provide any expert testimony on the issues of Bakelite

3  exposures, I would move to exclude all reference to Bakelite in

4  this case.

5      Same thing goes to joint tape compound.  Regardless -- I'm

6  not asking for a preview of their evidence.  I'm saying that

7  they have not produced any expert testimony or any evidence of

8  exposures to these products, and I don't think they should be a

9  part of this case, which I think is an appropriate motion in

10  limine.

11      THE COURT:  Mr. Brayton?

12      MR. BRAYTON:  We can cross these potential bridges when and

13  if they come to fruition.

14      THE COURT:  Anything else?  All right.  The matter is

15  submitted, and I will reflect on your comments and arguments.

16  Actually, your argument or your couple of references that were

17  made bring up another issue that I do wish to talk about a

18  little bit at some point this morning, and that is the proposed

19  witness lists that have been submitted by folks.  And I'm not

20  aware that I have what I would consider a pared down list from

21  Plaintiffs.

22      I have a very long list, but it didn't strike me that it was

23  a pared down list which seems to me something that needs to be

24  provided and should have been provided about two weeks ago, so I

25  am ordering that to be provided to all counsel and to me by this

26  afternoon before the close of business.

27      MR. BRAYTON:  Very well, Your Honor.

28      THE COURT:  And if I'm mistaken, I will stand corrected, but

1   that's my reading of what I have before me, and that might help

2   us address some of the issues that have just been presented in

3   this motion.  Okay?

4      MR. BRAYTON:  Very well.

5      MR. JORDAN:  And, Your Honor, as soon as we receive a pared

6   down list, we will provide one almost momentarily.  As soon as

7   it happens, we will do it.

8      THE COURT:  I do have a list from you all that seem to me to

9   be more pared down, but it's all relative at this point, I'll

10  grant you that.

11     MR. JORDAN:  I probably can pare it down even more for Your

12  Honor.

13     THE COURT:  Good.  I also want to -- I was going to, if I

14  had gold stars to hand out this morning.  I'm trying to remember

15  if it is to you, Ms. Mrowka and your client or to Union Carbide,

16  whoever filed their witness list... goes to you.

17     MS. MROWKA:  Thank you.

18     THE COURT:  With the testimony description as well as

19  anticipated length of time, which you all know is I believe a

20  part of one of the many general orders having to do with

21  asbestos in this city and county.  So hats off to you, and the

22  rest of you should follow in her stead as you revise your lists.

23  I expect that.

24     MS. MROWKA:  Thank you, Your Honor.

25     THE COURT:  You're welcome.  Maybe put it in your personnel

26  file.  All right.  As I'm sure our newcomers know, we had

27  argument for some time yesterday, and I'm going to make some

28  rulings on various issues.  Not all of them are per se motions

1  in limine but issues that had been brought to my attention.

2      But I think before I go any further I just want to have the

3  record reflect very clearly that two of your number who were not

4  present yesterday on the defense side we inferred that there

5  might have been resolution with respect to them. But we do have

6  two defendants who are no longer with us. Why doesn't one of

7  you put that on the record so it will be real clear.

8  Mr. Brayton, why don't you do that.

9      **MR. BRAYTON:** Certainly, Your Honor. And I can inform the

10 Court that as to one of the Defendants, they settled as of this

11 morning about 20 minutes ago, and that is the Henry Vogt. So

12 that case is settled. Honeywell International I think is we are

13 hoping to settle but they are not -- they have not settled as of

14 this time.

15     **THE COURT:** All right. Thank you.

16     **THE CLERK:** Your Honor, can I ask Mr. Brayton about

17 Internation Truck & Engine? I called Mr. Tobey yesterday, and

18 they said that --

19     **MR. BRAYTON:** It's our understanding that the remaining

20 Defendant is Honeywell International, not International Truck

21 and Engine.

22     **THE COURT:** I'm glad you raised that because I saw Honeywell

23 somewhere in the stacks of paper that I've been reviewing in the

24 last 24 hours, and I thought, well, where did this come from?

25 Because it was the other Defendant that I had thought was still

26 in the mix here.

27     **MR. BRAYTON:** I will certainly make inquiry into that and

28 make sure that we were not the ones who are mistaken. Whoever

1   it is, they're not here.

2       **THE COURT:** They are not here, and let's just be clear on

3   who has been involved in this matter, at least up to this point.

4   All right.  So here is how we're going to proceed.  I have

5   rulings I think with respect to everything we talked about

6   yesterday.  Might be one exception.

7       And I want to thank on the record my colleague,

8   Ms. Martinez, for her yeoman's service here in churning out at

9   least a -- she would call it very rough, but I thought it was

10  reasonably smooth myself transcript, so I have the benefit of

11  that to review as I thought about what you had to say.

12      And I'm just going to do these in the order in which we

13  talked about them yesterday.  That's the long and the short of

14  it, so if it seems that they're not organized as you would

15  otherwise perhaps organize them, that's why.

16      So the first matter that we had quite a bit of discussion

17  about yesterday was the motion from Plaintiffs which had also

18  appeared as a motion in limine from Defendants as an earlier

19  preemptive strike, if you will, around reopening the deposition

20  of Mr. Lyman and/or teleconferencing his testimony.

21      And lots of discussion about his current state, what was

22  offered up to the Court for the Court's consideration by way of

23  reasons, whether this was good cause, convenience, quality of

24  testimony, defendants making it clear that they felt that this

25  had been, that we were beating a dead horse I think it's fair to

26  say because of your having gone to the Commissioner on this

27  matter.

28      And I've gone back again through your argument and looked at

1  the sequence of events as I understand them to be including the
2  recitation and e-filings and the chronology here, and in both
3  instances with respect to the request made by Plaintiff, I'm
4  denying them.

5      The next topic we talked about, and we'll come back to it is
6  the juror questionnaire.  The third topic was the issue of Union
7  Carbide and whether or not punitives were still on the table in
8  light of Judge Mahoney's ruling, the motions that were presented
9  to him.

10     And I've reviewed again your arguments as well as the
11 transcript provided to me, and I am of the view that there are
12 no punitive damages that are being -- that will be pursued
13 vis-a-vis Union Carbide.

14     The next item we talked about was the motion to amend, in
15 effect the civil battery.  And you all may recall, those of you
16 who were here, that when we concluded our conversation about
17 that issue, Plaintiffs in effect tabled the motion.  Let's put
18 it that way.

19     And so having done so, the motion having been withdrawn, I
20 am in effect at this point I am not going to rule on it.  But I
21 do want to be very clear that I don't want it to be mentioned in
22 a statement of the case or anywhere else in the proceedings in
23 terms of opening, voir dire, et cetera.

