1  CATHERINE MORRIS KROW (State Bar No. 208412)
   NATASHA R. CUPP (State Bar No. 240939)
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
3  405 Howard Street
   San Francisco, CA  94105-2669
4  Telephone:   (415) 773-5700
   Facsimile:    (415) 773-5759
5  ckrow@orrick.com
   ncupp@orrick.com
6
   Attorneys for Defendant
7  UNION CARBIDE CORPORATION

8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                          OAKLAND DIVISION
11

12
   ROBERT F. LYMAN and SAMANTHA       Case No.  C 07-4240 SBA
13 LYMAN,
                                      **UNION CARBIDE CORPORATION'S
14           Plaintiffs,              OPPOSITION TO PLAINTIFFS'
                                      MOTION TO EXPEDITE TRIAL
15     v.                             SETTING**

16 ASBESTOS DEFENDANTS (B*P), *et al.*,   Date:      October 16, 2007
                                          Time:      1:00 p.m.
17           Defendants.                  Courtroom: 3, Third Floor, Oakland
                                          Judge:     Hon. Saundra B. Armstrong
18

19

20

21

22

23

24

25

26

27

28

OHS West:260307836

UNION CARBIDE'S OPPOSITION TO
PLAINTIFFS' MOTION TO EXPEDITE TRIAL
CASE NO. C 07-4240 SBA

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION / STATEMENT OF THE ISSUES TO BE DECIDED ..................... 1

II. FACTUAL BACKGROUND .......................................................................................... 2

III. ARGUMENT ..................................................................................................................... 4

    A. Plaintiffs' Motion To Expedite Trial Setting Is Procedurally Improper And Should Be Denied On Procedural Grounds .................................................. 4

        1. Plaintiffs' Motion to Expedite Trial Setting Was Improperly Noticed in Violation of Civil Local Rule 7-2 ........................................ 4

        2. Plaintiffs' Motion to Expedite Trial Setting Neither Sought To Shorten Time Nor Included a Stipulation by the Parties to the Hearing Date ........................................................................................ 4

    B. Plaintiffs' Motion To Expedite Trial Setting Should Be Denied In The Interest Of Judicial Economy Because There Remain Pre-Trial Issues For The MDL To Oversee; Therefore, The MDL Panel Is Likely To Transfer The Case ............................................................................................................. 5

        1. Plaintiffs' Claim That There are No Pre-Trial Issues Left for the MDL Court To Oversee Is Incorrect ..................................................... 6

            a. Individual settlement negotiations and conferences are coordinated pre-trial proceedings over which the MDL court has authority ......................................................................... 6

            b. Interlocutory state court orders are subject to reconsideration by the federal courts ................................................................ 7

        2. The Pre-Trial Issues Presented by This Case and Questions Regarding the Propriety of the MDL Court's Jurisdiction Over the Matter Are Best Resolved by the MDL Panel ............................................ 8

        3. Plaintiffs' Claim that Union Carbide Is Seeking to Unduly Delay the Trial Is Unfounded .................................................................... 8

IV. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*In re Asbestos Products Liab. Action (No. VI)*,
   771 F. Supp. 415 (J.P.M.L. 1991) ............................................................................. 8

*Granny Goose Foods, Inc. v. Teamsters*,
   415 U.S. 423 (1974) ................................................................................................ 7

*In re Patenaude*,
   210 F.3d 135 (3d Cir. 2000) ............................................................................ 6, 7, 8

*In re Plumbing Fixture Cases*,
   298 F. Supp. 484 (J.P.M.L. 1968) ........................................................................... 7

*Preaseau v. Prudential Ins. Co.*,
   591 F.2d 74 (9th Cir. 1979) ................................................................................. 7, 9

## FEDERAL RULES

Fed. R. Civ. P. 16(a)(5) ..................................................................................................... 6

## MISCELLANEOUS

15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
   Practice & Procedure ............................................................................................. 7

Federal Judicial Center, Manual for Complex Litigation – Fourth (2004) .................. 6, 8

Defendant Union Carbide Corporation ("Union Carbide") hereby files this memorandum of points and authorities in opposition to Plaintiffs' motion to expedite trial setting.

