CATHERINE MORRIS KROW (State Bar No. 208412)
NATASHA R. CUPP (State Bar No. 240939)
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
ckrow@orrick.com
ncupp@orrick.com

Attorneys for Defendant
UNION CARBIDE CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ROBERT F. LYMAN and SAMANTHA LYMAN,

Plaintiffs,

v.

ASBESTOS DEFENDANTS (B*P), *et al.*,

Defendants.

Case No. C 07-4240 SBA

**UNION CARBIDE CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR STAY**

Date: October 16, 2007
Time: 1:00 p.m.
Courtroom: 3, Third Floor, Oakland
Judge: Hon. Saundra B. Armstrong

Defendant Union Carbide Corporation ("Union Carbide") hereby files this memorandum of points and authorities in reply to Plaintiffs' opposition to Union Carbide's motion to stay the case pending transfer to MDL-875.

## I. INTRODUCTION / STATEMENT OF THE ISSUES TO BE DECIDED

Union Carbide respectfully requests that the Court grant its motion to stay the case pending a transfer decision by the MDL Panel. Plaintiffs' entire argument in opposition to this stay boils down to one unsupportable assumption: that by belatedly acquiescing to removal, they have somehow eliminated the only issue over which the MDL court could exercise oversight responsibility. Notably, Plaintiffs do not cite any authority for this conclusion,[1] nor can they, as this assumption is ***directly contrary*** to federal case law. In reality, there are significant pretrial issues left to be addressed in this case, including issues related to expert discovery, the admissibility of expert testimony, Union Carbide's motion for summary judgment, and settlement.

Moreover, because all of the outstanding pretrial questions fall squarely within the purview of the MDL court, the MDL Panel is likely to transfer the case when it rules on Plaintiffs' objection to transfer in the near future. Thus, by temporarily staying the case pending a transfer decision by the MDL Panel, this Court would preserve judicial resources and avoid the risk of hardship to Union Carbide by requiring it to engage in motion practice and discovery that will have to be duplicated before the MDL. Furthermore, while Plaintiffs' claim of prejudice evokes great sympathy, ultimately proceeding forward with this case will accomplish nothing for Plaintiffs if the MDL Panel rules against them soon, as it is likely to do. And if Plaintiffs truly believe this case is "not suitable" for transfer to the MDL, then to ameliorate the claimed prejudice, Plaintiffs could attempt to expedite the transfer decision by requesting a shortened briefing schedule, or at least by notifying the Panel of any exigency. They have not done so.

---

[1] The only two cases cited in Plaintiffs' opposition both stand for the unremarkable proposition that the MDL oversees pretrial matters, but does not handle trials. *See In re Asbestos Products Liability Litig. (No. VI)*, 771 F. Supp. 415 (J.P.M.L. 1991); *In re Drowning Incident at Quality Inn Northeast, Washington D.C., on May 3, 1974*, 405 F. Supp. 1304 (J.P.M.L. 1991). These cases do not support Plaintiffs' much-broader conclusion that there are no outstanding pretrial issues in this matter, which presently is not in trial and, unlike the cases Plaintiffs cite, is a case that has been removed from state court to federal.

## II. FACTUAL BACKGROUND

On or about December 26, 2006, Plaintiffs Robert and Samantha Lyman filed suit against Union Carbide and a number of other defendants. In their complaint, Plaintiffs alleged that exposure to defendants' asbestos and/or asbestos-containing products caused Mr. Lyman's lung cancer.

### A. Expert Discovery And Challenges To Expert Testimony In The State Court Action

In the state court action, experts were not required to provide written reports. *See* Cal. Civ. Proc. Code § 2034.210(c). In this case, some experts elected to provide reports, but most experts did not. (Decl. of Catherine Morris Krow filed concurrently herewith ("Krow Decl.") ¶ 1.) For those experts who did provide reports, their reports did not conform to federal procedural requirements. (Krow Decl. ¶ 1, Ex. A.)

In addition, expert depositions were taken in the state court action; however, these depositions were not complete by the time the case was assigned to a trial court on August 6, 2007. (Krow Decl. ¶ 3.) To the extent Union Carbide could given the state of expert discovery, on August 7, 2007 it filed motions *in limine* with the trial court challenging the admissibility of certain expert testimony under California standards. (Krow Decl. ¶ 4.) Those motions were not ruled upon before the case was removed to this Court on August 17, 2007. (*Id.*) Furthermore, because motions for summary judgment are due before expert discovery is complete, causation was not an issue that could be addressed in defendants' motions for summary judgment. (Krow Decl. ¶ 5, Ex. B.)

