# EXHIBIT A – 3

## HAMMAR REPORT

## DIAGNOSTIC SPECIALTIES LABORATORY, INC., P.S.

Samuel P. Hammar, M.D., F.C.C.P., F.C.A.P., Director   Keith O. Hallman, M.D.   David M. Bray, M.D.   Richard A. Cox, M.D., Ph.D.

700 Lebo Boulevard
Bremerton, Washington 98310
e-mail: shammar@harrisonmedical.org

Voice: 360-479-7707  Facsimile: 360-479-7886  Washington State: 800-762-2344

| | | | | | |
|---|---|---|---|---|---|
| *Name:* | **LYMAN, ROBERT F.** | *Age:* | 67 | | |
| | | *DOB:* | 08/13/39 | *DOD:* | (Living) |
| | | | | *Date Received:* | **06/20/07** |
| | | | | *Date Transcribed:* | **07/31/07** |

*Requested:* **Shakena N. Hall, Administrative Assistant**

*Specimens:* **Medical records/reports**
**Pathology materials (57 slides/26 blocks):**
**14 slides/3 blocks H06-9466**
**1 iron control slide**
**42 slides/23 blocks H07-111**

**Court Caption:**
Superior Court of California; County of San Francisco – No. 459162
Robert F. Lyman and Samantha Lyman vs. Asbestos Defendants

*From:* **Brayton Purcell – Novato, CA**     **Phone: 415-898-1555; Fax: 415-898-1247**

Received from Shakena N. Hall, Administrative Assistant, Brayton Purcell, Novato, California, are fourteen glass slides and three paraffin blocks for review designated H06-9466; one iron stain control slide; and forty-two glass slides and twenty-three paraffin blocks for review designated H07-111. Also received are medical records and reports concerning Robert F. Lyman.

There is a medical records index as follows: 1) reports of Dr. Donald Breyer dated 1/23/07, 4/6/07 and 5/9/07; 2) reports of Dr. William Salyer dated 2/17/07 and 4/16/07; 3) records from Carson Tahoe Regional Healthcare; and 4) Answers to Standard Asbestos Case Interrogatories.

Response to interrogatories were provided by Mr. Lyman, age 67. Response to interrogatory #22 stated Mr. Lyman fell off a ladder into the back of a truck in the Baker oil yard in Ventura, California, in 1986 and broke his neck. He had to stop working. He was awarded approximately $35,000.00 compensation. Response to interrogatory #23 stated Mr. Lyman smoked up to two packs of cigarettes per day between 1955 and 2007 (104-pack years). He smoked Camel, Kools and USA brand cigarettes. His wife, Samantha Lyman, smoked cigarettes for 36 years. Response to interrogatory #25 stated Mr. Lyman first consumed alcoholic beverages in approximately 1953 and no longer consumed alcohol [**my note**: the medical records I reviewed stated Mr. Lyman considered himself an alcoholic].

Response to interrogatory #26 stated Mr. Lyman was exposed to asbestos as follows:

| Employer: | Location of Exposure: | Job Title: | Exposure Dates: |
|---|---|---|---|
| **U.S. Marine Corps** | Camp Leujuene in Jacksonville, NC; and Naval Air Station Cecil Field in Jacksonville, FL | Trainee | 1956-1957 (8 weeks) and 9-10 months, respectively |
| Job Duties: Attended basic training and aviation mechanic school. During his schooling, Mr. Lyman worked on jet engines and contends he was exposed to asbestos. | | | |

Lyman EXHIBIT 3 Hammar

| Associated Transport | Waltham, MA | Manager | 1958-1967 |
|---|---|---|---|
| Job Duties: Oversaw a fleet of over 200 vehicles. Was present when mechanics in the maintenance department changed brakes on vehicles, including but not limited to Mack; Ford; Freightliner; and Fruehauf (Hayes Lemmerz International – Howell, Inc.) semi trucks. Recalled mechanics using arcing machines in his presence. Recalled White Motor and Detroit Diesel (General Motors Corporation), who were manufacturers and suppliers of replacement parts, including but not limited to brakes and engine parts. Contends he was exposed to asbestos during this employment. | | | |
| United States Gypsum | Charlestown, MA | Factory Worker (Foreman) | 1967 (approximately 8 months) |
| Job Duties: Worked as a foreman on the production line. Recalled various products, including but not limited to sheetrock being produced on this production line. Recalled seeing other workers mixing materials in large vats that were then poured out in forms for wallboard. Recalled other workers cutting the wallboard. Recalled very dusty conditions. Contends he was exposed to asbestos during this employment. | | | |
| Alva Radio Industry | Santa Monica, CA | Assembler | 1971-1975 |
| Job Duties: Assembled aircraft radar systems. Refurbished cylinder shields. Recalled using sheets and rolls of asbestos when performing this work. Recalled disturbing asbestos-containing materials that were applied in the 1940s and 1950s. Recalled removing insulation from the wire used in the radar systems. Contends he was exposed to asbestos during this employment. | | | |
| Cudd Pressure Controls | Various locations throughout Southern California | Oil field worker | 1976-1982 |
| Job Duties: Treated oil wells in oil fields, including oil fields operated by Chevron, Shell, Union Oil and Texaco. Performed drilling and worked with drilling mud and packing. Worked with and/or around others working with Baroid; Halliburton; and Montello drilling mud. Worked in close proximity to other trades, including but not limited to pipefitters and insulators who worked on pipelines while Mr. Lyman was in the oil wells. Oversaw other workers who removed and replaced valve packing. Recalled subcontractors J.T. Thorpe, Inc., and Halliburton. Worked in close proximity to others working with packing manufactured by A.W. Chesterton Company, Anchor Packing, Garlock, and John Crane. Performed pressure tests on valves, including but not limited to Crane Company, Crosby, Vogt (Henry Vogt Machine Company), and Weir. Contends he was exposed to asbestos during this employment. | | | |
| Baker Hughes Oilfield Operations, Inc. | Various oil fields throughout Southern California | Oil field worker | 1982-1986 |
| Job Duties: Same/similar to those job duties described above. | | | |
| Secondary/bystander exposure | | | 1939-1959 |
| Mr. Lyman's father worked as a pipefitter aboard various ships at the Boston Naval Shipyard in Boston, Massachusetts. Mr. Lyman contends he was exposed to asbestos as a result of his father's employment. Investigation and discovery were continuing. | | | |

Bronchoscopy due to recurrent hemoptysis was performed at Carson-Tahoe Regional Healthcare on November 16, 2006. The pathology report (H06-9466) diagnosed Mr. Lyman to have a keratinizing squamous cell carcinoma with invasion.

A report by Dr. Bruce H. Baldecchi of the Carson Tahoe Regional Healthcare System dated January 2, 2007 stated Mr. Lyman was a 67-year-old man whose history was obtained via telephone the night prior to undergoing surgery. Mr. Lyman's primary care physician was stated to be Dr. Sundaram at Lahontan Medical Center. Mr. Lyman denied previous CNS disease. He had a pacemaker placed two years previous and his heart function was stated to now be stable. He was told he had mild emphysema. He had oxygen at home but did not use it. Five months previous, Mr. Lyman was stated to have developed severe hemoptysis and was diagnosed with a lung tumor. He had a history of asbestos exposure. He had severe debility and weight loss. Four years ago he was stated to have weighed 160 pounds and as of the date of this report he weighed 128 pounds. He measured 5'10" tall. Mr. Lyman

reported chronic neck pain and low back pain. He was in a wheelchair most of the time and occasionally used a cane and a walker. He had chronic hoarseness dating back 20 years previous when he was placed in a chokehold by a policeman in Los Angeles. Mr. Lyman was stated to have been a heavy alcohol abuser. Mr. Lyman stated he was an alcoholic. He quit drinking 3-4 years previous. He smoked cigarettes for 50 years and at the time of this report was smoking two packs of cigarettes per day. Past medical history included two neck surgeries with titanium hardware placement; low back surgery x 1; an appendectomy; ulcer surgery; and resection of an abdominal aortic aneurysm. Mr. Lyman was scheduled to undergo a right thoracotomy, right upper lobe resection and possible sleeve resection of the bronchus for a malignant neoplasm of the right upper lobe. Dr. Baldecchi's impressions were: 1) malignant neoplasm of the right upper lobe; 2) severe debility with weight loss and chronic back and neck pain; 3) essentially bedridden or in a wheelchair; 4) chronic obstructive pulmonary disease; 5) probable asbestosis; 6) hypertension; 7) history of a pacemaker; 8) possible history of old myocardial infarct; 9) abdominal aortic aneurysm repair; and 10) chronic hoarseness.

An operative report by Dr. Baldecchi stated Mr. Lyman underwent a right thoracotomy, right upper lobectomy, mediastinal node dissection, bronchial sleeve resection with primary anastomosis, intercostal muscle flap coverage of a bronchial anastomosis, parietal pleural peribronchial flap, and insertion of chest tubes on January 3, 2007. The postoperative diagnosis was: squamous cell carcinoma of the right upper lobe and right mainstem bronchus.

A pathology report from Carson-Tahoe Pathology (H07-111) listed the diagnoses as: Right upper lobectomy (part D) showed a keratinizing squamous cell carcinoma, moderately differentiated, arising in the right superior bronchus and measuring 2.2 cm. There was stated to be metastatic carcinoma involving two of ten peribronchial lymph nodes. There was invasive squamous cell carcinoma at the bronchial margin. Partial resection of the right mainstem bronchus (part H) was stated to show invasive squamous cell carcinoma. The margins appeared clear. The tumor was staged as: T2 N1, MX squamous cell carcinoma.

A discharge summary from Carson-Tahoe Regional Healthcare (admission date January 3, 2007; discharge date February 13, 2007) listed the discharge diagnoses as: 1) non-small cell carcinoma, stage I; 2) status-post sleeve resection; 3) pseudomonal pneumonia; 4) prolonged ventilatory failure requiring tracheostomy; 5) aspiration requiring gastric tube placement; 6) hypertension; 7) coronary artery disease; and 8) congestive heart failure. Mr. Lyman was stated to have had an extensive hospital stay due to complications from pneumonia, recurrent pleural effusions, respiratory failure requiring a ventilator, and urinary obstruction. He was discharged on a variety of medications.

A report by Dr. William R. Salyer dated February 17, 2007 stated he reviewed slides designated H06-9466. Dr. Salyer diagnosed Mr. Lyman to have an in situ and infiltrating squamous cell carcinoma. Dr. Salyer stated he identified zero asbestos bodies, however, the quantity and nature of the samples were inadequate.

A report by Dr. William R. Salyer dated April 16, 2007 stated he reviewed slides designated H07-111. Dr. Salyer stated the right upper lobe lobectomy specimen showed an in situ and infiltrating squamous cell carcinoma with lymph node involvement and focal bronchial margin

involvement; minimal emphysema; focal peribronchiolar fibrosis; and CAP-NIOSH grade 1 asbestosis. Dr. Salyer stated he identified 7 asbestos bodies in 5.2 $cm^2$ of lung tissue or 1.3 asbestos bodies per $cm^2$. Dr. Salyer stated there were two asbestos bodies found in 0.4 $cm^2$ of lymph node tissue. Dr. Salyer stated the right main bronchus showed an infiltrating squamous cell carcinoma.

There are three reports by Dr. Donald Breyer, Certified ILO B Reader. Dr. Breyer's report dated May 9, 2007 stated he reviewed a CT scan of the performed at Great Basin Imaging on April 27, 2007 that showed parenchymal findings compatible with interstitial fibrosis and bilateral calcified chest wall pleural plaques that were unchanged from the previous exam and most likely represented asbestos-related pleural disease. Dr. Breyer stated there was a significant change in the appearance of the CT scan performed on March 28, 2007 that primarily involved generalized right chest wall pleural thickening, enlarged lymph nodes and lympangitic spread of disease. New findings included a pericardial effusion and abnormal thickening of the esophagogastric region. The left pleural effusion had resolved since the prior exam. Dr. Breyer stated there was a calcified gallstone and postoperative changes in the abdomen. There was thoracolumbar scoliosis and postoperative changes in the lumbar spine.


**Review of slides:**
There are fourteen glass slides and three paraffin blocks for review designated H06-9466 that correspond to a pathology report bearing that number from Carson-Tahoe Pathology, accession date November 16, 2006. There is one iron stain control slide. According to the pathology report bearing that number, the case consisted of four parts designated A through D.

Part A was labeled as "right upper lobe, endobronchial biopsy" and was stated to consist of multiple pieces of light tan to reddish-pink tissue aggregating 1.2 x 0.5 x 0.3 cm. There is one H&E stained section that shows multiple fragments of bronchial mucosal tissue involved by a malignant squamous cell carcinoma. The extent of invasion could not be determined. Iron stained section made from block A shows no ferruginous bodies.

Part B was labeled "right upper lobe lung washings" and was stated to consist of approximately 90 cc. of cloudy turbid reddish-brown fluid submitted for cytology. This slide shows fragments of tissue including fragments of necrotic material. There are also fragments of viable squamous cell carcinoma.

Part C was labeled as "right upper lobe brushings" and was stated to consist of three alcohol-fixed smears. These slides show respiratory columnar epithelial cells, blood and fragments of squamous cell carcinoma.

Part D was labeled as "right upper lobe BAL cytology" and was stated to consist of 40 cc. of cloudy red-brown fluid submitted for cytologic evaluation. The slide I have for review is a cell block and two smears. There is also an iron stained section. The BAL material contains small fragments of squamous cell carcinoma. The iron stained section shows no ferruginous bodies and the control iron stained section shows the expected staining result.

There are forty-two glass slides and twenty-three paraffin blocks for review designated H07-111 that correspond to a pathology report bearing that number from Carson-Tahoe Pathology, accession date January 4, 2007. According to the pathology report, the case consisted of nine parts designated A through I.

Part A was stated to consist of an ovoid piece of tissue consistent with lymph node measuring 1.9 x 0.7 x 0.3 cm. This was stated to be a level 9 N2 inferior pulmonary lymph node. This slide shows two step sections that are composed mostly of lung tissue and not lymph node. No metastatic tumor is noted.

Part B was stated to be a level 11 lymph node and consisted of an unspecified amount of tissue that was submitted in a single cassette. There are two slides of step sections of this tissue. This tissue shows lymph node with no evidence of primary or metastatic tumor.

Part C was labeled as "lymph node, level 10" and was stated to consist of an unspecified amount of tissue that was entirely submitted in a single cassette. The H&E stained sections show lymphoid tissue with no primary or metastatic tumor.

