# EXHIBIT G

1  John R. Brydon [Bar No. 083365]
   Thomas J. Moses [Bar No. 116002]
2  Erin M. Carpenter [Bar No. 248337]
   BRYDON HUGO & PARKER
3  135 Main Street, 20th Floor
   San Francisco, CA 94105
4  Telephone: (415) 808-0300
   Facsimile: (415) 808-0333
5
   Attorney for Defendant
6  UNION CARBIDE CORPORATION

7

8              SUPERIOR COURT - STATE OF CALIFORNIA

9          COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10  ROBERT F. LYMAN and SAMANTHA          (ASBESTOS)
    LYMAN,                                 Case No. 459162
11
              Plaintiff(s),               NOTICE OF DEFENDANT UNION
12                                         CARBIDE CORPORATION'S MOTION
        vs.                                AND MOTION FOR SUMMARY
13  ASBESTOS DEFENDANTS (B✤P), et al.     JUDGMENT, OR, IN THE ALTERNATIVE,
                                           SUMMARY ADJUDICATION
14
                                          [Filed concurrently with Supporting
15                                         Memorandum of Points and Authorities;
                                           Separate Statement of Undisputed Material
16                                         Facts; Declaration of Thomas J. Moses]

17                                        Date:       July 27, 2007
                                          Time:       9:30 A.M.
18                                        Dept.:      302
                                          Judge:      Hon. Patrick J. Mahoney
19

20                                        Trial Date: July 30, 2007

21

22  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

23      PLEASE TAKE NOTICE that on July 27, 2007[1], at 9:30 a.m., or as soon thereafter as

24  the matter may be heard in Department 302 or such other department as may be assigned

25  of the above-named Court, located at 400 McAllister St., San Francisco, California 94102,

26  ───────────────────────

27  [1] Per stipulation of the parties, Defendant Union Carbide Corporation is allowed to serve and file this motion
    for summary judgment/adjudication on July 5, 2007, with this hearing date.

28                                            1

NOTICE OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY
JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  Defendant UNION CARBIDE CORPORATION (hereinafter, "Defendant" or "Union

2  Carbide"), will and hereby does move the Court, pursuant to Code of Civil Procedure

3  section 437c(a), for an order granting summary judgment, including costs of suit, in favor

4  of Defendant and against ROBERT F. LYMAN and SAMANTHA LYMAN (hereinafter,

5  "Plaintiffs").

6        In the alternative, if for any reason summary judgment cannot be granted,

7  Defendant will and hereby does move the Court pursuant to Code of Civil Procedure

8  section 437c(f) for an order adjudicating that the following causes of action and claims for

9  damages contained in Plaintiffs' Complaint have no merit:

10        Adjudication Issue No. 1:  Plaintiffs' First Cause of Action for Negligence has no

11  merit, because there is no evidence that Union Carbide caused Mr. Lyman's asbestos-

12  related injuries, or that Mr. Lyman was exposed to any products manufactured, supplied,

13  or distributed by Union Carbide that contained asbestos.

14        Adjudication Issue No. 2:  Plaintiffs' Second Cause of Action for Strict Products

15  Liability has no merit, because there is no evidence that Union Carbide caused Mr.

16  Lyman's asbestos-related injuries, or that Mr. Lyman was exposed to any products

17  manufactured, supplied, or distributed by Union Carbide that contained asbestos.

18        Adjudication Issue No. 3:  Plaintiffs' Third Cause of Action for False Representation

19  has no merit, because there is no evidence that Union Carbide caused Mr. Lyman's

20  asbestos-related injuries, or that Mr. Lyman was exposed to any products manufactured,

21  supplied, or distributed by Union Carbide that contained asbestos, additionally, there is no

22  evidence that Union Carbide made any representations to Mr. Lyman, or owed Mr.

23  Lyman any duty to affirmatively disclose information, or that there is no proof that Mr.

24  Lyman was a consumer of a product for which Union Carbide is liable.

25        Adjudication Issue No. 4:  Plaintiffs' Fourth Cause of Action for Loss of Consortium

26  has no merit, because there is no evidence that Union Carbide caused Mr. Lyman's

27  asbestos-related injuries, or that Mr. Lyman was exposed to any products manufactured,

28                                                2

NOTICE OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY
JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1 | supplied, or distributed by Union Carbide that contained asbestos, and because the

2 | underlying causes of action from which it derives have no merit.

3 |     <u>Adjudication Issue No. 5:</u> Plaintiffs' Claim for Punitive Damages has no merit,

4 | because there is no evidence that Union Carbide caused Mr. Lyman's asbestos-related

5 | injuries or that Mr. Lyman was exposed to any products manufactured, supplied, or

6 | distributed by Union Carbide that contained asbestos or to any asbestos supplied by Union

7 | Carbide placed into products manufactured by others, or that there is any "clear and

8 | convincing evidence" that any of the conduct at issue concerning Union Carbide herein

9 | constitutes "malice," "oppression," or "fraud," or "despicable conduct," which is necessary

10 | to support such a claim.

11 |     This motion is made on the grounds that the material facts supporting entry of

12 | judgment herein are without dispute and that, based upon the undisputed material facts,

13 | Defendant is entitled to summary judgment or, in the alternative, summary adjudication,

14 | as a matter of law.

15 |     This motion is based upon this Notice of Motion and Motion; the attached

16 | Memorandum of Points and Authorities; the Separate Statement of Undisputed Facts, the

17 | Declaration of Thomas J. Moses and the Declaration of John Edward Walsh filed

18 | concurrently herewith; the pleadings and other records on file in this action; and upon such

19 | other documentary and oral evidence or argument as may be presented at or before the

20 | hearing of this matter.

21 | DATED: July 5, 2007             BRYDON HUGO & PARKER

22 |

23 |                       By: _____

24 |                           John R. Brydon

25 |                           Thomas J. Moses<br>Erin M. Carpenter<br>Attorneys for Defendant<br>UNION CARBIDE CORPORATION

26 |

27 |                       1102-0231

28 |                          3

**NOTICE OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

1    *Lyman, Robert F. & Samantha vs. Asbestos Defendants (B*P), et al.*
     San Francisco County Superior Court Case No. CGC-06-459162
2    LexisNexis Transaction No. 15465916

3                              PROOF OF SERVICE

4        I am a resident of the State of California, over the age of 18 years, and not a
     party to the within action. My electronic notification address is
5    service@bhplaw.com and my business address is 135 Main Street, 20th Floor, San
     Francisco, California 94105. On the date below, I served the following:
6
     NOTICE OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION AND
7       MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE,
                          SUMMARY ADJUDICATION
8
     on the following:
9
     David R. Donadio                         AND SEE LEXIS NEXIS SERVICE LIST
10   Brayton Purcell
     222 Rush Landing Road
11   Novato, CA 94945

12
         X        By transmitting electronically the document(s) listed above as set forth
13                on the electronic service list on this date before 5:00 p.m.

14
         I declare under penalty of perjury that the above is true and correct.
15   Executed on July 5, 2007, at San Francisco, California.

16
17                              *Wanda D. Claudio*
                                Wanda D. Claudio
18
19
20
21
22
23
24
25
26
27
28

                                       1

1   John R. Brydon [Bar No. 083365]
    Thomas J. Moses [Bar No. 116002]
2   Erin M. Carpenter [Bar No. 248337]
    BRYDON HUGO & PARKER
3   135 Main Street, 20th Floor
    San Francisco, CA 94105
4   Telephone: (415) 808-0300
    Facsimile: (415) 808-0333
5
    Attorney for Defendant
6   UNION CARBIDE CORPORATION

7

8                       SUPERIOR COURT - STATE OF CALIFORNIA

9            COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10  ROBERT F. LYMAN and SAMANTHA        (ASBESTOS)
    LYMAN,                               Case No. 459162
11
                  Plaintiff(s),          MEMORANDUM OF POINTS AND
12        vs.                            AUTHORITIES IN SUPPORT OF
                                         DEFENDANT UNION CARBIDE
13  ASBESTOS DEFENDANTS (B✜P), et al.    CORPORATION'S MOTION FOR
                                         SUMMARY JUDGMENT, OR, IN THE
14                                       ALTERNATIVE, SUMMARY
                                         ADJUDICATION
15
                                         [Filed concurrently with Supporting Notice
16                                       and Motion for Summary Judgment;
                                         Separate Statement of Undisputed Material
17                                       Facts; Declaration of Thomas J. Moses]

18                                       Date:      July 27, 2007
                                         Time:      9:30 A.M.
19                                       Dept.:     302
                                         Judge:     Hon. Patrick J. Mahoney
20

21                                       Trial Date:  July 30, 2007

22

23

24

25

26

27

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S
MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# TABLE OF CONTENTS

I.   STATEMENT OF FACTS AND SUMMARY OF ARGUMENTS..................................1

II.  SUMMARY JUDGMENT AND ADJUDICATION STANDARDS...............................1

III. PLAINTIFFS' CAUSES OF ACTION FOR NEGLIGENCE, STRICT LIABILITY
     AND LOSS OF CONSORTIUM FAIL AS A MATTER OF LAW ................................2

   A.   Plaintiffs' Complaint, Discovery Responses and Deposition Testimony
        Do Not Identify Any Union Carbide Product. ..................................................2

   B.   Plaintiffs' Responses to Union Carbide's Written Discovery Fail to
        Establish Exposure To An Asbestos-Containing Product For Which
        Union Carbide Is Liable.......................................................................................3

        1    *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed to Asbestos-
             Containing Drilling Mud For Which Union Carbide Would Be
             Responsible.*...................................................................................................3

        2.   *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed to Asbestos-
             Containing Phenolic Resins or "Bakelite" For Which Union Carbide
             Would Be Responsible*...................................................................................7

