# EXHIBIT H

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
2   GARY V. JUDD, ESQ., S.B. #127622
    BRAYTON❖PURCELL LLP
3   Attorneys at Law
    222 Rush Landing Road
4   P.O. Box 6169
    Novato, California  94948-6169
5   (415) 898-1555

6   Attorneys for Plaintiffs

7

8            SUPERIOR COURT OF CALIFORNIA

9               COUNTY OF SAN FRANCISCO

10

11  ROBERT F. LYMAN and            )   ASBESTOS
    SAMANTHA LYMAN,                )   No. 459162
12                                 )
              Plaintiffs,          )   DECLARATION OF ROBERT F. LYMAN
13                                 )   IN SUPPORT OF PLAINTIFF'S
    vs.                            )   OPPOSITION TO DEFENDANT UNION
14                                 )   CARBIDE CORPORATION'S MOTION
    ASBESTOS DEFENDANTS (B❖P)      )   FOR SUMMARY JUDGMENT, OR IN
15  ─────────────────────────────      THE ALTERNATIVE, SUMMARY
                                       ADJUDICATION
16

17                                 Date:   July 27, 2007
                                   Time:.  9:30 a.m.
18                                 Dept:   302, Hon. Patrick J. Mahoney
                                   Trial Date: July 30, 2007
19                                 Action Filed: December 29, 2006

20      I, Robert F. Lyman, declare:

21      1. I am the plaintiff in this action.  I have personal knowledge of the facts set forth in

22  this declaration, and if called as a witness, I could and would competently testify as to the truth

23  of the matters set forth herein.

24      2. From approximately 1981 through 1986, I worked as an oil field worker treating oil

25  wells in oil fields throughout Southern California.  Along with others in a crew, I performed

26  drilling and worked with and around muds and packing.

27      3. At my deposition I stated, and reaffirm here, that during this time period while

28  employed in the oil fields I worked around products bearing the Montello logo.

DECLARATION OF ROBERT F. LYMAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

EXHIBIT A

1    4. At the time of my deposition I could not recall which products I had seen the

2  Montello logo on but did recall that it was on paper sacks.   After my deposition my attorneys

3  provided me 15 photos to review as part of the preparation of responses to Defendant.

4  Montello's  written discovery.  Upon reviewing the photos, my recollection was refreshed as to

5  particular Montello brand products.  The three photos which refreshed my memory, are attached

6  to this declaration.  The drilling mud products I most clearly recall,  having had my memory

7  refreshed by the photographs, is asbestos containing Super Visbestos and Univis throughout the

8  years I worked in the oil fields.

9    5.  The sacks were filled with a dry powdery substance, that they mixed with fluids.  I

10  worked in close proximity to workers who opened these sacks emptied the contents and threw

11  the empty sacks aside.  This process created large amounts of visible dust which I breathed and

12  landed on my clothes.

13    6. I did not  generally have breathing protection when I worked around these drilli

14  materials.  On occasion I wore a paper dust mask, but  I did not receive any instruction as

15  when to wear it, and I generally only put it on if crude oil was spraying out of a hole.  On

16  occasions I wore a heavy rubber mask with a filter. This was limited to work around volai

17  chemicals. I could not wear it on a regular basis because it obstructed my vision and put m

18  danger of falling into a well.

19    I declare under penalty of perjury under the laws of the State of California that the

20  foregoing is true and correct, as to my own personal knowledge.

21    Executed on _____, 2007, in _____.

22

23                                                    _____

24                                                    Robert F. Lyman

25

26

27

28

DECLARATION OF ROBERT F. LYMAN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT UNION CARBIDE
CORPORATION'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION



50 POUNDS NET (22.68 KILOGRAMS)

# montello

## Super Visbestos®

UNIVERSAL VISCOSIFIER FOR
ALL AQUEOUS DRILLING FLUIDS

CAUTION
Contains Asbestos Fibers
Avoid Creating Dust
Breathing Asbestos Dust May Cause
Serious Bodily Harm

Manufactured by

UNION
CARBIDE

Distributed by

montello
Tulsa, Oklahoma

super

super

super

Made in U.S.A.

montello
Asbestos
ORM-C
ST Regis BAG CODE 8026-A
EXTENSIBLE PAPER
FREIGHT SHIPPING BAG
Meeting requirements of
APPLICABLE FREIGHT CLASSIFICATION
Guaranteed by ST. REGIS PAPER CO.
LAUC 688-A 4-200 EXT 5-82

# Univis®
# Montello
## Asbestos   ORM-C

# EXHIBIT I

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

BEFORE THE HONORABLE PATRICK J. MAHONEY, JUDGE PRESIDING

DEPARTMENT NUMBER 302

---oOo---

ROBERT F. LYMAN, et al.,           )
                                   )
          Plaintiffs,              )    Case No. CGC-06-459162
                                   )    Motion for Summary
vs.                                )    Judgment
                                   )
                                   )    Pages 1 - 22
ASBESTOS DEFENDANTS,               )
                                   )
          Defendants.              )
_____    )


Reporter's Transcript of Proceedings

Friday, July 27, 2007

APPEARANCES OF COUNSEL:

For Plaintiffs:

        Brayton Purcell, LLP
        222 Rush Landing Road
        Novato, California  94945
        By:  Andrew Chew,
             ATTORNEY AT LAW


For Defendant Union Carbide Corporation:

        Brydon Hugo & Parker
        135 Main Street, 20th Floor
        San Francisco, California 94105
        By:  Brian H. Buddell,
             ATTORNEY AT LAW

             Erin M. Carpenter,
             ATTORNEY AT LAW


Reported by:  Kathy Kollehner, CSR No. 4102, RPR, CRR

2

1  FRIDAY, JULY 27, 2007                    10:36 A.M.

2                       ---oOo---

3      THE COURT:  Okay.  So, let's do Lyman vs. Asbestos

4  Defendants, which is 06-459162.  That's line 9.

5      MR. CHEW:  Good morning, Your Honor, Andrew Chew for

6  plaintiff.

7      MR. BUDDELL:  Good morning again, Your Honor.  Brian Buddell

8  for Union Carbide Corporation.

9      MR. CARPENTER:  Good morning, Your Honor.  Erin Carpenter on

10  behalf of Union Carbide Corporation.

11      THE COURT:  Okay.  Whoever wants to go first.

12      MR. BUDDELL:  Well, Your Honor, to begin with, I wanted to

13  clarify the tentative ruling because the -- I think I know where

14  the Court was going, but I wanted to clarify a couple of things.

15      First of all, with respect to the second part of the Court's

16  tentative ruling with respect to the motion for summary

17  adjudication, we have not received any notice that that was

18  being contested.  I just confirmed that with my office

19  approximately an hour ago.  So, I'm assuming that that matter,

20  subject to any revisions changing your mind on the summary

21  judgment --

22      THE COURT:  Mr. Buddell, you're both here.  Let's get to the

23  merits of this, okay?

24      MR. BUDDELL:  Fair enough.

25    With respect to the motion for summary judgment, if I

26  understand the Court's ruling, did the Court find that we

27  shifted our burden, but then that burden was met by the

28  plaintiff through the submission of the declaration of

                                                        3


1   Mr. Lyman, the Walsh declaration, pages -- excuse me --

2   paragraphs seven and eight, and Ken Cohen's declaration and

3   deposition testimony?

