# EXHIBIT K

[illegible]

FIRST APPELLATE DISTRICT

[illegible]

UNION CARBIDE CORPORATION,

Petitioner,

[illegible]

Respondent.

[illegible]

[illegible] Judge of the Superior Court

PETITION FOR WRIT OF MANDATE [illegible]

[illegible]

Case No. ________

IN THE COURT OF APPEAL OF CALIFORNIA
FIRST APPELLATE DISTRICT
DIVISION _____

UNION CARBIDE CORPORATION,

Petitioner,

vs.

SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF SAN FRANCISCO,

Respondent,

ROBERT F. LYMAN and SAMANTHA LYMAN,
Real Parties–in-Interest.

---

San Francisco County Superior Court, Case No. 459162
Patrick J. Mahoney, Judge of the Superior Court

---

**PETITION FOR WRIT OF MANDATE;**
**MEMORANDUM OF POINTS AND AUTHORITIES**
**(Exhibits Attached Hereto)**

---

John R. Brydon [SB 0833365]
James C. Parker [SB 106149]
Brian Buddell [SB 166103]
Erin M. Carpenter [SB 248337]
BRYDON HUGO & PARKER
135 Main Street, 20th Floor
San Francisco, CA 94105
(415) 808-0300
Attorneys for Petitioner
UNION CARBIDE CORPORATION

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................ 1

VERIFIED PETITION ........................................ 4

VERIFICATION ........................................ 7

STATEMENT OF FACTS ........................................ 8

SUMMARY JUDGMENT STANDARDS ........................................ 11

LEGAL DISCUSSION ........................................ 12

CONCLUSION ........................................ 14

CERTIFICATION OF WORD COUNT ........................................ 15

# TABLE OF AUTHORITIES

Cases Page

*Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791 ........ 12

*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 ........ 12

*Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962 ........ 12

*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 ........ 3, 12, 13, 14

*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409 ........ 11

*Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465 ........ 12

*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510 ........ 12, 13

*Scheiding v. Dinwiddie Const. Co.* (1999) 69 Cal.App.4th 64 ........ 12

Statutes

Code of Civil Procedure
Section 437c(c) ........ 11
Section 437c(o)(2) ........ 12

IN THE COURT OF APPEAL OF CALIFORNIA
FIRST APPELLATE DISTRICT
DIVISION _____

UNION CARBIDE CORPORATION,

Petitioner,

vs.

SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF SAN FRANCISCO,

Respondent,

ROBERT F. LYMAN and SAMANTHA LYMAN,
Real Parties–in-Interest.

---

San Francisco County Superior Court, Case No. 459162
Patrick J. Mahoney, Judge of the Superior Court

---

**PETITION FOR WRIT OF MANDATE;**
**MEMORANDUM OF POINTS AND AUTHORITIES**

---

## INTRODUCTION

By this petition, Union Carbide Corporation ("UCC") asks this Court to rule on a novel issue: in opposing a motion for summary judgment, may a party submit a declaration contradicting his own prior deposition testimony to create a triable issue of material fact, by claiming a refreshed recollection even when (1) his recollection was refreshed before the filing of the summary judgment motion, and (2) he did not amend his deposition transcript nor reveal the new recollection in response to interrogatories?

In this case, the only percipient witness to the issue of product identification is Robert Lyman, the plaintiff. Lyman was deposed for seven days in April 2007. He was expressly asked during his deposition if he was ever around or could even recognize the names of any of several UCC asbestos-containing products, all distributed by co-defendant Montello, Inc. Lyman unequivocally testified that he did not recognize the product names, he had not worked with the Montello products, and had not worked around others who handled the Montello products. In interrogatory responses he provided before and after his deposition, Lyman likewise failed to identify by name any UCC-Montello products, even as to those interrogatories that clearly called for such information.

On July 5, 2007, UCC moved for summary judgment on the grounds that after seven days of deposition and multiple written discovery exchanges, there was no evidence that Lyman was exposed to any UCC products. In opposition, Lyman filed a two-page declaration stating that he now recalled two UCC-related names, and that he now recalled working in "close proximity" to others handling those products.

Over UCC's objection, the Court below accepted the Lyman declaration, reasoning that it did not contradict the deposition as plaintiff's recollection had been refreshed. Based on Lyman's declaration, the Court below denied UCC's motion.

UCC has time and again taken careful depositions, served specific interrogatories, and then filed a meritorious motion for summary judgment, only to have a plaintiff manufacture a triable issue of fact by filing a declaration supplementing, altering or even, as here, contradicting prior deposition testimony.

UCC understands that sometimes a plaintiff might have a legitimate late recollection. In those rare instances, he should promptly correct or amend his

deposition testimony. And when served with interrogatories calling for any further post-deposition information, he should fully respond, state that his recollection has been refreshed, and set forth his refreshed memories. Lyman did none of those things – even though he had those opportunities in this case.

Lyman claimed that his recollection was refreshed when, after his deposition, he was shown photographs of UCC-Montello products so that he could answer interrogatories served by Montello, some of which specifically asked him to identify all Montello products to which he claimed exposure. Lyman's eventual responses to Montello's interrogatories *did not identify the products at issue by name.* Instead, the very first time UCC, Montello or anyone outside plaintiff's attorneys learned that Lyman recalled the UCC-Montello products by name was when he filed his "I-just-now-remembered" declaration to defeat UCC's motion for summary judgment.

Over 30 years ago the Supreme Court in *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 made clear that such tactics were intolerable. Clear, unequivocal deposition testimony cannot be ignored in ruling on a motion for summary judgment. In fact, *it is the declaration that contradicts the deposition that is to be ignored as "irrelevant, inadmissible or evasive."* Nonetheless, UCC and many other defendants in asbestos litigation find that the courts ignore explicit deposition testimony and accept contradictory declarations in contravention of *D'Amico* and its progeny.

This matter is urgent. *The case has been given a preferential trial setting and is currently trailing and awaiting assignment to a trial court.* UCC has moved promptly for writ relief.

UCC asks this Court to issue a peremptory writ to Respondent Court to vacate its order denying UCC's Motion, or issue an alternative writ directing Respondent Superior Court to show cause why it should not be so directed, and

upon return to the alternative writ, issue the peremptory writ.

## VERIFIED PETITION

By this verified petition, UCC alleges:

1. Union Carbide Corporation ("UCC") is one of multiple defendants in a civil action entitled *Robert F. and Samantha Lyman v. Asbestos Defendants (B❖P)*, San Francisco Superior Court Case No. 459162.

2. The real parties-in-interest are plaintiffs Robert F. and Samantha Lyman, ("plaintiffs"). Plaintiffs claim that Robert Lyman has developed lung cancer due to exposure to various asbestos-containing products.

3. This action was commenced on December 29, 2006 as a personal injury action in San Francisco Superior Court.

4. On February 13, 2007, UCC served its Answer to the Complaint.

5. On April 12, 2007, Respondent court granted plaintiff's motion for a preferential trial, setting July 30 for the trial call.

6. On April 17-26, 2007, Robert Lyman was deposed in this action. (A true and correct copy of relevant portions of Robert Lyman's deposition testimony is attached hereto as Exhibit A.)

7. On July 5, 2007, UCC filed its motion for summary judgment or, in the alternative, summary adjudication (the "Motion"). (A true and correct copy of the Motion is attached hereto as Exhibit B.)

8. On July 23, 2007, plaintiffs filed their opposition to the Motion. (A true and correct copy of the opposition is attached hereto as Exhibit C.)

9. On July 25, 2007, UCC filed its reply to plaintiff's opposition to the Motion. (A true and correct copy of the reply is attached hereto as Exhibit D.)

10. On July 27, 2007, UCC's Motion came on for hearing before the Hon. Patrick J. Mahoney, presiding in the Law & Motion department of the San

Francisco Superior Court.

11. After reviewing all the moving and opposing papers, and considering the oral argument of counsel, Judge Mahoney denied UCC's Motion. (A true and correct copy of the transcript of the hearing is attached hereto as Exhibit E.)