24     If you decide you're going to make that motion at some point
25 you can make it and I'll rule on it at that time, but don't mix
26 it up in the proceedings now.  Are we clear about that,
27 Mr. Brayton?

28     **MR. BRAYTON:**  Yes, Your Honor.

1    THE COURT: And you are to make sure that anybody else who

2    is standing in -- Actually, are you trial counsel? I was

3    curious about that.

4        MR. BRAYTON: I am not, Your Honor.

5        THE COURT: You are not. So make sure that if you're the

6    messenger that it gets delivered. Okay? Then we talked a

7    little bit about the bifurcation motion from Montello which was

8    previously granted, there being no objection really.

9        And let me just be clear that we have punitive damages now

10   being sought with respect to Montello and is I believe they are

11   the sole beneficiaries of that view, if you will. Is that

12   right, Mr. Brayton?

13       MR. BRAYTON: That's the correct phrasing, yes, Your Honor.

14   The only party we're pursuing against.

15       THE COURT: So Freightliner is not in that mix. And just to

16   be clear that the trial will be, with the exception of any piece

17   involving punitive damages, will go forward in one phase with

18   respect to the other folks who are still in the case.

19       And I just wanted to make it clear that evidence concerning

20   Montello's financial condition may be presented only after the

21   jury by clear and convincing evidence has found that Montello

22   has acted with malice, oppression or fraud.

23       Limited nonprejudicial inquiry on the issue of punitive

24   damages may be made by counsel during voir dire of the jury

25   panel. So, again, please be the messenger on that to your trial

26   counsel, Mr. Brayton.

27       MR. JORDAN: Your Honor, might I ask a question at this

28   juncture?

LAURA MARTINEZ, CSR NO. 11332

1    THE COURT:  Yes, sir.

2    MR. JORDAN:  In connection with that and the message being

3    sent to trial counsel as it relates to the voir dire process or

4    voir dire (pronunciation) process.  Excuse me.  It's going to

5    take me a while.

6    THE COURT:  We'll accept however you wish.  We are a diverse

7    society, Mr. Jordan.

8    MR. JORDAN:  Thank you.  To the extent that there will be

9    inquiry in the process, I assume that the inquiry is going to be

10   related only to Montello, that there will not be some back door

11   representation or back door assertion that punitive damages

12   apply against my client also since they're not in there.

13   THE COURT:  I think that's a fair assumption that that

14   should be the way this matter would proceed, and I'm sure that

15   if you are of the view something untoward is being said or done,

16   that you'll stand up like a shot.

17   MR. JORDAN:  You will probably see me stand up on a few

18   occasions during this trial, Your Honor.

19   THE COURT:  Okay.  Then we next discussed Montello's motion

20   with respect to a preliminary offer of proof re punitive

21   damages.  And that motion is denied.

22   Next in order was the motion in limine with respect, I

23   believe it was Plaintiff's, around the issue of proximate cause,

24   and I think it's fair to say that I am granting that in part and

25   denying it in part.  Let me explain further what I mean by that.

26   Very specifically, evidence, testimony or reference to

27   proximate cause on the issue of causation or as it relates to

28   causation is excluded.  However, I do not disagree with the

1   Defendants about the breadth of Plaintiff's request.

2       And we all know what the law says, what the primary case law

3   has established, as well as how the jury instructions are

4   framed, substantial factor, et cetera.  That is the law, and

5   that's what I expect you to inquire about.  Okay.

6       And again, you guys have done this more often than I have,

7   so I expect you to follow the law and to play fair.  And if you

8   don't, I know that either side will jump up and request a side

9   bar and we'll take care of it, but I would hope that would not

10  happen.  This is so basic.  So that's my feeling about it.

11      Next we had the I believe it was Plaintiff's motion to

12  preclude any statements about ambient or background exposure,

13  and this is my ruling with respect to that:

14          "Evidence, testimony or reference concerning

15          ostensible ambient or background exposure to

16          asbestos and/or that all people in the general

17          population breathe asbestos and have asbestos

18          fibers in their lungs is admissible."

19      So in effect I am denying that motion.

20      And then the last matter was the I believe Defendant's

21  motion with respect to the mentioning of mesothelioma.  And let

22  me say that I am denying the motion, but I just want to note,

23  and I reviewed the transcript with some care, that to the extend

24  that Defendants were concerned about the issue of the fear of

25  developing mesothelioma on Mr. Lyman's part, that we have a very

26  clear statement on the record that Plaintiffs do not intend to

27  put on evidence that Plaintiff fears getting mesothelioma.

28      And I am holding you to that statement, Mr. Brayton.

1    **MR. BRAYTON:** Thank you, Your Honor.

2    **THE COURT:** I am aware that as you present experts that

3    experts in talking about the science associated with asbestos

4    may indeed make mention of mesothelioma, but we all know that's

5    not an issue in this case, so don't pound it. Okay? If it's --

6    I don't know what else to tell you. I think you get my drift.

7    So that's my view about that particular motion.

8         So let's talk about some -- Well, tell me about the

9    questionnaire. Is that a done deal between the two of you at

10   this point?

11   **MR. JORDAN:** Yes, Your Honor.

12   **THE COURT:** So it just requires the teacher's review, and

13   that's me. Is that right?

14   **MR. JORDAN:** Yes, Your Honor. May I approach?

15   **THE COURT:** Okay. If you'll make sure I have a copy of it,

16   and I would hope that I will not have any particular concerns

17   about it, but it's subject to my approving it ultimately. Is

18   there anything that you would like to say on the record about it

19   or bring to my attention? I'd be happy to hear from you.

20   **MR. JORDAN:** Your Honor, the only thing that I would like to

21   bring to your attention associated with the questionnaire is

22   that, as the Court has ordered, we are to provide additional

23   pared down lists, and that affects attachment or Exhibit A to

24   that. There's no argument or question. It's just a listing of

25   names, and that will have to be attached also.

26   **THE COURT:** Thank you. You anticipated one of my questions,

27   Mr. Jordan, and thank you. That needs to be done so that when

28   we go forward with jury selection the jurors will know who might

1  possibly be involved with this matter and it usually is attached

2  as Attachment A.

3      And it's my understanding that Mr. Brayton and his

4  colleagues are going to be arranging for the copying of the

5  questionnaires and the attachment of that list.  Okay.  So good.

6  Thank you.  I'm pleased that you all were able to accomplish

7  that.

8      Let's talk about trial estimate.  What I'm thinking is you

9  may need to digest the rulings I've made this morning because

10  that might affect what each of you intends to do, and I

11  understand that.

12      As you can well understand, from our point of view that the

13  trial estimate time is so very important as we begin to select

14  the jury and deal with issues of hardship.  And just for

15  Mr. Jordan and Ms. Krow's sake, we talked a little bit yesterday

16  about my concerns that we're in the middle of a big vacation

17  month and going back to school, and weddings, and who knows what

18  so that that can have its impact on jury selection.