## I. INTRODUCTION / STATEMENT OF THE ISSUES TO BE DECIDED

Union Carbide respectfully requests that the Court deny Plaintiffs' procedurally-defective motion to expedite the trial setting. Denying the motion on procedural grounds is appropriate because Plaintiffs have made no attempt to abide by the Civil Local Rules and, in so doing, have compromised Union Carbide's ability to adequately and timely oppose the motion. Rather than set the motion for a hearing on the requisite 35 days notice or comply with any of the procedures necessary to set the motion for a hearing on an expedited time frame, Plaintiffs simply tacked this entirely new motion to an opposition brief, leaving Union Carbide in the catch-22 position of having to oppose on shortened time or risk waiving its response. Plaintiffs should not be rewarded for ignoring the procedures all other litigants must respect.

Should the Court be inclined to hear Plaintiffs' motion despite its many procedural improprieties, Union Carbide respectfully requests that the Court deny the motion on the merits. Plaintiffs' request to expedite the trial is premised on the faulty assumption that there remains nothing left for the MDL court to do and, thus, that the MDL Panel will vacate the conditional transfer order that has already been issued in the case. Plaintiffs are mistaken on both counts. There remain significant pre-trial issues for the MDL court to oversee, including but not limited to settlement negotiations and conferences (one of the most critical functions of an MDL court), reconsideration of summary judgment rulings under now-applicable federal standards, and resolution of *Daubert*-related expert and causation questions that come into play when the case enters federal court. Indeed, those issues must be addressed before this case can proceed to trial in *any* federal court, including this one.

The existence of these and other pre-trial issues weighs in favor of transfer to the MDL court. Accordingly, denying Plaintiffs' motion to expedite the trial setting would serve judicial economy by preserving this Court's judicial resources for cases not likely to be transferred to another district. Further, the best arbiter of the MDL court's authority over this case – namely the MDL Panel – will soon decide whether to transfer the case to the MDL court.

Thus, if the motion to expedite is granted, the parties and the Court may waste substantial time and effort engaging in duplicative briefing of the remaining pre-trial issues, or, worse, beginning down the path of trial only to have the case transferred by the MDL Panel mid-stream.

## II. FACTUAL BACKGROUND

On or about December 29, 2006, Plaintiffs filed an asbestos products liability suit in the Superior Court of the State of California, County of San Francisco, entitled *Robert Lyman and Samantha Lyman v. Asbestos Defendants (B\*P), et al.*, San Francisco Superior Court Case No. CGC-06-459162. In their state pleadings, Plaintiffs Robert F. Lyman and Samantha Lyman ("Plaintiffs") alleged that exposure to defendants' asbestos and/or asbestos-containing products caused Mr. Lyman's lung cancer. Notably, Mr. Lyman admits that he smoked up to two packs per day for over 50 years, and he did not quit smoking even after being diagnosed with cancer. (Decl. of Catherine Morris Krow filed concurrently herewith ("Krow Decl."), Ex. A.) Union Carbide believes that Mr. Lyman's cancer is the result of his extremely heavy smoking history, and that Mr. Lyman was never exposed to any Union Carbide asbestos.

After being thoroughly examined over the course of several days of deposition, Mr. Lyman was unable to identify even one asbestos-containing product that he worked with or around that could have contained Union Carbide's Calidria asbestos. (Notice of Removal, Ex. 2.) On that basis, Union Carbide moved for summary judgment. After Union Carbide moved for summary judgment, Mr. Lyman proffered a declaration that completely changed his sworn testimony. (*Id.*) In light of Mr. Lyman's eleventh-hour declaration, the state court denied Union Carbide's motion for summary judgment;[1] however, it did grant summary adjudication and dismissed Plaintiffs' unsupported claims for false representation and punitive damages. (Krow Decl., Ex. B.)