### B. Summary Judgment In The State Court Action

Mr. Lyman, the Plaintiffs' key product identification witness, was deposed for seven days in April 2007. Although Mr. Lyman was the sole percipient product identification witness to his suit against Union Carbide, he ***stated explicitly*** at deposition that he could not recognize the names of any Union Carbide asbestos-containing products, including Super Visbestos and Univis, distributed by co-defendant Montello, Inc. ("Montello"), and had in fact been too far away to see the brand name, manufacturer, or supplier of the materials in the field.

(Krow Decl. Ex. C at 527:4-8, 529:4-6, Ex. D at 471:2-13.)

In interrogatory responses, provided both before and after Mr. Lyman's deposition, Plaintiffs again failed to identify exposure to any materials that contained Union Carbide asbestos. (Krow Decl. Ex. E at 3:19-20, F at 6:6-10.)

Because there was no evidence of any exposure to any product containing Union Carbide asbestos, Union Carbide moved for summary judgment on July 5, 2007. (Krow Decl. Exs. G, J.) In opposition to Union Carbide's motion, Mr. Lyman proffered a declaration attesting that, despite his express deposition testimony to the contrary, he could now recall working around two Union Carbide asbestos-containing products—Super Visbestos and Univis. (Krow Decl. Ex. H at ¶ 4.) Mr. Lyman attributed the contradiction to the fact that his attorneys refreshed his recollection with photographs shown after the deposition, as part of his "preparation of responses to Defendant Montello's written discovery." (Krow. Decl. Ex. H at ¶ 4.) Notably, however, Plaintiffs made no mention of these products in Mr. Lyman's responses to Montello's discovery, which were served ***after*** Mr. Lyman's recollection was allegedly refreshed. (Krow. Decl. Ex. F.) The court nevertheless denied Union Carbide's motion for summary judgment, based on Mr. Lyman's declaration. (Krow Decl. Ex. I.) Union Carbide subsequently filed a petition for writ of mandate, which was denied without substantive analysis by the California Court of Appeal on August 3, 2007. (Krow Decl. Exs. K, L.)

**C. <u>Settlement Discussions In The State Court Action</u>**

Pretrial settlement conferences with all parties were held on June 27 and July 18, 2007. (Krow Decl. ¶¶ 16-17, Ex. M, Ex. N at 207:20-26.) At the first conference, there were still at least 17 remaining defendants, and at the second conference, there were at least 10 remaining defendants. (*Id.*) As is typically the case, no serious settlement discussions took place at these conferences. (Krow Decl. ¶ 18.) Two additional settlement conferences were ordered after the case was assigned out for trial; however, these conferences were no more fruitful than the first. (Krow Decl. ¶ 19.)

///

///

**D. <u>The Current Dispute</u>**

On August 24, 2007, Union Carbide filed a Motion to Stay the Case Pending Transfer to MDL-875. On September 17, 2007, Plaintiffs filed an opposition to Union Carbide's request to stay the case. In that opposition, Plaintiffs conceded that the case belongs in federal court, but argued that the case should not be stayed pending transfer to MDL-875 because there were no pretrial proceedings left for MDL-875 to oversee. (Opp. to Mot. to Stay Case; Mot. to Withdraw Mot. to Remand and to Expedite Trial Setting 4:2-17 [hereafter "Pls.' Opp."].)

## III. ARGUMENT

**A. <u>There Are Pretrial Proceedings Left In The Case For The MDL Court To Oversee</u>**

As discussed in Union Carbide's opposition to Plaintiffs' motion to expedite (*see* Opp. to Mot. to Expedite Trial Setting 7:3-22), upon removal a federal court must revisit the state court proceedings to the extent necessary to conform them to federal procedures. *See Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439-41 & n.15 (1974) (requiring the federal court to accommodate a temporary restraining order issued by the state court to the federal time limitation). In addition, a federal court may revisit interlocutory orders issued in the state court. *See Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979). Here, the state court proceedings must be revisited because the state court's procedures relating to scientific gatekeeping and expert discovery "requires the parties to act or refrain from acting in a manner inconsistent with federal procedural requirements." *Nisso-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1303 (5th Cir. 1988) (citing *Granny Goose Foods*, 415 U.S. at 439-41 & n.15). In addition, the state court's prior interlocutory rulings, including its ruling on Union Carbide's summary judgment motion, may be reevaluated by the federal court that retains jurisdiction. Finally, the settlement procedures available in the MDL remain an avenue of pretrial discussion that the MDL court can and should oversee.