Part D was labeled as "right upper lobectomy specimen" and was stated to consist of a 15.2 x 10.8 x 4.6 cm. specimen. The proximal bronchus was stated to be abnormal in appearance, with a thickened and an irregular mucosal surface. These changes were stated to closely approach and grossly appeared to involve the bronchial margin. This area of abnormal bronchus appeared to extend for a length of approximately 2.2 cm., although the delineation of the abnormality was not well demarcated. No underlying parenchymal mass lesion was identified. There is a code of sections: D1-Bronchial margin; D2-perihilar lymph nodes; D3-vascular margins; D4 through D10-area of abnormal bronchus; D11-unremarkable lung tissue. Slide D1 shows bronchial margin of resection that is involved by a squamous cell carcinoma. Slide D2 was stated to represent the perihilar lymph nodes. The lymph nodes show no primary or metastatic tumor. Slide D3 was stated to be of the vascular margin. It shows lung tissue surrounding the vessels. The vessels are not involved by tumor. The lung tissue surrounding the vessel shows centrilobular emphysema. Slides D4 through D10 were stated to be the area of the abnormal bronchus. There is focal in-situ and focal invasive squamous cell carcinoma. There is an iron stained section made from the block and it shows an asbestos body in a lymph node. Iron stained section D8 shows three ferruginous bodies consistent with asbestos bodies. Iron stained section D9 shows two ferruginous bodies consistent with asbestos bodies. All sections show focal involvement by a squamous cell carcinoma, some of which is in-situ. The lymph nodes are not involved by tumor.

Slide D11 shows lung tissue that exhibits areas of mild centrilobular emphysema and also patchy interstitial fibrosis including peribronchiolar fibrosis. An iron stained section made from slide D11 shows three ferruginous bodies consistent with asbestos bodies.

Part E was stated to represent level 7 lymph node. It consisted of a single blackish hemorrhagic tissue fragment measuring 6 x 5 x 3 mm. This slide shows two step sections of lymph node that exhibit recognizable architecture with no primary or metastatic tumor.

Part F was labeled as "lymph node level 7 N1, subcarinal" and was stated to consist of a hemorrhagic-appearing tissue specimen measuring 1.2 x 1.1 x 0.4 cm. This slide has pieces of lymph node and fibrofatty tissue. No primary or metastatic tumor is identified.

Part G was labeled as "lymph node level 4 N2 paratracheal" and consisted of hemorrhagic tissue aggregating 2.3 x 1.9 x 0.4 cm. Slide G shows several fragments of lymphoid tissue and fibrofatty tissue. There is focal hemorrhage. No primary or metastatic tumor is noted.

Slide H was stated to represent mainstem bronchus of the right partial resection. This slide shows involvement by squamous cell carcinoma.

Part I was labeled as "7th right rib" and was stated to consist of bone and surrounding fibrofatty tissue and also skeletal muscle. The bone and bone marrow show no significant change.

**The following summary statements can be made in this case:**

1. My name is Samuel P. Hammar, M.D., and I am licensed to practice medicine in the State of Washington. My license is active. I have been Board certified in clinical and anatomic pathology since 1975.
2. Mr. Robert F. Lyman is a 67-year-old man with a 104 pack year history of cigarette smoking and a history of occupational exposure to asbestos as described in my report. He was stated to have possibly had bystander exposure to asbestos from his father who worked as a pipefitter aboard various ships at the Boston Naval Shipyard in Boston, Massachusetts between 1939 and 1959.
3. A report by Dr. Bruce H. Baldecchi of the Carson Tahoe Regional Healthcare System dated January 2, 2007 stated Mr. Lyman was a 67-year-old man who had a history of a pacemaker placed two years previous. He was told he had mild emphysema. Five months previous, Mr. Lyman was stated to have developed severe hemoptysis and was diagnosed with a lung cancer. He had a history of asbestos exposure. His weight had decreased from 160 to 128 pounds. Mr. Lyman was stated to have been an alcoholic but had quit drinking 3 to 4 years previous.
4. Dr. Baldecchi's impressions were: 1) malignant neoplasm of the right upper lobe; 2) severe debility with weight loss and chronic back and neck pain; 3) essentially bedridden or in a wheelchair; 4) COPD; 5) probable asbestosis; 6) hypertension; 7) history of a pacemaker; 8) possible history of old myocardial infarct; 9) abdominal aortic aneurysm repair; and 10) chronic hoarseness.
5. A discharge summary from the Carson-Tahoe Regional Healthcare (admission date January 3, 2007; discharge date February 13, 2007) listed the following discharge diagnoses: 1) non-small cell carcinoma, stage I; 2) status-post sleeve resection; 3) pseudomonal pneumonia; 4) prolonged ventilatory failure requiring tracheostomy; 5) aspiration requiring gastric tube placement; 6) hypertension; 7) coronary artery disease; and 8) congestive heart failure.
6. A report by Dr. Donald Breyer, Certified ILO B Reader, stated there were parenchymal findings in a CT scan performed on April 27, 2007 compatible with interstitial fibrosis and bilateral calcified chest wall pleural plaques that were unchanged from a previous exam. Dr. Breyer stated there was a significant change in the appearance of the CT scan performed on March 28, 2007 that primarily involved

generalized right chest wall pleural thickening, enlarged lymph nodes and lympangitic spread.

7.  I reviewed fourteen glass slides and three paraffin blocks designated H06-9466 that represented a right upper lobe endobronchial biopsy, right upper lobe washings, a right upper lobe brushing, and a right upper lobe BAL cytology. All of these specimens showed squamous cell carcinoma.

8.  I reviewed forty two glass slides designated H07-111 that represented a right upper lobectomy specimen and sections of lymph node and bronchus. The lobectomy specimen showed a squamous cell carcinoma that was predominantly in a bronchial distribution. There were two asbestos bodies in lymph nodes and seven asbestos bodies in lung parenchymal tissue. The lung parenchymal tissue showed areas of interstitial fibrosis and patchy interstitial fibrosis, the findings being consistent with CAP-NIOSH grade 2 asbestosis. There were areas of mild centrilobular emphysema.

9.  Based on Mr. Lyman's history of occupational exposure to asbestos as described in my report and radiographic and pathologic asbestosis plus radiographic hyaline pleural plaques, I conclude his squamous cell carcinoma of the lung was caused by asbestos.

10. Based on Mr. Lyman's history of cigarette smoking and mild centrilobular emphysema, I conclude his lung cancer was caused by cigarette smoke carcinogens.

11. I conclude Mr. Lyman's lung cancer was caused by the combined effect of asbestos and cigarette smoke carcinogens.

12. Robert F. Lyman was diagnosed with a right upper lobe squamous cell carcinoma and, within a reasonable degree of medical probability, each and every breath of asbestos-containing air above background was a potential substantial contributing factor in causing his right upper lobe squamous cell carcinoma.

13. All opinions and conclusions in my report are to a reasonable degree of medical certainty/probability.

*Sam Hammar*

Samuel P. Hammar, M.D., FCCP, FCAP, Director
Keith O. Hallman, M.D.
David M. Bray III, M.D.
Richard A. Cox, M.D., Ph.D.

700 Lebo Boulevard/PO 2171
Bremerton, Washington 98310

voice:  360-479-7707
FAX:  360-479-7886
Washington State:  800-762-2344
*e-mail: shammar@harrisonmedical.org*

July 31, 2007

Shakena N. Hall, Administrative Assistant
Brayton Purcell
222 Rush Landing Road
Novato, CA 94945

Phone: 800-765-7778 or 415-898-1555
Fax: 415-898-1247

Re:   *LYMAN, ROBERT F.*
       *L07-272*

Dear Ms. Hall:

Please find enclosed my report on Mr. Robert F. Lyman. The statements at the end of my report summarize the most important findings and conclusions in this case.

If you have any questions concerning my report, please let me know.

Sincerely,

*Sam Hammar*

Samuel P. Hammar, M.D.

SPH:nb

Enclosure

# EXHIBIT A – 4

## RAYBIN REPORTS

# Brayton Purcell

### TRIAL LAWYERS

222 Rush Landing Road
P O Box 6169
Novato, California 94948-6169
Telephone: (415) 898-1555
Facsimile: (415) 898-1247

Portland: (503) 295-4931
Los Angeles: (310) 727-1900
Salt Lake City: (801) 366-9100

Email: mail@braytonlaw.com
www.braytonlaw.com

July 24, 2007

ALAN R. BRAYTON
GILBERT L. PURCELL

DAVID R. DONADIO
CHRISTOPHER E. ANDREAS

OF COUNSEL
ROBERT M. BROWN
JEFFREY D. EISENBERG*
PETER W. FISHER

* ADMITTED ONLY IN STATES
OTHER THAN CALIFORNIA

JARED J. BABULA
DAVID H. BACKENSTOE
RETT D. BERGMARK
HEATHER A. BRANN*
GARY L. BRAYTON
ELAINE J. BROWN*
ANGELO L. BUTLER
C. RYAN CHRISTENSEN*
KIMBERLY J. CHU
HUGH C. COOK
MICHELE L. De ROUEN
JOHN E. DURR
JON M. EGAN*
LISA J. ESPADA
JOSHUA C. EZRIN
BARBARA B. FOULDS
PETER B. FREDMAN
ROBERT GILCHRIST*
JOHN B. GOLDSTEIN
JULIE C. GREBEL
STEPHEN J. HEALY
GARY V. JUDD
CLAYTON W. KENT

KERRY LAW
LLOYD F. LeROY
MAUREEN C. MCGOWAN
KELLY A. MCMEEKIN
S. BROOK MILLARD*
RAYMOND D. MUELLER
JAMES P. NEVIN
OREN P. NOAH
DONALD K. ODER
SARA I. PAUL
DAVID L. POLEN
PAT SAFFORD
JOHN J. SANCHEZ
MICHAEL R. SANTIAGO
JOHN W. SCHILT
CHRISTINA C. SKUBIC
ERIC C. SOLOMON
ROBYN L. STEIN*
DAVID A. STEWART*
SALVATORE C. TIMPANO
PAUL A. VAILLANCOURT
ANTHONY E. VIEIRA
NANCY T. WILLIAMS

TO ALL DEFENSE COUNSEL
VIA FACSIMILE

Re:   ROBERT LYMAN
      DR. DANIEL RAYBIN

Enclosed please find the above-referenced reports.

Very truly yours,

Kim Eliasson
Administrative Assistant

K:\FORMS\MEDICAL\Medserve.wpd

# DANIEL M. RAYBIN, M.D., F.A.C.P., F.C.C.P.
2250 HAYES STREET, #505
SAN FRANCISCO, CA 94117
TELEPHONE 415-668-1835

July 23, 2007

Ms. Marion R. DeCarlo
Workers' Compensation Manager
Brayton-Purcell
222 Rush Landing Road
Novato, CA 94948-6169

RE: Robert F. Lyman vs. Fitzpatrick Chevrolet, et al.
WCAB Case No.: SFO unassigned

Dear Ms. DeCarlo:

Thank you for asking me to review the medical records on Mr. Robert F. Lyman for the purpose of a Workers' Compensation Medical-Legal Evaluation.

I have reviewed the Application for Adjudication of Claim. It is claimed that Mr. Lyman developed lung cancer due to exposure to asbestos and other toxic substances.

I have reviewed Social Security records. Employers listed are:

1955-56 Massachusetts General Hospital
1955 Walden Mop and Brush Co Corp
1956 Perry Packaging Inc
1956 Palpar Co. Inc.
1957 US Marines
1957 Boston American League Baseball Club
1957-58 WF Schrafft & Sons Corp
1958 Follett-United Bookstore, Inc.
1958 Shriner Bros Inc
1958-59, 1962 Atlantic & Gulf Stevedores, Inc.
1958-60 Bay State Stevedore Co., Inc
1958-59 Revere Sugar Refinery
1959 John T Clark & Son of Boston, Inc.
1959-60 Boston Marine Terminal Corp, Hoosac Pier No 1
1959-61 P & O Ports of New England, Inc
1959 HP Hood Inc
1959 Patterson Wylde & Co.
1959 Federated Department Stores Inc
1960 Wilbars Inc
1960 David Kay Shoe Co of Mass Inc
1961-62 Jasons Shoe Store

1961 Braintree A S Beck Corp
1962-1969 Associated Transport, Inc.
1966 United States Gypsum Co
1968-69 First National Supermarkets Inc c/o Tops Markets Inc
1968 Foreign Auto Import, Inc
1968 Foreign Auto Sales Inc.
1969-70 National Discount Corp.
1970 Merit Freight Consolidating, Inc
1970 Wooster Express Inc
1974-77 Alva Radio Industries Inc Beverly Hills CA
1978 Richards Maintenance & Repair Mar Vista CA
1980 Mary Help of the Sick Convalescent and Nursing Hospital Newbury Park CA
1981-82 Cudd Pressure Control Inc  Houma LA
1982-86 Baker Performance Chemicals, Inc. Sugar Land TX
1987-88 Guisto Enterprises Inc Daly City CA
1988 AAAAA Rent a Space Castro Valley CA
1988 Public Storage Management Clearing Co
1989-90 Serra Enterprises Inc Colma CA
1989 A to Z Self Storage Ltd RCH Palos Verde CA
1990-91 Elmer Haas Los Gatos CA
1991-1998 Smiths Food & Drug Centers Inc Cincinnati OH
1991-92 Dennis & Teresa Maloney 7-Eleven Reno NV

I have reviewed Answers to Interrogatories, verified by the patient's wife, Sandra Lyman, 1/30/07.

Mr. Lyman lived in Massachusetts 1939-1972. He lived in various cities in California 1972-88. He lived in Florida in 1988. He lived in Reno NV 1988-2000. He lived in Silver Springs NV 2000-2004 and 2005 to present. He had lived in Springdale AR in 2004-2005.

Since 1999 he has had shortness of breath, pain, weakness and fatigue.

He smoked cigarettes 1955-2007, 0-2 ppd.

Employment includes:

US Marine Corps. He was a trainee at Camp Lejeune in Jacksonville NC for 8 weeks 1956-7. He attended aviation mechanical school in Jacksonville FL at Naval Air Station Cecil Field. He worked on jet engines and was exposed to asbestos.

Associated Transport. 1958-67 he was the operation fleet manager of a fleet of over 200 vehicles. He was present while mechanics changed truck brakes. He recalls mechanics using arcing machines when necessary while in his presence.

United States Gypsum. 19 67, for 8 months he was the foreman on a production line. Products included sheet rock. Other workers mixed materials in vats that were poured out

in forms for wallboard. He recalls other workers cutting the wallboard. He recalls very dusty conditions.

Self Employment 1968-70 he worked as a laborer performing odd jobs. He does not recall asbestos exposure.

Alva Radio Industry Santa Monica 1971-75. He was an assembler of aircraft radar systems. He refurbished cylinder shields. He used sheets and rolls of asbestos. He recalls disturbing asbestos containing materials that were originally applied in the 1940s and 1950s. On occasion he would remove insulation from the wire used in these radar systems.