        3.   *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed to Asbestos-
             Containing Products From USG For Which Union Carbide Would Be
             Responsible.*.................................................................................................10

             a)   *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed to Asbestos-
                  Containing Products From USG For Which Union Carbide Would Be
                  Responsible.*..........................................................................................10

             b)   Plaintiffs Cannot Establish Robert Lyman's Exposure to Asbestos
                  Supplied by Union Carbide in any Asbestos-Containing Product
                  Manufactured By United States
                  Gypsum.................................................................................................11

             c)   *As a Bulk Supplier of Raw Asbestos, Union Carbide Had to Rely on
                  Sophisticated Manufacturers Which Bought and Used "Calidria" Raw
                  Asbestos in Their Products to Warn End Users of Those Products.*..12

   C.   Plaintiffs' Third Cause Of Action For False Representation Fails As A
        Matter Of Law.......................................................................................................15

   D.   Plaintiffs Have No "Clear And Convincing" Evidence Of Conduct
        Sufficient To  Support Their Claim For Punitive Damages. .........................17

IV.  CONCLUSION ............................................................................................................19

i

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

# TABLE OF AUTHORITIES

**Cases**

*Artiglio v. General Electric Co.*
(1998) 61 Cal.App.4th 830 .................................................................. 12, 13

*Bell v. Sharp Cabrillo Hospital*
(1989) 212 Cal.App.3d 1034 .................................................................. 18

*Blackwell v. Phelps Dodge Corp.*
(1984) 157 Cal.App.3d 372 .................................................................. 14

*Cadlo v. Owens-Corning, Inc.*
(2004) 125 Cal.App.4th 513 .................................................................. 15

*Calatayud v. State of California*
(1998) 18 Cal.4th 1057 .................................................................. 12

*Chaknova v. Wilbur-Ellis Co.*
(1999) 69 Cal.App.4th 962 .................................................................. 3

*College Hospital, Inc. v. Superior Court*
(1994) 8 Cal.4th 704 .................................................................. 17

*Dumin v. Owens-Corning Fiberglas Corp*
(1994) 28 Cal.App.4th 650 .................................................................. 6

*Flyer's Body Shop Profit Sharing Plan v. Ticor Title Insurance Co.*
(1986) 185 Cal.App.3d 1149 .................................................................. 18

*Garcia v. Joseph Vince Co.*
(1978) 84 Cal.App.3d 868 .................................................................. 6

*Grieve v. Superior Court*
(1984) 157 Cal.App.3d 159 .................................................................. 18

*Groll v. Shell Oil Co.*
(1983) 148 Cal.App.3d 444 .................................................................. 12, 14

*Hauter v. Zogarts*
(1975) 14 Cal.3d 104, 111 .................................................................. 15

*Hunter v. Pacific Mechanical Corp.*
(1995) 37 Cal.App.4th 1282 .................................................................. 3

*In re Marriage of Weaver*
(1990) 224 Cal.App.3d 478 .................................................................. 17

*La Jolla Village Homeowner's Assoc. Inc. v. Superior Court*
(1989) 212 Cal.App.3d 1131 .................................................................. 16

ii

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1   *Lineaweaver v. Plant Insulation Co.*
        (1995) 31 Cal.App.4th 1409 ....................................................................... 1
2
    *Lovejoy v. AT&T Corp.*
3       (2001) 92 Cal.App.4th 85 ......................................................................... 16
4   *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*
        (1992) 6 Cal.App.4th 603 ......................................................................... 16
5
    *McGonnell v. Kaiser Gypsum Co.*
6       (2002) 98 Cal.App.4th 1098 ..................................................................... 15
7   *Mock v. Michigan Millers Mutual Ins. Co.*
        (1992) 4 Cal.App.4th 306 ......................................................................... 17
8
    *People v. Martin*
9       (1970) 2 Cal.3d 822 ................................................................................. 17
10  *Persons v. Salomon North America, Inc.*
        (1990) 217 Cal.App.3d 168................................................................... 12, 14
11
    *Romo v. Ford Motor Corporation*
12      (1999) 99 Cal.App.4th 1115 ..................................................................... 18
13  *Scannall v. County of Riverside*
        (1984) 152 Cal.App.3d 596 ....................................................................... 18
14
    *Shin v. Kong*
15      (2000) 80 Cal.App.4th 498 ....................................................................... 16
16  *Union Bank v. Superior Court*
        (1995) 31 Cal.App.4th 573 ......................................................................... 3
17
    *Walker v. Stauffer*
18      (1971) 19 Cal.App.3d 669 ................................................................... 13, 14
19  *Wilkins v. NBC, Inc.*
        (1999) 71 Cal.App.4th 1066 ..................................................................... 16
20

**Statutes**
21  Civ. Code § 3294(c)(1) ............................................................................... 16

22  Civ. Code § 3294(c)(2) ............................................................................... 17

23  Civ. Code, § 3294(c)(3) ............................................................................... 17

24  Code Civ. Proc., § 437c(c) ............................................................................ 1

25  Code Civ. Proc., § 437c(f)(1) ........................................................................ 1

26
**Other Authorities**
27  Restatement of Torts section 402-B ............................................................. 15

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

I.     **STATEMENT OF FACTS AND SUMMARY OF ARGUMENTS.**

In this asbestos personal injury case, Plaintiffs ROBERT F. LYMAN and SAMANTHA LYMAN, ("Plaintiffs") claim that ROBERT F. LYMAN was injured from exposure to asbestos from an asbestos-containing product manufactured by, or containing asbestos supplied by, Defendant Union Carbide Corporation ("Union Carbide"). Plaintiffs assert four causes of action against various Defendants, including Union Carbide, for negligence, strict liability, false representation, loss of consortium, and also assert a claim for compensatory and punitive damages.

Plaintiffs' claims herein have no merit, as they have not provided *any evidence* that Mr. Lyman was actually exposed to any asbestos-containing products manufactured by Union Carbide itself; neither do they identify any product containing asbestos supplied by Union Carbide which Mr. Lyman either worked with or was exposed to. Plaintiffs' claim for punitive damages in this matter is equally meritless, in that there is no "clear and convincing evidence" of conduct on the part of Union Carbide which would be sufficient to support or justify an award of exemplary damages.

II.     **SUMMARY JUDGMENT AND ADJUDICATION STANDARDS**

Summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c(c).) Summary adjudication, alternatively, is granted if one or more causes of action has no merit. (Code Civ. Proc., § 437c(f)(1).) A cause of action has "no merit" if any element of the cause of action cannot be established, or there is a complete defense to the cause of action. (*Id.*)

In this case, Plaintiffs have the burden of proving causation, which requires a showing that (1) Mr. Lyman was exposed to an asbestos-containing Union Carbide product, or to a product manufactured by another that contained asbestos supplied by Union Carbide, and (2) that biological processes from this exposure resulted in his current

1

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1  disease. (*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1415-16.) This

2  proof is fundamental to each of Plaintiffs' causes of action set forth in their Complaint.

3        To prevail here, Union Carbide only has to put forth evidence to establish that

4  Plaintiffs do not possess, and cannot reasonably obtain, evidence necessary to raise a

5  genuine triable issue of fact concerning *"one or more"* of the elements of each cause of

6  action. (*Aguilar v. Atlantic Richfield Co.* (2001), 25 Cal.4th 826, at p. 849.) Alternatively, for

7  summary adjudication, all that must be shown is that *one or all* of Plaintiffs' causes of

8  action have "no merit," in that at least *one* of the elements of each cause of action cannot be

9  factually supported.

10 **III.**  **PLAINTIFFS' CAUSES OF ACTION FOR NEGLIGENCE, STRICT LIABILITY
       AND LOSS OF CONSORTIUM FAIL AS A MATTER OF LAW**

11

12       In this case, Plaintiffs are claiming that Mr. Lyman, a foreman, worker and driver

13 for a variety of companies, was exposed to asbestos during the course of his career.

14 However, Plaintiffs have failed to provide any evidence that Mr. Lyman was ever exposed

15 to a Union Carbide product, asbestos-containing or otherwise, much less to any product

16 that contained Union Carbide's "Calidria" asbestos. Thus, summary judgment must be

17 entered as a matter of law.

18       **A.**  **Plaintiffs' Complaint, Discovery Responses and Deposition
       Testimony Do Not Identify Any Union Carbide Product.**

19

20       Plaintiffs allege that various defendants, including Union Carbide, caused Mr.

21 Lyman to be exposed to asbestos-containing products and thereby develop an asbestos-

22 related disease. Though Plaintiffs named Union Carbide, the Complaint contains no case-

23 specific allegations showing that Mr. Lyman was exposed to asbestos products

24 manufactured by, or products containing asbestos supplied by, Union Carbide. [UMF No.

25 1.]

26       Plaintiffs' responses to Defendants' Standard Interrogatories do not make any

27

28

2

---

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

1  specific allegations relative to Union Carbide, or specify any particular asbestos-containing

2  products to which Mr. Lyman was allegedly exposed. [UMF No. 2.]

3      **B.**    **Plaintiffs' Responses to Union Carbide's Written Discovery Fail to**
          **Establish Exposure To An Asbestos-Containing Product For Which**

4            **Union Carbide Is Liable.**

5      In order to clarify Plaintiffs' claims against it, Union Carbide served special

6  interrogatories that required Plaintiffs to disclose all facts and sources of evidence in

7  support of their claims. [UMF No. 3.] In response, Plaintiffs claim Union Carbide is liable

8  for Mr. Lyman's alleged exposure to "Montello drilling mud." [UMF No. 4.] As

9  demonstrated below, however, Plaintiffs' discovery responses fail to provide sufficient

10 evidence to establish that Union Carbide is liable to Plaintiffs for injuries resulting from

11 these exposures.[1]

12     Plaintiffs have no evidence to support these exposure claims against Union Carbide.

13 Plaintiffs cannot possibly establish that Mr. Lyman was exposed to any products that

14 actually contained asbestos supplied by Union Carbide including any asbestos-containing

15 drilling mud. Thus, summary judgment should be entered as a matter of law.   (Code Civ.