4        THE COURT:  Yes.

5        MR. BUDDELL:  Okay.  Obviously, I have no problem with the

6   consideration of the Walsh declaration.  We submitted that

7   ourselves.  But we did raise some objections with respect to the

8   Lyman deposition that I'd like the Court to rule on so I can

9   focus my efforts here.

10       The first, Your Honor, was that the declaration that was

11  submitted.was unsigned by Mr. Lyman.

12       MR. CHEW:  Your Honor, we have a signed declaration.  And I

13  believe we submitted it to the Court earlier.

14       THE COURT:  That was my recollection.

15       MR. BUDDELL:  It certainly wasn't submitted with the moving

16  papers -- or the opposition papers.

17       THE COURT:  Okay.  That objection is overruled, in light of

18  the fact that it's executed.

19       Next?

20       MR. BUDDELL:  Okay.  The next is with respect to Mr. Cohen's

21  declaration.  And that objection was made on the grounds that,

22  one, Mr. Cohen has not been properly designated as an expert in

23  this case.

24    THE COURT:  I'm not aware of the rule that somebody has to

25 be designated as an expert to file an opposition in a motion for

26 summary judgment or summary adjudication.  But if there is one,

27 you can point it out to me.

28    MR. BUDDELL:  Well, I would simply rely on an issue of

4

1 fairness, Your Honor, that the Local Rules are quite clear --

2    THE COURT:  Look.  I don't write the rules on summary

3 judgment.  I'll just say if there's a rule on that that I'm

4 unaware of, you can point it out to me.  I'm not aware of that

5 rule.  It's not a bad idea.  But the objection on that ground is

6 overruled.

7    MR. BUDDELL:  All right.  The next is with respect to

8 Mr. Cohen's declaration lacking foundation, Your Honor.  And on

9 that grounds, Mr. Cohen does not have personal information based

10 on what he's testifying about.

11    In fact, if you look at the text of his declaration, he

12 makes several references to a Francis Lyman, who -- I don't know

13 who that is, but it's certainly not anybody in this case.

14 Specifically, his declaration, which goes to the crux of the

15 matter, states that Mr. Francis F. Lyman would have been exposed

16 to asbestos.

17    Obviously, the Court is constrained by the evidence

18 presented before it.  And if it's to read Mr. Cohen's

19 declaration as it's written, it provides no foundation to

20 support this ruling.

21    THE COURT:  Okay.  Let me find it.

22    MR. BUDDELL:  I might be able to help Your Honor.

23    MR. CHEW:  It's Exhibit D to plaintiff's motion -- or

24  opposition, Your Honor.

25    THE COURT:  I've got so many papers from the defendant, that

26  I can't get to the plaintiff's.

27    Okay.  Here we go.

28    MR. BUDDELL:  And if you go to paragraph nine of that

5

1   declaration, Your Honor, you can see what I'm talking about.

2     THE COURT:  Okay.  I see what you're saying.

3     MR. BUDDELL:  It says that the sacks -- about midway through

4   the paragraph -- the sacks was filled with a dry substance that

5   his coworkers mixed with fluids.  Francis F. Lyman worked in

6   close proximity to workers who opened these sacks, emptied these

7   contents and threw the empty sacks aside.

8     MR. CHEW:  If I may, Your Honor?

9     THE COURT:  Yes.

10    MR. CHEW:  It's Robert F. Lyman.  "F" stands for Francis.

11  And I certainly acknowledge that it says Francis F. Lyman, but I

12  believe that's what Mr. Cohen was alluding to.

13    And if I could refer the Court back to paragraph 12 of

14  Mr. Cohen's dec. on page 6, the final conclusion is with regards

15  to Robert F. Lyman, Your Honor.

16    MR. BUDDELL:  Well, that may be the case, Your Honor.  But

17  as the Court ruled in a case just previous this morning, without

18  the foundation, Mr. Cohen's conclusory opinions or worthless.

19    And Mr. Cohen, again in paragraph 11, states that this

20  Francis F. Lyman, mystery man, was the one in proximity to

21  workers who opened these sacks.  Now, certainly we can speculate

22  all day as to what Mr. Cohen meant or should have written or did

23  or didn't.  But what record is before this Court is that

24  Mr. Cohen has stated under penalty of perjury that he believes,

25  reading the materials presented to him, that a Francis F. Lyman

26  was the one exposed to the subject materials and suffered the

27  exposure therefrom.

28      They can't now come in and say, "Well, what he really meant

                                                                    6


1  to say was this."

2      MR. CHEW:  Your Honor, if I may, I don't think it's -- that

3  Mr. Buddell is trying to represent as if we're trying to somehow

4  state that Mr. Cohen was alluding to two different individuals.

5      Francis Lyman is Robert Lyman, Your Honor.  It's the same

6  individual.

7      THE COURT:  Well, right.  How do I know that from the

8  record?  I mean, how do I know, for example, that Robert F., the

9  "F" really does stand for Francis?  I'm not saying I don't

10  believe you, but I don't really know what to do with this

11  problem.

12      MR. CHEW:  Well, Your Honor, as I alluded to earlier, I

13  believe the actual general -- the final conclusion in paragraph

14  12 refers to Robert Lyman, Your Honor, after reviewing all the

15  testimony, the deposition testimony, the declaration of

16  Mr. Lyman, dated, referred to, specified.

17      THE COURT:  Okay.  Mr. Buddell, what else?

18      MR. BUDDELL:  Okay.  On a more substantive matter,

19    Your Honor, I think the Court's primary focus was on Mr. Lyman's

20    declaration.

21        And in that regard, I think the Court improperly considered

22    this declaration in light of the holding in the D'Amico,

23    D-'A-m-i-c-o, case, which specifically bars the consideration of

24    contradictory declarations -- or declarations which contradict

25    deposition testimony.

26        Now, in their brief, plaintiffs try to state, erroneously

27    so, that the subsequent cases, namely, the Scalf case and the

28    Benavidez case, have since come down and have undermined the

7

1    D'Amico holding, such that the declarations can be submitted.

2        That's simply not the case.  The Scalf case, which is the

3    most recent case -- it's a 2005 case -- at page 1521 and 1522,

4    specifically states that, "Properly applied, D'Amico is limited

5    to instances where credible discovery admissions are

6    contradicted only by self-serving declarations of a party."

7        It then goes on to summarize it and say, "In a nutshell, the

8    rule bars a party opposing summary judgment from filing a

9    declaration that purports to impeach his or her own prior sworn

10    testimony."  And that's exactly what has happened here.

11        Likewise, the Benavidez case dealt with the same issue.

12    What it did was state that, sure, there are some instances where

13    you have to look at the totality, but that doesn't change the

14    fact.  If somebody says X at deposition, and they later say Y in

15    a declaration, the Court can't consider that for purposes of

16    motion for summary judgment opposition.