12. On July 30, 2007 this matter came on the trial calendar and was placed on "half day" standby, meaning it will be assigned to the first available trial judge.

13. On June 25, 2007, Montello filed its amended motion for summary judgment. (A true and correct copy of this motion is attached hereto as Exhibit F.)

14. On April 30, 2007, Montello served Robert Lyman with its first set of special interrogatories. (A true and correct copy of these interrogatories is attached as Exhibit G.)

15. On June 12, 2007, Robert Lyman served Montello with his responses to Montello's first set of special interrogatories. (A true and correct copy of these responses is attached as Exhibit H.)

16. On June 25, 2007, Robert Lyman signed a declaration to be submitted in opposition to Montello's motion for summary judgment. (A true and correct copy of his signed declaration is attached hereto I.)

17. On July 25, 2007, Robert Lyman submitted a signed version of his declaration submitted in opposition to UCC's motion for summary judgment. (A true and correct copy of his signed declaration is attached hereto as Exhibit J)

18. At no time has Lyman ever amended his deposition transcript to change any of his answers concerning the UCC-Montello products. Lyman also has not supplemented any prior interrogatory responses concerning the identification of UCC-Montello products.

WHEREFORE, petitioner UCC prays that this Court:

Issue its peremptory writ of mandate to Respondent Superior Court to set aside and vacate its order denying UCC's Motion and grant the Motion, or issue an alternative writ directing Respondent Superior Court to show cause why it should not be so directed, and upon return to the alternative writ, issue the peremptory writ requested above.

Respectfully submitted,
BRYDON HUGO & PARKER

Dated: August 3, 2007

James C. Parker
Attorneys for Petitioner Union Carbide Corporation

# VERIFICATION

I, James C. Parker, declare as follows:

I am a partner with Brydon Hugo & Parker, attorneys for petitioner Union Carbide Corporation. I have read the foregoing Petition for Writ of Mandate and know its contents. The facts alleged therein are true to my own knowledge or based upon my review of the pleadings and other documents contained within the Court's files.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 3d day of August 2007 at San Francisco, California.

James C. Parker

## STATEMENT OF FACTS

This is an asbestos action arising out of plaintiff Robert F. Lyman's alleged exposure to various asbestos-containing products which have allegedly caused him to contract lung cancer.

As against UCC, plaintiffs claim that Lyman was exposed to raw asbestos added to drilling mud at oil field work sites. Drilling mud is a mixture of fluids and dry materials pumped down an oil well to lift earth and lubricate the drill bit. From 1968 until 1985, Union Carbide sold "Calidria" type asbestos fibers as an additive to drilling mud under various brand names, including "Super Visbestos" and "Univis." Each product came packaged in 50-pound bags labeled with an OSHA-type warning about asbestos, the name of the product, and UCC's distributor, Montello, all clearly displayed. [UMF Nos. 6; 23.]

Lyman worked in the oil field business from 1981-1986, which included the last five years that UCC sold Calidria asbestos as an additive to drilling mud. [UMF Nos. 12; 13.] In his deposition, Lyman could not recall being around any products bearing the name Montello and was unable to identify by name a single Montello product to which he might have been exposed, even when specifically questioned about such products by name:

Q. Have you ever worked with or around a product called Supervisbestos?

A. What is it?

Q. Supervisbestos, S-u-p-e-r-v-i-s-b-e-s-t-o-s?

A. Not that I recall.

* * *

Q. Have you ever worked with or around a product called Univis, U-n-i-v-i-s?

A. No.

(Exhibit A, at 527:4-8; 529:4-6; UCC's UMF No. 17, 18 and 19.)

Lyman further testified that although he recalled the name "Montello," he could not recall when he had encountered it, but that in any event he had never handled any Montello product or worked around anybody who had:

Q. Have you ever worked or around any product that was distributed by a company called Montello, Inc.?

A. Yeah, Montello. Again, I don't remember what it was. But I've seen the logo, and I believe it was in the oil fields.

Q. Can you tell me *what kind of container* you saw the logo on?

A. No. Again, this is 40 years ago.

Q. Can you recall *when* you saw the logo?

A. No.

Q. Can you tell me *what material* was in any container that had that logo on it?

A. No. I don't recall.

Q. Did you ever *personally handle* any material that was in the container that you saw with that label on it?

A. Not that I know of.

Q. Did you ever *work around* anybody that handled any material with that label on it?

A. I don't recall.

(Exhibit A, at 529:10-530:4; emphasis added.)

Lyman's inability at his deposition to identify a Montello product or even being around any specific Montello product was understandable. He admitted that the only possible mixing of such products that he might have seen happened in the early 1980s, 40 to 50 feet from him; he did not know the composition of the materials being mixed, did not know the brand name, manufacturer or supplier of

those materials, and could not state that Calidria or any type of asbestos was among those materials. [Exhibit A, at 463:1-14; 470:11-471:13; UMF Nos. 14, 15 and 16.]

Relying on Lyman's lack of product identification after seven days of deposition testimony, UCC's Motion asked Respondent Court to grant summary judgment. In opposition, Lyman submitted a two-page declaration in which he explained that he had recalled two Montello products when, after his deposition, to prepare him to answer interrogatories from Montello, his lawyers showed him some him some photographs:

> After my deposition my attorneys provided me 15 photos to review as part of the preparation of responses to Defendant Montello's written discovery. Upon reviewing the photos, my recollection was refreshed as to particular Montello brand products. The three photos which refreshed my memory, are attached to this declaration. The drilling mud products I most clearly recall, having had my memory refreshed by the photographs, is asbestos containing Super Visbestos and Univis throughout the years I worked in the oil fields. (Exhibit C, at 16:1-8.)

The written discovery to which Lyman refers included a set of special interrogatories served by Montello after the deposition, which included this one:

> **SPECIAL INTERROGATORY NO. 10**: Identify each asbestos product YOU contend was supplied by MONTELLO, INC., which YOU contend YOU were exposed.

(Exhibit G, at 3:18-20.)

Lyman's answer to Montello's direct inquiry was no more detailed than his deposition, and declared that he had no further product identification information:

> **RESPONSE TO INTERROGATORY NO. 10:** Plaintiff objects to this Interrogatory .... Subject to and without waiving said objection, plaintiff responds as follows: Plaintiff was exposed to asbestos for which MONTELLO, INC. is legally responsible, by way of asbestos

> drilling mud additive.... [P]laintiff, after making a reasonable and good-faith effort . . . has no further relevant and/or responsive information to disclose at this time other than what has been stated herein . . . and in the course of his depositions . . . .

(Exhibit H, at 6: 3-10.)

These responses were verified by Lyman on June 9, 2007, about six weeks after his deposition concluded and after he had been shown the photographs. (Exhibit H, at page 28.) Nowhere in the 27 pages of single-spaced responses to Montello's interrogatories did Lyman identify *any* Montello product by name or state that he had reviewed photographs of the products. (Exhibit H, *seriatim*.)[1]

At no time has Lyman ever amended his deposition transcript to change any of his answers concerning the UCC-Montello products. Lyman also has not supplemented any prior interrogatory responses concerning the identification of UCC-Montello products.

## SUMMARY JUDGMENT STANDARDS

Summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c(c).) In an asbestos action, plaintiffs have the burden of proving causation, which here requires a showing that (1) Lyman was exposed to an asbestos-containing Union Carbide product, or to a product manufactured by another that contained asbestos supplied by Union Carbide, and (2) that biological processes from this exposure contributed to causing his current disease. (*Lineaweaver v. Plant*

---

1 Montello also filed a summary judgment motion, which was heard about two weeks prior to UCC's motion. In opposition, Lyman filed a declaration in which he asserted his memory had been refreshed not by photographs, but by a conversation with his attorney. (Exhibit I.)

*Insulation Co.* (1995) 31 Cal.App.4th 1409, 1415-16.)