19      So I am ordering 180, I'll tell you that.  That will be our

20  first group, and it's my great hope that out of that we will be

21  able to glean sufficient jurors including alternates.

22      Is anybody prepared to say anything further about estimates

23  today or right now?  I know that there had been an estimate made

24  of 6 to 7 weeks on the part of Plaintiffs, and you all may know

25  that we are dark largely on Wednesdays with the exception of

26  actual deliberations by the jury.  So is anybody able to speak

27  to that further?

28      MR. JORDAN:  I would be glad to comment on that, Your Honor.

1  Being the eternal optimist, and still not seeing the pared down

2  list, but knowing pretty much what I think is going to happen

3  having lived with this case during the discovery process, I

4  think six to seven weeks is a gross overestimation of what we're

5  really looking at.

6      I think it's probably three weeks, say four weeks to be

7  safe.  I just don't see it in the witnesses, the numbers of

8  witnesses given the rulings of the Court so far.  I see at least

9  for us probably six or seven witnesses and them, if they have

10 six or seven, I'd be kind of surprised too, other than

11 depositions, which I do want to talk about at some point.

12     I don't think we'll be that long.  Mr. Purcell is not here.

13 They may disagree with me.  I don't agree with Plaintiff's

14 counsel on some things.

15     **THE COURT:**  Mr. Brayton, anything further you wanted to say

16 on that score?

17     **MR. BRAYTON:**  Only that between the Court's rulings and the

18 fact we have one defendant down and likely another one down,

19 we're probably on the six end of the six to seven weeks at this

20 point perhaps heading lower, but I wouldn't be prepared to go

21 below six at this point.

22     **THE COURT:**  Okay.  Mr. Jordan, why don't you go ahead and

23 make your inquiry about the deposition testimony issue which was

24 on my list as well, sir.

25     **MR. JORDAN:**  Thank you, Your Honor.  What I would propose,

26 we note that there are a number of instances where Plaintiff

27 have listed witnesses to be testify by deposition which would

28 presume their unavailability, et cetera under California law.

1    Candidly, Judge, this is no great shock to either of us, but
2  we both have depositions in the can.  What I would recommend or
3  suggest to the Court and opposing counsel is that we exchange
4  the depositions that we want to use over the weekend and do our
5  designation and be done with it.

6    There are probably some that we may still have to argue
7  about and whether or not Union Carbide was adequately
8  represented and those type of issues, and I think once we get
9  the pared down list it's going to be even better, but I'd rather
10 get that done sooner rather than later.

11 **THE COURT:**  I absolutely agree with you, and it's been my
12 practice, limited though it may be, to have counsel talk about
13 or advise one another if you will in the first instance about
14 whom they propose to present by way of deposition and to provide
15 the designations and then there can be counter designations as
16 well as any objections and that those need to be ruled on at
17 least 48 hours before any deposition testimony is presented.

18    And it's my expectation, I don't know if I brought out the
19 time line, but I can share that with you later on of what kind
20 of notice I expect counsel to give to one another.  It's
21 standard for this court about who is up next in terms of
22 testimony.

23    And depositions are a very convenient way to fill time when
24 we don't have live witnesses available or there's a glitch in
25 schedules, and I'm a realist.  I know that that is one of the
26 great challenges I think of this case or any case when we are
27 scheduling.  So if we take care of that up front, then you can
28 use the time.

1   Because I do not like, I will not stand for having down

2   time, especially in a long trial where jurors are -- you know,

3   that's job number one.  Other than saying that you all have a

4   fair trial, job number two is that the jurors are not bored,

5   that their time is used well, and that they are having a good

6   experience as citizens who are coming forth to participate in

7   this process.

8       And I tell them that right up front that that's my job, and

9   it's on you if it's not happening, and I'll make that very clear

10  to them.  So I do order you to provide exchanges and

11  designations to one another over the weekend, so I concur in

12  that Mr. Jordan.

13      **MR. JORDAN:**  Your Honor, along those same lines -- I'm

14  sorry.

15      **THE COURT:**  Yes, Mr. Brayton.

16      **MR. BRAYTON:**  If I may, with respect to, as Mr. Jordan

17  indicated, Your Honor, there are some several depositions that

18  are in the can, witnesses that come up repeatedly in cases

19  between our offices or Union Carbide and plaintiffs generally.

20      With respect in particular to Mr. Lyman's deposition, should

21  it be necessary to proceed by that means, that's something sui

22  generis.  That's something that's not in the can.  Preparing

23  page/line designations as respects to him shouldn't be

24  necessary.  That's something that hopefully we'll be given

25  greater leeway in preparation of.

26      **THE COURT:**  Do you want to respond to that?

27      **MR. JORDAN:**  No objection to that, Your Honor.

28      **THE COURT:**  Okay.  I would assume you'd be designating the

1   whole thing.

2      **MR. BRAYTON:** The difficulty is that you have, Your Honor,

3   you have to go through and excise colloquy, objections, those

4   sorts of things. There may be specific testimony that relates

5   to defendants that are no longer in the case.

6      **THE COURT:** It's an editing job. I fully appreciate that

7   and it takes time. That's why it needs to be, the

8   understandings need to be clear, and let's get on it. So if

9   that's the way you're going to proceed, and you may not know

10  that right now, I understand that, but that you have whatever

11  technological wizards lined up to take care of it for you.

12     Yes, Ms. Krow.

13     **MS. KROW:** I apologize for interrupting the process. My

14  hope is that this is brief and we can do it off the record.

15  It's personal.

16     **THE COURT:** Let's go off the record for a moment.

17     (Discussion off the record.)

18     (Ms. Krow exits.)

19     **THE COURT:** Let's go back on the record. Thank you.

20     **MR. JORDAN:** In connection with that, the designations we

21  will provide -- I assume we're going to get the full transcript,

22  not just the cuts.

23     **MR. BRAYTON:** I'm sorry. With respect to...

24     **MR. JORDAN:** Depositions.

25     **MR. BRAYTON:** Sure.

26     **MR. JORDAN:** Because it probably won't be as much a problem

27  for us as it would be for counsel for Montello because they

28  might not have in their inventory the deposition of Dr. Dernehl

1    from 1970, whatever.

2    **THE COURT:**  Do you all have librarians on staff who keep

3    track of all this stuff?

4    **MR. JORDAN:**  It's also on my computer.

5    **THE COURT:**  As long as your computer doesn't crash and burn,

6    you're good.

7    (Ms. Krow returns.)