On August 17, 2007, Union Carbide timely removed the case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, based upon the existence of complete diversity between

///

---

[1] Union Carbide subsequently filed a petition for writ of mandate, which was denied without substantive review by the California Court of Appeal on August 3, 2007.

1    Plaintiffs and the remaining defendants. On August 20, 2007, Union Carbide also filed a Notice

2    of Tag-Along Action with the MDL Panel that complied with all applicable procedures.[2]

3            At the time of removal, Union Carbide had not received consent to remove from

4    one defendant, Honeywell International, Inc. ("Honeywell"). In its notice of removal, Union

5    Carbide explained that Honeywell's consent should not be required in this case because

6    Honeywell is a "sham" or "nominal" defendant. (Notice of Removal ¶ 23.) On Tuesday, August

7    21, 2007, Plaintiffs filed a motion to remand the case to San Francisco Superior Court. The

8    hearing on Plaintiffs' motion to remand was scheduled for October 16, 2007. (Renotice of Mot.

9    and Mot. to Remand Case to Cal. Superior Court 1:20-26.)

10           On August 24, 2007, Union Carbide filed a Motion to Stay the Case Pending

11   Transfer to MDL-875. Union Carbide requested the Court to stay the case pending transfer to the

12   MDL court so that the remand issue could be resolved by that court for reasons of consistency

13   and judicial economy. (Mot. to Stay Case Pending Transfer to MDL-875 2:4-14.) The hearing

14   on Union Carbide's request for a stay was also noticed for October 16, 2007. (*Id.* at 1:1-9.)

15           On August 30, 2007, Honeywell filed a written consent to removal with the Court.

16   On September 5, 2007, less than 30 days after the case became removable to federal court, Union

17   Carbide filed a motion to amend its Notice of Removal to reflect Honeywell's recent consent.

18   (First Am. Notice of Removal ¶ 17.)

19           On September 17, 2007, Plaintiffs filed an Opposition to Motion to Stay Case;

20   Motion to Withdraw Motion to Remand and to Expedite Trial Setting. This filing appears to

21   notice the date for the hearing on two entirely new motions – Motion to Withdraw Motion to

22   / / /

23   / / /

---

[2] Plaintiffs accuse Union Carbide of having a "material omission of fact" in its tag-along notice because the notice did not state that there are "no pre-trial issues remaining in this case." (Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 2:24-3:3.) Not only do Plaintiffs cite no authority for the proposition that such a statement would be required in any tag-along notice, but as discussed further below, see Section IV.B.1., *infra*, their bold conclusion that no pre-trial issues remain is demonstrably false. Further, Plaintiffs conveniently forget that at the time the tag-along notice was filed, their own motion to remand was looming on the horizon. Such a motion is surely a pre-trial matter that remained in the case when the notice of tag-along action was submitted.

1  Remand and to Expedite Trial Setting – for October 16, 2007. (Mot. to Withdraw Mot. to
2  Remand and to Expedite Trial Setting 1:16-19.)[3]

## III.   ARGUMENT

### A.   Plaintiffs' Motion To Expedite Trial Setting Is Procedurally Improper And Should Be Denied On Procedural Grounds

Plaintiffs have attached to their opposition to Union Carbide's motion to stay an entirely new motion to expedite the trial setting. This motion has been offered in direct contravention of Civil Local Rule 7-1(a), which provides only three mechanisms by which Plaintiffs can present a written motion to the Court for the requested order: (1) a duly noticed motion with the Court pursuant to Civil L.R. 7-2; (2) a motion to enlarge or shorten time pursuant to Civil L.R. 6-1; or (3) a stipulation of the affected parties pursuant to Civil L.R. 7-12. Civil L.R. 7-1(a). Plaintiffs have made no attempt to comply with any of these requirements.