**1. Union Carbide is Entitled to a Pretrial Hearing on the Admissibility of Expert Testimony Under Federal Rule of Evidence 702**

In diversity cases, the Federal Rules of Evidence, not state evidentiary laws, apply.

*See McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004) (citing 19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4512 (2d ed. 1996)). Moreover, the admissibility of expert testimony is considered a matter of federal, not state, procedure. *Id.* at 1294-95 (citing *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985); *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 292 (5th Cir. 1975)).

Federal Rule of Evidence 702 provides that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. A Rule 702 determination is a question of law to be resolved by the court in a preliminary hearing prior to trial. *See, e.g.*, *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 593 (D.N.J. 2002). Thus, when a party seeks to admit ***any*** expert testimony, the court must make an initial determination, in a preliminary hearing under Federal Rule of Evidence 104(a), that the requirements of Rule 702 have been met. *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 592 (1993).

In *Daubert*, the Supreme Court held that Rule 702 imposes a special obligation on judges to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. A court is therefore required to act as a gatekeeper "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

At the time of removal, the state court had yet to exercise any gatekeeping function regarding the admissibility of expert testimony because, unlike federal court in which expert discovery is completed before trial so that *Daubert* challenges can be adjudicated in time for summary judgment, expert discovery in California "preference" cases continues up to and after the start of trial. (Krow Decl. ¶ 3.) Thus, in asbestos cases pending before a California state

court, the admissibility of expert testimony typically is resolved through motions *in limine* submitted at the beginning of trial. These motions had not been ruled on by the state court at the time the case was removed to federal court. (Krow Decl. ¶ 4.)

Moreover, even if the state court had exercised a gatekeeping function in this case, that court's decisions would not be of use now because the approach followed by the California state courts with regard to the admissibility of expert testimony differs dramatically from the federal approach. In fact, California state courts have firmly rejected the Rule 702 and *Daubert* standard as it applies to expert testimony. *People v. Leahy*, 8 Cal. 4th 587, 612 (1994) (concluding that the *Kelly* doctrine survived the Supreme Court's decision in *Daubert*). Instead, California state courts apply a "general acceptance" standard "to that ***limited class*** of expert testimony which is based, in whole or part, on a technique, process, or theory which is *new* to science, and even more so, the law." *See id.* at 605 (quoting *People v. Stoll,* 49 Cal. 3d 1136, 1156 (1989)); *see also People v. Kelly*, 17 Cal. 3d 24, 30 (1976). ***For all other expert testimony***, including medical causation testimony, the only gatekeeping analysis undertaken by the state court is performed within the confines of California Evidence Code Sections 801 and 803. *See, e.g., People v. McDonald*, 37 Cal. 3d 351, 373 (1984) (stating that California courts "have never applied the *Kelly-Frye* rule to expert medical testimony"), *overruled on other grounds by People v. Mendoza*, 23 Cal. 4th 896, 913 (2000); *People v. Mendibles*, 199 Cal. App. 3d 1277, 1293 (1988) ("[T]he expression of expert medical opinion as to the cause of a wound or injury falls, as *McDonald* notes, outside [*Kelly's*] realm."). Under these rules, expert testimony is excludable if the expert is not properly qualified, or the opinion is not based on matter that "is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the] testimony relates." Cal. Evid. Code § 801(b); *see also* Cal. Evid. Code § 803 (providing that opinion testimony without a proper basis may be excluded). There addition requirements of Federal Rule 702 (*e.g.*, a rigorous examination of the expert's methods and principles) are not present in the California rules.

Thus, because California state courts engage in only a limited foundational analysis for most expert testimony, even had the state court considered the admissibility of expert

testimony prior to removal, that analysis would be of no use in federal court, where the rules are far more stringent. Accordingly, it is plain that there remain important pretrial decisions to be made by the court with regard to the admissibility of expert testimony at trial. The MDL court would be best suited to resolve any challenges to the parties' experts because it has likely encountered many of these experts before and, therefore, would be familiar with the challenges that would be raised. In addition, the interests of judicial economy are served if the MDL court oversees *Daubert*-related pretrial issues because the MDL court is already familiar with the scientific, technical, and medical issues that affect the Rule 702 rulings.