Cudd Pressure Controls, Port Hueneme CA. 1976-82. He was an oil field worker treating oil wells in oil fields throughout out southern CA. There were fields operated by Chevron, Shell, Union Oil and Texaco. He performed drilling and worked with drilling muds and packing. He worked near others who were also using Baroid, Halliburton and Montello drilling muds. He worked in proximity to pipefitters and insulators who were working on the pipelines while he was in the oil fields. He oversaw other workers who were removing and replacing valve packing. He performed pressure tests on valves.

Baker Hughes Oilfield Operations Houston TX. 1982-86.   He was an oil field worker at many different locations in southern California. He worked on a three man crew that treated oil wells in oil fields. He performed drilling and worked with drilling muds and packing. He worked near others who were also using Baroid, Halliburton and Montello drilling muds. He worked in proximity to pipefitters and insulators who were working on the pipelines while he was in the oil fields. He oversaw other workers who were removing and replacing valve packing. He performed pressures tests on various valves.

Self Employed 1987-91. He worked as a manager at motels throughout California and Florida. He and his wife were sent by Baker Hughes Oilfield Operations, Inc., to be trained in motel marketing and management. He and his wife then managed various motels in San Francisco and Long Beach CA as well as some in Florida

Smith's Food & Drug Reno NV 1991-98 he worked as a clerk.

He stopped working in 1998 due to a non-asbestos related disability. He had stopped working for Baker Hughes Oilfield Operations Inc, Ventura because he broke his neck on the job.

His neck was broken in a car accident.

Secondary Asbestos exposure:

His father, Sylvester Lyman worked for the US Government as a pipefitter for about 50 years. Mr. Robert Lyman lived with his father from 1939 until about 1959f. His father came home with dusty dirty clothes every day. He would meet his father at the front gate of the shipyard and walk home with him. His father worked as a pipefitter at the Boston

Naval Shipyard on board various ships.

I have reviewed a radiology report by Donald Breyer, M.D., 1/23/07. Dr. Breyer reviewed a chest CT scan from Carson Tahoe Hospital 11/6/06. The films are technically adequate but they lack prone high resolution views, which limits evaluation for interstitial lung disease.

There are bilateral findings of chest wall and diaphragmatic pleural plaque, including calcified chest wall and diaphragmatic plaque. These findings are pathognomonic for asbestos pleural disease.

A pacemaker is present. There is significant atherosclerotic disease of the aorta, especially the aortic arch and descending aorta. There is irregular mural thickening and probable ulcerated atheromatous plaque. There is a large sliding type hiatus hernia with most of the stomach in the thorax. There is a prominent right hilar lymph node.

I have reviewed a radiology report by Donald Breyer, M.D., 4/6/07. Dr. Breyer reviewed a chest CT scan with 2.5 mm thin sections, taken in the supine position only, from Carson Tahoe Regional Medical Center 3/28/07. Again, the lack of prone high resolution images limits evaluation for interstitial lung disease.

There is circumferential pleural thickening around the entire right chest wall and mediastinal pleural surfaces, with the pleura measuring up to 2 cm in thickness. There is significant volume loss in the right lung and changes of thickened irregular interlobular septae and thickening of the interlobular interstitium throughout the right lung. There is a small left sided pleural effusion.

There are enlarged mediastinal and abdominal lymph nodes.

There are bilateral changes of calcified pleural plaque, seen on both anterior and posterior chest wall.

Heart size is enlarged. There is atherosclerotic disease of the descending aorta and there appears to be a small intimal flap present. A pacemaker is present.

The findings in the right chest are suspicious for pleural malignancy such as mesothelioma. Lymphangitic spread of disease appears to be present in the right lung.

I have reviewed hand written pathology notes from William Salyer, M.D., 2/17/07.
Dr. Salyer reviewed the pathology reports as follows:

11/16/06 Carson Tahoe Pathology, Carson City NV
         -hemoptysis, abnormal right upper lobe with multiple
         infectious vs. malignant

         Right upper lobe endobronchial biopsy, positive for malignancy, keratinizing

squamous cell carcinoma with invasion.

Right upper lobe washing, cytology, positive for malignancy, keratinizing squamous cell carcinoma.

Right upper lobe brushing, cytology, positive for malignancy, keratinizing squamous cell carcinoma.

Right upper lobe bronchoalveolar lavage, cytology, positive for malignancy, keratinizing squamous cell carcinoma.

Dr. Salyer reviewed the pathology slides and he also prepared iron stains.

Lung, right upper lobe bronchial biopsy showed *in situ* and infiltrating squamous cell carcinoma. There is no lung tissue. The bronchial tissue did not contain asbestos bodies.

Lung, right upper lobe bronchial wash showed squamous cell carcinoma, 0 asbestos bodies.

Lung, right upper lobe brushing - squamous cell carcinoma.

Lung, bronchoalveolar lavage, squamous cell carcinoma, no asbestos bodies.

Dr. Salyer stated that the quantity and nature of above samples are inadequate for documentation of asbestos body content of lung tissue.

I have reviewed pathology notes from William Salyer, M.D., 4/16/07.

Dr. Salyer reviewed pathology reports:

1/4/07 Carson-Tahoe Pathology, right upper lobe lung cancer.
Fragment of lung parenchyma, negative
Mediastinal lymph nodes- negative
Lung, right upper lobe lobectomy- moderately differentiated squamous cell carcinoma, 2.2 cm, metastatic cancer in 2/10 hilar nodes.
Clean vascular margin
-invasive squamous cell cancer at bronchial (*this word is difficult to read*) margin
Mediastinal lymph nodes, negative
Right main bronchus, partial resection-invasive squamous cell cancer, margins
Right 5th rib, negative.

Dr. Salyer reviewed pathology slides.
Mediastinal node- fragment of lung. No lymph node. Negative.
Mediastinal lymph nodes- negative
Lung, right upper lobe, lobectomy- *in situ* and infiltrating squamous cell carcinoma with lymph node involvement.

Focal, peribronchiolar fibrosis.
7 asbestos bodies in 5.2 cm$^2$ of lung tissue or 1.3 asbestos bodies/cm$^2$.
2 asbestos bodies in 0.4 cm$^2$ of lymph node tissue.
Asbestosis, CAP-NIOSH Grade I.
Mediastinal Lymph nodes, negative.
Right main bronchus, partial resection, infiltrating squamous cell carcinoma, negative margins clean (*this word is difficult to read*)..
Right 7th rib negative.

I have reviewed records from Banner-Churchill Community Hospital Pathology Department.

3/25/04 pathology report of gastrointestinal polyp shows fragments of tubular adenoma. Biopsy of small bowel mucosa shows normal histology.

I have reviewed records of Carson Tahoe Pathology.

Pathology report 10/11/05 states: abdominal aortic aneurysm. There are fragments of abdominal aortic plaque (aneurysm repair).

Pathology report 1/11/06 describes mature adipose tissue consistent with lipoma, from excisional biopsy, soft tissue, back.

Pathology report 11/16/06 is exactly as described above by Dr. Salyer.

Pathology report 1/3/07, amended report, is mostly as described by Dr. Salyer. In addition, the lung lobectomy specimen has proximal bronchus abnormal in appearance with a thickened wall with an irregular mucosal surface. These changes closely approach and grossly appear to involve the bronchial margin. This area of abnormal bronchus appears to extend for a length of 2.2 cm. (This is the right upper lobe bronchus which was resected initially). The specimen from the subsequent resection of the portion of the right mainstem bronchus had margins which appear clear.

The tumor stage is T2, since the tumor involves the main bronchus 2 cm distal to the carina. The TNM stage is T2, N1, MX.

Pathology report 1/17/07 describes right lower lobe lung brushing, cytology, with mild inflammation and no evidence for malignancy. The right lower lobe washing has increased acute inflammation, abundant mucoid material consistent with mucus plug, negative for malignancy.

Pathology report 1/26/07 left thoracentesis, cytology. 5 mL of turbid tan fluid was submitted. There were scattered mesothelial cells in a background of acute inflammation, negative for malignancy.

Pathology report 2/5/07 of pleural effusion (side not specified) cytology. There is 50 mL of cloudy blue/gray fluid submitted for cytology. There is a macrophage dominant

mixed inflammatory cell population with no evidence of malignancy.

I have reviewed records of Carson Surgical Group.

4/7/04 CT abdomen report: History is weight loss, rectal bleeding. There is a moderate sized hiatal hernia. There is an abdominal aortic aneurysm with perianeurysmal soft tissue thickening suspicious for aortitis. The configuration of the soft tissue changes is somewhat unusual, but there appears to be subtle enhancement again raising the suspicion of aortitis in a retroperitoneal location and does partially encase the distal abdominal aorta. There are also small nodes in the retroperitoneum or superiorly.

4/7/04 CT pelvis report: Distal abdominal aortic aneurysm extends to the level of the aortic bifurcation where there are bilateral iliac stents. Soft tissue thickening with heterogeneous enhancement and nodular contour partially encases the distal aorta strongly suspicious for aortitis.

10/7/05 Report of CT scan chest and abdomen from Great Basin Imaging: The aorta is atherosclerotic with wall thickening present throughout. There is ulcerative plaque present along the course of the arch and descending thoracic aorta. There is a sliding hiatus hernia, moderate in size. There is multi-focal pleural plaquing, some of which is calcified, compatible with asbestos pleural disease and unchanged from 11/27/02. Otherwise the lung parenchyma is clear.

There is an infrarenal abdominal aortic aneurysm with a fairly extensive circumferential mural thrombus, 5.1 x 5 cm in transverse diameter, with a marked interval increase in size since the prior study. The morphology of the wall is worrisome, with interruption of mural calcifications and soft tissue or thrombus outside the calcified wall.

10/10/05 Consultation by William Thomas, M.D. The most recent CT scan showed the infrarenal abdominal aortic aneurysm had increased in size. He has severe back symptoms which are chronic. His partner, Dr. Tim King, evaluated Mr. Lyman in April 004 and determined that he was a poor risk for an open aneurysm repair. He may be appropriate for an endovascular stent. He will therefore be referred to Dr. Halow, who has expertise with endovascular stenting.

10/16/05 history and physical by Dr. Kevin Halow states that Mr. Lyman has had severe unrelenting back pain for two days, to the point where he cannot sleep. He had CT scan on 10/7. He has an abdominal aortic aneurysm which is thought to be inflammatory. He has severe atherosclerotic disease and has bilateral iliac artery stents. He has chronic back pain and neck pain from multiple surgeries. He has never had pain as severe as the current pain. He has a long history of COPD and he is significantly short of breath but he does not require oxygen. He has significant phlegm. He has chronic dysphagia, heartburn, constipation and diarrhea. He is a very thin man, very fragile. On reviewing the CT he has an obvious ruptured abdominal aortic aneurysm, ruptured posteriorly into the spine, consistent with his back pain.

10/11/05 operative report describes the surgery for the posteriorly ruptured aortic

To: Brydon Hugo & Parker-San Francisco                    From:                    Tuesday, July 24, 2007 3:18 PM Page: 9 of 30
Subject: Lyman, Robert Rayburn Medserve

BSC 4:07-cv-04240-SBA    Document 56-3    Filed 10/02/2007    Page 19 of 62

aneurysm. It notes that there was significant thrombus in the aorta, requiring thrombectomy to the proximal aorta. The right common femoral artery was significantly diseased and had previously been operated upon, requiring an endarterectomy in order to sew a graft limb to that site. Both common iliac arteries were ligated.

10/11-10/16/05 discharge summary states that Mr. Lyman had emergency repair of the contained ruptured abdominal aortic aneurysm. Initially he had a stormy post-operative course in the ICU because of his cardiac and his pulmonary disease. He was able to be extubated immediately and once his fluid status adjusted he turned around quickly.

10/19/05 Dr. Halow notes patient is status post ruptured aneurysm repair. He has had significant lower extremity edema, probably related to his history of CHF cardiac disease. He also received a lot of fluids in the OR. His primary care physician recently increased his Lasix dose to 40 mg bid. He has some blistering around the ankle with significant edema.

10/21/05 he is status post aortobifemoral bypass for a ruptured abdominal aortic aneurysm. He now has lower extremity edema. After placing UNNA boots, his swelling is a lot less.

10/25/05 Dr. Halow notes he returns post aortobifemoral bypass. He has on Unna boots for lower extremity swelling which is doing very well. He now has minimal swelling. We have placed him in compression stockings.

11/11/05 he is doing well. He developed shingles. His lower extremity swelling is improved. His wounds are healing on his feet. He has shingles on his back.

1/3/06 Dr. Halow notes that he is seen for a lipoma on his back. There is an operative report of the excision of the lipoma on 1/11/06.

1/17/06 BUN is 31, creatinine 1.1.

1/31/06 operative note by Dr. Halow describes cryoplasty of left distal SFA and popliteal artery occlusion.

4/6/06 Dr. Halow notes he is doing well, with excellent flow in both feet. He has a little pain behind his left knee. He is walking much better.

7/18/06 BUN is 90, creatinine 1.4.

9/6/06 he is seen for follow up of incisional hernia.

11/6/06 PET whole body report: Normal examination, no suspicious hypermetabolism. The pleural plaques seen on the chest CT have normal metabolic activity.

11/14/06 bilateral lower extremity segmental pressure and PVR study report: There is probable restenosis of the previously performed cryoplasty left lower extremity with

occlusion of the femoral popliteal system on the left. The right lower extremity has mild femoral popliteal occlusive disease.

11/23/06 history and physical by Dr. Halow for the laparoscopic incisional hernia repair, mentions past history of chronic obstructive pulmonary disease and severe degenerative joint disease, from which he is disabled.

12/20/06 history and physical by Dr. Halow, for the right upper lobe squamous cell carcinoma, states that this 57 year old man has multiple medical problems, significant vascular disease and long history of smoking. He has a right upper lobe squamous cell carcinoma that was diagnosed after multiple episodes of hemoptysis. He has had some underlying shortness of breath. He had a bronchoscopy which revealed a right upper lobe lesion, which extends close to the right mainstem bronchus and possibly would require a sleeve resection. Past medical history includes cerebrovascular peripheral vascular disease, coronary artery disease and degenerative joint disease. He had abdominal aortic aneurysm repair about a year ago and lower extremity endovascular interventions for revascularization. He had multiple neck surgeries and abdominal incisional hernia repair.

He is currently disabled from his multiple neck surgeries. He still smokes. He used to drink, but doesn't drink any more. He is on chronic methadone use.

He had a chest CT scan which showed no significant adenopathy and no other abnormalities. His bronchoscopy was consistent with a superficial spreading squamous cell carcinoma of the right upper lobe extending close to the orifice of the right mainstem bronchus. He has had multiple pulmonary function tests. He would be a good candidate for a lobectomy but a marginal candidate for a pneumonectomy.

He also has chronic obstructive pulmonary disease.

1/3/07 operative report by Dr. Halow: The patient has a superficial spreading squamous cell carcinoma of the right upper lobe. He is extremely high risk for surgery but could tolerate a right upper lobectomy. Right upper lobectomy was attempted, but the bronchial margin was positive. They proceeded with sleeve resection with end to end anastomosis between the right main bronchus and the bronchus intermedius. There was intercostals muscle flap coverage with parietal pleural peribronchial flap.