16 Proc., § 437c(o)(2); *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 974, 977.)

17     Alternatively, summary adjudication should be entered on behalf of Union Carbide

18 as to Plaintiffs' First Cause of Action for Negligence, the Second Cause of Action for Strict

19 Products Liability and the Forth Cause of Action for Loss of Consortium.

20         1.    *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed To Asbestos-*
            *Containing Drilling Mud For Which Union Carbide Would Be Responsible*

21

22     Plaintiffs in this action claim that Robert Lyman was exposed to asbestos through

23 the use of drilling mud.  Relevant to Union Carbide is the claim that Mr. Lyman worked

24 with or around "Montello drilling mud."

25

26 [1] A defendant may rely on factually devoid, inadequate, or vague discovery responses to meet its burden of
proof. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590; *Hunter v. Pacific Mechanical Corp.* (1995) 37

27 Cal.App.4th 1282, 1287; *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 974-978.)

                                        3

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION**

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1    Drilling mud, which is a mixture of fluids and solids pumped down a well's

2  borehole, serves several functions, including lifting rock and soil, as well as cooling and

3  lubricating the drill bit.  From 1968 until 1985, Union Carbide sold asbestos as a drilling

4  mud additive through its exclusive distributor, Montello, Inc. [UMF No. 5.]  Montello, in

5  turn, sold Union Carbide's asbestos additive to mud service companies, who generally

6  then re-sold the product directly to drilling rig contractors.  Throughout these years,

7  Union Carbide/Montello sold a variety of asbestos additives under the brand names

8  Visbestos, Super Visbestos, Oilbestos, Telvis, and Univis.  Union Carbide's products came

9  in *dry* form, packaged in 50-pound bags with Montello's name on them.[2]  [UMF No. 6.]

10    In this case, Plaintiffs have failed to identify a single Union Carbide product that

11  was used in the drilling industry, let alone a product to which Mr. Lyman was exposed.  In

12  its special interrogatories to Plaintiffs, Union Carbide asked whether Mr. Lyman had been

13  exposed to any asbestos supplied by Union Carbide and, if so, to identify such products.

14  Plaintiffs responded in the affirmative and identified only "Montello drilling mud." [UMF

15  No. 7.]  There is not enough information from these interrogatory responses, or from any

16  other discovery engaged in with regard to this case, to support any claim that Mr. Lyman

17  was exposed to any product which actually contained Union Carbide asbestos.

18    It is also clear from Plaintiffs' extensive deposition testimony that there is no factual

19  basis for any claims against Union Carbide, for the simple reason that there is no evidence

20  to show that Mr. Lyman actually worked with or near any drilling mud or additives at his

21  two jobs within the oil and gas industry.  First, Mr. Lyman indicated in discovery

22  responses that he was employed by Cudd Pressure Control, Inc. ("Cudd") as an oil field

23  worker from 1981-1982.  [UMF No. 8.]  During his deposition, when asked about this

24  employment, Mr. Lyman testified that while he worked for Cudd, his work consisted

25

26

27

[2] Oilbestos and Univis had an oil based coating, designed to prevent dust.  These products were still "dry" in the sense that they were in solid, rather than liquid form.

28

4

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
ien Francisco, CA 94105

1  exclusively of transferring liquid nitrogen from a tanker truck into wells, forcing crude oil

2  up. He noted this was all Cudd did. [UMF No. 9.]

3      Mr. Lyman explained that the only time he ever witnessed any type of drilling fluid

4  or drilling mud in use while working for Cudd was on one occasion when he observed a

5  tanker marked "drilling fluid" deliver some form of *liquid* to an oil field he was working

6  at. [UMF No. 10.] Yet, Mr. Lyman did not even know whether drilling fluid in this

7  context was the same as drilling mud, or whether the contents of the fluid in the tanker

8  included asbestos, from Union Carbide or any other source. [UMF No. 11.] He also

9  testified that he never saw anyone mixing *dry* additives, fluids or muds near him while

10  working for Cudd. [UMF No. 12.]

11      Mr. Lyman's only other job in the oil and gas industry was as a chemical technician

12  and tanker truck driver for Baker Hughes, from 1982-1986. [UMF No. 13.] Mr. Lyman

13  testified that while employed by Baker Hughes, he witnessed dry ingredients being mixed

14  with liquid drilling mud in a revolving tanker truck, which was then pumped into a mud

15  tank. Mr. Lyman testified, however, that he was never closer then 40 to 50 feet when he

16  saw this. [UMF No. 14.] Because he was never close by when these ingredients were

17  being mixed, Mr. Lyman could not and did not identify the manufacturers, suppliers,

18  distributors or brand names of the alleged dry ingredients. [UMF No. 15.] Nor did Mr.

19  Lyman even know the composition of the materials which were being added to the mixing

20  truck and, therefore, could not and did not state that asbestos was one of those materials.

21  [UMF No. 16.]

22      Mr. Lyman also failed to identify a single Union Carbide or Montello asbestos

23  drilling mud additive. During Mr. Lyman's deposition, Montello's attorney identified

24  asbestos products manufactured by Union Carbide and distributed by Montello, and

25  asked Mr. Lyman whether he had ever been exposed to any of them. [UMF No. 17.] With

26  one exception, Mr. Lyman testified that he did not recall being exposed to any of the

27

28

5

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
an Francisco, CA 94105

1  products; the only exception was Mr. Lyman's vague recollection of seeing the name

2  "Shurlift." [UMF No. 18.] However, while he recalled seeing "Shurlift" at some point, Mr.

3  Lyman admitted that he was never exposed to it, as he neither handled "Shurlift," nor was

4  he around anyone who handled the product. [UMF No. 19.]

5      Furthermore, even if Mr. Lyman was exposed to asbestos by the "Shurlift" product

6  that he claims to have seen, there is no evidence that it contained asbestos for which Union

7  Carbide is liable. "Shurlift" was a product of IMCO Services, who supplied "Shurlift"

8  drilling muds to drilling mud contractors. [UMF No. 20.] Union Carbide was *one* of the

9  manufacturers of the product that was repackaged and sold as "Shurlift." [UMF No. 21.]

10  Drilling Specialties, a major supplier and distributor of the asbestos-containing mud

11  additive "Flosal," was also responsible for "Shurlift" products, as they repackaged their

12  "Flosal" product under the "Shurlift" trade name for IMCO. [UMF No. 22.] Therefore,

13  Plaintiffs cannot say with any certainty that the bag of "Shurlift" that Mr. Lyman vaguely

14  recalled seeing actually contained any Union Carbide asbestos, as opposed to an asbestos-

15  containing product from Drilling Specialties.

16      There is simply no evidence in this case to support any claim that Mr. Lyman was

17  exposed to a Union Carbide asbestos drilling mud additive products, or that he worked

18  with or near these products. There was no identification by Mr. Lyman of any asbestos

19  additive Union Carbide manufactured, or that any asbestos-containing product, whether

20  associated or not with Union Carbide, was ever used at any of the oil fields he worked at.

21      Lastly, Union Carbide began placing warnings on its asbestos additive products as

22  early as 1968. By 1972, these warnings mirrored the asbestos warnings mandated by the

23  newly formed Occupational Safety and Health Administration. From 1972 until it stopped

24  manufacturing asbestos additive products, Union Carbide placed warnings on these

25  products that fully complied with all governmental standards. [UMF No. 23.] Therefore,

26  even if Mr. Lyman was exposed to Union Carbide manufactured asbestos additives during

27

28

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

1   his brief stint as an oil field worker from 1981-1986, he had legally sufficient warning of the

2   possible hazards of these products.

3               2.    *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed to Asbestos-Containing Phenolic Resins or "Bakelite" For Which Union Carbide Would Be Responsible*

4

5       Although not specifically alleged in Plaintiffs' responses to Union Carbide's special

6   interrogatories, Mr. Lyman testified in his deposition that he saw "bakelite" during his

7   work in the oil fields over the years. [UMF No. 24.] This potential "bakelite" claim,

8   however, is unsupported by any evidence to establish that the "bakelite" he claimed to

9   have seen was actually manufactured by Union Carbide, much less that it was "bakelite"

10  that actually contained asbestos.

11      Union Carbide was a manufacturer of epoxy resins and phenolic resins, which were

12  manufactured under the trade name "Bakelite." [UMF No. 25.] Union Carbide also made

13  phenolic molding compounds that were also sold under the trade name "Bakelite." [UMF

14  No. 26.] The epoxy resins and phenolic resins *never* contained asbestos. [UMF No. 27.]

15  Union Carbide's phenolic molding compounds were sold in a granular form to

16  manufacturers, who then used the molding compounds to make finished molded plastic

17  products. [UMF No. 28.] Until approximately 1974, some, but *not* all, of these phenolic

18  molding compounds contained asbestos fibers as filler. [UMF No. 29.] However, many of

19  Union Carbide's phenolic molding compounds did not contain asbestos, but instead used

20  other fillers such as wood flour, cotton flock, mica, coal, or talc. [UMF No. 30.]