17        In fact, the Benavidez court actually dealt with the two

18  other cases cited by plaintiff and threw them out --

19  distinguished them.  Those cases were the Price case, which the

20  Benavidez Court said, "Look, that doesn't apply because in that

21  situation, you've got an individual who made an admission at

22  declaration as to a legal term that they probably didn't know

23  what they were talking about."  Specifically, it related to the

24  term of assignment as it pertained to a real estate transaction,

25  and this was a layperson.  And there, the Price Court says,

26  "Look, you can't hold a layperson to a strict legal

27  interpretation of a strict legal term, absent some showing that

28  they know what they were talking about."

                                                              8

1      It also distinguished the Niederer case, which involves

2  another misunderstanding of a legal term.  But the bottom line

3  is both the Benavidez case, which is a 1999 case, and the Scalf

4  case absolutely support D'Amico to the point that it precludes

5  the declaration.

6      Now, in plaintiff's Ps and As, they absolutely misstate the

7  holding of Scalf at one point.

8      THE COURT:  Mr. Buddell, look.  I know what the holdings

9  are, right?  Let's look at the actual language, because that's

10  what's --

11      MR. BUDDELL:  When you say the "language," Your Honor, are

12  you talking about the testimony?

13      THE COURT:  Mr. Lyman, yes.

14      MR. BUDDELL:  Okay.  So, if we're going to do that, I guess

15  what we need to look at is:  Does it really contradict?  And it

16  absolutely does.  If you look at --

17      THE COURT:  Where is it?  That's what I'm trying to find.

18      MR. BUDDELL:  Okay.  If you look at plaintiff's

19  declaration --

20      THE COURT:  No.  I've got the declaration.

21      MR. BUDDELL:  Okay.  Go to Exhibit J -- no, I take that

22  back -- K of our declaration, specifically, on --

23      THE COURT:  Just wait a minute.  Okay.  Which page, 529?

24      MR. BUDDELL:  Yes.  Actually -- it's throughout that block

25  of pages, Your Honor.

26      THE COURT:  Okay.

27      MR. BUDDELL:  But if you look at paragraph 4 of his

28  declaration, Mr. Lyman states, "At the time of my deposition, I

                                                              9


1  could not recall which products I had seen the Montello logo on,

2  but did recall it was on paper sacks."  Okay?

3      THE COURT:  Uh-huh.

4      MR. BUDDELL:  The first part of that is dealt with beginning

5  at page 529, line 10.

6          "Q.  Have you ever worked or around any product that was

7          distributed by a company called Montello, Inc.?

8          "A.  Yeah.  Montello.  Again, I don't remember what it

9          was, but I've seen the logo, and I believe it was in the oil

10         fields."

11     THE COURT:  Okay.

12     MR. BUDDELL:  Here's the important part.

13         "Q.  Can you tell me what kind of container you saw the

14         logo on?

15          "A.  No.  Again, this is 40 years ago."

16      He denies -- this absolutely contradicts his assertion in

17  the declaration that he said at his deposition that it was on

18  paper sacks.  He didn't say that at all.  He denied knowing what

19  kind of container at all.  But it doesn't stop there.

20      Moving on.  Question -- and this is at line -- actually, let

21  me stop there.

22      If we go to paragraph five of the declaration, Mr. Lyman

23  states, "The sacks were filled with a dry powdery substance that

24  they mixed with fluids."  However, this directly contradicts his

25  deposition testimony at page 529, lines 20 and 22, where he's

26  asked,

27          "Q.  Can you tell me what material was in any container

28      that had that logo on it?

                                                                10


1           "A.  No.  I don't recall."

2       Then we go on further --

3       THE COURT:  Well, but you're ignoring the statement in

4   paragraph four about his recollection being refreshed as to the

5   subject.

6       MR. BUDDELL:  I understand that, Your Honor.  But that

7   doesn't change the fact that this is a direct contradiction.

8   And under the holding in --

9       THE COURT:  No, it's not.  It's not.

10      MR. BUDDELL:  It certainly is, Your Honor.

11      THE COURT:  You and I, I suppose we could argue about this

12  day and night.  But my ruling at this point is the only one that

13    counts.  And, you know, maybe some wiser folks will agree with

14    you.  But what I'm telling you is paragraph five does not

15    contradict the testimony, because based on paragraph four, the

16    witness has had his recollection refreshed.

17        Now, one can challenge the credibility of that, all right?

18    But that's not what this forum is about.  So, I don't find that

19    five is inconsistent with the testimony, based on the testimony,

20    the declaration in paragraph four, because there's absolutely

21    nothing wrong with a witness having their recollection

22    refreshed.

23        MR. BUDDELL:  Well, if that were the case, Your Honor, the

24    D'Amico rule would never stand because a witness could always

25    have it refreshed by something, and then it would fall.  And

26    that's certainly not what the Scalf --

27        THE COURT:  Look.  I wouldn't mind frankly if D'Amico was

28    interpreted as broadly as you'd like it to be interpreted, all

                                                        11


1    right?  And I'm sure that a lot of my colleagues around here

2    would like that, as well, okay?  I just don't think that D'Amico

3    is as sweeping as you would like it to be, all right?  I just --

4    I just don't.  What else can I say?

5        MR. BUDDELL:  Well, Your Honor, there is one other issue.

6    And I've saved this for last because this is, I think, the

7    silver bullet for this case.

8        THE COURT:  I wish we'd start with the silver bullets first.

9    But go ahead.

10        MR. BUDDELL:  If you turn to the deposition testimonies also

11    submitted as part of Exhibit K, at page 543, you're going to see

12  that the submission of this declaration directly violates a

13  stipulation by Mr. Vaillancourt of the Brayton office,

14  specifically, beginning at line 12, Mr. Vaillancourt, dealing

15  with the problems that he's being faced with at deposition

16  because of all these I don't recall questions -- or excuse me --

17  answers being made by his client, stipulates that to the extent

18  his client has not heard the name or remembered the name of a

19  products or service company, he's not going to have any of the

20  information relating to it or associating that product with any

21  knowledge.

22      That's gone through clearly there to the bottom of the page,

23  and at the very bottom line, Mr. Vaillancourt says, "Stipulate."

24  Based on that stipulation, no further questions were asked, and

25  no further workup of these issues were made.

26      Now, the Brayton office --

27      THE COURT:  Just relax for a minute, all right?

28      Okay.  So, at the time his deposition is taken, which is on

                                                                12


1  April 26th of 2007, there's a stipulation on the record that if

2  Mr. Lyman has not heard the name -- now, he has testified he's

3  heard the name "Montello," or whatever it is; he has testified

4  to that -- or remembered the name of a product or a service,

5  he's not going to have any information related to that.  Okay?

6      So, then on a date subsequent thereto, he is provided 15

7  photographs to review, and his testimony is his recollection was

8  refreshed as to particular Montello brand products.  Okay.  So,

9  that's the state of the record.

10    MR. BUDDELL:  The only thing I would add, Your Honor, is

11 it's not just companies that he recalled to.  When

12 Mr. Vaillancourt adopts the statement by Mr. Twu, T-w-u, at

13 lines 19 through 21, he also incorporates those products that he

14 doesn't recall working with or around, not just those that he

15 recalls, which certainly --

16    THE COURT:  Wait a minute.

17    MR. BUDDELL:  -- encompasses Super Visbestos and Visbestos,

18 which are the products --

19                    (Reporter seeks clarification.)