To obtain summary judgment, Union Carbide only has to put forth evidence to establish that Plaintiffs do not possess, and cannot reasonably obtain, evidence necessary to raise a genuine triable issue of fact concerning *"one or more"* of the elements of each cause of action. (Code Civ. Proc., § 437c(o)(2); *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962, 974, 977; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, at p. 849.)

## LEGAL DISCUSSION

In *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, the Supreme Court ruled that a party's declaration or affidavit offered to controvert his or her prior, sworn and credible deposition testimony must be disregarded in ruling on a motion for summary judgment. "In a nutshell, the [*D'Amico*] rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522; see also *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [self-serving declarations filed in opposition to motions for summary judgment may not contradict credible discovery admissions]; *Advanced Micro Devices, Inc. v. Great American Surplus Lines Ins. Co.* (1988) 199 Cal.App.3d 791.)

The Supreme Court has never retreated from its holding in *D'Amico*. (See, e.g., *Scheiding v. Dinwiddie Const. Co.* (1999) 69 Cal.App.4th 64, 77.) The appellate courts have consistently refused to allow a triable issue of fact to be conjured by the submission of an affidavit contradicting the declarant's prior deposition testimony. (*Id.*) To be sure, deposition testimony is simply evidence, and like other evidence can be overcome – *except* when the deposition testimony constitutes an admission, and the attempt to overcome that admission comes from

the party-declarant himself.

Thus, in *Scalf*, plaintiff's deposition testimony that he himself had no criticisms of the product at issue or of the defendant's conduct was not "the equivalent of a judicial admission that Lodge Log was free from fault or that Scalf had no evidence to support his claim of indemnity." (*Scalf, supra,* 128 Cal.App.4th at p. 1523.) By contrast, here the *only* evidence that places the UCC-Montello products anywhere near Lyman such that he could possibly be exposed to them is the declaration of Lyman filed in opposition to UCC's motion. That declaration contradicts Lyman's statements in his deposition that he was not around those products.

At no time did Lyman correct that testimony, even though he had that opportunity well before UCC filed its motion. He could have notified UCC of a change in his recollection. He was served with interrogatories which pointedly asked him and his attorneys to name such products, and to state all facts to support his response. His declaration states he was shown the photographs for the purpose of answering those very interrogatories, yet nowhere in the responses does he provide the names of the products or state that he or his attorneys have photographs of Montello products in their possession. (Exhibit H.)

Lyman could have successfully opposed UCC's motion by relying on other evidence beyond his own declaration. He could have obtained a declaration from a percipient witness, for example, even if that witness' statements contradicted his own, because while the *D'Amico* rule permits a trial court to disregard declarations by *a party* which contract his discovery responses, *other* credible contradictory evidence may still be admitted to create a triable issue of fact. (*Scalf, supra,* 128 Cal.App.4th at pp. 1524-1525.)

What Lyman could not do was to file a self-serving declaration that

contradicted his own deposition – that was a violation of *D'Amico's* self-impeachment rule. But, that is exactly what occurred in this case, and is what led to the denial of UCC's meritorious summary judgment motion. Respondent Court should not have considered Lyman's declaration when ruling on UCC's motion, under the clear guidance of *D'Amico*.

## CONCLUSION

UCC respectfully requests that this Court issue a peremptory writ to Respondent Superior Court to vacate its order denying the Motion, and to enter a new order granting the Motion, and/or issue an alternative writ directing Respondent to show cause why it should not be so directed, and upon return to the alternative writ, issue the peremptory writ requested above.

Respectfully submitted,
BRYDON HUGO & PARKER

Dated: August 3, 2007

James C. Parker
Attorneys for Petitioner Union Carbide Corporation

## CERTIFICATION OF WORD COUNT

I certify that this document contains 3,942 words.

James C. Parker

**PROOF OF SERVICE**
C.C.P. §§1013(a), 2015.5

I am over the age of eighteen years and not a party to this legal proceeding. My business address is 135 Main Street, 20th Floor, San Francisco, California 94105.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On the date below, I served the following documents:

**PETITION FOR WRIT OF MANDATE; MEMORANDUM OF POINTS AND AUTHORITIES**

[X] By placing the documents listed above in a sealed envelope, and depositing the same with fees thereupon pre-paid in a facility regularly maintained by U.S. Post Office addressed as set forth below:

SEE ATTACHED SERVICE LIST

[X] By arranging for hand-delivery on the following:

David R. Donadio
Gary V. Judd
Brayton ❖ Purcell
222 Rush Landing Road
Novato, CA 94948

Hon. Patrick J. Mahoney
San Francisco Superior Court
400 McAllister Street
Department 302
San Francisco, CA 94107

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed at San Francisco, California.

Dated: August 3, 2007

Melanie Getting

**SERVICE LIST**

Filice Brown Eassa & McLeod
P.O. Box 70850
1999 Harrison Street, 18th Floor
Oakland, CA 94612-0850

Mark H. Rosenthal
425 California Street, Suite 2500
San Francisco, CA 94104

Berry & Berry
P.O. Box 16070
Oakland, CA 94610

Wright Robinson Osthimer & Tatum
44 Montgomery Street
San Francisco, CA 94104

Kirkpatrick & Lockhart Preston Gates Ellis
55 Second Street, Suite 1700
San Francisco, California 94105-3493

Prindle Decker & Amaro
310 Golden Shore, Fourth Floor
P.O. Box 22711
Long Beach, CA 90801-5511

Perkins Coie
4 Embarcadero Center, Suite 2400
San Francisco, CA 94111

Haight Brown & Bonesteel
71 Stevenson Street, 20th Fl.
San Francisco, CA 94105

Lewis Brisbois Bisgaard & Smith
One Sansome Street, Suite 1400
San Francisco, CA 94104-4448

Andrew S. Hartman
6520 S Lewis Ave Suite 15
Tulsa, OK 74136-1041

Dillingham & Murphy
225 Bush Street, 6th Floor
San Francisco, CA 94104

Sonnenschein Nath & Rosenthal
525 Market Street, 26th Floor
San Francisco, CA 94105-2708

Sainick & Whitney
190 Newport Center Drive, Second Floor
Newport Beach, CA 92660

Thelen Reid Brown Raysman & Steiner
101 Second Street, Suite 1800
San Francisco, CA 94105

Adams Nye Sinunu Bruni Becht
222 Kearny Street, Seventh Floor
San Francisco, CA 94108

Morgan Lewis & Bockius
One Market, Spear Street Tower
San Francisco, CA 94105

Law Offices of Nancy E. Hudgins
565 Commercial Street, Fourth Floor
San Francisco, CA 94111

**PROOF OF SERVICE**
C.C.P. §§1013(a), 2015.5

I am over the age of eighteen years and not a party to this legal proceeding. My business address is 135 Main Street, 20th Floor, San Francisco, California 94105.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On the date below, I served the following documents:

**EXHIBITS TO PETITION FOR WRIT OF MANDATE**

[X] By arranging for hand-delivery on the following:

David R. Donadio
Gary V. Judd
Brayton ❖ Purcell
222 Rush Landing Road
Novato, CA 94948

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed at San Francisco, California.

Dated: August 3, 2007

Melanie Getting

# EXHIBIT L

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

RECEIVED
AUG 0 6 2007
BY U.S. MAIL
BRYDON HUGO & PARKE

UNION CARBIDE CORP.,
Petitioner,
v.
SUPERIOR COURT SAN FRANCISCO,
Respondent;
ROBERT F. LYMAN,
Real Party in Interest.

FILED
AUG 0 3 2007
Court of Appeal - First App. Dist.
DIANA HERBERT
By ______
DEPUTY

A118643
San Francisco County No. 459162

BY THE COURT:*

The petition for writ of mandate is denied.

Dated: AUG 03 2007 GEMELLO, J. P.J.

* Before Gemello, Acting, P.J. and Needham, J.