8    **MR. JORDAN:**  Your Honor, while we're talking about what I

9    guess we can characterize as housekeeping matters, I think

10   another area that I would like to inquire the Court about is the

11   issue concerning exhibits.  I am very cognizant of the Court's

12   desire to keep this running smoothly, and we'll assist the Court

13   in every way that I can possibly do during the trial.

14       One of the ways I found in previous cases that does assist

15   the Court in keeping down the down time is to require counsel to

16   tell other opposing counsel which exhibits are going to be used

17   within 48 hours or whatever.  And let me explain, Your Honor.

18   Although we have not exchanged exhibit lists, I bet I can

19   predict what both of our exhibit lists are going to look like.

20       We will probably kill two or three trees with our exhibit

21   lists, and the reality is is that we all kind of designate

22   everything under the sun, and then a lot of instances the

23   numbers of exhibits are extremely small.

24       What I would suggest to the Court is an order to us saying

25   that if you're going to use an exhibit, tell the other side

26   48 hours in advance or some other period.  If that's too long,

27   we can work on the period.

28       That way what I found is there's a lot of times I have

1  objections to the Plaintiff's exhibits, and we can come before

2  court before the jury gets here and resolve those issues before

3  the jury so that they're not sitting out in the hall so that I

4  don't have to get up during testimony and we're doing side bars,

5  et cetera.  It's just a much cleaner way in my experience of

6  dealing with that issue.

7      **THE COURT:** Do you want to say something about that,

8  Mr. Brayton?  I will give you my thoughts about that.  I concur

9  with a lot of what you just said, Mr. Jordan.

10     **MR. BRAYTON:** I just suggest that it be, rather than

11 48 hours, it would be at the close of business on the court day,

12 two court days preceding the introduction of the exhibit.  So a

13 Wednesday exhibit, it might be Wednesday morning, by the close

14 of business Monday making notification.

15     **THE COURT:** It's going to be sooner than that.  It's going

16 to be sooner than 48 hours, because you're going to do it this

17 weekend and have it done.  You'll have the pared witness list.

18 So all exhibits are required to be reviewed by the opposing

19 parties or party and premarked for identification, and I'd like

20 them indexed in three-ring binders prior to jury selection.

21     And nondocument exhibits including samples will be handled

22 separately.  Deposition transcripts and discovery responses

23 should be deposited with the court but not indexed as exhibits.

24 And that way everybody will know exactly what is going to be

25 required of everybody.

26   . Mr. Jordan, you look like you're about to stand up.

27     **MR. JORDAN:** Actually, I'm about to fall over.  Your Honor,

28 that is going to -- we will do whatever the Court orders

1  obviously, but it will be very difficult.  All of my drilling
2  mud exhibits are presently sitting in Houston, Texas, and they
3  are from here to the wall, and they are in the process of being
4  shipped.  I guess I'll get them tomorrow sometime.

5      THE COURT:  All right.  You should get them over the weekend
6  it sounds like.

7      MR. JORDAN:  I'm hopeful.  It should be.

8      THE COURT:  We'll extend the time for this to happen, but
9  it's certainly my view that for both sides to know what the
10 other is thinking, is planning to use.  Again, it forces people
11 to really think about what they're going to be presenting and
12 that that is a good thing and sometimes promotes resolution.

13     Yes, Mr. Brayton.

14     MR. BRAYTON:  I was going to suggest we have it prior to
15 opening statement that we have in exhibits.

16     THE COURT:  I'm sorry?

17     MR. BRAYTON:  Prior to opening statements; is that a
18 reasonable deadline, rather than prior to jury selection?

19     THE COURT:  Yes.  All right.  We can make it prior to
20 opening statement, and that means the formal opening statement
21 as opposed to the mini opening statement.  Let's be clear about
22 that.  I don't know if Mr. Jordan knows what I'm talking about.
23 Have you heard about it?

24     MR. JORDAN:  I have heard about it, Your Honor.  It's
25 interesting.  I look forward to it.  On the exhibits, obviously
26 what I will be putting into evidence is somewhat dependent on
27 what I see from the Plaintiff.  There may be a little lag time
28 and we may not be filing at exactly the same time.

1    **THE COURT:**  I understand that you are responding in part to

2    what they're presenting.  These rulings are rulings I wish to

3    have taken seriously, but again, I think I'm a realist.  I know

4    that things happen, things change, and the ebb and flow evolves.

5    So I'm cognizant of that.

6        Yes, Ms. Krow.

7    **MS. KROW:**  Your Honor, I just wanted to make sure my notes

8    are clear regarding the deposition and discovery responses.  You

9    did not want those marked and indexed?

10    **THE COURT:**  They don't need to be marked I believe for our

11    purposes, do they, Mr. Chuck?  That just adds more work for my

12    colleagues, and there's so often a mound of paper and it's just

13    not helpful.  But we still need to deal with the designation

14    issue and get that done so that we're ready to roll on that for

15    both sides.

16        And I'm going to let Mr. Chuck tell you what his

17    expectations are, because he is the gentleman who really makes

18    it operate smoothly for all of us, and you should know that I

19    have consummate faith in him.  And if you have questions, he's a

20    very good resource, and anything he thinks I need to know he

21    will bring it to me.

22        Go ahead, Mr. Chuck.

23    **THE CLERK:**  Your Honor, I was going to ask counsel if they

24    have a set of exhibit numbers they want to use.  For example,

25    Plaintiff, do you want to use numbers 1 to 1000 or 1 to 500 and

26    then defense you can use 501 or 1001 and above?

27        You don't have to decide now, but I have an exhibit form I

28    want to send to your offices by e-mail, and then I want you to

1    put your exhibit numbers on them and a description of the

2    exhibit and e-mail it back to me so I can put it on the court's

3    computer system.  This way I can keep track daily of what

4    exhibits have been identified and admitted into evidence, and I

5    can keep an ongoing exhibit list in my computer.

6        I've asked other counsel to do this in the past.  So if I

7    can get your e-mail addresses after we recess today, I can send

8    you a blank form, and perhaps you can start working on the

9    exhibit list.  You don't have to have all of the exhibits marked

10   now.  Any questions on that request?

11       MR. JORDAN:  We will be glad to comply.

12       Your Honor, on exhibits, having tried a number of these

13   cases, I have some observations.  I think you will find, maybe

14   I'm wrong.  I've been wrong many times before.  I think you will

15   find that the lawyers being lawyers, what you're about to get,

16   if you're required to premark and give all of our exhibits now,

17   you're still going to get trees full of exhibit lists because

18   it's very difficult for them and us to predict what's going to

19   happen during trial.

20       And that what has worked with me in the past and other

21   courts is you have this universe from which you can choose and

22   then you tell in advance 48 hours or whatever what I am going to

23   use.  What you end up seeing is that this exhibit list, the

24   exhibits that are actually used is a small, small percentage of

25   what is available.  Does that make sense what I'm saying?