#### 1.   Plaintiffs' Motion to Expedite Trial Setting Was Improperly Noticed in Violation of Civil Local Rule 7-2

Civil Local Rule 7-2(a) requires that "all motions must be filed, served, and noticed in writing on the motion calendar of the assigned Judge for hearing ***not less than 35 days after service of the motion.***" Civil L.R. 7-2(a) (emphasis added). Plaintiffs' motion to expedite the trial setting was filed and served on September 18, 2007, yet Plaintiffs apparently noticed the motion for hearing on October 16, 2007.[4] Accordingly, despite the clear dictates of Civil Local Rule 7-2(a), Plaintiffs provided only 28 days notice of the hearing on the motion to expedite the trial setting.

#### 2.   Plaintiffs' Motion to Expedite Trial Setting Neither Sought To Shorten Time Nor Included a Stipulation by the Parties to the Hearing Date

Under the Civil Local Rules, Plaintiffs' failure to file a duly noticed motion could

---

[3] Union Carbide does not oppose Plaintiffs' motion to withdraw the motion to remand. Accordingly, the remainder of this brief is devoted to Union Carbide's opposition to Plaintiffs' motion to expedite the trial setting.

[4] Plaintiffs did not actually provide notice of the motion as is required under Civil Local Rule 7-2(b)(2). Therefore, the only information regarding the noticed hearing date and time was provided on the first page of the motion.

1  only be excused if they sought an order shortening time, or if they obtained a stipulation from
2  Union Carbide to the noticed hearing date. Civil L.R. 7-1(a).[5] They did neither.
3  Plaintiffs' motion does not provide any indication that Plaintiffs attempted to
4  comply with the requirements for seeking an order shortening time. Furthermore, a review of
5  Civil Local Rules 6-1 and 6-3, which outline the requirements for a motion to shorten time, make
6  plain that Plaintiffs have not adhered to such requirements. Two of the most obvious deficiencies
7  include Plaintiffs' failure to file a separate motion requesting to hear the motion to expedite trial
8  setting on shortened time, and their failure to obtain, or even to seek, a stipulation from Union
9  Carbide to the time change. *See* Civil L.R. 6-1(b), 6-3(a)(2). (*See also* Krow Decl. ¶ 7.)
10 Not only did Plaintiffs fail to obtain a stipulation to shortened time from counsel
11 for Union Carbide, they also did not provide counsel for Union Carbide with *any* notice of their
12 motion to expedite the trial setting prior to the motion's filing. (Krow Decl. ¶ 8.) Thus, Union
13 Carbide was caught entirely unaware when it received Plaintiffs' motion, and it has been forced
14 to research and respond to the motion without adequate time so that it can meet its own
15 obligations for filing its opposition not less than 21 days before the noticed hearing date. Civil
16 L.R. 7-3(a).
17 As the foregoing demonstrates, Plaintiffs have flouted the Civil Local Rules and
18 have compromised Union Carbide's ability to adequately respond to the motion to expedite the
19 trial setting. For these reasons, the motion to expedite the trial setting should be denied.

B.  **Plaintiffs' Motion To Expedite Trial Setting Should Be Denied In The Interest Of Judicial Economy Because There Remain Pre-Trial Issues For The MDL To Oversee; Therefore, The MDL Panel Is Likely To Transfer The Case**

22 At its core, Plaintiffs' argument for expediting the trial setting relies on a single
23 erroneous assumption: That because this case was ready for trial in state court, and because the
24 motion to remand has been withdrawn, it necessarily means there are no "coordinated or

---

[5] To the extent Plaintiffs may seek to excuse their actions by characterizing the instant motion as a "counter-motion," it is important to note that counter-motions have been prohibited in the Northern District of California since 2001. (Krow Decl., Ex. C.) *See also* Highlights of Changes to the Civil Local Rules, Effective 1/1/01, Rule 7-3 ("The subsection concerning counter-motions has been eliminated. Counter-motions may no longer be filed on a routine basis, absent an order shortening time to allow such a motion to be heard at the same time as the original motion."). (Krow Decl., Ex. D.)

consolidated pretrial proceedings" left for the MDL court to oversee. (Pl.'s Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 4:2-17.) This assumption is directly contrary to federal case law and, as such, Plaintiffs' conclusion that this case is not ripe for transfer to the MDL court is incorrect. Accordingly, Union Carbide believes the Court should deny Plaintiffs' request in order to prevent the waste of judicial time and resources that would follow expediting the trial only to have the case ultimately transferred to the MDL court.