**2. Additional Expert Discovery in Advance of a Rule 702 Hearing Is Required Under the Federal Discovery Rules**[2]

The Federal Rules of Civil Procedure govern upon removal of an action to federal court. *See* Fed. R. Civ. P. 81(c) ("These rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal."); *Willy v. Coastal Corp.*, 503 U.S. 131, 134 (1992) ("This expansive language contains no express exceptions."). Thus, the Rules of Civil Procedure pertaining to discovery, including Rule 26, now apply to this case. *See McIntyre v. K-Mart Corp.*, 794 F.2d 1023, 1025 (5th Cir. 1986) (rejecting plaintiffs' position that state procedural rules applied to interrogatories served before removal and observing that plaintiffs' argument "appears to be wholly without support in the case law"); *Riley v. Walgreen Co.*, 233 F.R.D. 496, 498 (S.D. Tex. 2005) ("[Plaintiff] attempts to circumvent [Fed. R. Civ. P. 26(d)] by citing general language from cases in other contexts, to the effect that a removed case 'comes into the federal system in the same condition in which it left the state system.' … But neither the plaintiff's cases nor [28 U.S.C. § 1450] deal specifically with discovery or procedure after removal, unlike Rules 26(d) and 81(c).") (citations omitted); *Yonkosky v. Hicks*, 409 F.

---

[2] At the time Union Carbide filed its motion to stay the case, the principal issue between the parties was whether removal to federal court was appropriate, not whether other pretrial issues remained outstanding. Accordingly, in Union Carbide's moving papers, it focused almost exclusively upon the remand question; however, it also indicated at one point that pretrial discovery in the case was complete. Plaintiffs' agreement to federal jurisdiction prompted additional research into whether this would remain true if the case proceeded in federal court. That research revealed that the outstanding pretrial matters in the case would include expert discovery issues because the federal requirements have not been fulfilled.

Supp. 2d 149, 151 n.6 (W.D.N.Y. 2005).

Federal Rule of Civil Procedure 26(a)(2) requires any expert who is retained to testify in the case to provide a signed written report to the opposing party. *See* Fed. R. Civ. P. 26(a)(2)(B). This report is required to contain:

> [A] complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*Id.* There is no similar requirement in California state court. *See, e.g.,* Cal. Civ. Proc. Code §§ 2034.210(c) & 2034.260(c). Thus, to the extent any expert reports were exchanged in the state court action (and this was the exception, not the rule), they did not conform to the federal requirements. (Krow Decl. ¶ 2, Ex. A.)

Furthermore, because experts were deposed in the state court case without the benefit of having exchanged expert reports that comply with these requirements, and without regard to the potential for a *Daubert* challenge that is only available in federal proceedings, Union Carbide anticipates that there may be a need to re-depose certain experts so as to allow both parties to benefit from the overall purpose and effect of Rules 26(a) and 702. In particular, Rule 26(a)(4) states that "[i]f a report from the expert is required under subdivision (a)(2)(B), ***the deposition shall not be conducted until after the report is provided***." Fed. R. Civ. P. 26(a)(4) (emphasis added).

A review of the Advisory Committee Notes related to subdivision (a)(4) make clear that this is not merely a technical requirement. Rather, the requirement that expert reports be exchanged prior to expert depositions reflects a determination that:

> Effective cross-examination of an expert witness requires advance preparation. The lawyer even with the help of his own experts frequently cannot anticipate the particular approach his adversary's expert will take or the data on which he will base his judgment on the stand. … Similarly, effective rebuttal requires advance

> knowledge of the line of testimony of the other side. If the latter is foreclosed by a rule against discovery, then the narrowing of the issues and elimination of surprise when discovery normally produces are frustrated.

Fed. R. Civ. P. 26 advisory committee's note regarding 1970 amendment to subdivision (b)(4). The Advisory Committee's Notes also make plain that the trial problems that would flow from lack of discovery of expert witnesses would be "most acute and noteworthy when the case turns largely on experts." *Id.*

An asbestos case presents highly complex and contentious scientific, technical, and medical issues. The present case is no exception, and because the case involves a dispute over the cause of Mr. Lyman's disease (specifically, Union Carbide believes that Mr. Lyman suffers from lung cancer because he smoked heavily for over 50 years), the testimony of the experts could be outcome determinative. For this reason, it is especially crucial that the parties adhere to the strictures of Rule 26(a)(4), and that expert discovery be conducted with an eye towards a possible *Daubert* challenge. In so doing, the parties will be able to effectively narrow the issues for trial and eliminate surprises, something that was not previously possible under California's procedural rules.

Finally, Union Carbide believes the MDL court is the most appropriate forum for overseeing the additional discovery required under the federal rules because it has likely encountered many of these experts before. Thus, the MDL court could preserve judicial economy by avoiding duplication of any discovery that has already taken place in the MDL and it can prevent inconsistent and repetitive rulings related to these and any other discovery issues that may arise in the case.