        The right upper lobe was adherent to the chest wall. The adhesions were taken down. Mediastinal node dissection was performed. First right upper lobectomy was performed. Then, for the sleeve resection, the right main bronchus was transected 1 cm distal to the carina. The bronchus intermedius was transected. The frozen sections showed clean margins.

1/10/07 operative report by Dr. Halow states that tracheostomy was performed because of respiratory failure following the right upper lobe sleeve resection.

1/30/07 chest x-ray report: Improved aeration of right lung. There is prominent opacity in the left mid and lower lung field. Tracheostomy tube is noted. A PICC is noted. NG tube

is seen. Persistent opacity at the left mid and lower lung field likely represents overlying left pleural effusion, atelectasis or pneumonia. Increased markings projecting over the right upper lobe may represent infiltrate or atelectasis.

2/1/07 chest x-ray report: Airspace disease changes are noted in the left lower lobe. There is moderate volume loss in the left hemi-thorax.

2/13/07 chest x-ray report: Tracheostomy midline, right PICC line, left pacemaker, bilateral infiltrates and bibasilar atelectasis.

2/27/07 Dr. Halow notes post op visit, status post sleeve resection right upper lobe. Overall doing well despite some significant pulmonary issues. His right lower extremity has been swelling lately. He is in compression stockings. The tracheostomy is still in place.

2/28/07 report of right lower extremity venous ultrasound shows no evidence of deep vein thrombosis. The patient had some swelling in the right lower extremity.

<u>I have reviewed records of the Carson Tahoe Regional Medical Center.</u>

7/12/06 pulmonary consultation by Guy Foster, M.D. The patient has hemoptysis. CT 5/27/06 shows nodular density at right base and multiple pleural plaques. Prior chemical and asbestos exposure. Hemoptysis began 6 weeks previously and is more than streaks, red. He had prior laryngeal surgery due to crush injury. He's had intermittent darker stools for a couple of months. His dyspnea is stable. He seems to stop breathing at night, per wife, who wakes him up. He snores. He is not tired during the daytime. He lost 40 lbs. recently. He has smoked 1 ppd for 14 years. Occupation is disabled. He has COPD and heart problems. He was hospitalized twice in 2005 for blood loss .On exam his lungs have poor breath sounds throughout. Dr. Foster's assessment is hemoptysis, proceed with bronchoscopy given high risk for malignancy. Will obtain PET scan first. The right lower lobe findings are probably plaques as well. He has pleural plaque undoubtedly due to asbestos exposure. He has obstructive sleep apnea and COPD. Dr. Foster ordered Advair, and albuterol.

8/2/06 PET CT scan shows a mild degree of increased uptake in the superior right hilum.

8/8/06 Dr. Foster saw Mr. Lyman for surgical clearance. Hemoptysis has resolved. If it returns, bronchoscopy.

8/17/06 Dr. Foster reviewed the PET scan images. He does not clearly see a right hilar mass and he does not feel that the risks of bronchoscopy, biopsy of that region are justified.

9/25/06 Dr. Foster notes patient returns for follow up of obstructive sleep apnea, unable to use CPAP machine. No change in breathing, no further hemoptysis.

11/6/06 chest CT scan report describes clear lungs without obvious nodules. There are

numerous small partially calcified pleural plaques involving the diaphragmatic surfaces and chest wall bilaterally. The findings suggest asbestos pleural disease. They are unchanged from prior chest CT 10/14/05. There is a moderate sized retrocardiac hiatal hernia. There is stable fusiform aneurismal dilatation of the descending thoracic aorta. A pacemaker is present.

11/13/06 Dr. Foster notes right hilar activity on PET scan, recent cough with white yellow phlegm for 2 weeks, now blood streaking as well. CT scan negative. Bronchoscopy is scheduled.

11/16/06 bronchoscopy report by Dr. Foster states the patient had recurrent hemoptysis. The vocal cords appeared normal. The right upper lobe bronchus was abnormal with multiple patches of possibly necrotic or viral vs. necrotic tissue from malignancy. Multiple biopsies, brushings and washings were taken.

The culture of the bronchial washings grew *Pseudomonas aeruginosa*.

11/20/06 Pulmonary Function Tests include for age 67, height 62 inches, FVC 3.05 L., 94% predicted, FEV1 1.76 L., 76% predicted, FEV1/FVC 58%, Total Lung Capacity 6.28 L., 135% predicted, Residual Volume 1.94 L., 168% predicted, DLCO 11.6, 76% predicted. Dr. Foster interpreted the study as showing a mild obstructive ventilatory dysfunction with no response to inhaled bronchodilator. Increased RV and TLC are consistent with air trapping/hyperinflation. DLCO is borderline reduced.

11/20/06 Dr. Foster notes follow up of non-small cell carcinoma, squamous cell ca, bronchoscopy positive, there was thickening and redness of RUL takeoff as well. Minimal streaks of blood intermittently. He is to be referred to Dr. Halow.

11/22/06 cardiopulmonary exercise test report states VO2 max was 11.9, 51% predicted, based on weight. Absolute was 34% predicted. Anaerobic threshold was 0.576 which is 28% of predicted VO2 max. Heart rate was 100, which is 66% of predicted heart rate. Oxygen pulse was 6.9. Maximum minute ventilation was 49.2, 51%. Respiratory rate was 34. Dr. Foster believed the anaerobic threshold was correct. The patient did not achieve either a cardiac or a pulmonary limitation. His anaerobic threshold was severely decreased, compatible with deconditioning, severely peripheral vascular disease or mitochondrial disease or "mitochondrial myopathy." His preserved oxygen pulse argues for a relatively intact stroke volume. Dr. Foster's impression was severely reduced oxygen consumption, most likely due to deconditioning.
Comment: Elsewhere, Dr. Foster noted that the patient was taking a beta blocker at the time of the study.

The pre-exercise spirometry reports, for age 67, height 62 inches, FVC 2.99 L., 92% predicted, FEV1 1.39 L., 60% predicted and FEV1/FVC 46%.

The post-exercise spirometry shows FVC 2.97 L., 91% predicted, FEV1 1.52 L., 66% predicted. FEV1/FVC is 51%.

The report states that the test was performed with a bicycle ergometer. He stopped exercising due to leg fatigue. His medications were: Methadone, Xanax, Albuterol MDI, Advair, Lasix, Lisinopril, Plavix, Lipitor, Soma, atenolol, Spiriva and Niacin. History is dyspnea with exercise and at rest. HE has chronic congested productive cough. He has an 82 pack year smoking history. He has been diagnosed with lung cancer and COPD. He has had an occupational exposure to asbestos.

The exercise test results include peak responses of VO2 11.9 ml/kg/min, total 0.692 L./min, anaerobic threshold 0.576 L./min, heart rate 100, minute ventilation 49.3 L., 57% predicted, respiratory rate 34, tidal volume 1.3 L., SpO2 94%.

1/3/07-3/13/07 discharge summary of hospitalization, by Dr. Guy Foster. Diagnoses are Non-small cell carcinoma stage 1, status post sleeve resection, pseudomonal pneumonia, prolonged ventilatory failure requiring tracheostomy, aspiration requiring gastric tube placement, hypertension, coronary artery disease, congestive heart failure.

He underwent prolonged intubation for his initial pseudomonas pneumonia. He did have pseudomonas recovered with new infiltrate prior to discharge, but he was completely stable with no further fevers or leukocytosis and will continue on ciprofloxacin as an outpatient.

He had left pleural effusion. He had thoracentesis twice on the left. Both fluids were transudates, undoubtedly due to low albumin/fluid overload.

The sleeve resection had excellent margins from the tumor and it held up well in the postop period. There were minimal problems with bleeding. He did have multiple mucus plugs, which required multiple bronchoscopies.

He had post-operative respiratory failure. After a tracheostomy was placed, he was gradually weaned off the ventilator over an extended period of time, likely complicated by coronary artery disease.

At discharge his hypertension was controlled. He was unable to tolerate a beta blocker or ACE inhibitor and would continue on Lasix due to very brittle congestive heart failure with repeated episodes of congestive heart failure.

His congestive heart failure will be followed by his cardiologist. He can only tolerate a minimal dose of diuretic. He is to follow his weight closely.

He had urologic obstruction while in the hospital. After a Foley catheter was placed, he was put back on Flomax and the obstruction resolved.

He continued on therapy for anxiety and on methadone for his chronic pain.

1/3/07 consultation by Dr. Guy Foster. He had referred the patient to Dr. Halow for possible resection of right upper lobe non-small cell lung cancer. The pre-op PET scan had shown minimal inflammation which was hilar only. Full pulmonary function testing

was actually fairly good. Cardiopulmonary exercise test showed quite poor status overall. It was cardiac limited, possibly falsely by his beta blocker. Currently he does not have any shortness of breath and he has not had cough lately. He has neck pain and pain at his incision.

Past medical history includes COPD, coronary artery disease status post MI, pacemaker placement and a broken neck. He had titanium rods placed in his head and shoulders. He is status post angioplasty. He was hospitalized twice in 2005 for loss of blood.

Family history is that his mother died of a massive heart attack.

He has smoked 1 ppd for 54 years.

His chest x-ray shows a right upper lung pneumothorax. His chest tube leak is currently minimal. He is continued on incentive spirometry treatments.

1/3/07 anesthesia consultation by Bruce Baldecchi, M.D. He has planned right thoracotomy, right upper lobe resection and possible sleeve resection of bronchus. He is on methadone 10 mg, 5 tablets daily and Vicodin about 2 tablets daily for breakthrough pain. His aspirin and Plavix were stopped 2 weeks ago. He had a pacemaker placed 2 years ago. He was told he probably had an old heart attack in the past. He does not remember it. He has been told he has slight emphysema. He has oxygen at home which he does not use. Five months ago he had severe hemoptysis. It has not recurred since then. That is how the diagnosis of lung cancer was made.

He also had a history of asbestos exposure. He has had hypertension. He has had severe debility and weight loss. Four years ago he weighed 160 lbs. Now he is down to 128 lbs. His height had been 5 foot 10 inches, now is 5 foot 3 inches. He has chronic neck pain and low back pain from what sounds like osteoarthrosis. He has had two prior neck surgeries. He has a lot of hardware in his neck and also some low back surgery.

He is essentially bedridden, pretty much in a wheelchair most of the time. He occasionally uses a cane, and Dr. Baldecchi thinks, a walker. He has had chronic hoarseness dating back to 20 years ago when he was placed in a choke hold by a policeman in Los Angeles. He was a heavy alcohol abuser. He had been an alcoholic. He quit drinking 3 or 4 years ago. He has smoked cigarettes for over 50 years, now 2 ppd.

The assessment is ASA status 4, with malignant neoplasm right upper lobe, severe debility with weight loss and chronic back and neck pain, essentially bedridden in a wheelchair, chronic obstructive pulmonary disease and probable asbestosis, hypertension, pacemaker, possible history of old myocardial infarction, abdominal aortic aneurysm repair and chronic hoarseness.

1/5/07 bronchoscopy report by Dr. Robert McDonald. The patient was orally intubated. Mucus plugs were removed.

1/7/07 bronchoscopy report by Dr. Robert McDonald. The patient was on a ventilator. Secretions were removed.

1/17/07 bronchoscopy report. Mucus plugs were removed.

1/17/07 chest CT scan report. There are new moderate bilateral pleural effusions and moderate pericardial effusion. There is volume loss in the right hemithorax. There is extensive consolidated lung bilaterally, right greater than left, as well as areas of atelectasis. There are probable mucus plugs occluding the right mainstem bronchus. A tracheostomy is in place.

1/19/07 bronchoscopy report. There was recurrent right lower lobe collapse. Mucus plugs were removed.

1/20/07 bronchoscopy report. Large amount of loose secretions was occluding the right mainstem bronchus.

1/21/07 bronchoscopy report by Dr. Foster. The patient had coughed up a large bloody colt. All the secretions had been removed by vigorous coughing.

1/23/07 bronchoscopy report by Dr. Foster. He had a large clot removed earlier. Now the secretions were quite clear. The distal airways had a plug in them which was removed, comprised of blood and clots. The left side was clear.

1/24/07 thoracentesis note. This was an urgent procedure performed for respiratory distress and hypoxia. 600 mL of transudative appearing fluid was removed.

1/24/07 09:20 bronchoscopy report by Guy Foster MD. The indication was right sided atelectasis. He did not find active bleeding, so hopefully there would be no more clots. He did not cross the suture line. The bronchoscope was inserted into the tracheostomy. There was a large clot blocking the distal tip of the tracheostomy which was removed. There was a large clot in the right mainstem bronchus which was removed. The suture site was not actively bleeding today.

1/24/07 14:17 bronchoscopy report by Dr. Foster. This was a stat procedure because of increasing airway resistance. Copious secretions in the airway were lavaged clear. There was minimal bleeding in the right lung distal to the anastomosis, possibly from the anastomosis itself. The left side had large amounts of secretions, possibly from his underlying pneumonia and certainly possibly from his possible congestive heart failure as well. After the procedure, the patient improved.

1/24/07 consultation by Dr. Frank Carrea, to evaluate recurring pulmonary congestion with pleural fluid and intermittent chest discomfort. The patient had resection of right upper lobe squamous cell carcinoma and subsequent tracheostomy and continued ventilator support since his surgery. He had chest tightness earlier today and had bronchoscopy to try and clear his airways. He developed more trouble with chest discomfort and worsened respiratory status and tachycardia. In radiology CT scan

demonstrated pleural fluid and some pulmonary congestion. He had left thoracentesis of straw colored fluid.

Office charts showed he had a myocardial perfusion scan, within the past year, which demonstrated ejection fraction of 39%.

It was noted he required fluid administration yesterday to treat hypotension. The fluids may have contributed to the pulmonary congestion in addition to his chronic left ventricular dysfunction. He is now more comfortable. Lasix should be continued. His hematocrit is only 27%. Dr. Carrea's diagnoses are: Pulmonary edema, History of coronary disease with significant left ventricular dysfunction, history of hypertension, chronic obstructive pulmonary disease and right upper lobe resection for squamous cell lung carcinoma.

1/24/07 chest CT with contrast showed no evidence of pulmonary embolism. There were bilateral pleural effusions and extensive consolidated and atelectatic lung. There was persistent volume loss in the right hemithorax.

1/25/07 CT scan of abdomen and pelvis. There were bilateral pleural effusions, left greater than right, with extensive consolidated and atelectatic lung bilaterally. There was focal consolidation of the left lower lobe. There were areas of pleural calcification and thickening in the left anterior thorax. There was a hiatus hernia and a moderate pericardial effusion.