21      While the phenolic resins were sold by Union Carbide to many different companies,

22  who used them to make finished plastic products that were then sold to end-users, Union

23  Carbide never itself manufactured finished products from its phenolic resins. [UMF No.

24  31.] Also, many other companies manufactured phenolic molding compounds similar to

25  those made by Union Carbide, including Durez, Plastic Engineering Co., GE,

26  Westinghouse, and Reichold amongst others. [UMF No. 32.]

27                                  7

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    "Bakelite" is a generic term used to describe a type of plastic the identification of

2    which does not specifically relate to a Union Carbide product. [UMF No. 33.] While

3    "Bakelite" was at one time a registered trade name of Union Carbide, the term had, well

4    before Plaintiff's alleged exposure, become a generic name for a wide range of plastic

5    products, specifically including those made from phenolic resins and phenolic molding

6    compounds. [UMF No. 34.]

7        "Bakelite" is used as a generic to describe plastic products in the same way that

8    Kleenex® is used to refer to all facial tissue products. Even long after Union Carbide

9    stopped manufacturing phenolic resins and phenolic molding compounds, suppliers and

10   purchasers still refer to plastic materials generically as "bakelite." [UMF No. 35.] Clearly,

11   just because something was called "bakelite," there is no reason to assume such material

12   came from Union Carbide.

13       None of the facts alleged by Plaintiffs demonstrate that Union Carbide has any

14   liability for the "bakelite" to which Mr. Lyman might have been exposed, or that such

15   "bakelite" actually contained asbestos. In Mr. Lyman's videotaped direct deposition, he

16   stated that the only place he saw "bakelite" was in the oil fields in a plastic form. [UMF

17   No. 36.] Mr. Lyman testified in his discovery deposition that he did not recall what the

18   "bakelite" looked like, nor where it was that he saw it. [UMF No. 37.]

19       When asked when he saw "bakelite," Mr. Lyman testified that he believed he saw it

20   "maybe back in the '70s," and that it was "probably [at] Baker[3]." [UMF No. 38.] Moreover,

21   he did not recall any specific jobsite at which he may have seen "bakelite." [UMF No. 39.]

22   He did not state that this "bakelite" was manufactured by Union Carbide; instead, he

23   could only say that he believed the "bakelite" he used was "...manufactured by Bakelite."

24   [UMF No. 40.] He saw the name "bakelite" on the packaging, but could not recall what

25   the name looked like. [UMF No. 41.]

26

27   [3] "Baker" refers to "Baker Hughes," a company Mr. Lyman worked at between 1982-1986. [UMF No. 13.]

28
                                        8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1    Most importantly, Mr. Lyman did not recall what he did with the product that he

2 believed was "bakelite," nor whether it contained asbestos:

Q: Do you recall what exactly you did when you worked with that product?

3    A: No.

4    Q: Do you recall whether you had to mix, cut, sand, abrade, apply any of that?

5    A: I have no idea what I did with it.

6    Q: Okay. Do you know whether any of that product contained asbestos?

7    A: No. [UMF No. 42.]

8    Plaintiffs' discovery responses or deposition testimony do not state any facts from

9 which the Court may infer that Union Carbide supplied any "bakelite" to which Mr.

10 Lyman was allegedly exposed, or that any such material actually contained asbestos.

11 [UMF No. 43.]  As demonstrated above, Union Carbide was merely one of many suppliers

12 of phenolic resins and molding compounds used to make finished "bakelite" products.

13 Plaintiffs have proffered no evidence that Union Carbide supplied the "bakelite" to which

14 Mr. Lyman may have been exposed, or that any such materials did in fact contain asbestos.

15    Plaintiffs' generic product identification of "bakelite" is insufficient to avoid

16 summary judgment. (*Dumin v. Owens-Corning Fiberglas Corp.* (1994) 28 Cal.App.4th 650.)

17 In *Dumin* the plaintiff sued for personal injuries allegedly caused (in relevant part) by

18 exposure to asbestos in "kaylo."  However, the *Dumin* plaintiff lacked evidence proving

19 that the "kaylo" to which he was exposed was the defendant's "kaylo," as opposed to

20 "kaylo" from other sources. (*Id.* at pp. 655-56.)  Accordingly, the trial court granted the

21 defendant's motion for directed verdict, which decision was affirmed by the Court of

22 Appeal. (*Id.* at p. 655.)

23    And, where multiple suppliers of a product exist, a plaintiff cannot avoid summary

24 judgment simply by suing one of those suppliers unless he can prove that the particular

25 defendant sued actually supplied the injury-causing product. (*Garcia v. Joseph Vince Co.*

26 (1978) 84 Cal.App.3d 868.)

27

28

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

1  As Union Carbide was merely one of many suppliers of phenolic resins and

2  molding compounds used to make finished "bakelite" products, and as Plaintiffs have no

3  evidence of Mr. Lyman's actual exposure to any product that can be associated with Union

4  Carbide specifically, either directly or indirectly, summary judgment must be entered for

5  Union Carbide.

6         3    *Plaintiffs Cannot Prove That Mr. Lyman Was Exposed to Asbestos-*
               *Containing Products From USG For Which Union Carbide Would Be*

7                 *Responsible*

8  Although not specifically alleged in their responses to Union Carbide's special

9  interrogatories, Plaintiffs may also claim that Union Carbide-supplied asbestos was

10  contained in "USG products" to which Mr. Lyman may have been exposed. [UMF No.

11  44.] Mr. Lyman stated in his deposition testimony that he worked with or around USG

12  products once in the U.S. Marine Corps, and then again when he was a foreman at the U.S.

13  Gypsum plant in Charlestown, Massachusetts. [UMF No. 45.] Despite being asked to do

14  so, Plaintiffs failed to specifically identify the brand name or manufacturer of any of these

15  allegedly asbestos-containing products, whether USG's or otherwise. [UMF No. 46.]

16  To prevail under this theory, however, Plaintiffs *must* show that Mr. Lyman was

17  exposed to asbestos-containing products manufactured by a third-party manufacturer

18  using asbestos supplied by Union Carbide. Plaintiffs cannot do so.

19         a)   **Some of Mr. Lyman's Alleged Exposures Occurred Before**
**Union Carbide's Entry Into The Asbestos Market**

20

21  Union Carbide mined and milled short-fiber, chrysotile asbestos under the trade

22  name "Calidria" from approximately 1963 to 1985. [UMF No. 47.] The company's

23  asbestos mine was located near King City, California, and was the only asbestos mine ever

24  operated by Union Carbide. [UMF No. 48.] Union Carbide never sold "Calidria" to

25  individual consumers, but only to third party manufacturers who used it at certain times

26  in products that were utilized in various commercial applications. [UMF No. 49.]

27

28

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1   Union Carbide did not begin to supply asbestos at all until 1963, and then only in a

2   limited fashion. [UMF No. 50.] Therefore, any allegations of exposure to U.S. Gypsum

3   drywall sheets or products from 1956 to 1958, the period that Mr. Lyman was in the

4   Marines, are irrelevant and cannot impose liability in any way on Union Carbide, as pre-

5   dating its entrance into the asbestos market.

6            b)    **Plaintiffs Cannot Establish Robert Lyman's Exposure to
                   Asbestos Supplied by Union Carbide in any Asbestos-**
7                  **Containing Product Manufactured By United States Gypsum**

8   Regarding Robert Lyman's alleged exposure while employed at a U.S. Gypsum

9   plant in Charlestown, Massachusetts for 8 months in 1967, Union Carbide never sold

10  asbestos fibers to U.S. Gypsum for the use in their tape joint compound before the year

11  1968. [UMF No. 51.] There is simply no evidence that any of these alleged exposures

12  involved products containing asbestos supplied by Union Carbide.

13  Plaintiffs' responses to interrogatories state that Mr. Lyman worked at the U.S.

14  Gypsum plant in Charlestown, Massachusetts, and fail to identify any specific USG

15  products or other materials for which Union Carbide might be liable. [UMF No. 52.] In

16  Mr. Lyman's deposition testimony, he states that he supervised the workers making

17  wallboard. Mr. Lyman stated that he never mixed the mud for the drywall himself. [UMF

18  No. 53.] Moreover, he stated that he did not know what ingredients were used in this

19  wallboard mud. [UMF No. 54.] Furthermore, when asked if he knew what other products

20  were being manufactured at the plant he replied, "…I don't recall what they were." [UMF

21  No. 55.]

22  These statements do not establish exposure to an *asbestos-containing* USG product,

23  or any other manufacturer's product, let alone one containing asbestos supplied by *Union*

24  *Carbide*. Over the years, USG had at least ten different asbestos suppliers for its asbestos-

25

26

27

28

11

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1  containing products.[4] [UMF No. 56.] Again, Plaintiffs have provided no facts that would

2  infer that any USG product allegedly handled or worked on by Mr. Lyman actually

3  contained asbestos, or that any asbestos therein was supplied by Union Carbide, as

4  opposed to one of USG's many other suppliers.  No products potentially containing Union

5  Carbide's asbestos are identified as having been at this facility; therefore no Union Carbide

6  liability may be found.

7       Plaintiffs cannot possibly establish that Mr. Lyman was exposed to any products

8  that actually contained asbestos supplied by Union Carbide during the time periods

9  relevant to this case.  Thus, summary judgment and/or summary adjudication should be

10  entered as a matter of law as to Plaintiffs' First Cause of Action for Negligence, and

11  Plaintiffs' Second Cause of Action for Strict Liability.

12       Finally, Plaintiffs' Fourth Cause of Action for loss of consortium is derivative of and

13  dependent upon the success of the other liability claims on behalf of Plaintiffs.  (See

14  *Calatayud v. State of California* (1998) 18 Cal.4th 1057, 1060.)  Since there is no merit to the

15  claims asserted herein against Union Carbide, Plaintiffs' loss of consortium claim must

16  also likewise fail as a matter of law.