20    THE COURT:  Okay.  You've got too many ifs, ands or buts in

21 the ...

22    Okay.  So, with respect to Super Visbestos, he testified --

23        "Q.  Have you ever worked with or around the product?"

24    He responds,

25        "A.  What is it?"

26    And the name of the product is given.  And he says, "Not

27 that I recall."  Okay?

28    As to the other product, did he ever work with or around the

                                                      13


1 product called Univis, U-n-i-v-i-s, his answer was no.  Okay.

2 So, we've got two different answers to two different questions.

3    And then he's asked, "Have you ever worked or around any

4 product that was distributed by a company called Montello, Inc.,

5 or a company that was -- any product that was distributed by a

6 company?"

7    His answer, "Yeah.  Montello.  And I don't remember what it

8 was, but I've seen the logo, and I believe it was in the oil

9  fields." Okay.

10      So, then we turn to the attached photographs, okay? And the

11  attached photographs that he reviewed all have the name of

12  Montello on them. Of course, they also have the name Super

13  Visbestos as to one, and let's see what the other one is.

14      (Reviewing)

15      Okay. All right. So, I don't find that the silver bullet

16  necessarily kills the plaintiff because it seems to me that

17  the -- there's nothing wrong with a witness being shown

18  photographs and having his recollection refreshed. It may well

19  go to his credibility, but that's not what we're talking about

20  here, okay?

21      And I don't find that he unequivocally -- in fact, he did

22  say he wasn't sure about Super Visbestos, but he definitely

23  recalled Montello. So, if you looked at the photographs, it saw

24  a big Montello on it. Okay?

25      MR. BUDDELL: Well, and I agree with that, Your Honor, if we

26  were talking about any other Montello product, which

27  theoretically may or may not contain asbestos.

28      But the fact of the matter is that the two Montello products

                                                                    14

1  at issue in this case are Super Visbestos and Univis, and he did

2  deny knowledge of those -- well, Univis, he absolutely denied

3  unequivocally working with them.

4      THE COURT: All right.

5      MR. BUDDELL: And with Super Visbestos, he denied even

6  knowing what it is, which falls directly within the stipulation

7  made by Mr. Vaillancourt at the deposition.  Either the

8  stipulation means something, or it doesn't.

9      THE COURT:  How do you get that?

10     MR. BUDDELL:  Well, Your Honor -- as -- granted, the

11 record -- it would have been nice if the record was a little bit

12 clear and counsel weren't talking over each other here.

13     But ultimately Mr. Vaillancourt adopted the statements by

14 Mr. Twu, when he states that the scope of the stipulation

15 includes --

16     THE COURT:  Look, look.  What you don't want to read -- you

17 could say it's not clear.  But at the very first words out of

18 counsel's mouth is, "If Mr. Lyman has not heard the name."  All

19 right?

20     He has heard the name Montello.  He has testified that he

21 remembers the name Montello.

22     MR. BUDDELL:  Agreed, Your Honor.  But then it goes on to

23 add, as to those products, that he doesn't recall if he's ever

24 worked with or around.  And that includes Super Visbestos and

25 Univis.

26     THE COURT:  As to Super Visbestos, his testimony was he

27 didn't recall, all right?

28     MR. BUDDELL:  He didn't recall what it was.

                                                      15


1      THE COURT:  He can look at the photographs and have his

2  recollection refreshed.  You know, as I said, you and I could

3  probably debate this all day.  But --

4      MR. BUDDELL:  My calendar is clear.

5      THE COURT:  I have lots of thing to do.

6        Anything further?

7        MR. BUDDELL:  Well, to the extent that that would be a

8    further objection to Mr. Lyman's declaration, I'd like to make

9    that at this point, Your Honor, and ask for a ruling on that.

10       THE COURT:  Overruled.

11       MR. BUDDELL:  Okay.  Finally, Your Honor, with respect to

12   the summary adjudication issue, I think the Court's ruling was

13   correct, in the sense that plaintiff didn't even oppose it nor

14   submit any evidence to support an allegation of punitive

15   damages.  And given the fact that I've not received notice of

16   that, I would submit to that.

17       MR. CHEW:  If I could, Your Honor.  It's been a while.  So,

18   Andrew Chew for plaintiff again.

19       THE COURT:  Sure.

20       MR. CHEW:  I don't mean to rehash any of the arguments that

21   Mr. Buddell --

22       THE COURT:  You don't need to.

23       MR. CHEW:  I certainly don't want to do that, Your Honor.  I

24   don't think D'Amico applies here, Your Honor.  The classic

25   example is he says "red light" in a deposition.  He says "green

26   light" in a declaration.

27       We have a clear contradiction.  I believe I counted

28   Mr. Buddell used the word "contradicts" 12 times.  There's no

                                                          16


1    contradiction here, Your Honor.

2        With regards to the Scalf case, if the Court will --

3        THE COURT:  No, no.  Do you want to say anything about the

4    other two?

5         MR. CHEW:  Yes, I do, Your Honor.

6         With regards to the motion for summary adjudication

7    Your Honor, I disagree with Mr. Buddell's representation that we

8    did not oppose it.  We did oppose it, Your Honor.  We

9    incorporated by reference everything that we used for our

10   separate statement, as they did for their motion for summary

11   adjudication.

12        I would like to bring to the Court's attention, however,

13   that I don't believe that Union Carbide has actually shifted the

14   burden on that, Your Honor, with regards to two points.  A, they

15   did not ask any questions with regards to false representation

16   or punitive damages to the plaintiff at the deposition; and,

17   two, they have not -- not -- propounded discovery with regards

18   to that particular issue.

19        Now, I see Mr. Buddell looking at his papers there right

20   now, Your Honor.  In their moving papers, they submit their set

21   one interrogatories, and they clearly propound that, Your Honor.

22        We responded to that.  They did not include our set one

23   responses in their moving papers.  Therefore, it's not properly

24   before this Court, Your Honor.  And if I could also add,

25   Your Honor --

26        THE COURT:  Well, but, Mr. Chew, the principal cause of

27   action -- the principle on which Union Carbide moved was really

28   causation; that is, that Mr. Lyman was incapable of linking his

17

1    condition to their product.  I mean, that was the thrust of the

2    motion, and as you said, both parties incorporated those

3   responses as to the other -- as to the other causes of action,

4   okay?

5       Well, if I find, as I did, that they shifted the burden of

6   proof on the issue of causation, I don't know how in the devil

7   one then could say there was some representation about some

8   product that they -- that Mr. Lyman had no contact with, all

9   right?

10      So, then you came back and appropriately responded, you

11  know, creating a triable issue of fact as to that contact.  But

12  I don't see anything on those bags or anything, for example,

13  that proffered any kind of a representation about that subject.

14      MR. CHEW:  Briefly, Your Honor?

15      THE COURT:  Yes.

16      MR. CHEW:  I believe -- and this might be -- I'm trying to

17  bifurcate the issue, Your Honor.

18      I do believe that -- certainly, they asked questions with

19  regards to causation, any possible exposure to their products.

20  So, if they've shifted the burden there, Your Honor, I would

21  probably stipulate to that -- with regards to that.  There is a

22  triable issue with regards to the causation.  However, they did

23  not shift the burden with regards to false representation and

24  punitive damages.  But they did not ask any questions about

25  those particular issues, Your Honor, at the deposition.