A118643

James Carl Parker
Brydon Hugo & Parker
135 Main Street - 20th Floor
San Francisco, CA 94104

**NOTICE**

***Please include both the appellate case number and the division number on any written communication or filing submitted to this court.***

**Our website address is
http://appellatecases.courtinfo.ca.gov**

pet

adda

# EXHIBIT M

THIS DOCUMENT HAS BEEN PREPARED FOR THE CONVENIENCE OF THE COURT AND PARTIES AND MAY CONTAIN INACCURACIES

BRAYTON◆PURCELL

Trial Para: SAC

17 Defendants remain.

Client #107053
Trial Call Date: 7/30/07

| Defendants | | | CHESSTR | CARLIS | DRISFE | FORD | OTHER |
|---|---|---|---|---|---|---|---|
| Matter No. | Name | Case No. | | | | | |
| 107053 | Lyman, Robert SFSC Case No. 459162 SOL: 5 yr: 12/11 | 459162 | X | X | X | X | FOSLLC, FRECOR, GARLCK, GM, HENVOG, INTTRK, CRANE, MACKTRK, MONTLL, SHLOIL, THRPIN, TYCOUS UNIONC |

# EXHIBIT N



SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

HONORABLE NANCY L. DAVIS, JUDGE PRESIDING

DEPARTMENT NO. 306

---oOo---

| | |
|---|---|
| ROBERT LYMAN, ET AL., Plaintiffs, vs. ASBESTOS DEFENDANTS, ET AL. Defendants. | CGC-06-459162 Jury Trial<br>Pages 202 - 232<br>Volume VI |

COPY

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Wednesday, August 15, 2007

Reported by: Laura Martinez, CSR No. 11332, RPR

confirming service of the original petition, that Honeywell never answered the complaint, that Honeywell has not complied in virtually any respect with respect to the scheduling order in this case.

Specifically on May 11th, 2007 was the time period for Plaintiff's court-ordered disclosure regarding identification of witnesses and documents regarding production, product identification as to each defendant, and there's no reference to Honeywell.

June 27 of 2007 was the mandatory settlement conference, and Plaintiff's counsel indicated that the remaining Defendants were: Union Carbide; Foster Wheeler; and Drilling Specialties; International Truck; Freightliner LLC; Garlock; GM; Henry Vogt Machine Company; John Crane; MAC Trucks; Shell Oil Company; Thorpe Insulation; Tyco U.S.; A.W. Chesterton; Carlysle Corp; Ford; and Montello. But there was no representation by Plaintiff's counsel that Honeywell was in the case.

Then on July 16th of 2007 the pared down list of exposure -- expert disclosure was due, and there was no pared down list from Honeywell. Then on Wednesday July 18th, there was a mandatory settlement conference, and at that mandatory settlement conference Mr. Purcell indicated that ten Defendants remained in the case: Freightliner; Garlock; Henry Vogt; International Truck; John Crane; Ford; Foster Wheeler; Drilling Specialties; Union Carbide; and Montello. And there was no indication from Plaintiff's counsel that Honeywell was in the case.

Then on Monday August 6th there was a report for trial in Division 306, and there was no appearance by Honeywell on

# EXHIBIT O

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI) :

Civil Action No. MDL 875

This Document Relates To:
ALL ACTIONS
x

ADMINISTRATIVE ORDER NO 12

THE COURT, after examination of current procedures in place in this matter, and with a desire to facilitate the expeditious movement of pending cases on the MDL docket, and having had the benefit of input from the court-appointed plaintiff and defendant steering committees, hereby imposes the following filing requirements and procedures:

1. SUBMISSION OF IDENTIFICATION INFORMATION

All plaintiffs shall submit to the Court a report identifying each plaintiff by full name, date of birth, last four digits of plaintiffs SSN, and a statement indicating the status of the plaintiff in the case before this Court; ie., asbestos-related injury victim, spouse of injured party, administrator of injured party of deceased injured party, executor(trix), child of injured party, etc.

2. SUBMISSION OF RELATED COURT ACTIONS

Each plaintiff shall identify each and every prior or pending court or administrative action brought with the intent of satisfjlng in whole or in part the damages sustained by the plaintiffs alleged asbestos-related personal injury. In each such instance the plaintiff shall identify the claim, the parties involved and the results of any action thereon.

3. SUBMISSION OF STATEMENT OF CASE STATUS

The plaintiff in each case shall identify all of the named defendants in the following manner:

a) Each defendant with whom the plaintiff has achieved resolution of his/her claim, whether by settlement or agreement to dismiss without payment or by payment of a claim through the bankruptcy court, shall be identified and, where a dismissal has not yet been entered of record, a proposed order shall be submitted.

b) Each defendant that the plaintiff now desires to dismiss from the action, with or without prejudice, the reason for the dismissal, and a proposed order.

c) Each remaining defendant that is currently in bankruptcy with a claim pending, together with an order for the transfer of the claim to an inactive docket which the court has created for the holding of such claims.

d) Each non-bankrupt unsettled defendant.

4. **SUBMISSION OF MEDICAL REPORTS**

Each plaintiff asserting a claim based upon an alleged asbestos-related malignancy shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each plaintiff asserting a claim based upon an alleged non-malignant injury or condition shall submit to the court a copy of the medical diagnosing report or opinion upon which the plaintiff now relies for the prosecution of the claim as if to withstand a dispositive motion.

Each report or opinion submitted hereunder shall be based upon objective and subjective data which shall be identified and descriptively set out within the report or opinion.

5. **ALTERNATIVE PLAINTIFF SUBMISSION**

Alternative submissions to the court are acceptable under the following circumstances:

a) If the plaintiff has remaining claims only against bankrupt parties and is desirous of seeking payment on those claims through the bankruptcy action, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the transfer of this case to the "Bankrupts Only" docket in the form attached.

b) If the plaintiff has viable claims remaining against both bankrupt and non-bankrupt parties and wishes to pursue through the bankruptcy action only those claims remaining against the bankrupt parties, then, as an alternative to the required submissions under sections 2. and 4. above, the plaintiff may submit a proposed order for the dismissal of the non-bankrupt parties with prejudice and the transfer of the remaining claims against the bankrupt parties to the "Bankrupts Only" docket in the form attached.

c) The plaintiff may at any time submit to the court a proposed order to dismiss his/her case against all parties with prejudice. Plaintiff may also request a dismissal against any or all parties without prejudice; however, notice must be given to all parties, any of whom may file an objection within thirty (30) days thereafter. The court will hold a hearing if deemed necessary.

## 6. TIMING REQUIREMENTS

Plaintiffs shall submit required documentation and proposed orders to the court in accordance with the schedule set forth:

a) Plaintiffs whose cases were filed during the years 2007,2006, and before July 29,1991 shall file with the court their required papers on or before August 1,2007.

b) Plaintiffs whose cases were filed between July 29,1991 and December 31,1995 shall file with the court their required papers on or before September 1,2007.

c) Plaintiffs whose cases were filed in 1996, 1997 and 1998, shall file with the court their required papers on or before October 1,2007.

d) Plaintiffs whose cases were filed in 1999,2000,2001 and 2002, shall file with the court their required papers on or before November 1,2007.

e) Plaintiffs whose cases were filed in 2003,2004, and 2005 shall file with the court their required papers on or before December 1,2007.

The court may dismiss pursuant to F.R.C.P. 41(b) the cases of any plaintiffs who fail to comply with the requirements set forth.

## 7. SCREENED CASES

Current litigation efforts in this court and in the silica litigation have revealed that many mass screenings lack reliability and accountability and have been conducted in a manner which failed to adhere to certain necessary medical standards and regulations. The result is that mass screenings create an inherent suspicion as to their reliability. Where screenings have been conducted by the Sheet Metal Occupational Health Institute Trust and other organizations utilizing standards and protocols established by the American Thoracic Society (ATS), the Association of Occupational and Environmental Clinics (AOEC), and other accredited health organizations, there is a larger probability of adequacy for the reliablity foundation necessary for admissibility. This court will therefore entertain motions and conduct such hearings as may be necessary to resolve questions of evidentiary sufficiency in non-malignant cases supported only by the results of mass screenings which allegedly fail to comport with acceptable screening standards.