26       THE COURT:  It certainly comports with my experience, that

27   people err on the side of lots of boxes in the courtroom.

28       MR. JORDAN:  Lots of boxes.

1    THE COURT:  And I am also greatly relieved when most of them

2    don't stay with us.

3    MR. JORDAN:  I just hate to make a bunch of work for people

4    when it's probably not going to be too necessary.  For example,

5    this, I suspect if we're going to put on the court's list all

6    the potential exhibits, it's going to number in the thousands on

7    both sides, just to be candid with Your Honor.

8    But the reality is the actual number of exhibits that are

9    going to go back to the jury that will be talked about and

10   discussed at the trial will number in the hundreds probably.

11   THE COURT:  Mr. Brayton, do you want to weigh in?

12   MR. BRAYTON:  I concur.  I expect on the Plaintiff's side

13   typically we're no more than a couple of hundred, but if you put

14   us to everything that we might want to use at the outset, it

15   would be perhaps on the order of magnitude greater than that,

16   so.

17   MR. JORDAN:  Diplomatically stated.

18   THE COURT:  So, Mr. Chuck, is 48 hours advance sufficient

19   for your purposes?

20   THE CLERK:  That's fine, Your Honor.

21   THE COURT:  All right.  So exhibits to be premarked and the

22   information Mr. Chuck requested 48 hours before any use of said

23   exhibits.  Okay.

24   MR. JORDAN:  Thank you, Your Honor.

25   THE COURT:  All right.

26   MR. JORDAN:  You just made my legal assistants extremely

27   happy.

28   THE COURT:  I'm sure.  And it did not cross my mind that you

1  would be putting the stickers on those papers this weekend,

2  Mr. Jordan.  I'd be very impressed if you were.

3      But, Mr. Chuck, was there anything else on your list?

4      THE CLERK:  Not at the moment, Your Honor.

5      THE COURT:  Okay.  You might have more.

6      THE CLERK:  I might have more later on.

7      THE COURT:  Well, it's almost lunch time, and here is what I

8  would like to have happen.  I'm going to ask you to come back

9  around 3:00 o'clock, and I want with you and have you having had

10 exchanged your pared down witness list, go over that.

11     I want you to meet and confer, and you can do that right

12 here about the statement of the case.  I do have statements,

13 proposed statements of the case, I believe one from Union

14 Carbide.  I believe one from Montello.

15     If one got filed, Mr. Brayton, by Plaintiffs, I have yet to

16 find it in the stacks, which isn't to say that it's not there,

17 but given how you guys file stuff, I've not been able to lay my

18 hands on it.  And I've been through what I have more than once,

19 let me put it that way.

20     And I'd really like you to agree.  I suspect you will not

21 care for the statements that have been provided by defense

22 counsel, and if you guys can't figure it out, then I'll do it.

23 But I'm going to give you the chance, and I want it done this

24 afternoon so that I have it for purposes of putting together my

25 opening remarks to our jury panel.

26     And then while I have Mr. Jordan and Ms. Krow here, I want

27 to give you all an opportunity to ask any questions about this

28 mini opening that I've requested the parties to do.  I will tell

1  you, Mr. Jordan and Ms. Krow, that we did this in our last

2  asbestos trial at a time when we thought it would be very

3  difficult to find a group of jurors who would be able to remain

4  with us for the length of time we were anticipating.  And what

5  do I know about "but for" causes.  Cause and effect here.

6      But some of the jurors when we spoke with them after the

7  trial resolved about three weeks into it, we spent about an hour

8  and a half talking to all the jurors together after the case

9  settled, and it was really quite interesting.

10     And several of them did remember what had been said in those

11 statements, and it sort of primed the pump, if you will, and

12 it's an opportunity to get them interested about why they ought

13 to want to be with us for the next however many weeks of their

14 lives while they have many things going on.

15     So it's a mini opening.  It's not argument.  Do not argue.

16 Do not talk about the law.  It's what the evidence is going to

17 show and a little bit about if you want to talk about who you

18 are and ingratiate yourselves, you can do that as well.  But you

19 only have three minutes, so use your time wisely.

20     We'll open up with Plaintiff, and whatever Defendants remain

21 standing on that day need to figure out in what order they want

22 to go.  I have no requirement one way or another.  Actually,

23 what I think we did was draw straws in the last go round.  We

24 had a dramatic drawing out of our wheel, our drum, about who was

25 going to go first.  So if you can't figure out how to do it,

26 that's what we'll do.

27     MR. JORDAN:  I think we'll be able to put our egos in check

28 and do that, Your Honor.

1    THE COURT: And what we'll do is, it's down -- I don't know
2    if you're familiar with 007 which is where I'm planning to do
3    this which is our jury assembly room downstairs in the lower
4    lobby.

5    MR. JORDAN: I have some familiarity with 007, but not in
6    that context.

7    THE COURT: Not in that context, okay. So that's where they
8    are ordered to be present, jurors are when they come in, and I
9    would have you all that day be present at 9:00 a.m., and at 9:30
10   we will all go down to 007.

11   And there will be a table with a podium on it that you can
12   use, but you're to stand at the podium. You're not to prance
13   around the jury assembly room. Let's be clear about that. And
14   there will be I think a hand-held microphone that you can use so
15   that you'll be heard, and I think the acoustics are actually
16   pretty good.

17   What we'll do is we'll have hardship forms that we will give
18   to folks who are claiming a hardship after we've described to
19   them what's going to be going on. And those who do not request
20   a hardship we'll give the questionnaire to them. And they will
21   be then asked to fill out the questionnaire and be excused to a
22   future date which I haven't figured out yet. I'm thinking about
23   it in light of what we're doing between now and then.

24   And then the hardship folks will be asked to remain present,
25   and I will go over those. And, actually, I don't want counsel
26   there. I want to do the hardships. That's my job. That's what
27   the law requires me to do. And I don't need you all; I don't
28   really want you all there.

1    And I just go through those as quickly as I can. Some of

2  them, I will tell you, I will grant just based on what I read in

3  the papers after having admonished them about what the legal

4  reasons are, and they are signing this form under penalty of

5  perjury, as you probably know.

6    And then those whom I think I need to speak with directly

7  because there's either some question, or I think something is a

8  little fishy, then we call them up one by one and I speak with

9  them individually about it.

10    The questionnaires will be provided to Mr. Brayton and his

11  colleagues so that they can make appropriate copies and provide

12  them to counsel, and also the Court. And, Mr. Brayton, I don't

13  know what your firm's practice is, but what I would like to have

14  you do is to put them into binders, and we have samples right up

15  here, and have them numbered, tabbed like per the random list

16  that you will have.