### 1. Plaintiffs' Claim That There are No Pre-Trial Issues Left for the MDL Court To Oversee Is Incorrect

#### a. Individual settlement negotiations and conferences are coordinated pre-trial proceedings over which the MDL court has authority

By Plaintiffs' own admission, the MDL court has authority over all actions where there remain "coordinated or consolidated pretrial proceedings." (Pl.'s Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 4:2-6.) This authority includes the power to conduct settlement negotiations and conferences. *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000) (citing FED. R. CIV. P. 16(a)(5)).

"One of the values of multidistrict proceedings is that they bring before a single judge all of the federal cases, parties, and counsel comprising the litigation. They therefore afford a unique opportunity for the negotiation of a global settlement." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION – FOURTH § 20.132 (2004).[6] A testament to multidistrict litigation's effectiveness in settling cases is the fact that "most multidistrict litigation is settled in the transferee [MDL] court." *Id.* Thus, the settlement opportunities presented by transfer to the MDL court stand in stark contrast to the procedures offered by the state court, which are frequently ineffective, address only one case at a time, and often mean settlement does not happen until well after the jury is empanelled. Accordingly, this case is ripe for transfer to the MDL court for the purpose of conducting settlement negotiations and conferences, an important pre-trial opportunity that was not available to the parties while the case was pending in state court.

///

---

[6] (*See* Krow Decl., Ex. E.)

b. **Interlocutory state court orders are subject to reconsideration by the federal courts**

The MDL court has authority over all judicial proceedings before trial, including discovery motions, motions to amend, to dismiss, for summary judgment, and to determine class certification. *In re Patenaude*, 210 F.3d at 144 (quoting *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 494 (J.P.M.L. 1968); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3866)). Plaintiffs do not appear to dispute this point, but rather, they argue that these pre-trial issues were already resolved in the state court case. (Pl.'s Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 4:14-15.) Plaintiffs are mistaken, as the change from state procedures to federal procedures means that what occurred in the state court proceedings is not necessarily sufficient for a federal trial.

Although the state court may have resolved the pre-trial issues in the case according to state law, that is not the end of the inquiry. Upon removal, "it is settled that federal rather than state law governs the future course of proceedings." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 437 (1974). Thus, "to the extent the state court order requires the parties to act or refrain from acting in a manner inconsistent with federal procedural requirements, the district court must accommodate the order to federal law." *Id.* at 439-41 & n.15. Moreover, because federal law applies upon removal, interlocutory state orders are subject to reconsideration by the federal court at any time. *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 80 (9th Cir. 1979). Accordingly, the rules governing removed cases would ***permit*** the MDL court to review any interlocutory orders issued in the state court action and would ***require*** the MDL court to amend any state court orders that require action (or inaction) inconsistent with federal procedures.

Although Union Carbide cannot anticipate all of the pre-trial issues that the MDL court could or should revisit in this case (particularly on the abbreviated time frame forced on it by Plaintiffs' failure to provide proper notice of this motion), at least two such issues are already clear: First, any defendant may chose to renew its motion for summary judgment; and second, because the federal and state standards regarding scientific evidence differ dramatically, Union Carbide believes there will be pre-trial questions relating to expert testimony and causation

evidence under the federal standard that were not previously at issue in the state court.