**3. Union Carbide Anticipates Renewing Its Motion for Summary Judgment in Federal Court**

Also pending resolution before trial is Union Carbide's renewed motion for summary judgment, which it intends to file after transfer to the MDL Panel. Although Union Carbide filed a motion for summary judgment in state court, that court applied California state

summary judgment standards and procedures to deny the motion, and the issue of causation could not be raised therein because expert discovery had not even begun. Under the federal procedural standards, however, Union Carbide is almost certainly entitled to summary judgment. *See, e.g.*, *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531-33 (9th Cir. 2000) (noting that federal and state summary judgment standards differ and may warrant summary judgment after removal). Union Carbide is therefore entitled to renew its motion for summary judgment in the federal forum. *See Preaseau*, 591 F.2d at 79-80.

**a. Union Carbide may renew summary judgment based on failure to establish causation after Plaintiffs' causation evidence is tested under the federal standards**

Under state court procedures, Union Carbide could not address Plaintiffs' failure to prove causation at the summary judgment stage, whereas under federal procedures, it can. Accordingly, Union Carbide intends to first challenge Plaintiffs' causation evidence under *Daubert* and Rule 702 of the Federal Rules of Evidence. If the rulings on this evidence are favorable, Union Carbide's renewed motion for summary judgment will include the previously-unavailable argument that summary judgment should be granted based on Plaintiffs' inability to establish causation. *See Allstate Fin. Corp. v. Zimmerman*, 296 F.2d 797, 799 (5th Cir. 1961) (upholding district judge's decision to reconsider summary judgment motion previously denied by another district court judge where subsequent motion was based on additional facts); *Shearer v. Homestake Mining Co.*, 727 F.2d 707, 709 (8th Cir. 1984) (upholding district court's reconsideration of summary judgment motion where renewed motion was based upon substantial discovery of facts not before the court at the time of the first motion).

**b. Union Carbide may renew summary judgment under federal standards based on Plaintiffs' failure to establish exposure to any Union Carbide product**

Union Carbide's initial motion for summary judgment, filed before removal, contended that after several days of deposition, Mr. Lyman was unable to specify exposure to even one product containing Union Carbide asbestos that could have caused his alleged injury. In opposition to Union Carbide's motion, Plaintiffs proffered an eleventh-hour declaration signed by Mr. Lyman, which contradicted both his sworn testimony and his interrogatory responses.

(Krow. Decl. Ex. F.) Given federal courts' treatment of such declarations, the outcome of Union Carbide's motion would almost certainly have been different in federal court.

Litigants may renew a motion for summary judgment after removal, even if a state court previously heard and denied the motion. *Preaseau*, 591 F.2d at 79-80. The district court should, subject to its discretion, grant a previously-denied motion for summary judgment where there is a cogent reason for doing so. *Id*. at 80 (upholding summary judgment granted by a district court after removal, despite a state court order denying the selfsame motion); *Fairbank*, 212 F.3d at 532-33 (same).

In particular, "because ultimately the judge who enters the final judgment in the case is responsible for the legal sufficiency of the ruling," a successor judge to a case should not be made to adhere to an erroneous prior order. *Fairbank*, 212 F.3d at 530. The district court is therefore entitled to make an independent determination as to whether there is an issue of fact remaining for resolution at trial. *Aginsky v. Farmers Ins. Exchange*, 409 F. Supp. 2d 1230, 1233 (D. Or. 2005) (concluding that no issue of fact remained, despite state court opinion to the contrary).

Moreover, the differences between federal and state summary judgment standards and procedure may entitle litigants to summary judgment in federal court where they would not be so entitled in state court. *Fairbank*, 212 F.3d at 530-31. District court review of the motion under federal standards, despite prior denial by the state court, is therefore critical to ensuring the expediency of litigation and conservation of judicial resources; such review enables the court to "settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial." *Preaseau*, 591 F.2d at 79 (quoting *Castner v. First National Bank of Anchorage*, 278 F.2d 376, 380 (9th Cir. 1960)).

In this instance, district courts are able and encouraged to ascertain whether eleventh-hour declarations such as Mr. Lyman's are a "sham." *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1462 (9th Cir. 1985), *overruled on other grounds by Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262 (9th Cir. 1991). As the Ninth Circuit has noted, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit

contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (citing *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975)).