2/9/07 bronchoscopy report by Dr. Guy Foster. This urgent procedure was performed for respiratory failure, new infiltrates, and rule out pneumonia. He obtained microbiological cultures. The patient was placed back on the ventilator prior to the procedure because of respiratory distress. The bronchoscope was inserted into the posterior pharynx. The trachea was patent and the tracheostomy was patent and normal. The right mainstem bronchus was completely occluded with purulent secretions, which were removed. The right lower lobe was lavaged.

2/9/07 report by Dr. Steven Taylor of esophagogastroduodenoscopy with PEG tube placement.

There are numerous radiology reports from the hospitalization for the lung cancer surgery.

3/5/07 emergency department note by Dr. Maurice Mayer states that patient has had abdominal pain for severe days, crampy, with associated constipation. His feeding tube is flushing easily. He has had moderate shortness of breath for 6 hours, which resolved after he was suctioned by his spouse. She said she suctioned a scant amount of phlegm that was not purulent. He has decreased appetite and weight loss.

He has right upper lobe cancer, treated surgically, chemotherapy is pending. He has peripheral vascular disease, coronary artery disease, elevated BNP level, congestive heart failure.

He continues to smoke 1 ppd.

He appears chronically ill. His lungs have mildly decreased breath sounds bilaterally.

WBC 8.8, Hgb 12, Na 128, UN 17, creatinine 0.8.

He received breathing treatments with albuterol and Atrovent, IV Solu-Medrol and respiratory status was back to baseline. Abdominal pain was improved but not gone.

3/5/07 chest x-ray report describes tracheostomy tube, previous right thoracotomy and lobectomy.

I have reviewed records of Mountain Pulmonary & Sleep Center. Some of these records contain reports reviewed above.

12/27/06 spirometry reports FVC 2.87 L., 85% predicted, FEV1 2.11 L., 78% predicted and FEV1/FVC 73%.

1/8/07 echocardiogram report notes technically difficult study. There is moderate concentric left ventricular hypertrophy. Left ventricular systolic function is normal. The ejection fraction is estimated at 60-65%. There is impaired left ventricular relaxation, associated with mild diastolic dysfunction. The left atrium and the right ventricle appear normal. There appears to be severe pulmonary hypertension, although the PA pressure is difficult to asses due to limited tricuspid regurgitation.

3/2/07 chest x-ray shows tracheostomy tube, pacemaker and nodular density projecting over the right second anterior interspace. CT is recommended.

I have reviewed records of Umasankari Sudaram, M.D.

5/17/06 chest CT scan report notes nodular atelectatic changes at the right lung base and atelectasis at the left lung base. There is bilateral pleural thickening. There are some calcifications along the pleural surface on the left and on the right. There is a stent in the left subclavian artery. There are prominent atherosclerotic plaques in the aorta.

7/10/06 handwritten note, on the report above, states will need to see pulmonologist for hemoptysis.

9/7/06 sleep study report. There is mild obstructive sleep apnea, with AHI (apnea hypopnea index) = 12.4 and moderate oxygen desaturation, the lowest being 78%.

8/9/06 Mr. Lyman returns for follow up of peripheral vascular disease. He is a smoker wand has hyperlipidemia. He has developed some anginal type chest discomfort, about once or twice a month, lasting 1-2 minutes. There is no increase in his usual shortness of breath, but he is occasionally diaphoretic with this. He has chronic orthopnea. He is

supposed to be using CPAP but he feels it makes too much noise. He continues to smoke. BP 110/70, weight 126 lbs. His lungs are clear. The impression is chest pain compatible with angina. A myocardial perfusion scan is planned. Continue smoking history and patient again advised to stop.

12/28/06 note by Dr. Foster. He is seeing the patient for pre-operative surgical evaluation. He attempted to exercise but had limited results. Minimal rare blood in sputum. Cough is at baseline and is chronic. Slight dyspepsia lately for several days. Depressed lately. Appetite is improving. Because of the poor results on the exercise test, his surgery is high risk for mortality and complications.

2/16/07 Dr. Foster notes follow up of pseudomonas pneumonia. He has slight pain at G tube site. Still producing sputum requiring suctioning 4 times per day, still feels weak but is improving every day.

     I have reviewed Mr. Lyman's videotaped direct deposition, taken 4/17/07. Mr. Lyman lives in Silver Spring, NV. He had spent a year in Arkansas and previously lived in Silver Springs for 5 years before.

     He has lung cancer and has been told that he has 9 months to live. He was told by Dr. Foster that he had lung cancer and that he had asbestosis throughout both lungs. He was told this last October. He feels terrible. He is in a lot of pain. He has shortness of breath any time that he exerts himself. He uses oxygen for exertion. This was prescribed 5 or 6 months ago. He uses oxygen when he sleeps and intermittently during the day when he is short of breath.

     His shortness of breath only started recently and it is getting worse every day. Each day he is physically weaker and it is harder to walk. He walks to the bath room 3 or 4 times a day. His pain is in his low back, his spine, his neck, lungs, legs and all over.

     He had seen Dr. Foster the day before because he was having pain on his right side. He found some spots in this other lung. There are a couple of nodules. There's other stuff going on in my lung, the so-called good lung. He has had problems with memory loss.

     He served in the US Marine Corps for 1 ½ years, beginning at age 17. After rifleman training, he went to jet mechanic school in Jacksonville, FL. In the Marine Corps he smoked a couple of packs a day.

     After the marines, he worked a few odd jobs and then got on with Associated Transport in Waltham, MA as a platform foreman. He was there 8 or 9 years. He supervised the loading and unloading of trucks and the dock workers, drivers, etc. There was a garage right next door. He spent a ½ day in there keeping after the mechanics to do whatever work had to be done on his trucks. He observed work on brakes, engines, mufflers, everything that has to do with a semi. He had 12 mechanics working there. There were Whites, Freuhaufs, Macks and Fords.. They used to build their own equipment, Brown equipment.

His first wife developed cancer and he left work to take care of her. She lived 4 years. He had 4 children with his first wife. His children had recently come to visit. He hadn't seen his oldest 2 daughters for 20 years.

He has been married to his present wife, Samantha, for 37 years. He has a son, Michael and a daughter, Kelly, from her first marriage.

Next, he worked for Freight Forwarding Co. on the railroad. He worked about a year as a dock supervisor.

In 1970 or 1971 he moved to California. He went to work for Alva Radio Industries in Santa Monica. He built tech and radar systems which are fiberglass tops had to be sanded and refinished and 55,000 volt transformers that he tore apart and rebuilt, rewired, cut all the old wiring out and put new wiring in. They rebuilt their own radar systems and sold them to the Saudis and Iraqis and eastern countries. There were electronic technicians who rebuilding different radar systems, TACAN, used on airliners. The technicians worked with different types of rubber, fiberglass sleeving, mostly copper wire. The large transformer was built out of a series of small transformers that stepped up to a total of 55,000 volts. One transformer powered a TACAN antenna. It was all covered with surplus. He built the transformers. It was a series of smaller transformers and a lot of wiring. They were filled with oil and welded shut. They weighed about 100 lbs. Technicians worked on cabinets and oscilloscopes.

He saw Bakelite used in the oil fields in plastic form. He did not see Bakelite at Alva.

He had a couple of odd jobs after Alva.

He had a business of his own doing building maintenance.

Next he worked for Cudd Pressure Control for about a year. He pumped number 2 diesel oil and nitrogen, other gases down hole to force the oil out. He worked at fields including Union, Conoco in Long beach. He did some work on Union's platform offshore, Chevron, Exxon, most big local oil companies. Usually he was pumping some sort of material like nitrogen or diesel fuel down hole. It was all pretty much the same. He sealed it, put what they called a Christmas tree o it, seal it in. While he was working at the oil fields, all the contractors that contracted with oil companies would be doing whatever they did. They did drilling, everything an oil worker does. They're all roustabouts doing general work in the field. For drilling they used sand, mud, his nitrogen and number 2 diesel fuel. The mud was mixed up and used at the well. They had a regular mixer, sometimes a big truck, sometimes a portable. A Christmas tree is a big piece of metal hardware that has 4 to 6 valves shooting off like a Christmas tree. It tops the well off. Sometimes he would open them up.

Next, he worked for Baker Oil for 7 years. He broke his neck on the job at Baker Oil in Ventura. At Baker he was a driver chemical technician. He drove a big oil tanker

up into the mountains in Santa Pula basically into Carpenteria and offshore occasionally.
He treated oil wells with different anti-corrosive chemicals to treat the pipes for
corrosion. He worked at oil fields including Union, Phillips, Shell, Conoco, Union, and
La Conchita. These were located from Long Beach to Carpenteria to Santa Paula to Ojai,
all over the Southern California region.

Most of the valve work was done with Baker in the oil fields. All the wells were
shut in with valves. He would have to open them to apply the chemicals, occasionally
repair them if they were broken. All the chemicals were in large steel tanks. To get at the
chemicals he'd have to open the valve, hook up a hose from his truck, and pump the
chemicals into the different tanks in his truck. If he had to put chemicals down and there
was a leak, he would try to tighten it up so it wouldn't leak, or he would call the oil
company and let them know. He would normally just check the valve out and try to
tighten it up, put a new seal in. Usually the problem would be a worn out seal. There were
oil company employees and contractors. Most of the work in the field is done by
subcontractors. They would clean up, check the wells for leaks and repair leaks if they
saw them. Occasionally they would be drilling. Conoco did it in Long Beach. There was
always drilling on the platforms. A lot of times they would be using his nitrogen and
diesel fuel to try to force oil up.

He left Baker. He broke his neck. When he recovered, they sent him to school
because he couldn't go back to the oil fields. He and his wife went to TMCC in Fresno,
which is motel and hotel management and marketing. They went to an accelerated course
for a year. After the school, they went to the El Camino Motel just outside of San
Francisco and managed it.

He retired in 1998. He was having a lot of problems with his neck and he had to
have reconstructive surgery. It's all titanium.

He lived in the family home until age 17. When he left the Marine Corps he went
to his mother's house until he was 19 or 20. He was working at Associated Transport
when he got married to his first wife, Carol. He lived with his father almost 19 years. His
father was a shipbuilder, pipefitter for the government. His father worked at the Boston
Naval Shipyard. Almost everyday, he walked down to the shipyard where his father
worked. He'd go to his shop and wait for him to finish and walk home with him. He'd go
play on the USS Constitution while his father was working. His father came home in his
work clothes. He was a pipefitter, so he was covered with grease and oil and whatever
else he was working on.

He is seeing Dr. Foster about once a week and also he will be seeing the surgeon
next month. They are going to take a look at the lungs again and see if he needs radiation
and chemo. After the surgery he was in a coma for 7 days.

When he was working, he belonged to a health club and played racquetball, tennis
and worked out. He used to run with his daughter. He was active in sports.

He doesn't do anything now, not for the last couple of years.

To: Brydon Hugo & Parker, San Francisco       From:       Tuesday, July 24, 2007 3:18 PM Page: 21 of 30
Subject: Lyman, Robert Raybin Medserve

Case 4:07-cv-04240-SBA   Document 56-3   Filed 10/02/2007   Page 31 of 62

_I have reviewed the Discovery Deposition of Mr. Robert Lyman, 4/18/07_. He is having problems with short term memory but not with long term memory.

He quit high school to go into the Marine Corps.

His father's duties as a pipefitter included insulation and checking pipes aboard ship. He used to make training films for the government to train new employees. His father told him about his work and he used to go into the yard and watch his father. His father was a leading man pipefitter, equivalent to a foreman. He would give work assignments to his crew and find out what work had to be done, on which ship. Occasionally he did help. He was a hands-on supervisor. Mostly he did not do hands on work. His father advanced beyond leading man when Mr. Lyman was about 14 years old. He began to visit his father at work when he was 10 or 11. His father worked out of the pipe shop. It was about a mile from Gate Four. He would meet his father almost every day at Gate Four. He went into the yard every couple of weeks. His father's work was mainly aboard ship. His father used to have to go out on trial runs with the ship. Mr. Lyman went onto a ship, when his father was there, about a half dozen times.

He recalled the Lexington, the Guadalcanal, and the Exeter. He spent about an hour on the Lexington, an aircraft carrier. He went all over the ship. He went to the gun ports and the flight deck and down to the engine rooms. Sailors were cleaning and polishing guns and doing general cleanup. He did not himself observe any repair work there.

He was on the Guadalcanal, a destroyer, on two occasions. On the first occasion, he saw Navy Yard workers working on the pipelines. He went into the engine rooms for 15 minutes. There were sailors working on the equipment. He does not recall seeing work with pipe insulation. He did recall seeing valves on the top deck and one of the sailors was taking them apart. It was a pretty large valve. The sailor was disassembling the valve. They were removing old packing and putting in new. On the second visit, he did not observe any work going on.

On the Exeter, he did not go below deck or see anyone.

He recalls that his father worked on the Midway, more than once. In order to work on pipes, you had to remove insulation. He had seen his father take insulation off a pipe on the top deck of a destroyer. It was about 2 inches thick and 15 feet long. His father would not replace insulation because the yard had an insulation shop.

When Mr. Lyman was in the Marine Corps, he was a guard at the Boston Navy Yard gate.

He'd seen them tear valves apart on ships about 6 times, usually in the afternoon, in 1952-53. He saw them reassemble the valve after they had done work on it. He saw them tear back insulation on the pipe. About 3 feet of insulation was removed. He was within 4 or 5 feet. This was on a light cruiser or destroyer from World War II. He saw a

gasket being removed on one valve. He saw new packing being installed on the one valve.

He first visited his father in the pipe shop when he was 12. He lasted visited when he was in the Marine Corps. He saw his father supervising work on pipes. He saw work on valves in the pipe shop on about a dozen occasions. Most of them were steam valves. He saw packing material being removed once. He saw gaskets being removed a dozen or two dozen times. He saw new gasket material being installed once or twice. He saw a box labeled Anchor Hocking. There were individual preformed gaskets.

His father's clothes were always dirty from the inspection work that was done. His clothes would be greasy black. His father would change his clothes when he got home from work. His mother did most of the washing, but he washed the clothes about once a week. He did not wash his father's clothes. His mother would shake out his father's clothes.

Before he went into the Marine Corps, he worked for Palmer & Parker, a lumber yard that cut veneer sheets. It was an after school job. There was a huge press. All of the pipes were wrapped in asbestos. The pipes carried heat or water. The plant was built in the early 19002. The logs used to soak in boiling water. The pipes carried the water. The heat was hot water heat. The steam pipes were for the processing of the lumber. The pipe insulation had a fabric covering. He saw them repair steam pipes. The name Manville was on the asbestos covering, on the silver coating. He observed people break into or remove pipe insulation about half a dozen times. In total, about 20 feet of insulation was removed. He was within a couple of feet of the work. They cut the insulation with a knife and peeled it off. At this veneer shop, he saw them replacing valves and putting new gaskets in. He saw old flange gaskets being removed on 2 or 3 occasions, pried off with a knife. There was scraping involved. He saw new gaskets installed 3 or 4 times. He saw old valves being removed and replacement valves installed. The hot water valves were located on a wall 4 to 6 feet away from where he was.