17       c)  **As a Bulk Supplier of Raw Asbestos, Union Carbide Had to Rely on Sophisticated Manufacturers Which Bought and Used**

18       **"Calidria" Raw Asbestos in Their Products to Warn End Users of Those Products**

19

20       To the extent that Union Carbide is being sued in this case as a "bulk supplier" of

21  asbestos fiber to other manufacturers (otherwise-known-as the "fiber-supply" theory of

22  liability), no liability should be imposed on it for a perceived "failure to warn" consumers

23  about the alleged "dangers" of asbestos.  Under the circumstances of this case, there was no

24  legal requirement that Union Carbide do so.  "Modern life would be intolerable unless one

25

26  [4] U.S. Gypsum's General Order 129 discovery responses state that it obtained asbestos fiber from Canadian

27  Johns-Manville, Lake Asbestos of Quebec, Nicolet Industries, Carey Canadian, Asbestos Corporation, Atlas Asbestos, Pacific Asbestos, Keasby and Mattison, Johnson Mines and Union Carbide.

28                          12

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1    were permitted to rely to a certain extent on others doing what they normally do,

2    particularly if it is their duty to do so." (*Persons v. Salomon North America, Inc.* (1990) 217

3    Cal.App.3d 168, 178 (citation omitted).)

4         It is settled California law that where a bulk supplier of a raw ingredient sells its

5    product to a sophisticated purchaser-manufacturer, who in turn incorporates the raw

6    ingredient into a finished product that is then sold to an end-user, the supplier has no duty

7    to warn the end-user and may rely upon the manufacturer to convey warnings associated

8    with the product. (See, *e.g., Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 837;

9    *Groll v. Shell Oil Co.* (1983) 148 Cal.App.3d 444, 498-49.) As noted in that case, the duty of a

10   bulk supplier to warn end users is based on a consideration of the following questions: (1)

11   was the material supplied inherently dangerous, (2) was the material sold in bulk to a

12   sophisticated buyer; (3) was the material substantially altered during the manufacturing

13   process due to compounding, packaging, labeling or marketing; and (4) did the supplier

14   substantially participate in the design, development and integration of the raw material

15   into the finished product. (*Artiglio, supra*, at 839.)

16        The policy behind this principle is based on the notion that it may not be possible for

17   a component part suppliers' warning to actually reach the ultimate user of another

18   manufacturer's finished product. As a result, courts have reasoned that a "sophisticated

19   buyer" who would be reasonably expected to test and evaluate the potential risks of its

20   products and each of the components therein would be in the best position to evaluate any

21   product warnings, and decide whether the defendant's substance is appropriate for use in

22   the finished product. (*Artiglio, supra*, at 837.)

23        Courts generally recognize that bulk suppliers lack the ability to control packaging,

24   labeling, and marketing once an intermediary purchases their products. In *Groll*, for

25   example, a supplier of flammable lantern fuel, purchased in bulk and repackaged by an

26   intermediate supplier, was sued after someone was injured while using a product which

27

28

13

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1 incorporated the fuel. (148 Cal.App.3d at 447.) The Court found no liability on the part of
2 the fuel supplier, because it had provided adequate warning of the flammability of the
3 product to the intermediate supplier. (*Id*. at 449-50.) The court reasoned that the bulk
4 supplier was not liable because it was unable to communicate warnings to users of the
5 finished product because it had relinquished control over the packaging of its component
6 when it was sold to a distributor. (*Id*.) Instead, the court concluded, the duty of a bulk
7 supplier to provide warnings "must be absolved at such time as it provides adequate
8 warnings to the distributor who subsequently packages, labels and markets the product."
9 (*Id*. at 449.)

10     Similarly, in *Walker v. Stauffer* (1971) 19 Cal.App.3d 669, the defendant supplied
11 sulfuric acid in bulk to a purchaser who incorporated it into a drain cleaner, which it then
12 packaged, labeled, marketed and subsequently sold through distributors. (19 Cal.App.3d
13 at 671.) The *Walker* court held that liability for warnings defects claims should not extend
14 to a bulk product supplier if there is a change in the product or in the container in which
15 the product is distributed to consumers, and where the bulk supplier has no practical
16 ability to warn end users. (*Id*., at 673-74; see also *Persons, supra*, 217 Cal.App.3d at 178
17 ["When a manufacturer or distributor has no effective way to convey a product warning to
18 the ultimate consumer, the manufacturer should be permitted to rely on downstream
19 suppliers to provide the warning."]; *Blackwell v. Phelps Dodge Corp.* (1984) 157 Cal.App.3d
20 372, 378-379 [holding no liability for warnings defect where the supplier of bulk sulfuric
21 acid had no ability to place warnings on the ultimate product].)

22     The rationale behind these cases—that bulk suppliers cannot be expected to reach
23 end users with warnings—holds true for Union Carbide. Here, Plaintiff Robert Lyman
24 does not claim that he ever handled, used, or manipulated any of Union Carbide's raw
25 "Calidria" asbestos. He had no commercial dealings with Union Carbide, did not, nor
26 could not, review any documentation or packaging that came with Union Carbide's raw

27
28

14

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1   asbestos. Because in order to incorporate "Calidria" in their products pursuant to the

2   various formulas, manufacturers would have to remove the asbestos fibers from Union

3   Carbide's packaging (which contained warnings) and mix the fibers in with other

4   ingredients.

5        As shown in failure to warn cases such as *Groll, Walker* and *Persons*, courts have

6   declined to hold bulk suppliers liable for failure to warn beyond intermediaries because

7   bulk suppliers exercise no control over the packaging, labeling, and marketing of the

8   intermediaries' final products. The same policy should hold here, where Union Carbide

9   was a bulk supplier of raw asbestos fiber to intermediaries, and had no control over

10  warning ultimate consumers. Thus, Union Carbide cannot be held liable under any failure

11  to warn theory. Accordingly, any of Plaintiffs' causes of action which may be premised on

12  this duty should be dismissed.

13      **C.**    **Plaintiffs' Third Cause Of Action For False Representation Fails As
        A Matter Of Law.**

14

15       The same lack of evidence that defeats Plaintiffs' Negligence, Strict Liability and

    Loss of Consortium claims described above is also fatal to Plaintiffs' Cause of Action for

16
    False Representation based on the Third Restatement of Torts section 402-B. Section 402B
17
    of the Restatement Second of Torts, which states, in relevant part:
18
19          One engaged in the business of selling chattels who, by advertising, labels, or
            otherwise, makes to the public a misrepresentation of a material fact concerning
            the character or quality of a chattel sold by him is subject to liability for physical
20          harm to a consumer of the chattel caused by justifiable reliance upon the
            misrepresentation . . . .
21

22  (Rest.2d Torts, §402B.)

23       This cause of action requires proof of a misrepresentation of material fact upon

24  which the Plaintiffs detrimentally relied, causing damages. (*Hauter v. Zogarts* (1975) 14

25  Cal.3d 104, 111.) To prove that any reliance on a misrepresentation resulted in damages,

26  Plaintiffs must prove that Mr. Lyman was actually exposed to asbestos from a product for

27  which Union Carbide is liable.

28

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1    But, Plaintiff cannot prove that *any* representation was made to Mr. Lyman by

2  Union Carbide, much less a *false* representation. Plaintiffs have no evidence that Mr.

3  Lyman ever purchased, used, or was otherwise exposed to, a product containing asbestos

4  supplied by Union Carbide. The inevitable conclusion is that Plaintiffs cannot establish

5  that Mr. Lyman was "a consumer of the chattel" as required by the Restatement.

6  Accordingly, "If there has been no exposure, there is no causation." (*McConnell v. Kaiser*

7  *Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1103; *Cadlo v. Owens-Corning, Inc.* (2004) 125

8  Cal.App.4th 513, 523-24 [demurrer to fraud cause of action sustained when facts showed

9  asbestos plaintiff was not exposed to moving defendant's product].)

10    In their responses to Union Carbide's case-specific interrogatories regarding the

11  bases for Plaintiffs' false representation, Plaintiffs admit they do not have any specific

12  evidence to support a claim of false representation based upon such conduct. [UMF No.

13  57.] Plaintiffs' discovery responses make clear that Plaintiffs have no facts showing that

14  Union Carbide ever verbally communicated with or made any oral representations to Mr.

15  Lyman at all. [UMF No. 58.]

16    Nor can Plaintiffs proceed on the theory that Union Carbide failed to disclose

17  material information about the dangers of asbestos. Among other things, Plaintiffs must

18  prove that Union Carbide was under a duty to disclose a material fact. (*Lovejoy v. AT&T*

19  *Corp.* (2001) 92 Cal.App.4th 85, 95, quoting *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*

20  (1992) 6 Cal.App.4th 603, 612-613.) But a duty to disclose generally exists only if there is a

21  "special relationship" between the parties. (*Shin v. Kong* (2000) 80 Cal.App.4th 498, 509;

22  accord *Wilkins v. NBC, Inc.* (1999) 71 Cal.App.4th 1066.)

23    Put another way, a failure to disclose "is not actionable fraud unless there is a

24  fiduciary or confidential relationship giving rise to a duty to disclose." (*La Jolla Village*

25  *Homeowner's Assoc. Inc. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1151.) Given the lack

26  of evidence that Mr. Lyman was ever exposed to an asbestos containing product for which

27

28

16

1   Union Carbide is liable, or ever communicated with Union Carbide, there is no evidence of

2   any relationship at all between Union Carbide and the Plaintiffs, much less a *special* one.