26      THE COURT:  But wait a minute.  I mean, at some point, you

27  know, this notion of -- I'm going to help Mr. Buddell.  I'm

28  going to go to his silver bullet and the stipulation, all right?

                                                              18

1      I mean, at some point, enough of this is enough.  I mean,

2  you don't want your client sitting there being harassed to death

3  by the question of:  Let's see.  You can't identify any of my

4  client's products, so is it true or not true that we never made

5  any representations?  You know, at some point it just gets to be

6  silly.

7      MR. CHEW:  I agree with that notion, Your Honor.

8      What I would like to add, or flesh out, if you will, even

9  putting that issue aside, Your Honor, there is no discovery,

10  written discovery, if you will, formal written discovery, with

11  regards to that issue.  And as the Court mentioned, there is

12  nothing on the bags with regard to that.  And that's exactly the

13  point, Your Honor.  There were no warnings with regards to lung

14  cancer, specifically, or mesothelioma, specifically.

15      We referenced the deposition testimony of several of their

16  persons most knowledgeable that stand for the notion that there

17  is despicable conduct here, Your Honor.  But they don't address

18  that in their moving papers.  So, therefore, they haven't

19  shifted the burden on that issue, Your Honor.

20      THE COURT:  Okay.  Mr. Buddell?

21      MR. BUDDELL:  Your Honor, we did shift the burden.  And we

22  brought it up in our moving papers.  And, notably, there is not

23  a single mention of the punitive damage issues in their Points

24  and Authorities, not one.

25      So, this is an issue that -- if we want to talk about what's

26  properly before the Court, this is clearly not -- this

27  opposition is clearly not before this Court because Mr. Chew is

28  raising both evidence and arguments that have never been raised

                                                              19

1    in their opposing papers whatsoever.

2        They can say that they've incorporated all of our papers

3    until the cows come home, but they've not made one single

4    argument, except for what Mr. Chew is saying today, orally, that

5    we've not shifted the burden, nor that -- that we have -- are

6    somehow liable for punitive damages under the elevated standard

7    that applies under California law.

8        THE COURT:  Okay.

9        MR. CHEW:  If I may, Your Honor?

10       THE COURT:  Mr. Chew.

11       MR. CHEW:  And I don't mean to beat a dead horse,

12   Your Honor.

13       But in our response to their separate statement with regards

14   to the fourth cause of action, the punitive cause of action, our

15   response is disputed.  "Objection.  The form of motion seeking

16   summary adjudication makes it impossible for plaintiff to

17   discern which facts defendant applies to this," capitalization,

18   "Cause of Action, without waiving such objection," and I won't

19   go any further, Your Honor.

20       If they don't bring up the point of how they shifted the

21   burden with respect to false representation and punitive

22   damages, how can we address that issue, Your Honor?  There's

23   nothing before us.  There's nothing for us to oppose.

24       MR. BUDDELL:  And there again, Your Honor called it exactly

25   right, going to the stipulation by Mr. Vaillancourt, who through

26   his stipulation tried to preclude the litany of questions that

27   would have been barraged upon his client with directly that

28  issue.  Those questions weren't asked at deposition, under the

20

1  good faith assumption that the Brayton office would abide by its

2  stipulation.

3      THE COURT:  Now, now, now.

4      Okay.  Anything further, Mr. Chew?

5      MR. CHEW:  One question, Your Honor, or inquiry.

6      THE COURT:  Uh-huh.

7      MR. CHEW:  With regards to your tentative for punitive

8  damages, is that with regards to all punitive damages, or

9  punitive damages with regard to false representation only?  I'm

10  just -- I'm confused, Your Honor, and I need a little

11  clarification with regards to possible punitive damages with

12  regards to our claims for negligence.

13      THE COURT:  You can't have punitive damages for negligence.

14      MR. CHEW:  I believe you can, Your Honor.

15      THE COURT:  You mean a negligent misrepresentation?  Is that

16  what we're talking about?

17      MR. CHEW:  Well, you have -- you have pure negligence, if

18  you will, Your Honor.

19      MR. BUDDELL:  Which isn't alleged in the complaint,

20  Your Honor.

21      THE COURT:  I'll tell you what, gentlemen?  Anything

22  further?  I'm going to stay with the tentative ruling.  There's

23  only so much time and effort I can devote to these efforts.  So,

24  let the chips fall where they may.