## 8. EXCLUSIONS

The cases designated as 2MDL 875 (MARDOC) shall be excluded from the requirements set forth and those actions shall continue to be governed by the requirements of previous orders of this court concerning the management of the MARDOC cases.

## 9. SETTLEMENT CONFERENCES/SUGGESTIONS OF REMAND

The court intends upon stepping up the pace of settlement conferences and will accordingly issue orders to that effect. Counsel are expected to comply with all requirements of the notice and to be prepared at the conference. All parties shall submit to the court at the time of the first settlement conference in any case a **short** position paper stating their position relative to disease, exposure and damages. Mitigating factors for the purposes of settlement shall also be set forth.

If the parties have failed to achieve settlement following one or more settlement conferences and working with the court, the case may be referred to mediation or, if the court finds that the parties have negotiated in good faith without success, the court may suggest the case for remand. A determination of good faith may not be necessary with regard to all defendants. The court will continue to prioritize malignant and exigent cases.

**10. MANNER OF SUBMISSIONS**

All submissions to be made to the court pursuant to this order shall be paper filings with copies provided to all remaining viable parties in accordance with Rule 5, F.R.C.P.

IT IS SO ORDERED

Date: 5/31/07

BY THE COURT

James T. Giles, J.

James T. Giles

[Administrative Order No. 12 - Exhibit to Section 5 a)]

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)** | : | **Civil Action No. MDL - 875** |

---

**This Document Relates To:**

---

**UNITED STATES DISTRICT COURT**
**FOR THE (name of Transferor District)**

| | | |
|---|---|---|
| **DOE, John and Mary** | : | |
| | : | |
| **v.** | : | **Civil Action No. (Transferor Ct. No.)** |
| | : | |
| **ABC Corp., et al.** | : | |

---

**MOTION AND ORDER TO TRANSFER TO "BANKRUPT's ONLY" DOCKET**

Plaintiff hereby submits to the Court, in accordance with this Court's Administrative Order No. 12, that the only remaining claims in this action are against defendants in bankruptcy and that the defendant wishes at this time to pursue those claims through the bankruptcy claim process.

Plaintiff therefore moves that this action be transferred to the Court's administrative "Bankrupt's Only" docket. The Plaintiff understands that should there be a change of circumstances, the Plaintiff may, upon compliance with Administrative Order No. 12, petition the Court to have this action reinstated against certain defendants.

Plaintiff further understands that it is Plaintiff's responsibility to submit a final dismissal order to this Court when all claims have been resolved.

SUBMITTED BY:

______________________( / / )
(Counsel for Plaintiff)
address
tel. No.

SO ORDERED

______________________________J.
James T. GILES
( / / )

[Administrative Order No. 12 - Exhibit to Section 5 b)]

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)** | : | **Civil Action No. MDL - 875** |

**This Document Relates To:**

**UNITED STATES DISTRICT COURT
FOR THE (name of Transferor District)**

| | | |
|---|---|---|
| **DOE, John and Mary** | : | |
| | : | |
| **v.** | : | **Civil Action No. (Transferor Ct. No.)** |
| | : | |
| **ABC Corp., et al.** | : | |

**MOTION FOR PARTIAL DISMISSAL AND ORDER TO TRANSFER TO "BANKRUPT's ONLY" DOCKET**

Plaintiff hereby submits to the Court, in accordance with this Court's Administrative Order No. 12, that the remaining claims in this action are against bankrupt and non-bankrupt defendants. Plaintiff desires to dismiss with prejudice all claims against the remaining non-bankrupt defendants and pursue those claims remaining against the bankrupt defendants through the bankruptcy claim process.

The remaining non-bankrupt defendants to be dismissed with prejudice are:

(list non-bankrupt defendants to be dismissed with prejudice)

Plaintiff therefore moves that, following the dismissal of the non-bankrupt defendants, this action be transferred to the Court's administrative "Bankrupt's Only" docket. The Plaintiff understands that should there be a change of circumstances, the Plaintiff may, upon compliance with Administrative Order No. 12, petition the Court to have this action reinstated against certain bankrupt defendants.

Plaintiff further understands that it is Plaintiff's responsibility to submit a final dismissal order to this Court when all claims have been resolved.

SUBMITTED BY:

______________________( / / )
(Counsel for Plaintiff)
address
tel. No.

SO ORDERED

______________________________J.
James T. GILES
( / / )

# EXHIBIT P

CRW



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI)

FILED
SEP 8 1992
MICHAEL E. KUNZ, Clerk
By ______ Dep. Clerk

CIVIL ACTION NO. MDL 875
**(Including MARDOC, FELA, and TIREWORKER cases)**

**This Document Relates to:**
**ALL ACTIONS**

**ADMINISTRATIVE ORDER NO. 3**

It is the intention of the Court that the cases be resolved through negotiation wherever possible. The Court and all parties agree that, as that process proceeds, it is often necessary to give special attention to certain cases. Although all settlements represent steps toward the Court's ultimate goal, special efforts to resolve these cases are not a substitute for broad-based negotiations designed to reduce the docket backlog.

In accordance with **ADMINISTRATIVE ORDER NO. 2** Plaintiffs' counsel has previously submitted information to the Court relating to their malignancy and asbestosis cases. The Court has determined to give a priority to malignancy, death and total disability cases where the substantial contributing cause is an asbestos-related disease or injury. The following procedures are hereby established for review, settlement and/or further action in these cases:

## I **SELECTED CASES**

Selected cases are identified by disease category. In each case, plaintiff's counsel must have a written medical opinion by a board certified specialist setting forth that exposure to asbestos or asbestos-containing products is a substantial contributing cause to the condition or death of plaintiff (plaintiff's decedent). The disease categories are:

A. Mesothelioma, living and deceased.
B. Lung Cancer, living and deceased.
C. Other malignancies, living and deceased.
D. Asbestosis, total disability deceased or total disability living.

## II **PROCEDURES FOR PLAINTIFFS' COUNSEL**

The Court will process all cases previously identified by Plaintiffs' counsel pursuant to **ADMINISTRATIVE ORDER NO. 2** as mesothelioma and lung cancer in accordance herewith **UNLESS** the

Court is advised that such cases do not meet the above criteria. Plaintiffs' counsel must affirmatively identify all other malignancy and asbestosis cases which meet the requirements hereof. In all instances hereunder, the cases shall be identified by plaintiff's name, the transferor jurisdiction, and the individual case number assigned by the transferor district. The Court will advise plaintiffs' counsel (with a copy to defense, plaintiff's and peripheral liaison counsel) when his/her cases are ready for processing. Plaintiffs' counsel shall then take the following steps:

A. Identify to the Court all remaining viable defendants from whom plaintiff expects to recover damages.

B. Provide the necessary fact information for defense counsel to process the cases for settlement. (work history, exposure information, date of birth/death, medical history, smoking history, Social Security Number, and printout or release etc.)

C. Provide defense counsel with X-rays and pathology in plaintiff's possession, together with necessary releases for medical and employment records.

D. Provide a reasonable settlement demand to each remaining defendant.

E. Notify the Court when each of the above requirements is completed.

## III PROCEDURES FOR DEFENSE COUNSEL

Each defendant shall be prepared to identify the counsel who will be available and able to conduct all settlement negotiations with any particular plaintiffs' counsel. Defense counsel shall take the following steps in these proceedings:

A. Within fifteen (15) days of receipt of notice that plaintiffs' counsel has complied with the requirements set forth in Section II above, notify the Court and Plaintiff's counsel by telephone and in writing as to any discrepancies in such notice, and set forth in detail all necessary additional information.