17    **THE CLERK:** I can fax counsel the random list. It will

18  probably be the day after we determine who is coming back.

19    **THE COURT:** Okay. And that just makes it, it's really an

20  easy reference guide for all of us as we are working to see if

21  there are any obvious causes perhaps at the get-go based on the

22  questionnaires or whether we're going to go forward in

23  questioning people.

24    And it's certainly my expectation when we use a

25  questionnaire that counsel should be able to really hone in on

26  the things that you are concerned about, and you're not going

27  all over everything. That's the point of the questionnaire, so

28  don't make me feel like we are starting out as if we didn't do a

1  questionnaire.  That will not make me happy.

2      I will tell you that in this courtroom, you can see the

3  numbering along the back we have chairs that go up to 30.  So

4  that is the usual that way we proceed, that there are 30 folks

5  to be questioned.

6      And then my practice is after we've concluded questioning is

7  to go in the back and talk about any causes, and sometimes we're

8  able to just proceed with perempts and just work it right then

9  and there.  And last time I was just floored when we ended up

10 with the initial 12 out of that first effort.  It was really

11 amazing, so I have no idea what will happen here.

12     The other thing I will do if it's appropriate in light of

13 what we've come up with as a time estimate is that I will use a

14 visual aid downstairs so that folks can see and refer to it as

15 they're thinking about whether or not they are requesting a

16 hardship they can get a sense of what the schedule will be like.

17     And that includes things that we went over when you all were

18 not here, that it will be an 8:30 to 1:30 schedule with

19 refreshments being provided and that they will then have the

20 afternoons free to do other things, pick up kids, whatever it is

21 they have going on in their lives.

22     Wednesdays will be dark with the exception of deliberation.

23 And, again, depending upon what our time estimate is advising

24 them of the days we are dark because I'm not around.  Obviously

25 we'll be closed for labor day, and then there are a couple of

26 other matters that I have already scheduled.

27     And the matter beginning on the 10th of September, I don't

28 know whether I can reschedule that or not, and that goes for the

1   10th, 11th and 12th.  And then you'll see on the 26th I am away

2   on official business.

3       So please think about that as you are looking at trial

4   estimates, because what I want to give the jurors and what they

5   want is the outside date.  Though our crystal ball doesn't

6   include the time for their deliberations, but letting them know

7   and building in the extra time we need for things that happen

8   that are unexpected.

9       But it's important to do that, and they will be ever so

10  happy if you end early, so better to add days now than later.

11  No matter how many times one gives people this information,

12  there are always questions or they forget or they don't

13  understand.

14      This is like falling off a log for all of you, but for them

15  it's not.  And I know you're aware of that, but we just try to

16  find as many ways as we can to convey this information so that

17  they will think about it carefully as they're making their

18  requests of the Court.

19      So I want you back at 3:00 o'clock.  I want you to have

20  dealt with your witness list pared down.  I want you to have met

21  and conferred and hopefully have come up with a joint statement

22  of the case.  I want you to meet and confer and come up with, in

23  light of the pared down witness statement, your estimate of

24  trial length.

25      And it will be my hope that I can review the questionnaire.

26  I have a noon meeting, but my job will be to look at what you've

27  presented by way of the questionnaire and be able to let you

28  know where I stand with that and also be able to give you my

1  ruling on the motion that you argued at the outset this morning.

2      Mr. Chuck, is there anything else that you would like to

3  have from counsel when they return this afternoon?

4      THE CLERK:  No.  You covered everything, Your Honor.  Thank

5  you.

6      THE COURT:  So anybody have a question or anything you'd

7  like to add to the list?

8      MR. JORDAN:  Yes, Your Honor.  One question I want to make

9  sure we're all on the same page by what you mean by witness

10 list.  There are depositions and then there are the live

11 witnesses.  I'm presuming what you're asking for is our pared

12 down witness list of people we expect who are actually going to

13 be called live to testify at trial, and we'll deal with the

14 depositions through some other mechanism.  Is that a correct or

15 not correct understanding?

16     THE COURT:  I'd like to know whom you're planning to present

17 by way of deposition testimony as well, and you can have two

18 separate witness lists, but we certainly want to know who is

19 appearing.

20     MR. JORDAN:  Yes.  What I do on the deposition is largely

21 dependent on what I get from them.

22     THE COURT:  Right.  I understand that, but if you know of

23 any deposition testimony now that you know you're going to be

24 putting in as part of your case in chief, then let's have it.

25     MR. JORDAN:  Thank you, Your Honor.

26     THE COURT:  Mr. Brayton, are we clear?  Any questions at

27 your end?

28     MR. BRAYTON:  No, Your Honor.

1    THE COURT:  All right.  So you're welcome to work here or in

2    the settlement conference room that's outside the courtroom, and

3    I will look forward to hearing your results at 3:00 p.m.  So we

4    are in recess until that time, and thank you all.

5        (Proceedings adjourned at 12:03 p.m.)

6                    ---oOo---

7    AFTERNOON SESSION                              3:05 P.M.

8        THE CLERK:  Remain seated.  Court is back in session.

9        THE COURT:  Welcome back, everybody.  So my to-do list is as

10   follows:  To learn about where you are with your statement of

11   the case, try to nail down trial estimates, hear about pared

12   down witness list, the questionnaire, and to rule on Motion in

13   Limine number 24 from Union Carbide.  And perhaps you have other

14   things, but that's what's on my list.

15       So taking them out of order, having heard your arguments,

16   considered your papers and reflected over the lunch hour, I am

17   denying the Motion number 24.  All right.  So do we have a

18   statement of the case?

19       MR. BRAYTON:  We do, Your Honor.  It's in longhand at this

20   point, but it will be reduced to typewritten.

21       THE COURT:  Would you care to read it to me?

22       MR. BRAYTON:  Sure.

23          "This is a civil trial.  The Plaintiffs are

24          Robert F. Lyman and Samantha Lyman.  The

25          Defendants are Union Carbide Corporation;

26          Montello, Incorporated; Honeywell International,

27          Incorporated; and Freightliner, LLC.

28          "Plaintiffs claim that Mr. Lyman has suffered

LAURA MARTINEZ, CSR NO. 11332

1    injuries as a result of exposure to asbestos

2    from products manufactured, distributed or sold

3    by Defendant.  Defendants claim that Mr. Lyman

4    was never exposed to their products and that

5    their products were not involved in causing

6    Plaintiff's injuries."

7    THE COURT:  All right.  Let me hear from all of the

8    assembled players whether they agree with that statement.

9    MR. JORDAN:  No objection, Your Honor.

10    THE COURT:  Very well.

11    MS. MROWKA:  No objection, Your Honor.

12    THE COURT:  And you, sir?

13    MR. OSTHIMER:  No objection, Your Honor.

14    THE COURT:  Very well, then.  That's what we will read to

15    the jury.  Thank you.  Well done.