### 2. The Pre-Trial Issues Presented by This Case and Questions Regarding the Propriety of the MDL Court's Jurisdiction Over the Matter Are Best Resolved by the MDL Panel

As the foregoing discussion makes plain, several important pre-trial matters remain for the MDL court to oversee. Moreover, the outstanding issues are precisely the kinds of issues best presented to the MDL court because they raise questions likely to be raised in other asbestos cases as well. *See, e.g.,* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION – FOURTH § 22.35.[7] By definition, these pre-trial questions are within the MDL court's purview. *See In re Asbestos Products Liab. Action (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991); *see also In re Patenaude*, 210 F.3d at 144. Further, the valuable pre-trial settlement procedures of the MDL court – one of the key functions of multidistrict litigation – remain applicable to this case. Thus, because transfer to the MDL court appears likely, denying Plaintiffs' motion to expedite the trial setting would further judicial economy by avoiding the setting of a trial schedule only to have it vacated upon transfer. In addition, denying Plaintiffs' motion would also prevent the parties from having to engage in duplicative briefing of the remaining pre-trial matters.

Furthermore, the one forum more qualified than any to determine whether the MDL court can and will keep this case is the MDL Panel. The Panel is going to reach that decision soon, and its decision will govern. It truly defies logic to force this case forward now when the jurisdictional issue is going to be decided shortly by the true final arbiter, the MDL Panel.

### 3. Plaintiffs' Claim that Union Carbide Is Seeking to Unduly Delay the Trial Is Unfounded

Plaintiffs try to bolster their flawed argument regarding the status of the case by implying that Union Carbide has already unduly delayed the start of trial. (Pl.'s Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 2:15-3:20.) Plaintiffs' argument is based exclusively on the premise that Union Carbide's removal of the case at the beginning of the state court trial amounts to "delaying tactics." (*Id.* at 3:16.) But in reality, Plaintiffs have it

---

[7] (*See* Krow Decl., Ex. E.)

backwards: it was the Plaintiffs who decided to settle with the last forum defendant days before trial; thus, Plaintiffs, not Union Carbide controlled when Union Carbide could remove the case to federal court. As the Ninth Circuit noted in *Preaseau*:

> [Plaintiff] forgets that it was she who determined to name Doe defendants who might destroy diversity, . . . and it was she who determined that the Doe defendants would not be dismissed until the day of trial. Thus she, and not [defendant], controlled when the 30 day time limit of § 1446(b) would begin running.

*Preaseau*, 591 F.2d at 74 (rejecting plaintiff's argument that "it is unfair to allow [defendant] to wait until the day of trial to seek removal."). Union Carbide should not now be criticized, let alone penalized, for exercising its right to a federal forum upon the first opportunity to do so.

Plaintiffs have stated in their papers that an expedited trial is warranted in light of Mr. Lyman's potential inability to travel to San Francisco for his day in court. (Pl.'s Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 3:18-20.) As noted above, however, the fact that Plaintiffs are in federal court and subject to federal procedures so late was within the Plaintiffs' power to control. Had Plaintiffs dismissed the peripheral forum and non-diverse defendants much earlier, the pre-trial proceedings would have been conducted under the federal standards in the first instance. Further, Mr. Lyman's video-taped direct testimony was preserved by Plaintiffs' counsel precisely so that it could be played at trial if Mr. Lyman becomes too ill to travel.

Union Carbide requests that the Court allow the MDL Panel the opportunity to decide whether to transfer the case to the MDL court before setting the trial schedule. This process should not take an unduly long period of time. Should the MDL Panel opt not to transfer the case (which is not the likely outcome), Plaintiffs may choose to renew their motion to expedite the trial setting. Furthermore, even if the MDL Panel does not transfer the case to the MDL court, Plaintiffs' motion is premature because, if the case is not transferred, there would still remain several pre-trial issues for this Court to resolve before the case could be tried.

///

///

IV.  **CONCLUSION**

      For the foregoing reasons, Union Carbide respectfully asks that the Court deny Plaintiffs' request to expedite the trial setting.

Dated: September 25, 2007

CATHERINE MORRIS KROW
ORRICK, HERRINGTON & SUTCLIFFE LLP

_____
Catherine Morris Krow
Attorneys for Defendant
UNION CARBIDE CORPORATION