In fact, federal courts often refuse to consider declarations submitted by plaintiffs in response to a defendant's motion for summary judgment where, as here, the declaration appears to be a "'clear attempt by plaintiffs to shore up obvious gaps in their prima facie case with phantom evidence' that was contradictory to [] sworn deposition testimony." *Buckner v. Sam's Club. Inc.*, 75 F.3d 290, 292-93 (7th Cir. 1996) (rejecting affidavit as "an effort to undo (contradict) the effects of the deposition testimony"). Rather, "[w]here an issue of fact is created by inconsistencies in a party's deposition testimony and his declaration in opposition to the motion, that issue is not genuine but is a sham issue." *McCray v. Casual Corner, Inc.*, 812 F. Supp. 1046, 1048 (C.D. Cal. 1992) (citing *Radobenko*, 520 F.2d at 543-44) (rejecting as sham plaintiff's declaration prepared for purposes of the summary judgment motion).

Accordingly, because Union Carbide intends to renew its motion for summary judgment, and because the federal court has a cogent basis for granting Union Carbide's motion, summary judgment remains a pretrial issue for the federal court to consider. Furthermore, Union Carbide believes that this issue is best resolved by the MDL court because it has likely encountered similar declarations in other asbestos cases. Accordingly, the MDL court could efficiently resolve the issue while also ensuring that the decision is consistent with the decisions reached in other asbestos cases.

**4. Individual Settlement Negotiations and Conferences are Coordinated Pretrial Proceedings Over Which the MDL Court Has Authority**

The MDL court's authority includes the power to conduct settlement negotiations and conferences. *In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000) (citing Fed. R. Civ. P. 16(a)(5)). The MDL court is a choice forum for encouraging efficient settlement, and most multidistrict litigation is settled before trial without need for remand. Federal Judicial Center, *Manual for Complex Litigation - Fourth* § 20.132 (2004).[3]

[3] (*See* Krow Decl. Ex. Q.)

The MDL-875 court in particular has promulgated a comprehensive procedural mechanism to ensure that the parties have ample opportunity for meaningful settlement discussions. *See* Administrative Order No. 12, *In re Asbestos Products Liability Litig.,* MDL-875, at 1 (E.D. Pa. May 3, 2007) [hereafter "Admin. Order 12"]; Administrative Order No. 3, *In re Asbestos Products Liability Litig.,* MDL-875, at 1 (E.D. Pa. Sept. 8, 1992) [hereafter "Admin. Order 3"].[4] At the outset of settlement negotiations, the court requires all parties to submit papers stating their position relative to disease, exposure, and damages. Admin. Order 12. Counsel are required to negotiate in good faith and must report their progress to the court at least once a week. Admin. Order 3.

In the event that settlement negotiations are unsuccessful, the MDL court may refer the case to mediation, Admin. Order 12, and the court will hold a termination conference to assess the status of the parties and the appropriateness of forwarding the case to the Mediation Committee. Admin. Order 3. Although not always required, the MDL court will often make a determination that the parties have negotiated in good faith before finding the litigation suitable for trial and thus for remand. *Id.*

Nothing even remotely comparable to the comprehensive settlement procedures available in the MDL has occurred in this case so far. Because the parties have yet to engage in meaningful structured settlement negotiation, this case is particularly suitable for multidistrict litigation. The MDL court's established procedures will provide for and oversee the parties' settlement discussions and will enhance the parties' efforts to resolve this litigation expediently and without trial.

### B. The Pretrial Issues Presented By This Case Counsel In Favor Of Granting A Stay Pending A Transfer Decision By The MDL Panel

#### 1. A Stay Would Conserve Judicial Resources

Courts commonly stay actions pending the MDL Panel's decision when a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well.

[4] (*See* Krow Decl. Exs. O, P.)

*See* Federal Judicial Center, *Manual for Complex Litigation – Fourth* § 22.35.[5] Such decisions increase efficiency and consistency by ensuring that the Court does not needlessly expend its energies familiarizing itself with a case that more likely than not will ultimately be heard by another judge anyway. *See Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

As the foregoing discussion makes plain, there remain several important pretrial matters in this case for the MDL court to oversee. Moreover, because the outstanding issues raise questions likely to be raised in other asbestos cases as well, transfer is likely. *See, e.g.,* Federal Judicial Center, *Manual for Complex Litigation – Fourth* § 22.35.[6] Thus, this Court can promote judicial efficiency and economy by staying the case pending a transfer decision by the MDL Panel.

**2. A Stay Would Not Unduly Prejudice Plaintiffs**

Plaintiffs argue that a stay is inappropriate in this case because Mr. Lyman's health is deteriorating.[7] (Pls.' Opp. 3:12-14.) However, the MDL Panel has already set a briefing schedule (all briefing to be completed by November 5), and a hearing on the transfer should take place within the next couple of months; thus, a stay is likely to result in only a brief delay of the case.