Also, before the Marine Corps, he sold women's shoes in Boston at Wilbars for about a year.

Also, he worked as a longshoreman unloading ships. This was in the middle of 1956. The sips were in Charlestown at the piers, 12 and 14. His uncle was a union stevedore. He joined the longshoreman's union as an apprentice, then quit and joined the Marine Corps. He unloaded pig iron, liquor, food, rubber. He did not unload insulation material or asbestos. He worked mostly on weekends and after school. On a few occasions he observed work with valves and gaskets.

I reviewed Volume II of Mr. Lyman's deposition testimony, taken 4/19/07. He saw Dr. Foster on Tuesday. When they did his lungs, the x-rays showed that the other side had growth in it. They sent him to get a CAT scan.

In the Marine Corps, he did basic training, then combat training. They sent him to the basic electronics in jet mechanics school for 7 or 8 months. It was mostly classroom work. They only did a bit of hands on work.

Next he spent 7 months at the Boston Naval Shipyard as a guard. He was at Gate 4. He lived at the Marine barracks on the base. He visited his father at times, while he was on ships. He visited ships on about a dozen occasions. He saw his father removing valves on 3 or 4 occasions. He saw gaskets removed 2 or 3 times. His father was also a boilermaker. He visited his father in the pipe shop on a few occasions. He observed old insulation being removed from pipes from the ships. They came from the Essex. He observed pump repair. He saw gasket material on the ground, in pieces, that came from the pump. He saw old insulation being torn off pipes from the Exeter.

After the Marine Corps, he did more longshoreman work, on and off for a couple of years. He recalls working on the Cherry Maru and a Swedish ship carrying cherry herring, a liquor. He unloaded ingots of pig iron. He was down in the hold of the Cherry Maru for about 8 hours loading pallets with ingots of pig iron. He saw new insulation being installed on pipes which were on horses outside the ship. They were wrapping the pipe with fiberglass insulation. He recalled unloading wood, hardware in cases, metal items, and loads of fiberglass wrap. It had been shipped from San Francisco. He did some loading of ships. He loaded building supplies, metal bracketing, and bags of cement.

I reviewed volume III of Mr. Lyman's deposition, taken 4/20/07. He worked at Cudd Pressure Control in the late 1980s or early 1990s for about a year. Afterwards, he worked for Baker Oil.

At Cudd he went and pumped nitrogen and diesel fuel. They were both heavier than oil and would go beneath it and force it up. Most of the work with Cudd was done on the platforms offshore, Shell, Mobil and Conoco, off Santa Barbara and Carpenteria. He also worked at fields on Mt. Sespe, in Santa Paula, where he did some work for Mobil and Chevron. He also did some work in El Centro. 70% of his time was on the offshore rigs. Most of the time he was pumping nitrogen. He would hook up his hoses and lines to the well. He had large machinery in the flat bed of the truck that would go to 500-600 lbs. of pressure and force the nitrogen down sometimes 300-400 feet. The truck carried liquid nitrogen. There was a diesel engine in the compressor. The hoses connected with a half twist that would lock the couplings. Sometimes the valves on the oil wells leaked. If possible, he would shut off the source of the crude oil. He would disconnect. Usually the problem was a gasket. On occasion the valve would be bent because someone hit it with something. In the oil field, everything is basically fixed with a sledgehammer. He had a supply of preformed gaskets in his truck. The gaskets were Bendix. He repaired the valve by popping out the old gasket and putting in a new one. He believes some of the gaskets were neoprene. He does not know if the gaskets contained asbestos. Primarily he replaced gaskets when he worked for Baker, not for Cudd.

He worked at Associated Transport. When his wife became ill, he'd quit off and on to take care of her, then return to work. He was a foreman at the loading docks. He had begun working as a truck driver. He was promoted to city dispatcher, then to over the road dispatcher, then he became a platform foreman.

There were about 12 mechanics who worked at the garage for Associated.

When he was a driver, he would report for assignment, then be on the road al day. When he worked as a dispatcher, he sat in the office all day. When he was a platform foreman, he supervised the platform workers loading and unloading. After four months he became the platform supervisor. He worked in a heated office. There would be over 100 trucks on the facility at any one time. The mechanics did regular maintenance as well as repairs. On some occasions he observed brake and clutch work, muffler and exhaust system work. He observed engine work, including removing the head and working on the pistons, about a dozen times. He observed grinding and sanding of brake drums. He remembers walking through the dust and covering his eyes on two or three occasions. He believes an arcing machine is used by arc welders.

After he quit Associated, he worked at Consolidated for about 6 months. He did not observe any mechanical work there.

**Discussion:**

Diagnosis:

1. Squamous cell lung cancer, right upper lobe, with probable metastases, including lymphangitic tumor..

The diagnosis of lung cancer was confirmed by the pathology reports from Carson-Tahoe and by the independent pathology review by Dr. William Salyer.

Mr. Lyman stated in the deposition that he had been told that the cancer had spread. Dr. Donald Breyer reviewed the 3/28/07 chest CT scan which showed new circumferential pleural thickening in the right chest, up to 2 cm in thickness. There were enlarged mediastinal and abdominal lymph nodes and apparent lymphangitic spread of tumor in the right lung. The small left pleural effusion could be malignant.

2. Chronic obstructive pulmonary disease. This diagnosis was confirmed by the pulmonary function test results.

3. Asbestos pleural disease. The chest CT scans document bilateral pleural plaque, with areas of calcification, including both hemi-diaphragms.

4. Asbestosis. This diagnosis is based on the pathology notes from William Salyer, M.D., who diagnosed asbestosis, CAP-NIOSH grade I. He found peri-bronchiolar fibrosis and lung asbestos bodies. Dr. Salyer is a pathologist with recognized expertise in asbestos related diseases.

5. Mild obstructive sleep apnea. This was documented on a sleep study.

The following additional diagnoses are clearly documented in the records that I reviewed:

5. Coronary artery disease

6. Peripheral vascular disease.

7. Hypertensive heart disease, history of congestive heart failure.

8. History of neck injury and neck surgeries, with implantation of hardware and chronic pain.

    Permanent and Stationary / Maximal Medical Improvement: Mr. Lyman has lung cancer with probable metastases. His condition is probably incurable. Therefore, he has reached maximal medical improvement. His condition is permanent and will probably continue to worsen.

    Factors of Disability:
Subjective: Mr. Lyman stated in his deposition that he is able to walk to the bathroom about 4 times a day. He is otherwise bound to bed or wheel chair. He is limited by fatigue and dyspnea.

Objective: He has advancing lung cancer with evidence of lymphangitic spread of tumor in the entire right lung. The radiologic findings are consistent with his symptoms. It would be expected that he is totally impaired and unable to work.

    Impairment: This is evaluated according to the *AMA Guides to the Evaluation of Permanent Impairment*, 5th Edition.

As stated in section 5.9 Lung Cancer: "All persons with lung cancer are severely impaired at diagnosis." Severe impairment is class 4 impairment, 51% to 100% impairment of the whole person.

Table 5-11 Scale for Judging Capabilities of Subjects with Cancer, "may be used to further describe the capabilities of a person with lung cancer and enable categorization within a particular class." The table describes grades 0 to 4. Grade 3 is capable of only limited self-care and confined to bed or chair at least half of waking hours. Grade 4 is almost totally impaired, cannot care for self, and totally confined to bed or chair.

The deposition testimony by Mr. Lyman indicates that in April 2007 his condition was somewhere between grade 3 and grade 4. His overall impairment would be about 90% impairment of the whole person as of the time of the April deposition.

It is probable that the lung cancer will prove fatal.

    Causation:

    1. Lung cancer

    Asbestos exposure greatly increases the lung cancer risk for cigarette smokers. Mr. Lyman has a long cigarette smoking history. He also has had asbestos exposure.

He had exposure to asbestos when he visited his father, on occasion, at the Boston Naval Shipyard, where his father worked as a pipefitter. Also, for several years he met his father at the shipyard gates and walked home with him. His father was wearing his work clothes.

He had exposure to asbestos when he worked at Associated Transport. He was present, at times, while mechanics in the garage were repairing trucks. He observed brake work, clutch work, engine work, and exhaust system work.

He had asbestos exposure when he worked as a foreman at US Gypsum. He worked on a production line where sheet rock was produced. The conditions were very dusty.

He had asbestos exposure when he worked at Alva Radio Industry. He used sheets and rolls of asbestos insulation. He removed insulation from wire.

For several years, he worked in the oilfields in Southern California. At times he worked in proximity to the many other trades that work in oil fields. Asbestos containing materials including drilling muds and valve packing.

His asbestos exposure was sufficient to cause asbestosis (as documented in Dr. Salyer's pathology notes) and asbestos pleural disease (documented on the chest CT scans).

It is medically probable that all of Mr. Lyman's cigarette smoking and all of his asbestos exposure, together, caused his lung cancer. It is recognized that asbestos exposure, sufficient to cause asbestosis, is sufficient to cause lung cancer. When workers with asbestosis develop lung cancer, the cancer is generally partially attributed to the asbestos exposure.

Mr. Lyman was last exposed to asbestos when he worked in the southern California oil fields, through 1986. He first presented with symptoms related to his cancer, hemoptysis, in 2006, which is 20 years later. All of his asbestos exposure, cumulatively, was injurious.

2. Asbestosis and asbestos pleural disease were both caused by his cumulative asbestos exposure.

3. Chronic obstructive pulmonary disease, peripheral vascular disease, and heart disease were all unrelated to occupational exposures. The neck injury was due to a prior occupational injury

Future Medical Treatment/Medical Monitoring: Mr. Lyman will require ongoing treatment for his cancer. He had been seeing his pulmonary physician every week. He should be referred to an oncologist for consideration of chemotherapy. He will probably require continuous oxygen as the cancer progresses. He will need increasing doses of pain

medication. He may require hospitalization in the future, as well as increasing assistance at home.

<u>Apportionment:</u>

**apportionment to disease**

Before Mr. Lyman became symptomatic from lung cancer, he had impairment due to his chronic neck injury and pain, chronic obstructive pulmonary disease, peripheral vascular disease and heart disease.

Prior to his lung cancer surgery in January 2007, he had pulmonary function tests and cardiopulmonary exercise testing. His maximum oxygen consumption was 11.9 mL oxygen/kg/min.

According to Table 5-12 (from the *AMA Guides*) "Impairment Classification for Respiratory Disorders, Using Pulmonary Function and Exercise Test Results," VO2 maximum < 15 mL/kg/min is class 4, 51% to 100% impairment of the whole person.

Exercise testing is a good test of his maximum overall function, including his conditioning, cardiovascular disease and pulmonary disease.

Based on the exercise test results, Mr. Lyman had 60% impairment of the whole person at the time of the exercise test in November 2006.

His total impairment (as of April 2007) was about 90%. His impairment due to his pre-existing illnesses was 60%. Therefore, 30% impairment of the whole person is apportioned to lung cancer.

**apportionment to causation**

Mr. Lyman's lung cancer was caused by both cigarette smoking and asbestos exposure. The relative risk of cancer for cigarette smokers increases about 10 fold compared to non-smokers. The risk of lung cancer for cigarette smokers with asbestos exposure increases about 5 to 8 fold compared to cigarette smokers without asbestos exposure. In other words, these causes are synergistic, one enhancing the effect of the other. It is therefore reasonable to apportion causation equally between these risks.

Therefore, 50% of the causation of the lung cancer is due to asbestos exposure (occupational) and 50% to asbestos exposure.

**Overall apportionment**

Mr. Lyman's overall impairment (April 2007) was 90%. He had pre-existing 60% impairment due to his other diseases. His impairment due to lung cancer would thus be

To: Brydon Hugo & Parker-San Francisco    From:    Tuesday, July 24, 2007 3:18 PM Page: 28 of 30
Subject: Lyman, Robert Raybin Medserve

Case 3:04-cv-04240-SBA    Document 56-3    Filed 10/02/2007    Page 38 of 62

30%.

Apportioning to causation, then, he has 15% impairment of the whole person attributable to his occupational asbestos exposure.

Please let me know if you have any questions.

Sincerely,

Daniel M. Raybin, M.D.

This report is being billed as ML 104, a complex comprehensive medical-legal evaluation under extraordinary circumstances.  The following complexity factors apply:

(ii)  3 or more hours of record review by the physician
(iv)  Addressing the issue of medical causation
(v)  Addressing the issue of apportionment
(vi)  Addressing the issue of medical monitoring/treatment of a worker following a toxic exposure to a mineral substance (asbestos).

I verify under penalty of perjury that the following times were spent by me:

| | |
|---|---|
| Reviewing the records | 7 hours |
| Report preparation | 2 hours |

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated that I have received from others.  As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me, and except as noted herein, that I believe it to be true.

I further declare under penalty of perjury that I personally reviewed the records and that, except as otherwise stated herein, the evaluation was performed and the time spent performing the evaluation was in compliance with the guidelines, if any, established by the administrative director pursuant to paragraph (5) of subdivision (j) of Section 139.2 or Section 5307.6 of the California Labor Code.

I further declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3 with regard to the evaluation of this patient or the preparation of this report.