3   Thus, Plaintiffs' Cause of Action for False Representation fails as a matter of law.

**D.    Plaintiffs Have No "Clear And Convincing" Evidence Of Conduct Sufficient To Support Their Claim For Punitive Damages.**

6   Plaintiffs' claim for punitive damages fails for at least two reasons: Plaintiffs'

7   discovery responses and deposition testimony fail to disclose any evidence of fraud, malice

8   or oppression by Union Carbide, much less by clear and convincing evidence, and fail to

9   disclose any evidence of corporate ratification or approval of any misconduct by Union

10  Carbide.

11  Under Civil Code section 3294(a), Plaintiffs can recover punitive damages only if

12  they prove by "clear and convincing evidence" that Union Carbide was guilty of

13  "oppression, fraud or malice."[5] Proof by clear and convincing evidence has been defined in

14  other contexts as "clear, explicit, and unequivocal" proof, "so clear as to leave no substantial

15  doubt," and "sufficiently strong to demand the unhesitating assent of every reasonable

16  mind." (*People v. Martin* (1970) 2 Cal.3d 822, 833, fn. 14; see *Mock v. Michigan Millers Mutual*

17  *Ins. Co.* (1992) 4 Cal.App.4th 306, 332, *In re Marriage of Weaver* (1990) 224 Cal.App.3d 478,

18  487, fn. 8.)[6]

19  While "despicable conduct"[7] is not defined by Section 3294(a), the Judicial Council

20  ---

[5] "Malice" means either (1) conduct that is intended by the defendant to cause injury to the plaintiff, or (2) despicable conduct that is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. (Civ. Code § 3294(c)(1).) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. (Civ. Code § 3294(c)(2).) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury. (Civ. Code, § 3294(c)(3))

[6] The addition of this requirement is part of a broader design to require a higher quantum of proof, and to limit punitive damage awards to those cases in which the defendant's conduct is clearly blameworthy (*Mock, supra,* 4 Cal. App. 4th at pp. 332-333; emphasis added.)

[7] The California Supreme Court has noted that in choosing the phrase "despicable conduct," the Legislature intended to "impose a new substantive limitation on punitive damage awards." (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725.) In *College Hospital, Inc.*, the California Supreme Court noted that the adjective "despicable" is a powerful term that refers to circumstances that are "base, vile or

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

1 | of California, in its CACI instructions, has suggested the following definition:

2 | > Despicable conduct which so vile, base, or contemptible that it
3 | > would be looked down on and despised by reasonable people.
> (CACI Nos. 3940, 3947.)

4 | Here, Plaintiffs have proffered no relevant or admissible evidence that Union

5 | Carbide acted with oppression, malice or fraud such as to warrant damages for the sake of

6 | example, and by way of punishing Union Carbide. Plaintiffs' responses to Union

7 | Carbide's case-specific interrogatories regarding the bases for Plaintiffs' punitive damages

8 | claim rely upon various matters outside of the record of this case, refer to documents that

9 | are not produced in this case, and otherwise show no direct conduct towards Plaintiffs

10 | sufficient enough to support a claim for punitive damages based upon such conduct.

11 | [UMF No. 59.]

12 | In addition, the lack of any evidence of intentional conduct also establishes a

13 | separate ground for summary adjudication of Plaintiffs' punitive damages claim herein.

14 | All of the elements supporting a punitive claim—i.e., oppression, fraud and malice—

15 | incorporate the requirement that the improper conduct of the defendant be "intentional,"

16 | or "willful and conscious," or with "conscious disregard." Evidence of any of this kind of

17 | conduct does not exist in this case. In any event, ordinary negligence (i.e., mere

18 | carelessness or simple failure to exercise due care for a plaintiff's safety does not amount

19 | to "malice" or "oppression" or "fraud," and thus does not support an award of punitive

20 | damages. (*Bell v. Sharp Cabrillo Hospital* (1989) 212 Cal.App.3d 1034, 1044; *Flyer's Body Shop*

21 | *Profit Sharing Plan v. Ticor Title Insurance Co.* (1986) 185 Cal.App.3d 1149, 1155.)

22 | In addition, Plaintiffs have failed to satisfy the evidentiary requirements of Civil

23 | Code section 3294(b). In 1980, this section was amended to require as an element of proof

24 | for punitive damages that "the advance knowledge and conscious disregard, authorization,

25 | ratification or act of oppression, fraud, or malice must be on the part of an officer, director

26 | 

27 | contemptible." *(Ibid.)*

28 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1   or managing agent of the corporation." (*Id.*)  Plaintiffs have not alleged, and do not have

2   any evidence to show, that managerial agents at Union Carbide had knowledge of the

3   hazards of asbestos, or were those who exercised "substantial discretionary authority over

4   decisions that ultimately determined corporate policy."  (*Romo v. Ford Motor Corporation*

5   (1999) 99 Cal.App.4th 1115, 1140.)

6         For all of the above reasons, Plaintiffs' punitive damages claims against Union

7   Carbide must be summarily adjudicated.  (*Grieve v. Superior Court* (1984) 157 Cal.App.3d

8   159, 167-168; *Scannall v. County of Riverside* (1984) 152 Cal.App.3d 596, 614.)

9   **IV.    CONCLUSION**

10        Based on the foregoing, Defendant Union Carbide Corporation requests that this

11   Court grant the motion for summary judgment or, alternatively, summary adjudication as

12   to all causes of action, as well as the claim for punitive damages.

13

14   Dated: July 5, 2007                         BRYDON HUGO & PARKER

15

16                                       By:    _____

17                                              John R. Brydon
                                                Thomas J. Moses
18                                              Erin M. Carpenter
                                                Attorneys for Defendant
19                                              UNION CARBIDE CORPORATION

20                                              1102-0231

21

22

23

24

25

26

27                                     19

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION**

*Lyman, Robert F. & Samantha vs. Asbestos Defendants (B\*P), et al.*
San Francisco County Superior Court Case No. CGC-06-459162
**LexisNexis Transaction No, 15465916**

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. My electronic notification address is service@bhplaw.com and my business address is 135 Main Street, 20th Floor, San Francisco, California 94105. On the date below, I served the following:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

on the following:

David R. Donadio                          AND SEE LEXIS NEXIS SERVICE LIST
Brayton Purcell
222 Rush Landing Road
Novato, CA 94945

X        By transmitting electronically the document(s) listed above as set forth on the electronic service list on this date before 5:00 p.m.

I declare under penalty of perjury that the above is true and correct. Executed on July 5, 2007, at San Francisco, California.

                                     *Wanda D. Claudio*
                                     Wanda D. Claudio

1

1 | John R. Brydon [Bar No. 083365]
Thomas J. Moses [Bar No. 116002]
2 | Erin M. Carpenter [Bar No. 248337]
BRYDON HUGO & PARKER
3 | 135 Main Street, 20th Floor
San Francisco, CA 94105
4 | Telephone: (415) 808-0300
Facsimile: (415) 808-0333
5 |
Attorney for Defendant
6 | UNION CARBIDE CORPORATION

7

8 | SUPERIOR COURT - STATE OF CALIFORNIA

9 | COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10 | ROBERT F. LYMAN and SAMANTHA LYMAN,    (ASBESTOS)
Case No. 459162

11 |             Plaintiff(s),    SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

12 |     vs.

13 | ASBESTOS DEFENDANTS (B❖P), et al.,

14

15

16 | [Filed concurrently with Supporting Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities In Support of Motion; Declaration of Thomas J. Moses]

17

18 | Date:        July 27, 2007
Time:        9:30 A.M.
19 | Dept.:       302
Judge:       Hon. Patrick J. Mahoney
20

21 | Trial Date:   July 30, 2007

22

23

24 |        Defendant UNION CARBIDE CORPORATION ("Union Carbide") hereby submits

25 | the following Separate Statement of Undisputed Material Facts and Supporting Evidence in

26 | support of its Motion for Summary Judgment or in the alternative, Summary Adjudication,

27 | against Plaintiffs ROBERT F. LYMAN and SAMANTHA LYMAN (hereinafter "Plaintiffs").

                                        1

28

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

1

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

2

| UNDISPUTED MATERIAL FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. Plaintiffs' Complaint contains no case-specific allegations showing that Mr. Lyman was exposed to asbestos products manufactured by, or products containing asbestos supplied by, Union Carbide. | 1. Plaintiffs' Complaint for Personal Injury and Loss of Consortium, attached as **Exhibit A** to the Declaration of Thomas Moses ("Moses Decl."), *seriatim*. |
| 2. Plaintiffs' responses to Defendants' Standard Interrogatories do not make any specific allegations relative to Union Carbide, or specify any particular asbestos-containing products to which Mr. Lyman was allegedly exposed. | 2. Defendants' Standard Interrogatories to Plaintiffs' (Personal Injury and Loss of Consortium), Set Two, attached as **Exhibit B** to the Moses Decl.; Plaintiffs' Responses To Defendants' Standard Interrogatories, Set Two, attached as **Exhibit C** to the Moses Decl., at 1:21-8:2. |
| 3. Union Carbide served special interrogatories that required both Plaintiffs Robert F. Lyman and Samantha Lyman to disclose all facts and sources of evidence in support of their claims. | 3. Defendant Union Carbide Corporation's Special Interrogatories to Plaintiff Robert F. Lyman, Set One, attached to the Moses Decl. as **Exhibit D**, at 4:1-9:3, Special Interrogatories to Plaintiff Samantha Lyman, Set One, attached to the Moses Decl. as **Exhibit E**, at 4:1-9:3, Special Interrogatories to Plaintiff Robert F. Lyman, Set Two, attached to the Moses Decl. as **Exhibit F**, at 4:2-9:3, and Special Interrogatories to Plaintiff Samantha Lyman, Set Two, attached to the Moses Decl. as **Exhibit G**, at 4:2-9:3. |
| 4. In response, Plaintiffs claim Union Carbide is liable for Mr. Lyman's alleged exposure to "Montello drilling mud." | 4. Plaintiff Robert F. Lyman's Responses To Union Carbide's Special Interrogatories, Set Two, attached to the Moses Decl. as **Exhibit** |