25      MR. BUDDELL:  Thank you, Your Honor.

26      MR. CHEW:  Your Honor, may:  May I submit the proposed order

```
27  at a later date?

28      THE COURT:  Oh, sure.

                                                    21


1       MR. CHEW:  Thank you, Your Honor.

2       THE COURT:  Thank you.

3       MR. BUDDELL:  Thanks, Your Honor.

4                   (Proceedings concluded at 11:08 a.m.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

25

26

27

28

22

1  State of California                )
                                       )
2  County of San Francisco            )

3

4

5      I, Kathy Kollehner, Pro Tem Reporter for the Superior Court

6  of California, County of San Francisco, do hereby certify:

7      That I was present at the time of the above proceedings;

8      That I took down in machine shorthand notes all proceedings

9  had and testimony given;

10      That I thereafter transcribed said shorthand notes with the

11  aid of a computer;

12      That the above and foregoing is a full, true, and correct

13  transcription of said shorthand notes, and a full, true and

14  correct transcript of all proceedings had and testimony taken;

15      That I am not a party to the action or related to a party

16  or counsel;

17      That I have no financial or other interest in the outcome

18  of the action.

19

20

21  Dated:  August 1, 2007

22

23      _____

24                    Kathy Kollehner, CSR No. 4102

25

26

27

28

# EXHIBIT J

1  John R. Brydon [Bar No. 0833365]
   Thomas J. Moses [Bar No. 116002]
2  Erin M. Carpenter [Bar No. 248337]
   BRYDON HUGO & PARKER
3  135 Main Street, 20th Floor
   San Francisco, CA 94105
4  Telephone: (415) 808-0300
   Facsimile: (415) 808-0333
5
   Attorneys for Defendant
6  UNION CARBIDE CORPORATION

7

8

9                 SUPERIOR COURT - STATE OF CALIFORNIA

10        COUNTY OF SAN FRANCISCO - UNLIMITED JURISDICTION

11

12 | ROBERT F. LYMAN and SAMANTHA    | (ASBESTOS)
   | LYMAN,                          | Case No. 459162
13 |
   |                                 | DEFENDANT UNION CARBIDE
14 |        Plaintiff(s),            | CORPORATION'S REPLY BRIEF IN
   |   vs.                           | SUPPORT OF ITS MOTION FOR
15 |                                 | SUMMARY JUDGMENT OR, IN THE
   | ASBESTOS DEFENDANTS (B✢P),      | ALTERNATIVE, SUMMARY
16 |                                 | ADJUDICATION
17 |        Defendants.              | [Filed concurrently with Evidentiary
   |                                 | Objections To Plaintiffs' Evidence and
18 |                                 | Declaration of Thomas J. Moses]
19 |                                 | Date:       July 27, 2007
   |                                 | Time:       9:30 a.m.
20 |                                 | Dept.:      302
   |                                 | Judge:      Hon. Patrick J. Mahoney
21 |
22 |                                 | Action Filed: December 29, 2006
   |                                 | Trial Date:   July 30, 2007

23 I.   **INTRODUCTION.**

24        Defendant Union Carbide Corporation's Motion for Summary Judgment or, in the

25 Alternative, Summary Adjudication must be granted, because Plaintiffs have failed to

26 meet their burden to show that any triable issue of material fact exists in this case.

27        Plaintiffs in this action claimed in their responses to Union Carbide's special

28 interrogatories that Robert Lyman was exposed to "Montello drilling mud" that

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1

DEFENDANT UNION CARBIDE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    allegedly contained Union Carbide's asbestos. But, there is no evidence in this case to

2    support any claim that Mr. Lyman was exposed to any product which actually contained

3    Union Carbide asbestos. Indeed, Plaintiffs' deposition testimony itself establishes—

4    contrary to the unverified affidavit proffered in support of Plaintiffs' opposition to Union

5    Carbide's motion—that Mr. Lyman *never* actually worked with or near any asbestos

6    containing drilling mud or additives at his two jobs within the oil and gas industry.

7            Plaintiffs may not create a triable issue of material fact on the eve of trial simply by

8    filing self-serving evidence that directly contradicts deposition testimony previously

9    given by Plaintiff. This fatal flaw justifies granting Union Carbide's motion for summary

10   judgment or, in the alternative, summary adjudication.

11           Alternatively, Plaintiffs completely fail to controvert Union Carbide's motion for

12   summary adjudication with regards to Plaintiffs' Third Cause of Action for False

13   Representation and their claim for punitive damages. By their silence, Plaintiffs tacitly

14   admit that Union Carbide's motion as to those issues is well-taken, and accordingly

15   summary adjudication of those issues must be entered in favor of Union Carbide.

16   II.    **THE DECLARATION OF ROBERT F. LYMAN IS INADMISSIBLE**

17           Plaintiffs seek to rely on an *unsigned* declaration of Robert F. Lyman in their effort

18   to defeat Union Carbide's motion for summary judgment. The declaration, however, is

19   inadmissible on substantive as well as on procedural grounds set forth below, and cannot

20   be considered by this Court[1].

21           **A.    The Declaration Directly Contradicts The Prior Deposition Testimony of**
22                  **Robert Lyman.**

             In support of their Opposition to Union Carbide's motion, Plaintiffs rely on a

23   declaration from Robert Lyman which directly conflicts with prior deposition testimony

24   given by him in this case. Plaintiff's attempt to create a triable issue of fact by

25

26   ---
     [1] Plaintiffs' counsel has now belatedly (i.e., only two days before the hearing) submitted a signed version of
27   this declaration. Union Carbide objects to this belated declaration, and believes that it should not be
     considered by the court for purposes of this hearing, as the signed declaration should have been submitted
28   along with the other opposition papers in a timely fashion, and pursuant to the stipulation of the parties
     and the guidelines provided by Code of Civil Procedure section 437c(b).)

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

2

1  contradicting his own testimony, however, will not be enough to derail Union Carbide's

2  well-taken motion.

3      The Supreme Court of California, in *D'Amico v. Board of Medical Examiners*, (1974)

4  11 Cal.3d 1, faced a situation quite similar to the present case. There, the court ruled that

5  while affidavits filed in opposition to motions for summary judgment normally are

6  liberally construed, "when discovery has produced an admission or concession on the

7  part of the party opposing summary judgment which demonstrates that there is no

8  factual issue to be tried, certain of those stern requirements applicable in a normal case

9  are relaxed or altered in their operation." (*Id.* at 20-21.)

10     The *D'Amico* Court explained the logic behind this rule:

11     "The reasons for this attitude toward the legitimate products of discovery are
       clear. As the law recognizes in other contexts (see Evid. Code, §§ 1220-1230)
12     admissions against interest have a very high credibility value. This is
       especially true when, as in this case, the admission is obtained not in the
13     normal course of human activities and affairs but in the context of an
       established pretrial procedure whose purpose is to elicit facts. Accordingly,
14     when such an admission becomes relevant to the determination, on motion for
       summary judgment, of whether or not there exist triable issues of fact (as
15     opposed to legal issues) between the parties, it is entitled to and should
       receive a kind of deference not normally accorded evidentiary allegations in
16     affidavits." (*Id.* at 22; see generally Bauman, California Summary Judgment: A
       Search For a Standard (1963) 10 U.C.L.A.L.Rev. 347, at pp. 350-351, 357-360.)

17     In the present case, Mr. Lyman's declaration directly contradicts admissions made

18  in his own sworn deposition testimony. Examples of these contradictions are found

19  throughout the deposition of Robert F. Lyman. Mr. Lyman only worked for two

20  companies during his time in the oil and gas industry. His first employer was Cudd Oil.

21  During Mr. Lyman's deposition, he was asked about his work for this company. He

22  stated that the only time he *ever* witnessed any type of drilling fluid or drilling mud in

23  use while working for Cudd was on one occasion when he observed a tanker marked

24  "drilling fluid" deliver some form of *liquid* to an oil field. [UCC's UMF No. 10.] He

25  never saw anyone mixing dry additives, fluids or muds near him while working for

26  Cudd. [UCC's UMF No. 12.]

27

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

1    Mr. Lyman's only other job in the oil and gas industry was as a chemical