B. Within forty-five (45) days of receipt of the information from the plaintiff necessary to engage in settlement negotiations and the demand from plaintiffs' counsel, defense counsel shall review the same and accept such terms or make a reasonable offer for settlement.

## IV SETTLEMENT NEGOTIATIONS

Following the initial procedures, all counsel shall make themselves readily available for personal and telephone settlement conferences. **AT THIS TIME, NEGOTIATION IS TO BE ONGOING AND IN GOOD FAITH.** All counsel are to report no less than once a week by telephone to the Court as to their progress. The Court will be available on a regular basis for participation in a settlement conference, either by telephone or in person. If, after thirty (30) days, any party feels that his/her opponent is not negotiating in good faith, they may request the Court to forward the matter to the Mediation Committee for a recommendation. If a request is made to refer the matter to the Mediation Committee, such request shall be honored by the Court. When the Court determines that further settlement discussions are unlikely to be productive, the Court will hold a termination conference to discover the status of all remaining parties to the action(s) in negotiation and to determine whether the case is to be forwarded to the Mediation Committee. A referral may be of one or a number of cases. If no request for referral is made, and the parties have been unable to resolve their differences, the Court shall determine whether the matter is appropriate for immediate remand.

## V MEDIATOR

The Court shall appoint a neutral mediator for each case who is familiar with the jurisdiction. Once the Mediator is selected, he/she shall hear all referrals for that jurisdiction subject to resignation or Court reassignment. Upon receipt of a referral from the Court, the Mediator shall take the following action:

A. Provide notice to each party of the time and place of a mediation hearing , which hearing shall take place no sooner than ten (10) days after such notice, but as soon thereafter as possible.

B. Each party may provide a short position statement to his/her opponent and to the Mediator no less than five (5) days prior to the hearing.

C. The Mediator shall set forth his/her own rules for proceeding on the referral and shall advise the participants.

D. At the hearing the Mediator shall attempt to mediate settlement as to all parties. As to any case in the group that is not so resolved, the Mediator shall determine whether the participants have negotiated in good faith. This determination shall be made on a case by-case-basis.

E. The Mediator shall make a report to the Court setting forth his/her determination regarding the good or bad faith of all parties to the negotiations. Upon receipt of the report from the Mediator, the Court shall allow those parties who have been negotiating in good faith a reasonable time to complete a settlement. There shall be a presumption that where the plaintiff has acted in good faith and one or more defendants have been found to be acting in bad faith, the case will be immediately remanded for trial as to such defendants. If all parties are acting in good faith the Court will make additional efforts to settle the case. If no settlement is achieved the matter will be remanded. The Court will act promptly in all respects upon receipt of a report from the Mediator.

F. All information provided to the Mediator by the parties shall be kept in confidence except as set forth to the Court in the Mediator's report.

---

## VI GOOD FAITH NEGOTIATIONS

In order for the participants to the settlement negotiations to be in good faith, there must be a reasonable relationship between their demand/offer and the following criteria:

A. Historical settlement averages between the same defendants with the same plaintiff's counsel in the same jurisdiction in similar cases. Variances from such historical criteria can be justified by the following factors:

1. Severity/mildness of disease.
2. Lack of exposure to product.
3. Personal factors, i.e.; smoking, age, occupation, etc.
4. Other persuasive evidence.

B. Historical averages by disease category for cases that have been previously settled in that jurisdiction with that plaintiff's counsel and with that defendant.

C. If there is no historical settlement average by disease category between plaintiff's counsel and the defendant in the jurisdiction from which the case arises, then comparable settlement averages for similar cases in that same jurisdiction with that defendant shall be confidentially provided to the Mediator.

Because different viewpoints of the same case are equally understandable, a finding of bad faith is not necessary in all instances where the parties are unable to reconcile their differences and settle.

BY THE COURT:

Date: 9/2/92

Charles R. Weiner

CHARLES R. WEINER, J.

---

XC 9/10/92: attached liaison counsel list
all USDC's
attached pltf's counsel list (498)

# EXHIBIT Q

# Manual for Complex Litigation, Fourth

Federal Judicial Center 2004

the filing of a motion for transfer,[652] therefore, matters such as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer. The Panel has sometimes delayed ruling on transfer to permit the court in which the case is pending to decide critical, fully briefed and argued motions. At the same time, it may be advisable to defer certain matters until the Panel has the opportunity to rule on transfer. For example, there would be little purpose in entering a scheduling order while a conditional order of transfer is pending. The court should, however, modify any previously scheduled dates for pretrial proceedings or trial as may be necessary to avoid giving the Panel a misleading picture of the status of the case.

More often, however, the Panel has held that the pendency of potentially dispositive motions is not an impediment to transfer of actions, because such motions can be addressed to the transferee judge for resolution after transfer. Furthermore, the pendency of motions raising questions common to related actions can itself be an additional justification for transfer.[653]

The Panel uses no single factor to select the transferee district,[654] but the Panel does consider where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges. Based on these factors, the Panel will designate a judge (on rare occasions, two judges) to whom the cases are then transferred for pretrial proceedings. The judge is usually a member of the transferee court, but occasionally the Panel selects a judge designated to sit specially in the transferee district on an intracircuit or intercircuit assignment.

## 20.132 During Period of Transfer

After the transfer, the transferee judge[655] exercises not only the judicial powers in the transferee district but also "the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated proceedings."[656] The Panel has no authority to direct transferee judges in the exercise of their powers and discretion in supervising multidis-

652. A copy of the motion is to be filed with the court where the action is pending. *See* J.P.M.L. R.P. 5.12(c).

653. *See, e.g., In re* Ivy, 901 F.2d 7, 9 (2d Cir. 1990).

654. *See* Robert A. Cahn, *A Look at the Judicial Panel on Multidistrict Litigation*, 72 F.R.D. 211, 214–215 (1977).

655. *In re Plumbing Fixture*, 298 F. Supp. at 489.

656. 28 U.S.C. § 1407(b) (West 2003).

trict proceedings.[657] This supervisory power over depositions in other districts may be exercised in person or by telephone.[658] The transferee judge may vacate or modify any order of a transferor court, including protective orders;[659] unless altered, however, the transferor court's orders remain in effect.[660]

Although the transferee judge has no jurisdiction to conduct a trial in cases transferred solely for pretrial proceedings, the judge may terminate actions by ruling on motions to dismiss, for summary judgment, or pursuant to settlement, and may enter consent decrees.[661] Complexities may arise where the rulings turn on questions of substantive law. In diversity cases, the law of the transferor district follows the case to the transferee district.[662] Where the claim or defense arises under federal law, however, the transferee judge should consider whether to apply the law of the transferee circuit or that of the transferor court's circuit,[663] keeping in mind that statutes of limitations may present unique problems.[664] An action is closed by appropriate orders entered in the transferee court, without further involvement by the Panel or the original transferor court.

The transferee judge's management plan for the litigation should include provisions for handling tag-along actions transferred by the Panel after the initial transfer. Panel Rules 7.2(1) and 7.5(e) impose an affirmative obligation on parties in cases in which a motion to transfer is pending, or that previously have been transferred by the Panel, to promptly notify the Panel of any potential tag-along action in which the party is also named. This obligation also is imposed on counsel with respect to any action in which the counsel appears. Ordinarily, it is advisable to order that (1) tag-along actions shall be automatically made part of the centralized proceedings upon transfer to, or filing in, the transferee court; (2) rulings on common issues—for example, on the statute of limitations—shall be deemed to have been made in the tag-along

657. *Id.*

658. *See In re* Corrugated Container Antitrust Litig., 662 F.2d 875 (D.C. Cir. 1981); *In re* Corrugated Container Antitrust Litig., 644 F.2d 70 (2d Cir. 1981); *In re* Corrugated Container Antitrust Litig., 620 F.2d 1086 (5th Cir. 1980).

659. *See, e.g., In re* Upjohn Co. Antibiotic Cleocin Prods. Liab. Litig., 664 F.2d 114 (6th Cir. 1981).