16    Pared down witness list.

17    THE COURT:  Have they been pared?

18    MR. BRAYTON:  On behalf of Plaintiffs, first let me say that

19    the Court's perception that our witness list appears to be

20    unduly lengthy may have been the result of our witness list

21    being a consolidated witness list which included all potential

22    defense experts.

23    So to allay the Court's anxiety, a fraction of the witnesses

24    listed are witnesses that the Plaintiffs intend to call.  There

25    are people in my office that are working on producing the list

26    that would confine itself to only those that the plaintiffs

27    intend to call and provide the additional information that the

28    Court has asked for regarding a brief synopsis and time

1  estimate.

2      I keep looking at my computer to see if that's arriving.

3  It's been promised, and it's not here yet.

4      THE COURT: Are you telling me it's in the mail, in the

5  e-mail?

6      MR. BRAYTON: I would like to think it's out there in the

7  ether some place, but I suspect it's still...

8      THE COURT: They're churning it out.

9      MR. BRAYTON: Yes.

10      THE COURT: Well, I'm glad it's under way. Mr. Jordan, how

11  about you, sir?

12      MR. JORDAN: Your Honor, we have done ours with the thought

13  of what we think the Plaintiffs are going to have on theirs.

14  And obviously we can't really give a final one until we see what

15  the plaintiffs have done. Ours is being delivered as we speak

16  subject to an edit by myself.

17      I will actually do it here. I forgot my printer. We will

18  get them to you subject to the possibility that we may need to

19  add additional witnesses in connection with people that the

20  Plaintiffs list that we don't anticipate.

21      THE COURT: Thank you. And what's Montello's? You've

22  submitted your list and your descriptions. You're at the head

23  of the class.

24      MS. MROWKA: Yes. I got my gold star.

25      THE COURT: And...

26      MR. OSTHIMER: We submitted a pared down list, and I notice

27  some of the witnesses are duplicative. I don't know how the

28  Court wants to deal with just eliminating them.

LAURA MARTINEZ, CSR NO. 11332

1    THE COURT:  Well, what we need is to put them we merge,

2  purge whatever you want to call it, put them together certainly

3  for purposes of the jury questionnaire and getting responses

4  from potential jurors.  So maybe all of this will arrive while

5  we are here, but we'll deal with that.

6       Let's talk about trial estimate time.  Have you had further

7  conversations, or are you still in light of the status of your

8  respective witness lists pondering that issue?

9    MR. BRAYTON:  For Plaintiffs, Your Honor, I'm not in a

10  position to retreat from the six weeks, although it's my

11  understanding that another defendant may be close to biting the

12  dust.  That may allow us to foreshorten things again by a little

13  bit.

14    THE COURT:  All right, and I assume you stand firm on your

15  earlier representations, Mr. Jordan; is that right?

16    MR. JORDAN:  I still believe this case can take three to

17  four weeks.

18    THE COURT:  Thank you.  We'll come back then to the time

19  estimate and the witness list in a moment.  I did go through the

20  questionnaire, and I just want to make sure that you all are

21  aware of what I had.  Is this the document that says Proposed

22  Joint Defense Juror Questionnaire?

23    MR. JORDAN:  Yes, Your Honor.  That is the document.

24    THE COURT:  Okay.  So I do have some proposed changes for

25  you all, and I don't think we really need to put this on the

26  record, Ms. Martinez, so we can give you bit of a break here.

27       (Discussion off the record.)

28    THE COURT:  We're back on the record.  We've been talking

1   about a variety of logistical issues.  We've talked about the

2   jury questionnaire and the matters that I had some concern

3   about.  We've gone through it page by page, and it appears the

4   laboring oar in crafting a revised questionnaire will be taken

5   up by Ms. Krow and Mr. Jordan, and they will incorporate since

6   they have the template the changes in the document and will make

7   that available to everybody on Monday so that we can go through

8   it again and make sure that we're all on the same page.

9         I've notified counsel today that we are going to have our

10   panel of 180 jurors in on Tuesday, July 17th and that we will

11   begin doing the hardship process on that day down in 007.  They

12   know when they need to be there and that we will be doing the

13   mini statements that we've talked about previously.

14         I've also informed counsel that it's my expectation that we

15   will on Wednesday the 18th use that time to talk about the juror

16   questionnaires, see where we are, whether we think we need to

17   bring in another panel or whether we have enough to work with in

18   our efforts to find an appropriately sized jury plus alternates.

19         And I further advise counsel that it will be my expectation

20   that we will begin questioning of jurors on the 20th of July,

21   and that will be up here in this department.  Yes, sir?

22       **MR. OSTHIMER:**  I'm sorry.  You said the 20th, your Honor?

23       **MS. KROW:**  Of July.  I think you mean August.

24       **THE COURT:**  I'm sorry.  I'm looking at the July calendar.

25   Excuse me.  Yes, the 17th.  Thank you for focusing me.  It is

26   Friday afternoon.  So it will be the 15th of August which is a

27   Wednesday where we will talk about the questionnaires.  It's the

28   14th when we will be having our panel in and the 17th will be

1  the day that we will begin our questioning of those folks who

2  filled out questionnaires with the proviso that we may be

3  needing to do additional hardshipping on the 16th of August, but

4  we don't know that yet.

5      MR. JORDAN: Your Honor, additional scheduling matters that

6  might be of some assistance, looking at the calendar and how the

7  court has laid our week out for us, it would seem that in all

8  likelihood the opening statements would not commence until the

9  20th at the earliest.

10     The reason I make that issue and talk about that is I think

11 both sides will probably have a lot of technology that needs to

12 be brought into the courtroom for opening statements, presenter,

13 video recorder presenters and things like that, and I wanted to

14 see, make sure we built in some time for us to get that stuff

15 set up so you don't have it cluttering your courtroom all the

16 time.

17     THE COURT: Well, I think that it is an excellent idea and

18 one that we try to implement on a regular basis if there's going

19 to be video or high tech equipment used in the course of the

20 trial to have folks have access to the courtroom so that you can

21 make sure it's in place and all is ago. It's nothing more

22 embarrassing than flicking the switch and nothing happens. So

23 we will aim to build that in.

24     I don't see how we would get to openings on the 17th. That

25 would be my expectation. I would hope we will certainly get

26 under way on the 20th, and what we can do is think about when we

27 order the jury back, the time of day on that particular day and

28 maybe build in a little bit of extra time for equipment to be

1  brought in early that morning to make sure that everything is up

2  and running.