In addition, if this case truly is "not suitable" for transfer as Plaintiffs contend (Pls.' Opp. 4:15), then it stands to reason that a quick decision by the MDL Panel would be in Plaintiffs' best interest. Yet Plaintiffs have not even notified the MDL Panel of any exigency, let alone requested that the briefing or decision regarding transfer be expedited. (Krow Decl. ¶ 20.) Further, to the extent Mr. Lyman is unable to travel to trial, Plaintiffs' counsel can use the video-taped direct testimony that was preserved for just such a purpose. Finally, pressing forward with

---

5 (*See* Krow Decl. Ex. Q.)

6 (*See* Krow Decl. Ex. Q.)

7 Plaintiffs also attempt to convince the Court that a stay is improper by claiming that Union Carbide has already somehow unduly delayed the start of trial. (Pls.' Opp. 2:15-3:20.) Yet it is Plaintiffs, not defendants, who control when the time for removal begins to run. *See Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79 (9th Cir. 1979). Here, removal was not possible until late in the proceedings because Plaintiffs did not dismiss the peripheral forum and non-diverse defendants until the start of the state court trial, and it took several days to confirm that diversity jurisdiction existed and to ascertain the position of the remaining defendants regarding consent to removal. (Krow Decl. ¶ 24.)

this case now ultimately will not advance Plaintiffs' interests, as the case is likely to be transferred to the MDL before the outstanding pretrial issues are resolved by this Court.

#### 3. Union Carbide Will Be Prejudiced if Proceedings Are Not Stayed and the Action Is Later Transferred to the MDL Court

If a stay is not entered by the Court and the MDL Panel concludes that this case should be transferred to the MDL court, the parties will be forced to engage in duplicative motion practice and discovery proceedings. This, when combined with the fact that a stay will conserve judicial resources – one of the fundamental goals of multidistrict litigation practice – weighs in favor of granting a temporary stay pending a transfer decision by the MDL Panel.

## IV. CONCLUSION

For the foregoing reasons, Union Carbide respectfully asks that the Court grant its request to stay the case pending a transfer decision by the MDL Panel.

Dated: October 2, 2007

CATHERINE MORRIS KROW
ORRICK, HERRINGTON & SUTCLIFFE LLP

/s/ Catherine Morris Krow
Catherine Morris Krow
Attorneys for Defendant
UNION CARBIDE CORPORATION

# TABLE OF CONTENTS

Page


I. INTRODUCTION / STATEMENT OF THE ISSUES TO BE DECIDED ........ 1

II. FACTUAL BACKGROUND ........ 2

- A. Expert Discovery And Challenges To Expert Testimony In The State Court Action ........ 2
- B. Summary Judgment In The State Court Action ........ 2
- C. Settlement Discussions In The State Court Action ........ 3
- D. The Current Dispute ........ 3

III. ARGUMENT ........ 4

- A. There Are Pretrial Proceedings Left In The Case For The MDL Court To Oversee ........ 4
  - 1. Union Carbide is Entitled to a Pretrial Hearing on the Admissibility of Expert Testimony Under Federal Rule of Evidence 702 ........ 4
  - 2. Additional Expert Discovery in Advance of a Rule 702 Hearing Is Required Under the Federal Discovery Rules ........ 7
  - 3. Union Carbide Anticipates Renewing Its Motion for Summary Judgment in Federal Court ........ 9
    - a. Union Carbide may renew summary judgment based on failure to establish causation after Plaintiffs' causation evidence is tested under the federal standards ........ 10
    - b. Union Carbide may renew summary judgment under federal standards based on Plaintiffs' failure to establish exposure to any Union Carbide product ........ 10
  - 4. Individual Settlement Negotiations and Conferences are Coordinated Pretrial Proceedings Over Which the MDL Court Has Authority ........ 12
- B. The Pretrial Issues Presented By This Case Counsel In Favor Of Granting A Stay Pending A Transfer Decision By The MDL Panel ........ 13
  - 1. A Stay Would Conserve Judicial Resources ........ 13
  - 2. A Stay Would Not Unduly Prejudice Plaintiffs ........ 14
  - 3. Union Carbide Will Be Prejudiced if Proceedings Are Not Stayed and the Action Is Later Transferred to the MDL Court ........ 15

IV. CONCLUSION ........ 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aginsky v. Farmers Ins. Exchange*
409 F. Supp. 2d 1230 (D. Or. 2005)....................11

*Allstate Fin. Corp. v. Zimmerman*
296 F.2d 797 (5th Cir. 1961)....................10