I further declare under penalty of perjury that the name and qualifications of each person who performed any services in connection with the report, including diagnostic

Case 4:01-cv-04240-SBA    Document 56-3    Filed 10/02/2007    Page 39 of 62

studies, other than clerical preparation are as follows:

NAME                    QUALIFICATIONS
None

Signed this 23rd day of July 2007
At San Francisco County, California


_____
    Daniel M. Raybin, M.D.

Brayton-Purcell Service List                                                    1

Date Created: 7/24/2007-2:58:42 PM                          Run By : Eliasson, Kimberly
                                                            (KRE)
Created by: LitSupport - ServiceList - Live
Matter Number: 107053.001 - Robert Lyman

**Berry & Berry**
P.O. Box 16070
2930 Lakeshore Avenue
Oakland, CA 94610
510-835-8330   510-835-5117 (fax)
**Defendants:**
  Berry & Berry (B&B)

**Brydon Hugo & Parker**
135 Main Street, 20th Floor
San Francisco, CA 94105
415-808-0300   415-808-0333 (fax)
**Defendants:**
  Union Carbide Corporation (UNIONC)

**Dillingham & Murphy**
225 Bush Street
Sixth Floor
San Francisco, CA 94104
415-397-2700   415-397-3300 (fax)
**Defendants:**
  Montello Inc. (MONTLL)

**Glaspy & Glaspy**
One Walnut Creek Center
100 Pringle Avenue, Suite 750
Walnut Creek, CA 94596
925-947-1300   925-947-1594 (fax)
**Defendants:**
  Garlock Sealing Technologies, LLC
(GARLCK)

**Haight, Brown & Bonesteel**
71 Stevenson Street, 20th Floor
San Francisco, CA 94105-2981
415-546-7500   415-546-7505 (fax)
**Defendants:**
  International Truck & Engine Corporation
(INTERK)

**Hassard Bonnington**
Two Embarcadero Center
Suite 1800
San Francisco, CA 94111
415-288-9800   415-288-9802 (fax)
**Defendants:**
  John Crane, Inc. (CRANE)

**Law Offices of Mark H. Rosenthal**
44 Montgomery Street, Suite 4020
San Francisco, CA 94104-4602
415-986-1364   415-291-1984 (fax)
**Defendants:**
  Crown Cork & Seal Company, Inc.
(CC&S)

**Law Offices of Nancy E. Hudgins**
565 Commercial, 4th Floor
San Francisco, CA 94111
415-979-0100   415-979-0747 (fax)
**Defendants:**
  Uniroyal Holding, Inc. (UNIROY)

**Perkins Coie LLP**
Four Embarcadero Center, Suite 2400
San Francisco, CA 94111
415-344-7000   415-344-7288 (fax)
**Defendants:**
  Honeywell International, Inc. (HONEYW)

**Prindle, Decker & Amaro**
310 Golden Shore, Fourth Floor
Long Beach, CA 90802
562-436-3946   562-495-0564 (fax)
**Defendants:**
  Drilling Specialties Company LLC
(DRISPE)
  Henry Vogt Machine Co. (HENVOG)

**Schiff Harden LLP**
One Market Plaza
Spear Street Tower, 32nd Floor
San Francisco, CA 94105
415-901-8700   415-901-8701 (fax)
**Defendants:**
  Owens-Illinois, Inc. (OI)

**Sonnenschein Nath & Rosenthal, LLP**
525 Market Street, 26th Floor
San Francisco, CA 94105-2708
415-882-5000   415-882-0300 (fax)
**Defendants:**
  Rapid-American Corporation (RAPID)

**Thelen Reid Brown Raysman & Steiner
LLP**
101 Second St., Ste 1800
San Francisco, CA 94105
415-371-1200   415-644-6519 (fax)
**Defendants:**
  Shell Oil Company (SHLOIL)

**Wright Robinson Osthimer & Tatum**
44 Montgomery Street
18th Floor
San Francisco, CA 94104
415-391-7111   415-391-8766 (fax)
**Defendants:**
  Freightliner LLC (FRECOR)

**BERRY & BERRY**
A PROFESSIONAL LAW CORPORATION
TELEPHONE (510) 250-0200
FAX (510) 835-5117
www.berryandberry.com

PHILLIP S. BERRY
PETER R. GILBERT
LEONARDO J. VACCHINA
LAURA E. PRZETAK
EVANTHIA M. SPANOS
RHONDA L. WOO
JILL J. HOFFMAN

SAMUEL H. BERRY    (1904-1990)

**August 22, 2007**

To:  All Defense Counsel

Re:  **LYMAN, ROBERT/SAMANTHA V. CLEAVER-BROOKS**
**San Francisco Superior Court No. 459162**

Dear Counsel:

     Enclosed please find a report by Daniel M. Raybin M.D.(DOR:7/31/07) pertaining to the above referenced case, recently provided to Berry& Berry by the BRAYTON & PURCELL office .

                              Very truly yours,
                              BERRY & BERRY

                              Terri Hunt
                              Paralegal Assistant
                              Evidence Paralegal Department

M1752

08/22/2007 11:42 FAX 98355117         1 BERRY & BERRY         → BRYDON HUGO         ☑002/008

M17S2
TD: 8/6/07
JOE

Berry & Berry

AUG 2 0 2007

Received

**DANIEL M. RAYBIN, M.D., F.A.C.P., F.C.C.P.**
2250 HAYES STREET, #505
SAN FRANCISCO, CA 94117
TELEPHONE 415-668-1835

July 31, 2007

Ms. Marion R. DeCarlo
Workers' Compensation Manager
Brayton-Purcell
222 Rush Landing Road
Novato, CA 94948-6169

RE: Robert F. Lyman vs. Fitzpatrick Chevrolet, *et al.*
WCAB Case No.: SFO unassigned

Dear Ms. DeCarlo:

This report is supplemental to my previous one dated July 23, 2007. I have received additional records for review.

<u>I have reviewed a chest CT scan pulmonary angiogram from Carson Tahoe Regional Healthcare taken 3/28/07.</u> On page 4 of my 7/23/07 report, I reviewed Dr. Donald Breyer's interpretation of these x-rays. I am in complete agreement with his findings.

<u>I have reviewed a radiology report by Donald Breyer, M.D., 5/9/07.</u> Dr. Breyer reviewed a high resolution chest CT scan, including prone and supine high resolution images, from Great Basin Imaging, 4/27/07.

Dr. Breyer found that in nondependent lung fields on the prone high resolution images there are bilateral changes of an increased profusion of ill defined centrilobular nodular opacities. Some irregular interface and parenchymal band formation is also noted. In comparison to the CT scan done 3/28/07, the circumferential right pleural thickening is largely resolved, as has the lymphangitic spread of disease. Right lung volume loss is present and is probably related to the prior right lobectomy. The left pleural effusion has resolved. Some significant pericardial pleural thickening is present.

The epigastric region appears abnormal with thickening of the distal esophagus and/or cardia of the stomach.

Dr. Breyer concluded that the parenchymal findings are compatible with interstitial fibrosis and the distribution and appearance are compatible with asbestos related interstitial fibrosis.

RE: Robert F. Lyman                                                                                2
July 31, 2007

There has been a significant change in the appearance of the CT scan since the previous study of 3/28/07. These changes primarily involve resolution of findings of generalized right chest wall pleural thickening, enlarged lymph nodes and lymphangitic spread of disease. Left pleural effusion has also resolved.

Additional findings, not noted earlier, include pericardial effusion and abnormal thickening of the esophageal region. Further evaluation of the esophagogastric area is recommended.

Bilateral calcified chest wall pleural plaque is again noted, unchanged from the previous scan and most likely representing asbestos pleural disease.

I have also reviewed the chest CT scan, including prone high resolution views, performed at Great Basin Imaging, 4/27/07. There continues to be substantial volume loss in the right hemi-thorax. There is bilateral pleural plaque, some of which is calcified. There is a moderate pericardial effusion, but smaller than on 3/28/07. Circumferential right pleural thickening is now no longer present. The left pleural effusion has resolved. In comparison with the 3/28/07 CT scan, there is marked improvement in the lung parenchyma on the 5 mm conventional supine views. There are no longer findings suggestive of lymphangitic spread of tumor. Adenopathy is no longer present.

The high resolution views show focal areas of scarring at the medial left lung base. The image quality is limited by motion artifact.

I have reviewed a radiology report by Stephen Loos, M.D., interpreting the 4/27/07 chest CT scans above. There are multifocal pleural plaques and thickening with calcification consistent with asbestos pleural disease. There is a new area of pleural thickening, in comparison with prior study 10/7/05, involving right anterior lung base. There are atherosclerotic changes of the aorta and a left subclavian artery stent, as before. There is a new pericardial effusion, moderate in extent, about 1.9 cm thick. There are changes from prior thoracotomy and partial upper lobectomy. There is a hiatus hernia.

The high resolution images show extensive reticulonodular lung images diffusely with a wide differential diagnosis, including asbestosis.

Discussion:  There is marked improvement in the chest CT findings between March 28 and April 27, 2007. The circumferential right pleural effusion has resolved as has the left pleural effusion. There has been resolution of the extensive interstitial septal thickening in the right lung that had suggested possible lymphangitic spread of tumor.

Information about the therapy that Mr. Lyman received between the March 28, 2007 and April 27,2007 CT scans might help explain the radiologic improvement.

RE: Robert F. Lyman                             3
July 31, 2007

     Radiologists Dr. Breyer and Dr. Loos have each, separately, interpreted the 4/27/07 high resolution chest CT scan as showing interstitial lung disease. I find the evidence insufficient to diagnose interstitial lung disease.

     Lung pathology is more accurate that x-rays or CT scans for the diagnosis of asbestosis. It remains my opinion that Mr. Lyman has CAP-NIOSH grade 1 asbestosis, based on pathology interpretation by Dr. Salyer.

     In my 7/23/07 report, relying on Dr. Breyer's interpretation of the 3/28/07 chest CT scan (with which I concur), I concluded that Mr. Lyman has advancing lung cancer with evidence of lymphangitic spread of tumor in the entire right lung. The 4/27/07 CT scan no longer shows evidence of lymphangitic spread of tumor.

     I have changed no other opinions in my previous report.

     Please let me know if you have any questions.

             Sincerely,

             Daniel M. Raybin, M.D.

     I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated that I have received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me, and except as noted herein, that I believe it to be true.

     I, myself, reviewed the records and prepared this report.

     I further declare under penalty of perjury that I have not violated the provisions of California Labor Code Section 139.3 with regard to the evaluation of this patient or the preparation of this report.

     I further declare under penalty of perjury that the name and qualifications of each person who performed any services in connection with the report, including diagnostic studies, other than clerical preparation are as follows:

| NAME | QUALIFICATIONS |
|------|----------------|
| Donald Breyer, M.D. | Radiologist |

     This report is being billed as ML 104-97, a Supplemental Medical-Legal Evaluation.

RE: Robert F. Lyman                                                    4
July 31, 2007


I verify under penalty of perjury that the following times were spent by me:

Review of records:                          1 hr
Report preparation                          1 hr.


Signed this 31st day of July 2007
At San Francisco County, California

_____
        Daniel M. Raybin, M.D.

**DONALD BREYER, M.D., F.A.C.R.**
Certified ILO B Reader

6861 Gunn Drive
Oakland, CA 94611
(510) 339-9204
Fax: (510) 338-0069

May 9, 2007

**LYMAN, ROBERT**

**EXAMINATION:** A high resolution CT scan of the chest including prone and supine high resolution images. The study is performed as a supplement to the CT scan of 3/28/07. The study is performed at Great Basin Imaging on 4/27/07 and is technically adequate.

**DATE OF EXAMINATION:** April 27, 2007

In the nondependent lung fields on the prone high resolution images there are bilateral changes of an increased profusion of ill defined centrilobular nodular opacities. Some irregular interface and parenchymal band formation is also noted.

When compared with the prior study, it is now noted that the circumferential right chest wall pleural thickening is largely resolved as has the lymphangitic spread of disease. Right lung volume loss is present and is probably related to status post right lobectomy. Left pleural effusion has also resolved. Some significant pericardial pleural thickening is present.

The esophagogastric region appears abnormal with thickening of the distal esophagus and/or upper pars cardia of the stomach. Other findings appear unchanged.

**IMPRESSION:**

PARENCHYMAL FINDINGS PRESENT ARE COMPATIBLE WITH INTERSTITIAL FIBROSIS. THE DISTRIBUTION AND APPEARANCE ARE COMPATIBLE WITH ASBESTOS RELATED INTERSTITIAL FIBROSIS.

THERE HAS BEEN A SIGNIFICANT CHANGE IN THE APPEARANCE OF THE CT SCAN SINCE THE PREVIOUS STUDY OF 3/28/07. THESE CHANGES PRIMARILY INVOLVE RESOLUTION OF FINDINGS OF GENERALIZED RIGHT CHEST WALL PLEURAL THICKENING, ENLARGED LYMPH NODES AND LYMPHANGITIC SPREAD OF DISEASE.

RE: LYMAN, ROBERT
Page 2 of 2
May 9, 2007

ADDITIONAL FINDINGS PRESENT AT THIS TIME THAT
WERE NOT NOTED EARLIER INCLUDE PERICARDIAL
EFFUSION AND ABNORMAL THICKENING OF THE
ESOPHAGOGASTRIC REGION.  FURTHER EVALUTION
OF THE ESOPHAGOGASTRIC AREA RECOMMENDED.

LEFT PLEURAL EFFUSION HAS ALSO RESOLVED.

THE PATIENT IS ALSO NOTED TO HAVE A CALCIFIED
GALLSTONE AND POSTOPERATIVE CHANGES IN THE
ABDOMEN. THERE IS THORACOLUMBAR SCOLIOSIS
AND POSTOPERATIVE CHANGES IN THE LUMBAR
SPINE.

BILATERAL  CALCIFIED  CHEST  WALL  PLEURAL
PLAQUES AGAIN NOTED, UNCHANGED FROM THE
PREVIOUS SCAN AND MOST LIKELY REPRESENTING
ASBESTOS RELATED PLEURAL DISEASE.

DAB:gmp:
D: 5/9/07 T: 5/9/07 # 832645

# PROOF OF SERVICE

I, Joyce Diala, do hereby declare and state:

I am employed in the city of Petaluma, County of Sonoma, California. I am over the age of 18 and not a party to the within action. My business address is 1324 Rand Street, Petaluma, CA 94954.

On _____AUG 1 7 2007_____, I served the within:

Reports;

Re: Robert F. Lyman

on the parties in this action by placing a true copy thereof in a sealed envelope, and envelope addressed as follows:

By mail Service:

## BERRY & BERRY
P.O. Box 16070
2930 Lakeshore Ave.
Oakland, CA 94610

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for delivery by mail. Correspondence so collected and processed is deposited with the United States Postal Service on the same day in the ordinary course of business. On the above date the said envelope was collected for the United States Postal Service following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed _____AUG 1 7 2007_____, at Petaluma, California.

_____
Joyce Diala

# EXHIBIT A – 5

## SALYER REPORTS

# BERRY & BERRY

A PROFESSIONAL LAW CORPORATION
TELEPHONE (510) 250-0200
FAX (510) 835-5117
WWW.BERRYANDBERRY.COM

PHILLIP S. BERRY
PETER R. GILBERT
LEONARDO J. VACCHINA
LAURA E. FRZETAK
EVANTHIA M. SPANOS
RHONDA L. WOO
JILL J. HOFFMAN

SAMUEL H. BERRY    (1904-1990)

May 11, 2007

To:  All Defense Counsel

## Re:  LYMAN, ROBERT/SAMANTHA V. CLEAVER-BROOKS
## San Francisco Superior Court No. 459162

Dear Counsel:

Enclosed please find an expert report from **Dr. William Salyer dated 2/17/07,** pertaining to the above
referenced case, provided to Berry & Berry by the **Brayton** office on 3/5/07.  We apologize for the delay
in distributing this report, which was caused by our confusing this plaintiff with a different plaintiff with
a similar name but separate case.  Please accept our apologies for any inconvenience this may have
caused.  Thank your for you patience and understanding.

Very truly yours,
BERRY & BERRY

Kristen Poppert
Case Status Coordinator
(510) 250-0468

M1752

*Alta Bates*

M E D I C A L   C E N T E R
ANATOMIC PATHOLOGY

Berry & Berry

Received

Date  2/67/07

To Whom It May Concern

Attached is a true and correct copy of my notes, consisting of
__2__ page(s) in the case of *Robert F. Lyon* .