2

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

| | |
|---|---|
| | H, at 2:1-10; Plaintiff Samantha Lyman's Responses To Union Carbide's Special Interrogatories, Set Two, attached to the Moses Decl. as **Exhibit I**, at 2:1-10 |
| 5. Montello, Inc. was Union Carbide's exclusive distributor of the company's asbestos drilling mud additive products from 1968 until 1985. | 5. Declaration of John Edward Walsh, dated June 21, 2007 Exhibit J, at ¶ 5. |
| 6. Through the years, Union Carbide/Monetllo sold a variety of asbestos additives under the brand names Visbestos, Super Visbestos, Oilbestos, Telvis and Univis. Union Carbide's products came in dry form, packaged in 50-pound bags with Montello's name on them. | 6. **Exhibit J**, at ¶¶ 7,8 |
| 7. Plaintiffs' interrogatory responses only identified "Montello drilling mud" as a product for which Union Carbide might be responsible. | 7. **Exhibit H**, at 2:1-10 and **Exhibit I**, at 2:1-10. |
| 8. Mr. Lyman indicated in discovery responses that he was employed by Cudd Pressure Control, Inc. as an oil field worker from 1981-1982. | 8. **Exhibit H**, 2:11-23. |
| 9. During his deposition, Mr. Lyman testified that while he worked for Cudd, his work consisted exclusively of transferring liquid nitrogen from a tanker truck into wells, forcing crude oil up. This was all Cudd did. | 9. Petinant portions of the discovery deposition testimony of Robert F. Lyman attached as **Exhibit K** to the Moses Decl., at 406:4-15. |
| 10. Mr. Lyman testified that the only time | 10. **Exhibit K**, 428:1-429:19. |

3

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1  he ever witnessed any type of drilling fluid
2  or mud in use while working for Cudd was
3  on one occasion when he observed a tanker
   marked "drilling fluid" deliver some form
4  of liquid to an oil field he was working at.
5
6  11.  Mr. Lyman testified that he did not          11.  Exhibit K, 429:16-19
   know whether drilling fluid in this context
7  was the same as drilling mud, or whether
8  the contents of the fluid in the tanker
   included asbestos, from Union Carbide or
9  any other source.
10
11 12. Mr. Lyman testified that he never saw         12. Exhibit K, 432:9-11, 432:17-433:3.
   anyone mixing dry additives, fluids or muds
12 near him while working for Cudd.
13
14 13.  Mr. Lyman's only other job in the oil        13.  Exhibit C, 6:14-7:15; Exhibit K, 464:16-
   and gas industry was as a chemical               17; 465;18-22.
15 technician and tanker truck driver for Baker
16 Hughes, from 1982-1986.
17
18 14.  Mr. Lyman testified that while               14.  Exhibit K, 469:23-470:17, 471:2-3.
   employed by Baker Hughes, he witnessed
19 dry ingredients being mixed with liquid
20 drilling mud in a revolving tanker truck,
   which was then pumped into a mud tank,
21 but that he was never closer then 40 to 50
22 feet when he saw this.
23 15.  Mr. Lyman did not know the                   15.  Exhibit K, 471:7-10; 482:16-483:18.
   manufacturers, suppliers, distributors or
24 brand names of the dry ingredients.
25
26 16. Mr. Lyman did not know the                    16.  Exhibit K, 493:11-14.
   composition of the materials which were
27
28
                                    4

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

1   being added to the mixing truck, and did
2   not state whether asbestos was one of those
3   materials.

4   17. During Mr. Lyman's deposition,          17.  Exhibit K, 527:4-530:1.
5   Montello's attorney idnetified every
6   asbestos product manufactured by Union
    Carbide and distributed by Montello and
7   asked Mr. Lyman whether he had ever been
8   exposed to any of them.

9   18. With one exception, "Shurlift," Mr.      18.  Exhibit K, 527:4-530:1.
10  Lyman stated that he did not recall being
11  exposed to any of the products.

12  19. Mr. Lyman testified that he was never    19.  Exhibit K, 527:21-529:3.
13  exposed to "Shurlift," as he neither handled
14  any "Shurlift," nor was around anyone who
15  handled it.

16  20. "Shurlift" was a product of IMCO         20. Pertinent portions of the deposition
17  Services, who supplied "Shurlift" drilling   testimony of James C. Floyd, attached as
18  muds to drilling mud contractors.            **Exhibit L** to the Moses Decl., at 53:16-54:8
                                                 and 153:8-25.

19  21. Union Carbide was *one* of the           21. Pertinent portions of the deposition
20  manufacturers of the product that was        testimony of John Edward Walsh, attached
21  repackaged and sold as "Shurlift."           as **Exhibit M** to the Moses Decl., at 66:23-
                                                 67:7.

22  22. Drilling Specialties, a major supplier and   22.  **Exhibit L**, 153:2-25.
23  distributor of the asbestos-containing mud
24  additive "Flosal," was also responsible for
    "Shurlift" products, as they repackaged
25  their "Flosal" product under the "Shurlift"
26  trade name for IMCO.

27  23. From 1972, until it stopped              23.  **Exhibit J**, at ¶ 10.

5

28

**SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION**

1  manufacturing asbestos additive products,
2  Union Carbide placed warnings on their
3  drilling mud additives that fully complied
   with all governmental standards.
4

5  24. Although not specifically alleged in       24. Pertinent portions of the videotaped
   Plaintiffs' responses to Union Carbide's       deposition testimony of Plaintiff Robert F.
6  special interrogatories, Mr. Lyman testified   Lyman, attached as **Exhibit N** to the Moses
7  in his deposition that he saw "bakelite"        Decl., at 22:23-23:8.
8  during his work in the oil fields over the
   years.
9

10 25. Union Carbide was a manufacturer of        25. Declaration of Carlo Martino, dated
11 epoxy resins and phenolic resins, which         November 17, 2006, attached as **Exhibit O** to
   were manufactured under the trade name         the Moses Decl., at ¶5.
12 "Bakelite."
13

14
15 26. Union Carbide also made phenolic           26. Exhibit O, at ¶6.
   molding compounds that were sold under
16 the trade name "Bakelite."

17 27. The epoxy resins and phenolic resins       27. **Exhibit O**, at ¶¶4 an 5.
18 *never* contained asbestos.

19 28. Union Carbide's phenolic molding           28. **Exhibit O**, at ¶¶5, 6.
20 compounds were sold in a granular form to
   manufacturers, who then used the molding
21 compounds to make finished molded plastic
22 products.
23
24 29. Until approximately 1974, some, but *not*   29. **Exhibit O**, at ¶6.
   all, of these phenolic molding compounds
25 contained asbestos fibers as filler.

26 30. However, many of Union Carbide's           30. **Exhibit O**, at ¶6.
27 phenolic molding compounds did not

28

6

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
Ian Francisco, CA 94105

1  contain asbestos, but instead used other
2  fillers such as wood flour, cotton flock, mica,
3  coal, or talc.

4  31. While the phenolic resins were sold by        31. Exhibit O, at ¶7.
5  Union Carbide to many different companies,
6  who used them to make finished plastic
7  products that were then sold to end-users,
8  Union Carbide never itself manufactured
   finished products from its phenolic resins.

9  32. Many other companies manufactured            32. Exhibit O, at ¶8.
10 phenolic molding compounds similar to
11 those made by Union Carbide, including, for
12 example, Durez, Plastic Engineering Co.
13 (hereinafter, "Plenco"), General Electric,
   Westinghouse, and Reichold.

14 33. "Bakelite" is a generic term used to          33. Affidavit of John Moalli, dated
15 describe a type of plastic the identification of   November 15, 2006, attached as Exhibit P to
16 which does not specifically relate to a Union      the Moses Decl., at ¶4-17.
   Carbide product.

17
18 34. While "Bakelite" was at one time a             34. Exhibit N, at ¶¶ 9, 10 and 11; Exhibit P,
19 registered trade name of Union Carbide, the        at ¶¶ 1-3,5-10,13 and 14.
20 term had, well before Plaintiffs' alleged
21 exposure, become a generic name for a wide
22 range of plastic products, specifically
   including those made from phenolic resins
   and phenolic molding compounds.

23 35. Even long after Union Carbide stopped         35. Exhibit P, at ¶ 10.
24 manufacturing phenolic resins and phenolic
25 molding compounds, suppliers and
26 purchasers still refer to plastic materials
   generically as "bakelite."

27
28
                                    7

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT
UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE
ALTERNATIVE, SUMMARY ADJUDICATION

36. In Mr. Lyman's videotaped direct deposition, Mr. Lyman stated the only place he saw "bakelite" was in the oil fields in a plastic form.

36. Exhibit N, at 22:23-23:8.

37. Mr. Lyman testified in his discovery deposition that he did not recall what the "bakelite" looked like, nor where it was that he saw it.

37. Exhibit K, at 542:4-9.

38. Mr. Lyman testified that he believed he saw "bakelite" "maybe back in the '70s," while he was "probably [at] Baker."

38. Exhibit K, at 542:14-18.

39. Mr. Lyman testified that he did not recall any specific job site at which he may have seen "bakelite."

39. Exhibit K, at 542:22-25.

40. Mr. Lyman did not state that any "bakelite" he used was manufactured by Union Carbide; he believed that the "bakelite" he used was "manufactured by Bakelite."

40. Exhibit K, at 543:1-8.

41. Mr. Lyman testified that he saw the name "bakelite" on the packaging, but could not recall what the name looked like.