2    technician and tanker truck driver for Baker Hughes from 1982-1986. [UCC's UMF No.

3    13.] Although Mr. Lyman did testify that while employed by Baker Hughes, he

4    witnessed dry ingredients being mixed with liquid drilling mud in a revolving tanker

5    truck, which was then pumped into a mud tank, he also testified that he was never closer

6    then 40 to 50 feet away when he saw this. [UCC's UMF No. 14.] Moreover, Mr. Lyman

7    stated under oath that he could not identify the manufacturers, suppliers, distributors or

8    brand names of the alleged dry ingredients that he saw from a distance. [UCC's UMF

9    No. 16.]

10    Now, Mr. Lyman attempts an about-face in his affidavit. In his newly submitted

11    declaration, Mr. Lyman states that he "worked in close proximity to workers who

12    opened these sacks emptied the contents and threw the empty sacks aside." [Decl. of

13    Robert F. Lyman, at ¶ 5.] He further states "[t]he sacks were filled with a dry powdery

14    substance, that they mixed with fluids. This process created large amounts of visible dust

15    which I breathed and landed on my clothes." [Decl. of Robert F. Lyman, at ¶ 5.]

16    The deposition testimony and declaration of Mr. Lyman are mutually exclusive.

17    At his deposition, Mr. Lyman states that while at Cudd he never saw dry ingredients

18    being mixed, and while at Baker Hughes he witnessed it at a distance greater then 40 or

19    50 feet. This clearly is contradictory to his new statement that he was in "close

20    proximity" to workers who opened paper sacks.

21    The new declaration also states that at the time of his deposition, Robert Lyman

22    could not recall on which products he had seen a "Montello" logo, but did recall that it

23    was on paper sacks. [Decl. of Robert F. Lyman, at ¶ 4.] The Plaintiffs cite to page 529,

24    lns. 10-14 of Mr. Lyman's deposition in support of this proposition. This portion of his

25    deposition testimony, however, is merely a vague recollection of the name "Montello,"

26    with no such reference to a sack or any particular product type or description. Reading a

27    mere one line beyond the Plaintiffs' cherry picked language sheds light on the new

28    declaration's contradiction:

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

4

1    Q: Can you tell me what kind of container you saw the (Montello) label on?

2    A: No. Again, this is 40 years ago. [Exhibit A to the Moses Decl. in support of

3    UCC's Reply to Plaintiffs' Opposition to Summary Judgment/Summary

4    Adjudication, at 529:15-17.]

5        Plaintiff, during his deposition, also did not know what type of material bore the

6    Montello logo:

7        Q: I think I asked you this. But do you recall the type of material that was in the

8        container that had the label on it?

9        A: No. [Exhibit A to the Moses Decl. in support of UCC's Reply to Plaintiffs'

10    Opposition to Summary Judgment/Summary Adjudication, at 530:8-11.]

11        The new assertions that the Plaintiff worked in close proximity to Montello sacks

12    which contained a dry powdery substance which he breathed and got on his clothes is in

13    direct contrast to his deposition testimony that he did not know what type of container

14    the Montello logo was on nor what was in the containers bearing the logo. Furthermore,

15    his declaration that he inhaled Montello brand, dry powdery substance which got on his

16    clothes is in direct contrast to his deposition testimony that he saw an unnamed product

17    from a distance of no closer then 40 to 50 feet away.

18        As stated above, these two variations of the story are at direct odds with one

19    another. They are mutually exclusive versions of the same event. As laid forth by the

20    California Supreme Court in *D'Amico*, credible testimony under oath at a formal

21    deposition must not be replaced with supplemental, self-serving affidavits in order to

22    conjure up a triable issue of material fact.

23        Furthermore, Mr. Lyman also failed to identify a single Union Carbide or Montello

24    asbestos drilling mud additive during his deposition. During Mr. Lyman's deposition,

25    Montello's attorney identified asbestos products manufactured by Union Carbide and

26    distributed by Montello which included Super Visbestos and Univis, and asked Mr.

27    Lyman whether he had ever been exposed to any of them. [UCC's UMF No. 17.] With

28    one exception, Mr. Lyman testified that he did not recall being exposed to any of the

BRYDON
HUGO & PARKER
135 MAIN STREET
20th FLOOR
San Francisco, CA 94105

5

DEFENDANT UNION CARBIDE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    products; the only exception was Mr. Lyman's vague recollection of seeing the name

2    "Shurlift." [UCC's UMF No 18.] However, while he recalled seeing "Shurlift" at some

3    point, Mr. Lyman admitted that he was never exposed to it, as he neither handled

4    "Shurlift," nor was he around anyone who handled the product. [UCC's UMF No. 19.]

5          Now, in direct contrast, Mr. Lyman asserts in his declaration that he recalls Super

6    Visbestos and Univis throughout the years he worked in the oil fields. [Decl. of Robert

7    Lyman at ¶ 4.] The statements made by the Plaintiff at his deposition that he did not

8    work with or around Super Visbestos or Univis are not "fragmentary concessions" as

9    suggested by the Plaintiffs. They are unequivocal and credible admissions against

10    interest, made during a formal deposition setting.

11         Depositions are certainly not forums of the normal course of human activities, but

12    rather are established pretrial procedures whose purpose is exactly and fundamentally to

13    elicit facts. Testimony and evidence elicited in those proceedings, particularly

14    admissions against the party's own interests, may properly be relied upon in motions for

15    summary judgment. Mr. Lyman's admissions against interest are properly afforded a

16    very high credibility value.

17         The *D'Amico* court fleshed out this distinction by referencing a case with similar

18    facts to ours. The Court states:

19      "Thus, in *King v. Andersen*....,the rule providing for liberal construction of
20      counteraffidavits was held not to require reversal of a summary judgment for defendant where the plaintiff in an assault case, although having stated in his
21      counteraffidavit that unnecessary force was used, nevertheless had stated in a previous deposition that no force was used; refusing to find that a triable issue
22      was thus presented, the court said: 'Where, as here, however, there is a clear and unequivocal admission by the plaintiff, himself, in his deposition...we are
23      forced to conclude there is no Substantial evidence of the existence of a triable issue of fact.'" *King v. Andersen*, (1966) 242 Cal.App.2d 606, 608.

24       The Supreme Court has not retreated from its holding 25 years ago in *D'Amico*.

25    (See, e.g., *Scheiding v. Dinwiddie Const. Co.* (1999) 69 Cal.App.4th 64, 77.) The Supreme

26    Court has consistently refused to allow a triable issue of fact to be conjured by the

27    submission of an affidavit contradicting the declarant's prior deposition testimony. (*Id.*)

28    Just like the plaintiff in *King*, the plaintiff in this action seeks to counteract a clear and

BRYDON HUGO & PARKER
135 MAINSTREET
20TH FLOOR
San Francisco, CA 94105

6

DEFENDANT UNION CARBIDE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    unequivocal admission stated under oath at his deposition. Permitting this type of self-

2    serving evidence to create a triable issue of fact runs counter to well-established

3    California law, and undermines the discovery process as a whole.

4         Plaintiffs, knowing that Mr. Lyman's declaration is problematic, have anticipated

5    this very argument. They seek to emasculate the ruling laid out by the California

6    Supreme Court in *D'Amico* by requesting that this Court follow the reasoning set forth in

7    several cases which are either factually distinguishable, or irrelevant, or both.

8         First, Plaintiffs rely on *Scalf v. D.B. Log Homes, Inc.*, (2005) 128 Cal.App.4th 1510, for

9    their assertion that the "appellate court dispelled the myth of *D'Amico*." Plaintiffs claim

10   that the *Scalf* court held that *D'Amico* has been improperly applied, and was never meant

11   to raise a complete bar to a deponent *supplementing* a deposition with declaration

12   testimony. While this statement may be true in a general sense, that does not mean that

13   *Scalf* is inconsistent with *D'Amico*.

14        As *Scalf* and *D'Amico* show, a declaration which *supplements* prior testimony—i.e.,

15   which provides additional information—may be acceptable, but a declaration which

16   flatly *contradicts* prior testimony—i.e., which attempts to replace one set of facts for

17   another—is not acceptable. Accordingly, self-serving affidavits which directly contradict

18   a material fact given under oath, in a formal setting designed to elicit such facts, must be