660. *See In re* Master Key Antitrust Litig., 320 F. Supp. 1404 (J.P.M.L. 1971).

661. *See, e.g., In re* Donald J. Trump Casino Sec. Litig., 7 F.3d 357, 367–68 (3d Cir. 1993).

662. Van Dusen v. Barrack, 376 U.S. 612 (1964); *In re* Dow Co. "Sarabond" Prods. Liab. Litig., 666 F. Supp. 1466, 1468 (D. Colo. 1987).

663. *Compare In re* Korean Air Lines Disaster, 829 F.2d 1171 (D.C. Cir. 1987), *aff'd on other grounds sub nom.* Chan v. Korean Air Lines Ltd., 490 U.S. 122 (1989), *with* Dow "Sarabond," 666 F. Supp. 1466 (D. Colo. 1987), and cases cited therein.

664. *See, e.g.,* Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 406 (2d Cir. 1975).





action without t
already taken sh
other means of
trials by measur
bellwether trials,
the transferor co
One of the
single judge all
litigation. They
global settlemen
tion is settled ir
make the most
and any related s
Until 1998,
otherwise dismi
remained in the
effecting transf
previously trans
In 1998, the
to invoke sectio
section 1407(a)
end of pretrial
been terminate
the pre-1998 p
section 1407 as
the case, and it
greatest underst
trying the cons
adjudicating re
transferee judg
greater ability t

665. For a disc
*also infra* sample o
666. *In re* Lexe
Court infers that N
all, neither to a th
analogy and furth
section 1406. *See i*

action without the need for separate motions and orders; and (3) discovery already taken shall be available and usable in the tag-along cases.[665] Consider other means of reducing duplicative discovery activity and expediting later trials by measures such as videotaping key depositions or testimony given in bellwether trials, particularly of expert witnesses, for use at subsequent trials in the transferor courts after remand.

One of the values of multidistrict proceedings is that they bring before a single judge all of the federal cases, parties, and counsel comprising the litigation. They therefore afford a unique opportunity for the negotiation of a global settlement. Few cases are remanded for trial; most multidistrict litigation is settled in the transferee court. As a transferee judge, it is advisable to make the most of this opportunity and facilitate the settlement of the federal and any related state cases. See section 20.31.

Until 1998, actions based on section 1407 proceedings and not settled or otherwise dismissed in the transferee districts during their pretrial stages often remained in the transferee districts for trial. Transferee judges entered orders effecting transfer for trial, pursuant to 28 U.S.C. § 1404 or 1406, of cases previously transferred to them for pretrial under section 1407.

In 1998, the U.S. Supreme Court held that a district court has no authority to invoke section 1404(a) to assign a transferred case to itself for trial, because section 1407(a) "uncondition[ally]" commands the Panel to remand, at the end of pretrial proceedings, each action transferred by the Panel that has not been terminated in the transferee district.[666] However, the policy reasons for the pre-1998 practice remain: (1) during the often protracted time of the section 1407 assignment, the transferee judge gains a solid understanding of the case, and it makes sense for trial to be conducted by the judge with the greatest understanding of the litigation; (2) the transferee judge may already be trying the constituent centralized action(s), and there may be efficiencies in adjudicating related actions or portions thereof in one trial; and (3) the transferee judge, if empowered to try the centralized actions, may have a greater ability to facilitate a global settlement.

665. For a discussion of the use of supplemental depositions, see *supra* section 11.453. *See also infra* sample order at section 40.29.

666. *In re* Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). The Court infers that MDL transferee judges may not use section 1404(a) to transfer to any district at all, neither to a third district or back to the section 1407 transferor district. *Id.* at 41 n.4. By analogy and further inference, an MDL transferee judge likewise now may not transfer under section 1406. *See id.*

Accordingly, evolving alternatives, such as those below, permit the transferee court to resolve multidistrict litigation through trial while remaining faithful to the *Lexecon* limitations:

- Prior to recommending remand, the transferee court could conduct a bellwether trial of a centralized action or actions originally filed in the transferee district, the results of which (1) may, upon the consent of parties to constituent actions not filed in the transferee district, be binding on those parties and actions,[667] or (2) may otherwise promote settlement in the remaining actions.
- Soon after transfer, the plaintiffs in an action transferred for pretrial from another district may seek or be encouraged (1) to dismiss their action and refile the action in the transferee district, provided venue lies there, and the defendant(s) agree, if the ruling can only be accomplished in conjunction with a tolling of the statute of limitations or a waiver of venue objections, or (2) to file an amended complaint asserting venue in the transferee district,[668] or (3) to otherwise consent to remain in the transferee district for trial.[669]

667. *See, e.g., In re* Air Crash Near Cali, Colombia on Dec. 20, 1995, MDL No. 1125, Order No. 1522 (S.D. Fla. Jan. 12, 2000) (noting that parties in some of the actions transferred under section 1407 had agreed to be bound by the results of a consolidated liability trial and had been instructed to file appropriate motions after the completion of the trial, seeking a ruling that effectuated such agreements).

668. Often in multidistrict litigation the transferee court will consider establishing a master file with standard pleadings, motions, and orders. This file may include a single amended consolidated complaint, alleging that venue is proper in the transferee district. If such a document is used, the court and parties should take care to ensure a common understanding of the document's intent and significance—that is, whether it is being used as a device simply to facilitate ease of the docket's administration, or whether the filing in the transferee district constitutes the inception of a new "case or controversy" in that district, thereby superseding and rendering moot the pending separate actions that had been transferred to that district for pretrial proceedings by the Panel under section 1407.

669. *See, e.g.*, State v. Liquid Air Corp. (*In re* Carbon Dioxide Indus. Antitrust Litig.), 229 F.3d 1321 (11th Cir. 2000) (ruling that *Lexecon* does not prohibit parties from waiving venue objections in centralized actions where transferee court otherwise had subject-matter jurisdiction); *In re* Dippin' Dots Patent Litig., MDL No. 1377, Docket No. 1:00-CV-907 (N.D. Ga. July 23, 2001) (transferee court ordered all parties to file a pleading stating whether they consented to trial in the transferee district); *In re* Research Corp. Techs., Inc. Patent Litig., Docket No. 97-2836 (D.N.J. Dec. 3, 1999) (order entering final judgment and staying further pretrial proceedings; transferee court found it reasonable to conclude that final judgment may be entered following trial proceedings consented to by the parties that resulted in termination of the actions).





- After ar at the could t to the t
- The tra ment p tion, pr

20.133 Remar

Section 14 proceedings, a respective trans be done will d remands have remained to be the cases were Some of the co further centrali

The Panel remand, but tl remand.[672] The the expeditious on its own ini "separate any remand any of the Panel has r

670. *Lexecon*,

671. *See, e.g.*, (S.D.N.Y. May 11 recommending it *e.g., In re* Air Cra V. Covello, Chief Judicial Panel on back to the court Multidistrict Litig

672. *See In re*

673. J.P.M.L. *e.g., In re* IBM Pe Efforts by parties remand, have bee

- After an action has been remanded to the originating transferor court at the end of section 1407 pretrial proceedings, the transferor court could transfer the action,[670] pursuant to 28 U.S.C. § 1404 or 1406, back to the transferee court for trial by the transferee judge.[671]
- The transferee judge could seek an intercircuit or intracircuit assignment pursuant to 28 U.S.C. § 292 or 294 and follow a remanded action, presiding over the trial of that action in that originating district.

## 20.133 Remand

Section 1407 directs the Panel to remand, after appropriate pretrial proceedings, actions not filed or terminated in the transferee court to the respective transferor courts for further proceedings and trial. When this should be done will depend on the circumstances of the litigation. In some cases, remands have been ordered relatively early, while substantial discovery remained to be done; in others, virtually all discovery had been completed and the cases were ready for trial at the time of remand to the transferor districts. Some of the constituent cases may be remanded, while others are retained for further centralized pretrial proceedings.