3      And let me just, now that you've mentioned openings and

4  equipment is that anything that you are planning to use as a

5  visual aid or what have you during your openings, I'd expect you

6  to have shared it with the other side before it's used, and if

7  there are any concerns, that that be raised with me in a timely

8  fashion.

9      MR. JORDAN:  In that vein, Your Honor, what I would request,

10  having been in the situation before, what generally happens now

11  even more than I've seen ten years ago is everybody has their

12  own Power Point and things like that.

13      THE COURT:  It's always interesting to see the technology

14  generations is what I will call them.

15      MR. JORDAN:  I have some animations I intend to show the

16  jury that I will be glad to show opposing counsel.  The question

17  though is what always seems to happen if you don't plan this out

18  is we're sitting here at each other's computers ten minutes

19  before our opening statements looking at them.

20      That doesn't work very well because of the technology built

21  in if, for example, I have an objection to his or he has an

22  objection to mine and you rule favorably against that objection

23  and favor that objection, now you've got to figure out how to

24  deal with that on the fly.

25      THE COURT:  What I would propose is in terms of bringing in

26  equipment, let me tell you, we have had exhibits in a maritime

27  case and a Jones Act case and we've had all kinds of things in

28  this courtroom over the last few months, so we've all learned

1  how to live with it.

2     I'm just very concerned about losing time, and so Wednesday

3  could be a day in which you bring your stuff in, we set it up,

4  and make sure everything is in order and you can show each other

5  what you're intending to provide.

6     THE COURT:  Yes, Ms. Krow.

7     MS. KROW:  To facilitate that happening on Wednesday, might

8  I request if our IT folks could simply come and look at what is

9  available in the courtroom possibly on Monday and contact

10 Mr. Chuck to set that up, that would make Wednesday a much more

11 efficient process.  They will know what to bring.

12    THE COURT:  I have no problem with that at all.  Is that

13 okay, Mr. Chuck?  Do you concur?

14    THE CLERK:  No problem.

15    THE COURT:  So this Monday you can arrange for those folks

16 to come in.  There will be opportunity do that, and you could

17 certainly talk about it before Wednesday.  I don't care when you

18 do it, just do it so that I can then deal on Wednesday with any

19 objections and we won't have jurors here with us, but that will

20 give us an opportunity to talk it through.

21    MR. JORDAN:  That's fine, Your Honor.  I should have

22 everything put together by Wednesday, although knowing how trial

23 lawyers are, I suspect there may be some last minute adjustments

24 on both sides.

25    THE COURT:  I don't know what you could mean.

26    MR. JORDAN:  If this is on the record, I guess I shouldn't

27 say that.

28    THE COURT:  When we're done you can say whatever you want to

1  say. So, Mr. Brayton, that goes for you guys, too. I don't

2  know what your...

3  MR. BRAYTON: Mr. Purcell is rather low tech in opening

4  statement, but certainly any visual aids that he intends to

5  employ he'll share with counsel timely.

6  MR. JORDAN: Timely means Wednesday?

7  THE COURT: Yes. If you want to use it, it needs to be

8  reviewed by counsel on Wednesday and me, and thereafter if you

9  don't bring it forward, then you can't use it okay.

10  How about what kind of equipment? Could we just have a

11  preview. Do we know what kind of equipment we're talking about?

12  MR. JORDAN: I believe I can, your Honor. The type of

13  equipment that I would anticipate, I see that the court has a

14  string. In all likelihood there will be a video projector that

15  will be attached to the computers. We will in all likelihood

16  have a separate screen and for the Court so that the Court can

17  see things.

18  We will probably also have an Elmo, and that Elmo will be

19  able to be toggled back and forth with the projector such that

20  if we want to look at a document in a hard copy format we can do

21  it.

22  On the Elmo my as not participation in the way I've done a

23  lot of trials recently is the old days of handing publishing

24  documents to the jury is not very effective and that most of the

25  time if it on a screen if it's something we're going to talk

26  about with the jury.

27  We will have various software, Trial Presenter software

28  and/or Sanction software such that you can highlight portions of

1    a particular document that's in evidence, blown up so that it's
2    readable, that type of thing.  I don't anticipate any
3    significant demonstratives.  Although I'd be glad to bring my
4    oil rig in here if you want it, but since Mr. Lyman never worked
5    around an oil rig I don't think it's necessary.
6        So I think that's about it.  Sometimes we'll just have to
7    see what the tech people see.  This courtroom is well situated.
8    I've had situations where we have had to put a separate monitor
9    by the jury panel because they can't see over here.  I suspect
10   we'll have a monitor for the witness, a monitor for both
11   counsel.  We will make sure all that gets put in and put it in a
12   good fashion.  Possibly a table.
13       I'm sure that the Orrick people will try to figure out some
14   way of getting Internet access.  That's been helpful in a number
15   of cases for me to have internet access in trial.
16       THE COURT:  What are you doing on the Internet during trial,
17   Mr. Jordan; should I ask?
18       MR. JORDAN:  Yes.  Actually I was cross-examining an
19   epidemiologist in Paris County, Texas and he and I were arguing
20   about what a particular document said and I found it on the
21   internet and showed it to him.
22       THE COURT:  Are you ready Mr. Brayton?  Anybody else want to
23   say anything about your equipment or tech issues that we should
24   be apprised of?  No.  Okay.  All right.  So I think that
25   concludes our business.  And let's have everybody back Monday.
26   What why don't we make it 10:30.  You can sleep in.
27       MR. OSTHIMER:  I wish.
28       THE COURT:  We will see you then, and we'll try to wrap up

1   some of these things.  We are certainly here well before then,

2   and if you have some sense on when it's convenient for your IT

3   folks to come if you will give a courtesy call to Mr. Chuck

4   he'll do his very best to find a convenient time in light of

5   what he may have on his plate on that day.  We just never know.

6   Anything else from anybody?  Have a good weekend.  See you

7   Monday.  Thank you.  We're in recess.

8        (Proceedings adjourned at 3:56 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | State of California        )
                             )
2 | County of San Francisco  )

3

4

5     I, Laura Martinez, Reporter Pro Tempore for the Superior

6 Court of California, County of San Francisco, do hereby certify:

7     That I was present at the time of the above proceedings;

8     That I took down in machine shorthand notes all proceedings

9 had and testimony given;

10     That I thereafter transcribed said shorthand notes with the

11 aid of a computer;

12     That the above and foregoing is a full, true, and correct

13 transcription of said shorthand notes, and a full, true and

14 correct transcript of all proceedings had and testimony taken;

15     That I am not a party to the action or related to a party or

16 counsel;

17     That I have no financial or other interest in the outcome of

18 the action.

19

20

21 Dated:  August 14, 2007.

22

23

24 _Laura Martinez_

25 LAURA MARTINEZ, CSR NO. 11332

26

27

28