*Buckner v. Sam's Club, Inc.*
75 F.3d 290 (7th Cir. 1996)....................12

*Castner v. First National Bank of Anchorage*
278 F.2d 376 (9th Cir. 1960)....................11

*Daubert v. Merrell Dow Pharma., Inc.*
509 U.S. 579 (1993)....................5

*Edwards v. Sears, Roebuck and Co.*
512 F.2d 276 (5th Cir. 1975)....................5

*Fairbank v. Wunderman Cato Johnson*
212 F.3d 528 (9th Cir. 2000)....................10, 11, 12

*Foster v. Arcata Assocs., Inc.*
772 F.2d 1453 (9th Cir. 1985)....................11

*Granny Goose Foods, Inc. v. Teamsters*
415 U.S. 423 (1974)....................4

*In re Asbestos Products Liability Litig. (No. VI)*
771 F. Supp. 415 (J.P.M.L. 1991)....................1

*In re Drowning Incident at Quality Inn Northeast, Washington D.C., on May 3, 1974*
405 F. Supp. 1304....................1

*In re Patenaude*
210 F.3d 135 (3d Cir. 2000)....................12

*Kennedy v. Allied Mutual Ins. Co.*
952 F.2d 262 (9th Cir. 1991)....................11

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999)....................5

*Magistrini v. One Hour Martinizing Dry Cleaning*
180 F. Supp. 2d 584 (D.N.J. 2002)....................5

*McCray v. Casual Corner, Inc.*
812 F. Supp. 1046 (C.D. Cal. 1992)....................12

*McDowell v. Brown*
392 F.3d 1283 (11th Cir. 2004)....................5

*McIntyre v. K-Mart Corp.*
794 F.2d 1023 (5th Cir. 1986)....................7

*Nisso-Iwai Am. Corp. v. Kline*
845 F.2d 1300 (5th Cir. 1988)....................4

///

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*People v. Kelly*
17 Cal. 3d 24 (1976) .......... 6

*People v. Leahy*
8 Cal. 4th 587 (1994) .......... 6

*People v. McDonald*
37 Cal. 3d 351 (1984) .......... 6

*People v. Mendibles*
199 Cal. App. 3d 1277 (1988) .......... 6

*People v. Mendoza*
23 Cal. 4th 896 (2000) .......... 6

*People v. Stoll*
49 Cal. 3d 1136 (1989) .......... 6

*Preaseau v. Prudential Ins. Co.*
591 F.2d 74 (9th Cir. 1979) .......... 4, 10, 11, 14

*Radobenko v. Automated Equip. Corp.*
520 F.2d 540 (9th Cir. 1975) .......... 12

*Riley v. Walgreen Co.*
233 F.R.D. 496 (S.D. Tex. 2005) .......... 7

*Rivers v. Walt Disney Co.*
980 F. Supp. 1358 (C.D. Cal. 1997) .......... 13

*Shearer v. Homestake Mining Co.*
727 F.2d 707 (8th Cir. 1984) .......... 10

*United States v. Roark*
753 F.2d 991 (11th Cir. 1985) .......... 5

*Willy v. Coastal Corp.*
503 U.S. 131 (1991) .......... 7

*Yonkosky v. Hicks*
409 F. Supp. 2d 149 (W.D.N.Y. 2005) .......... 7, 8

**RULES**

Cal. Civ. Proc. Code § 2034.210(c) .......... 2, 8

Cal. Civ. Proc. Code § 2034.260(c) .......... 8

Cal. Evid. Code § 801(b) .......... 6

Cal. Evid. Code § 803 .......... 6

Fed. R. Civ. P. 16(a)(5) .......... 12

Fed. R. Civ. P. 26(a)(2)(B) .......... 8

Fed. R. Civ. P. 26(a)(4) .......... 8

Fed. R. Civ. P. 81(c) .......... 7

Fed. R. Evid. 702 .......... 5

## TABLE OF AUTHORITIES
## (continued)

Page

## MISCELLANEOUS

19 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper *Federal Practice & Procedure* (2d ed. 1996) ........ 5

Administrative Order No. 3, *In re Asbestos Products Liability Litig.* MDL-875 (E.D. Pa. Sept. 8, 1992)........ 13

Administrative Order No. 12, *In re Asbestos Products Liability Litig.* MDL-875 (E.D. Pa. Sept. 8, 1992)........ 13

Fed. R. Civ. P. 26 advisory committee's notes regarding 1970 amendment to subdivision (b)(4) ........ 9

Federal Judicial Center, *Manual for Complex Litigation – Fourth* (2004)........ 12, 14