I have initialed the upper right corner(s) for identification.

Sincerely

William R. Salyer, M.D.

WRS/w

05/11/2007 12:52 FAX 98355117          BERRY AND BERRY          → BRYDON HUGO          ☒003/005

Lyman, Robert F.          WRS                    LO7-
DOB: 8-13-39                                     Brayton

11-16-06

⟹ Carson - Tahoe Pathology, Carson City, NV
          H-06-9466
     — hemoptysis, abnormal RUL c̄ multiple.
    infectious vs. malignant

  A. RUL, endobronchial bx:
          ⟶ Pos for malignancy — keratinizing
           squamous cell ca c̄ invasion

  B. RUL, washing (cytology).
          — Pos for malig — keratinizing sq cell CA

  C.  RUL, brushing (cytology)
          — Pos for malig — keratinizing sq cell ca

  D. RUL, bronchoalveolar lavage (cytology)
          — Pos for malig — keratinizing sq cell CA

②

Lyman

GRS

Slide Review

Carson-Tahoe Pathology  H-06-9466  11 slides
(A-H+E; B-2 smears [PAP]; B-cytospin [Giemsa]; B-cell block [H+E];
C-3 smears [PAP]; D-2 smears [PAP]; D-cell block [H+E]
+ 3 blocks (A, B, D)            prepared 3 for (A, B, D)

A. Lung, RML, bronch bx : - In-situ & infil sq cell CA
                           - No lung tissue (bronch wall + tumor)
                           - 0 asb bodies in <0.1 cm² of bronch
                                                    wall + tumor

B  Lung, RUL, bronch wash : - SQ squamous cell CA
                            - 0 asb bodies

C. Lung, RUL, brushing : SQ cell CA

D. Lung, B-A lavage : - SQ cell CA
                      - 0 asb bodies

   Note: Quantity & nature of above samples are
         inadequate for documentation of asbestos-body
         content of lung tissue.
                                    wall

# PROOF OF SERVICE

I, Jane Camingue, do hereby declare and state:

I am employed in the city of Petaluma, County of Sonoma, California. I am over the age of 18 and not a party to the within action. My business address is 1009 Clegg Court, Petaluma, CA 94954.

On _____ MAR 0 1 2007 _____, I served the within:

Reports;

Re: _Robert F. Lyman_____

on the parties in this action by placing a true copy thereof in a sealed envelope, and envelope addressed as follows:

By mail Service:

## BERRY & BERRY
P.O. Box 16070
2930 Lakeshore Ave.
Oakland, CA 94610

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for delivery by mail. Correspondence so collected and processed is deposited with the United States Postal Service on the same day in the ordinary course of business. On the above date the said envelope was collected for the United States Postal Service following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed _____ MAR 0 1 2007 _____, at Petaluma, California.

_____
Jane Camingue

# BERRY & BERRY
A PROFESSIONAL LAW CORPORATION
TELEPHONE (510) 250-0200
FAX (510) 835-5117
www.berryandberry.com

PHILLIP S. BERRY
PETER R. GILBERT
LEONARDO J. VACCHINA
LAURA E. PRZETAK
EVANTHIA M. SPANOS
RHONDA L. WOO
JILL J. HOFFMAN

SAMUEL H. BERRY    (1904-1990)

May 3, 2007

To:  All Defense Counsel

Re:   LYMAN, ROBERT/SAMANTHA V. CLEAVER-BROOKS
      San Francisco Superior Court No. 459162

Dear Counsel:

      Enclosed please find a report by William R. Salyer M.D.(DOR:4/16/07) pertaining to the above
referenced case, recently provided to Berry& Berry by the BRAYTON & PURCELL office .

                                        Very truly yours,
                                        BERRY & BERRY

                                        Terri Hunt
                                        Paralegal Assistant
                                        Evidence Paralegal Department

M1752

MAILING ADDRESS:                              STREET ADDRESS:
POST OFFICE BOX 16070 ■ OAKLAND, CA 94610     2930 LAKESHORE AVENUE ■ OAKLAND, CA 94610-3614

05/03/2007 12:25 FAX 98355117        3 BERRY & BERRY        → BRYDON HUGO        ☑002/008

M1752
Pref: Yes
SoE

*Alta Bates*

MEDICAL CENTER
ANATOMIC PATHOLOGY

Berry & Berry

MAY 0 2 2007

**Received**

Date  4-16-07

To Whom It May Concern

Attached is a true and correct copy of my notes, consisting of
 2  page(s) in the case of   ROBERT LYMAN        .

I have initialed the upper right corner(s) for identification.

Sincerely

William R. Salyer, M.D. /WRS

WRS/w

Lyman Robert                    WFS                    LOT-
DOB  8-13-39                                          Brayton


1-4-07 → Carson-Tahoe Pathology, A07-111, Carson City
                    RLL lung cancer
A) Fragment of lung parenchyma: No node
B-C) Mediastinal lymph node: Neg.
  D)  Lung, RLL, lobectomy:

        — Mod diff squamous cell ca, 2.2 cm

        — Met CA in 2/3 hilar nodes

        — Clear vascular margin

        — Invasive sq ca at bronch margin


E-G)  Mediastinal lymph nodes: Neg
  H.)  R main bronchus, partial resection:
                    Invasive SQ CA. Margins clear


  I.)  R 7th rib: Neg

Lyaren                               WRS                          ②

Slide Review

Carson - Tahoe Pathology, H-07-111, 36 slides
    (A, FSB-2, B; FSC-2, C; FSD-3, DI-DII, E, F, G;
  FSH1-2, H1, FSH2-2, H2, FSH3-2, H3-H5, I)
    + 23 blocks (A, B, C, DI-DII, E, F, G, HI-H5, I)
  prepared 6 Fe (D4, D6, D8, D9, D10, D11)

A) "Med node" — Fragment of lung. No lymph node. No asbestos

B, C) Mediastinal lymph nodes: Neg

D) Lung, RUL, (lobectomy)
    — In situ & infiltrating squamous cell CA.
           with lymph node involvement
    — Focal bronchial margin involvement; Neg vasc margin
    — Minimal emphysema —
    — Focal peribronchiolar fibrosis
    — 7 asbestos bodies in 5.2 cm² of lung tissue,
           or 1.3 asb bodies/cm²
    — 2 asb bodies in 0.4 cm² of lymph node tissue
    — Asbestosis, CAP-NIOSH Grade I

| Slide | Asb Bodies |
|-------|-----------|
| D4 | 1 - node |
| D6 | 0 |
| D8 | 3 - lung |
| D9 | 1 - node |
| D8 | 1 - lung |
| D10 | 0 |
| D11 | 3 |

E, F, G) Mediastinal lymph nodes: Neg
H) R Main bronchus, partial resection: — Infil SQ CA
                                        — Neg margins

I    R 7th rib: Neg

# PROOF OF SERVICE

I, Joyce Diala, do hereby declare and state:

I am employed in the city of Petaluma, County of Sonoma, California.  I am over the age of 18 and not a party to the within action.  My business address is 1009 Clegg Court, Petaluma, CA 94954.

On _____ APR 3 0 2007 _____, I served the within:

Reports;

Re: _____ Robert Lyman _____

on the parties in this action by placing a true copy thereof in a sealed envelope, and envelope addressed as follows:

By mail Service:

## BERRY & BERRY
P.O. Box 16070
2930 Lakeshore Ave.
Oakland, CA 94610

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for delivery by mail.  Correspondence so collected and processed is deposited with the United States Postal Service on the same day in the ordinary course of business.  On the above date the said envelope was collected for the United States Postal Service following ordinary business practices.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed _____ APR 3 0 2007 _____, at Petaluma, California.


_____
Joyce Diala

Page 1 of 3         **BERRY AND BERRY SERVICE LIST**      As of:   05/03/2007
FAX NUMBER

CASE NAME:   LYMAN, ROBERT/SAMANTHA V. CLEAVER-BROOKS   SFSC 459162       BRAYTN      M1752.ASB

| CASE | FIRM / ADDRESS / CLIENT | CODE | FAX NUMBER |
|---|---|---|---|
| M1752.ASB | ADAMS NYE SINUNU BRUNI BECHT<br>222 KEARNY, 7TH FLOOR SAN FRANCISCO, CA 94108-4521<br>*WEIR VALVE & CONTROLS USA, INC.* | 000 | (415)982-2042 |
| M1752.ASB<br>N | BASSI, MARTINI, EDLIN & BLUM<br>351 CALIFORNIA STREET, SUITE 200 SAN FRANCISCO, CA 94104<br>*CARLISLE CORPORATION, INC.* | 041 | (415)397-1339 |
| M1752.ASB | BASSI, MARTINI, EDLIN & BLUM<br>351 CALIFORNIA STREET, SUITE 200 SAN FRANCISCO, CA 94104<br>*PARKER-HANNIFIN* | 041 | (415)397-1339 |
| M1752.ASB | BRYDON HUGO & PARKER<br>135 MAIN STREET, 20TH FLOOR SAN FRANCISCO, CA 94105<br>*FOSTER WHEELER CORPORATION* | 69 | (415) 808-0333 |
| M1752.ASB | BRYDON HUGO & PARKER<br>135 MAIN STREET, 20TH FLOOR SAN FRANCISCO, CA 94105<br>*UNION CARBIDE* | 69 | (415) 808-0333 |
| M1752.ASB | DILLINGHAM & MURPHY, LLP<br>225 BUSH STREET, SIXTH FLOOR SAN FRANCISCO, CA 94104-4207<br>*MONTELLO, INC.* | 116 | (415)397-3300 |
| M1752.ASB | FILICE, BROWN,EASSA & MCLEOD, LLP<br>1999 HARRISON STREET, 18 FLOOR OAKLAND, CA 94612<br>*CHEVRON, U.S.A., INC.* | 030 | (510)839-7940 |
| M1752.ASB | FILICE, BROWN,EASSA & MCLEOD, LLP<br>1999 HARRISON STREET, 18 FLOOR OAKLAND, CA 94612<br>*DETROIT DIESEL CORPORATION* | 030 | (510)839-7940 |
| M1752.ASB | FILICE, BROWN,EASSA & MCLEOD, LLP<br>1999 HARRISON STREET, 18 FLOOR OAKLAND, CA 94612<br>*FORD MOTOR COMPANY* | 030 | (510)839-7940 |
| M1752.ASB | FILICE, BROWN,EASSA & MCLEOD, LLP<br>1999 HARRISON STREET, 18 FLOOR OAKLAND, CA 94612<br>*GENERAL MOTORS CORPORATION* | 030 | (510)839-7940 |

Page 2 of 3                      **BERRY AND BERRY SERVICE LIST**          As of:    05/03/2007
                                          FAX NUMBER

CASE NAME:    LYMAN, ROBERT/SAMANTHA V. CLEAVER-BROOKS    SFSC 459162        BRAYTN        M1752.ASB

| | | |
|---|---|---|
| M1752.ASB | FILICE, BROWN,EASSA & MCLEOD, LLP<br>1999 HARRISON STREET, 18 FLOOR OAKLAND, CA 94612<br>*TEXACO, INC.* | 030<br>(510)839-7940 |
| M1752.ASB | FILICE, BROWN,EASSA & MCLEOD, LLP<br>1999 HARRISON STREET, 18 FLOOR OAKLAND, CA 94612<br>*UNOCAL CORPORATION* | 030<br>(510)839-7940 |
| M1752.ASB | HAIGHT, BROWN & BONESTEEL<br>71 STEVENSON STREET, 20TH FLOOR SAN FRANCISCO, CA 94105<br>*INTERNATIONAL TRUCK AND ENGINE CORP.* | 028<br>(415)546-7505 |
| M1752.ASB<br>E | HASSARD BONNINGTON<br>TWO EMBARCADERO CENTER, SUITE 1800 SAN FRANCISCO, CA 94111-3993<br>*JOHN CRANE INC.* | 035<br>(415)288-9802 |
| M1752.ASB | KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP<br>55 SECOND STREET, SUITE 1700 SAN FRANCISCO, CA 94105-3493<br>*CRANE CO.* | 017<br>(415) 882-8220 |
| M1752.ASB | LEWIS, BRISBOIS, BISGAARD & SMITH LLP (SF Ofc)<br>ONE SANSOME STREET, SUITE 1400 SAN FRANCISCO, CA 94104<br>*PLANT INSULATION COMPANY* | 52<br>(415)434-0882 |
| M1752.ASB<br>E | MCNAMARA, DODGE, NEY, BEATTY, SLATTERY<br>P.O. BOX 5288 WALNUT CREEK, CA 94596<br>*FMC CORPORATION* | 054<br>(925)939-0292 |
| M1752.ASB | PRINDLE, DECKER & AMARO<br>369 PINE STREET, SUITE 800 SAN FRANCISCO, CA 94104<br>*A.W. CHESTERTON CO.* | 082(or alt415-732-5959)<br>(415)788-3625 |
| M1752.ASB | PRINDLE, DECKER & AMARO<br>310 GOLDEN SHORE 4TH FLOOR LONG BEACH, CA 90801-5511<br>*CHEVRON PHILLIPS CHEMICAL CO/DRILLING SPECIALTIE* | 12<br>(562)495-0564 |
| M1752.ASB | PRINDLE, DECKER & AMARO<br>310 GOLDEN SHORE 4TH FLOOR LONG BEACH, CA 90801-5511<br>*DRILLING SPECIALTIES COMPANY* | 12<br>(562)495-0564 |

| Page 3 of 3 | **BERRY AND BERRY SERVICE LIST** | As of: | 05/03/2007 |
| | FAX NUMBER | | |

CASE NAME:   LYMAN, ROBERT/SAMANTHA V. CLEAVER-BROOKS   SFSC 459162        BRAYTN        M1752.ASB

| | | | |
|---|---|---|---|
| M1752.ASB | PRINDLE, DECKER & AMARO<br>310 GOLDEN SHORE 4TH FLOOR LONG BEACH, CA 90801-5511<br>*HENRY VOGT MACHINE COMPANY* | 12 | (562)495-0564 |
| M1752.ASB<br>**N** | SCHIFF HARDIN, LLP<br>ONE MARKET PLAZA, 32ND FLOOR SAN FRANCISCO, CA 94105<br>*OWENS-ILLINOIS* | 057 | (415)901-8701 |
| M1752.ASB<br>**E** | THELEN, REID BROWN RAYSMAN & STEINER LLP<br>101 SECOND STREET, SUITE 1800 SAN FRANCISCO, CA 94105-3601<br>*MACK TRUCKS, INC.* | 075 | (415)644-6519 |
| M1752.ASB | WRIGHT, ROBINSON, OSTHIMER & TATUM<br>44 MONTGOMERY STREET, 18TH FLOOR SAN FRANCISCO, CA 94104<br>*FREIGHTLINER CORPORATION* | 080 | (415)391-8766 |