41. Exhibit K, at 544:10-14.

42. At his deposition, Mr. Lyman testified:
    Q: Do you recall what exactly you did when you worked with that product?
    A: No.
    Q: Do you recall whether you had to mix, cut, sand, abrade, apply any of that?
    A: I have no idea what I did with it.
    Q: Okay. Do you know whether any of that product contained asbestos?
    A: No.

42. Exhibit K, at 544:15-23.

8

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

43. Plaintiffs' discovery responses or deposition testimony do not state any facts from which the Court may infer that Union Carbide supplied any "bakelite" to which Mr. Lyman was allegedly exposed, or that any such material actually contained asbestos.

43. Exhibit H, at 2:1-5:23; Exhibit I, at 2:1-5:23; Exhibit K, at 544:21-23.

44. Although not specifically alleged in their responses to Union Carbide's special interrogatories, Plaintiffs may also claim that Union Carbide-supplied asbestos was contained in "USG products" to which Mr. Lyman may have been exposed.

44. Exhibit A, at 4:10-12.

45. Mr. Lyman stated in his deposition testimony that he worked with or around U.S.G. products once in the U.S. Marine Corps, and then again when he was a foreman at the U.S. Gypsum plant in Charlestown, Massachusetts.

45. Exhibit K, at 160:22-161:6 and 343:13-344:7.

46. Plaintiffs failed to identify the brand name or manufacturers of any of these allegedly asbestos-containing products, whether USG's or otherwise.

46. Exhibit H, at 2:1-10 and Exhibit I, at 2:1-10.

47. Union Carbide mined and milled short-fiber, chrysotile asbestos under the trade name "Calidria" from approximately 1963 to 1985.

47. Declaration of John L. Myers, dated March 25, 2003, attached as Exhibit Q Declaration of Thomas J. Moses ("Moses Decl."), at ¶5.

48. Union Carbide's asbestos mine was located near King City, California, and was the only asbestos mine ever operated by Union Carbide.

48. Exhibit Q, at ¶5.

9

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

| | |
|---|---|
| 49. Union Carbide never sold "Calidria" to individual consumers, but only to third party manufacturers who used it at certain times in products that were utilized in various commercial applications. | 49. Exhibit Q, at ¶5. |
| 50. Union Carbide did not begin to supply asbestos at all until 1963, and then in a limited fashion. | 50. Exhibit Q, at ¶5. |
| 51. Union Carbide did not sell asbestos fibers to U.S. Gypsum for tape joint compound before the year 1968. | 51. Exhibit Q, at ¶7. |
| 52. In contrast to Plaintiffs' complaint, Plaintiffs' responses to interrogatories do not state that Mr. Lyman was exposed to asbestos at the U.S. Gypsum facility in Charlestown, Massachusetts, and in any event fail to identify any specific products or materials for which Union Carbide might be liable. | 52. Exhibit A, at 4:11-13, Exhibit H, at 2:1-10 and Exhibit I, at 2:1-10. |
| 53. Mr. Lyman testified that he never mixed the mud for the drywall himself. | 53. Exhibit K, at 345:14-15. |
| 54. Mr. Lyman testified that he did not know what ingredients were used in the wallboard mud. | 54. Exhibit K, at 345:18-25. |
| 55. Mr. Lyman testified that he did not recall what other products were being manufactured at the USG plant. | 55. Exhibit K, at 344:15-18. |
| 56. USG had at least ten different asbestos suppliers for its asbestos-containing | 56. Declaration of Howard J. Bowman, dated March 27, 2003 Exhibit R, at ¶¶10, 11; |

10

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1  products.

57. In their responses to Union Carbide's case-specific interrogatories regarding the bases for Plaintiffs' false representation, Plaintiffs admit they do not have any specific evidence to support a claim of false representation.

58. Plaintiffs' discovery responses make clear that Plaintiffs have no facts showing that Union Carbide ever verbally communicated with or made any oral representations to Mr. Lyman at all.

59. Plaintiffs' responses to Union Carbide's case-specific interrogatories regarding the bases for Plaintiffs' punitive damages claim rely upon various matters outside of the record of this case, refer to documents that are not produced in this case, and show no direct conduct towards Plaintiffs sufficient enough to support a claim for punitive damages based upon such conduct.

relevant portions of U.S. Gypsum's General Order 129 Discovery Responses, attached as **Exhibit S**, to the Moses Decl. at 23:8-25:14.

57.  **Exhibit F**, at 8:17-9:3; **Exhibit G**, at 8:17-9:3; **Exhibit H**, at 12:20-13:14, **Exhibit I**, at 12:20-13:14.

58.  **Exhibit F**, at 8:17-9:3; **Exhibit G**, at 8:17-9:3; **Exhibit H**, at 12:20-13:14, **Exhibit I**, at 12:20-13:14.

59.  **Exhibit F**, at 8:6-16; **Exhibit G**, at 8:6-16; **Exhibit H**, at 10:16-13:14, **Exhibit I**, at 10:16-13:14.

## SEPARATE STATEMENT IN SUPPORT OF UNION CARBIDE'S MOTION FOR SUMMARY ADJUDICATION

### Adjudication Issue No. 1:

Plaintiffs' First Cause of Action for Negligence has no merit, because there is no evidence that Union Carbide caused Mr. Lyman's asbestos-related injuries, or that Mr. Lyman was exposed to any products manufactured, supplied, or distributed by Union Carbide that contained asbestos.

11

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

| **UNDISPUTED MATERIAL FACTS** | **EVIDENTIARY SUPPORT** |
|---|---|
| Union Carbide incorporates herein the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. | Union Carbide incorporates herein the evidence supporting the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. |

<u>Adjudication Issue No. 2:</u>

    Plaintiffs' Second Cause of Action for Strict Products Liability has no merit, because there is no evidence that Union Carbide caused Mr. Lyman's asbestos-related injuries, or that Mr. Lyman was exposed to any products manufactured, supplied, or distributed by Union Carbide that contained asbestos.

| **UNDISPUTED MATERIAL FACTS** | **EVIDENTIARY SUPPORT** |
|---|---|
| Union Carbide incorporates herein the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. | Union Carbide incorporates herein the evidence supporting the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. |

<u>Adjudication Issue No. 3:</u>

    Plaintiffs' Third Cause of Action for False Representation has no merit, because there is no evidence that Union Carbide caused Mr. Lyman's asbestos-related injuries, or that Mr. Lyman was exposed to any products manufactured, supplied, or distributed by Union Carbide that contained asbestos, additionally, there is no evidence that Union Carbide made any representations to Mr. Lyman, or owed Mr. Lyman any duty to affirmatively disclose information, or that there is no proof that Mr. Lyman was a consumer of a product for which Union Carbide is liable.

| **UNDISPUTED MATERIAL FACTS** | **EVIDENTIARY SUPPORT** |
|---|---|
| Union Carbide incorporates herein the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated | Union Carbide incorporates herein the evidence supporting the above-stated Undisputed Material Facts Nos. 1 to 58, |

12

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

| | |
|---|---|
1 | in full. | inclusive, as though restated in full.
2 |
3 | Adjudication Issue No. 4:
4 | Plaintiffs' Forth Cause of Action for Loss of Consortium has no merit, because there
5 | is no evidence that Union Carbide caused Mr. Lyman's asbestos-related injuries, or that
6 | Mr. Lyman was exposed to any products manufactured, supplied, or distributed by Union
7 | Carbide that contained asbestos, and because the underlying causes of action from which
8 | it derives have no merit.

| | UNDISPUTED MATERIAL FACTS | EVIDENTIARY SUPPORT |
|---|---|---|
| | Union Carbide incorporates herein the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. | Union Carbide incorporates herein the evidence supporting the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. |

13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///

13

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

Adjudication Issue No. 5:

Plaintiffs' Claim for Punitive Damages has no merit, because there is no evidence that Union Carbide caused Mr. Lyman's asbestos-related injuries or that Mr. Lyman was exposed to any products manufactured, supplied, or distributed by Union Carbide that contained asbestos or to any asbestos supplied by Union Carbide placed into products manufactured by others, or that there is any "clear and convincing evidence" that any of the conduct at issue concerning Union Carbide herein constitutes "malice," "oppression," or "fraud," or "despicable conduct," which is necessary to support such a claim.

| UNDISPUTED MATERIAL FACTS | EVIDENTIARY SUPPORT |
|---|---|
| Union Carbide incorporates herein the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. | Union Carbide incorporates herein the evidence supporting the above-stated Undisputed Material Facts Nos. 1 to 58, inclusive, as though restated in full. |

DATED: July 5, 2007

BRYDON HUGO & PARKER

By: _____
John R. Brydon
Thomas J. Moses
Erin M. Carpenter
Attorneys for Defendant
UNION CARBIDE CORPORATION

1102-0231

14

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

*Lyman, Robert F. & Samantha vs. Asbestos Defendants (B*P), et al.*
San Francisco County Superior Court Case No. CGC-06-459162
**LexisNexis Transaction No. 15465916**

### PROOF OF SERVICE

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. My electronic notification address is service@bhplaw.com and my business address is 135 Main Street, 20th Floor, San Francisco, California 94105. On the date below, I served the following:

SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT UNION CARBIDE CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

on the following:

David R. Donadio                                    AND SEE LEXIS NEXIS SERVICE LIST
Brayton Purcell
222 Rush Landing Road
Novato, CA 94945

X          By transmitting electronically the document(s) listed above as set forth on the electronic service list on this date before 5:00 p.m.

I declare under penalty of perjury that the above is true and correct. Executed on July 5, 2007, at San Francisco, California.

*Wanda D. Claudio*
Wanda D. Claudio

1