19   stricken from the record or simply not admitted.

20        Plaintiffs also rely on *Price v. Wells Fargo Bank*, (1989) 213 Cal.App.3d 465, 482, to

21   assert that *D'Amico's* scope has been limited. Plaintiffs misinterpret the meaning of the

22   opinion in *Price*, however, as *Price* actually stands for the proposition that *D'Amico* is

23   alive and well. The *Price* court stated that "[t]he holding of *D'Amico* appears entirely

24   sound on its facts; and this court has recently applied the decision where credible

25   admissions on deposition were contradicted only by self-serving declarations of a party."

26   (*Id.*; see also *Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199

27   Cal.App.3d 791.

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

7

DEFENDANT UNION CARBIDE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1    The facts in our case are precisely those that the *Price* court agreed were governed

2    by *D'Amico*. Here, Mr. Lyman's admissions against interest are certainly credible. They

3    were made in a formal setting, under oath. Moreover, the *only* evidence that the

4    Plaintiffs have set forth to oppose these credible admissions are exactly those *D'Amico*

5    stands to protect against—Plaintiff's own self-serving declaration.

6        Well-established California law does not allow the Plaintiffs to defeat summary

7    judgment with a self-serving and unequivocally contradictory declaration. This Court

8    must not consider Robert Lyman's declaration when ruling on Union Carbide's motion

9    for summary judgment/summary adjudication.

10       B.    **Plaintiffs' Declaration Is Inadmissible As It Is Not Signed Under Penalty
                of Perjury.**

11

12       The declaration of Robert F. Lyman is inadmissible on totally separate procedural

13   grounds as well. The declaration is unsigned by Mr. Lyman and therefore does not

14   present admissible evidence that this Court may consider. Code of Civil Procedure

15   section 2015.5 requires that affidavits and declarations be *signed* under penalty of perjury.

16   Mr. Lyman's declaration, however, is *unsigned*. Therefore, the declaration cannot

17   properly be considered evidence of a triable issue of material fact.

18   **III.    STATEMENTS OF FACT OR ARGUMENT REGARDING "FRANCIS F.
             LYMAN" SHOULD BE IGNORED.**

19       Several portions of the Plaintiffs' Memorandum of Points and Authorities present

20   statements of fact regarding a "FRANCIS F. LYMAN". Example of these references

21   include: "FRANCIS F. LYMAN worked in close proximity to workers who opened these

22   sacks emptied the contents and threw the empty sacks aside." This sentence is stated

23   twice in Plaintiffs' Memorandum of Points And Authorities.[2] Furthermore, page 5, lines

24   17-22 states: "Mr. Cohen opines that, based on specific range of years, including 1981-

25   1986, and the identification of Super Visbestos and Univis consistent with that of John

26   Edward Walsh, when plaintiff, FRANCIS F. LYMAN, was in proximity to workers who

27   opened these sacks emptied the contents and threw the empty sacks aside, creating large

28

---

[2] At 2:15-16 and 4:22-24.

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

8

1  amounts of visible dust, asbestos dust and fibers would have been released and become

2  airborne in plaintiff's presence in the course of these activities."

3      These errors undermine the credibility of Plaintiffs' entire Opposition, and at a

4  minimum must be disregarded.

5  IV.   THE DECLARATION OF KENNETH COHEN IS INADMISSIBLE.

6      The Declaration of Kenneth Cohen, filed in opposition to Union Carbide's motion

7  for summary judgment, or in the alternative summary adjudication, is inadmissible

8  because he has not been offered to Union Carbide for deposition. Code of Civil

9  Procedure section 2034.410 states, "If the expert is one who has been retained to testify, it

10 is the responsibility of the party designating such expert to make him or her available for

11 deposition...upon service of a proper deposition notice..."

12     Being that Mr. Cohen has neither been offered as an expert in this case, nor made

13 available for deposition in this matter, Defendant Union Carbide would be severely

14 prejudiced if his declaration is considered by this court without the opportunity for cross

15 examination before trial.

16     In addition, Mr. Cohen only relies on the unsigned declaration of Robert Lyman

17 submitted in opposition to Union Carbide's motion for the basis of his opinion that

18 Lyman would have been exposed to asbestos from Montello products such as Super

19 Visbestos and Univis. Cohen, of course, has no personal knowledge of these facts, and to

20 the extent that he is relying on Lyman's testimony that should be excluded, Cohen's

21 testimony is similarly defective and should also be excluded.

22 V.    PLAINTIFFS DO NOT OPPOSE AND THEREFORE CONCEDE SUMMARY
       ADJUDICATION REGARDING THEIR CAUSES OF ACTION FOR FALSE
23     REPRESENTATION AND THEIR CLAIM FOR PUNITIVE DAMAGES.

24
       Plaintiffs' opposition papers make no reference and include no arguments
25 attempting to oppose Union Carbide's request for summary adjudication of their third

26 cause of action for false representation and their claim for punitive damages. Plaintiffs'

27 lack of arguments effectively operates as concessions that Union Carbide's motion is

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

9

DEFENDANT UNION CARBIDE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1  well-taken as to those claims. Accordingly, this Court must grant summary adjudication

2  in favor of Union Carbide with regard to Plaintiffs' third cause of action for false

3  representation and their claim for punitive damages.

4  **VI.    CONCLUSION.**

5

6      Defendant Union Carbide contends that the burden was appropriately shifted by

   the undisputed evidence submitted in support of it original Motion, and that Plaintiffs

7  have failed to satisfy their obligation to present admissible, relevant evidence sufficient

8  enough to create a triable issue of fact with regard to Plaintiff Robert Lyman's exposure

9  to any allegedly asbestos-containing products manufactured by Union Carbide or

10  distributed by Montello. Thus, summary judgment as to Plaintiffs' entire complaint

11  should be entered in Union Carbide's favor as a matter of law. Alternatively, because

12  Plaintiffs have failed to present any facts upon which to sustain any of the individual

13  causes of action set forth in their complaint, each cause of action must be summarily

14  adjudicated in favor of Union Carbide.

15  Dated: July 25, 2007                     BRYDON HUGO & PARKER

16

17

18                              By:

19                                    John R. Brydon
                                     Thomas J. Moses
                                     Erin M. Carpenter
20                                    Attorneys for Defendant
                                     UNION CARBIDE CORPORATION

21                                    1102-0231

22

23

24

25

26

27

28

BRYDON
HUGO & PARKER
135 MAIN STREET
20TH FLOOR
San Francisco, CA 94105

10

_Lyman, Robert F. & Samantha vs. Asbestos Defendants (B*P), et al._
San Francisco County Superior Court Case No. CGC-06-459162
LexisNexis Transaction No. 15712960

## PROOF OF SERVICE

I am a resident of the State of California, over the age of 18 years, and not a party to the within action. My electronic notification address is service@bhplaw.com and my business address is 135 Main Street, 20th Floor, San Francisco, California 94105. On the date below, I served the following:

DEFENDANT UNION CARBIDE CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

on the following:

David R. Donadio                     AND SEE LEXIS NEXIS SERVICE LIST
Brayton Purcell
222 Rush Landing Road
Novato, CA 94945
Fax: (415) 898-1247

X     By transmitting electronically the document(s) listed above as set forth on the electronic service list on this date before 5:00 p.m.

o     By transmitting via facsimile the document(s) listed above to the fax number(s) set forth above on this date before 5:00 p.m.

o     By placing the document(s) listed above in a sealed envelope and placing the envelope for collection and mailing on the date below following the firm's ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal service on the same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

o     By placing the document(s) listed above in a sealed envelope designated for Federal Express overnight delivery and depositing same with fees thereupon prepaid, in a facility regularly maintained by Federal Express, addressed as set forth above.

o     by causing personal delivery of the documents(s) listed above to the person(s) at the address(es) set forth above.

I declare under penalty of perjury that the above is true and correct. Executed on July 25, 2007, at San Francisco, California.

_Lea Vaughn_
Lea Vaughn

1