The Panel looks to the transferee court to suggest when it should order remand, but that court has no independent authority to order section 1407 remand.[672] The transferee court should consider when remand will best serve the expeditious disposition of the litigation. The Panel may also order remand on its own initiative or on the motion of a party.[673] Although authorized to "separate any claim, cross claim, counter-claim, or third-party claim and remand any of such claims before the remainder of the action is remanded," the Panel has rejected most requests to exclude portions of a case from transfer

670. *Lexecon*, 523 U.S. at 19.

671. *See, e.g.*, Kenwin Shops, Inc. v. Bank of La., 97 Civ. 907, 1999 WL 294800, at *11 (S.D.N.Y. May 11, 1999). The transferee court might also facilitate such a transfer by expressly recommending it either in its suggestion of remand to the Panel or in its final pretrial order. *See, e.g., In re* Air Crash at Dubrovnik, Croatia on Apr. 3, 1996, MDL No. 1180 (Letter from Alfred V. Covello, Chief Judge, U.S. District Court, D. Conn., to Michael J. Beck, Clerk of the Panel, Judicial Panel on Multidistrict Litigation, suggesting that four remanded cases be transferred back to the court and consolidated for trial (Jan. 4, 2002) (on file with the Judicial Panel on Multidistrict Litigation)).

672. *See In re* Roberts, 178 F.3d 181 (3d Cir. 1999).

673. J.P.M.L. R.P. 7.6(c). Great deference is given to the views of the transferee judge. *See, e.g., In re* IBM Peripheral EDP Devices Antitrust Litig., 407 F. Supp. 254, 256 (J.P.M.L. 1976). Efforts by parties to use the Panel as a substitute for appellate review, by seeking premature remand, have been uniformly rejected.

## 22.35 Authority of a Judge Pending Decision by the MDL Panel

In many cases, a court with one or more cases that are part of a mass tort may anticipate transfer by the MDL Panel. That court may, however, have motions to remand, motions to dismiss, or motions relating to discovery filed before the MDL Panel rules. A court in that position has the authority to grant or deny a motion or to stay the cases before it, pending the Panel's decision on transfer. If the case is transferred, the transferee court then decides unresolved motions after transfer.[1129]

A stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well.[1130] The reasons for a stay diminish, however, if the pending motions raise issues relating to the law of a single state that are unlikely to arise in other related cases, if MDL transfer appears unlikely, or if the absence of federal jurisdiction is clear.[1131] Judicial economy may then be served by resolving specific issues and declining to stay the proceedings.[1132] Similarly, if the case is far along in discovery or motions practice, and there is an urgent need to have that case resolved, the court may decide not to stay the proceedings.[1133] For example, if the case involves a critically ill plaintiff who cannot wait an ex-

1129. The rules of the Judicial Panel on Multidistrict Litigation expressly provide that the pendency of a proceeding before the Panel to transfer a case "does not affect or suspend orders or pretrial proceedings in the district court in which the action is pending." J.P.M.L. R. P. 1.5 (West 2003); *see also In re* Asbestos Prods. Liab. Litig., 170 F. Supp. 2d 1348, 1349 n.1 (J.P.M.L. 2001) (citing Rule 1.5 and noting that proceedings for transferring tag-along actions experience "a lag time of at least three or four months from the filing of an action . . . and the issuance of the Panel's subsequent order").

1130. Moore v. Wyeth-Ayerst Labs., 236 F. Supp. 2d 509, 510–11 (D. Md. 2002) (observing that the MDL transferee judge had faced multiple motions to remand cases removed from state courts).

1131. *See, e.g.*, Caldwell v. Am. Home Prods. Corp., 210 F. Supp. 2d 809, 811 (S.D. Miss. 2002) (stating "the law in this circuit is clear that the *All Writs Act* does not provide an independent basis for federal jurisdiction").

1132. McGrew v. Schering-Plough Corp., No. CIV.A.01-2311, 2001 WL 950790, at *3 (D. Kan. Aug. 6, 2001) ("For purposes of judicial economy, the jurisdictional issue should be resolved immediately," before action by the MDL panel.).

1133. *See, e.g.*, Carden v. Bridgestone/Firestone, Inc., No. CIV.00-3017, 2000 WL 33520302, at *4 (S.D. Fla. Oct. 18, 2000) (denying stay and remanding case seeking injunctive relief to state court); *see also* Naquin v. Nokia Mobile Phones, Inc., No. CIV.A.00-2023, 2001 WL 1242253, at *1 (E.D. La. June 20, 2001) (denying motions to stay because "the prior substantial rulings in this case and continuing efforts by counsel may in fact aid the multidistrict litigation").

tended period for trial, the court may decide to proceed rather than wait for MDL action.

## 22.36 The Tasks of an MDL Transferee Judge

Aside from deciding any threshold motion to remand, the initial tasks of the MDL transferee judge include coordinating or consolidating the cases previously pending in a number of different districts; identifying differences in applicable law; and seeking information from the parties as to the status of the cases in order to determine how to proceed with pretrial discovery and motions. See sections 22.2 and 22.61. As to remand motions, the Panel's policy is not to delay a transfer decision because a remand motion is pending. The transferor court may rule on such a motion—or any other motion—while the Panel considers transfer. If the transferor courts have not decided remand motions before the MDL Panel order is issued, the transferee court should try to resolve the remand motions promptly because they invariably affect federal subject-matter jurisdiction, and the failure to rule on them until a case is returned to the transferor court may result in unnecessary and prejudicial delay.

An MDL transferee judge has authority to dispose of cases on the merits—for example, by ruling on motions for summary judgment[1134] or trying test cases that had been originally filed in the transferee district or refiled in or transferred to that district. If summary judgment motions are pending, the transferee judge must consider whether to decide the motions or to transfer the cases back to the transferor districts. If the summary judgment motion pertains to one or few cases, or rests on application of the transferor court's conflicts-of-law and substantive law rules, the transferor judge may be able to decide the motions most efficiently.[1135] If the summary judgment motions involve issues common to all the cases centralized before the MDL court, however, the transferee judge may be in the best position to rule.[1136]

1134. *See, e.g., In re* Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1488 (8th Cir. 1997) (affirming grant of summary judgment for defendant Dow Chemical in relation to liability for the use of silicone gel in TMJ implants).

1135. *See In re* Orthopedic Bone Screw Prods. Liab. Litig., MDL No. 1014, 1997 WL 109595, at *2 (E.D. Pa. Mar. 7, 1997) (ruling on motions for partial summary judgment would not advance the litigation and would serve no useful purpose (citing Manual for Complex Litigation, Third, § 21.34 (1995))); *see also* Francis E. McGovern, *Judicial Centralization and Devolution in Mass Torts*, 95 Mich. L. Rev. 2077 (1997) (citing *In re* Silicone Gel Breast Implants Prods. Liab. Litig., 887 F. Supp. 1455 (N.D. Ala. 1995)) [hereinafter McGovern, *Judicial Centralization*].

1136. *See, e.g., In re* Norplant Contraceptive Prods. Liab. Litig., 215 F. Supp. 2d 795, 810, 835 (E.D. Tex. 2002) (granting summary judgment terminating "nearly all remaining non-settling





MDL trar or refiled or t of the parties techniques to filing of a cor as an original the vehicle fc 20.132 descril authority to re

Even if th transferred ca which authori MDL judges. resolve all of t might be trie may find it m

Plaintiffs and the the common-lav Contraceptive Pr summary judgm ceptive Prods. Li for partial summ

1137. Lexeco (interpreting 28 for trial). Legisla transfers for trial.

1138. For exa *Liab. Litig.*, 155 original proceedi applying Indiana court subsequen *Bridgestone/Fires inter alia*, that the

1139. *See* Mc approach used in MDL No. 926, ORDERS/orders.

1140. *See, e.g* terminating "nea Diet Drugs Prod (noting special MasterCard Int'l (dismissing two t 365, 368–69 (D.